# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ————————————————— | ) | |
| UNITED STATES OF AMERICA | ) | |
|  | ) | |
| v. | ) | |
|  | ) | Case No. 20-cr-10111-RWZ-1 |
| CHARLES LIEBER, | ) | |
|  | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL PRODUCTION OF MATERIALS CONCERNING DOJ'S "CHINA INITIATIVE" AND THE "THOUSAND TALENTS PROGRAM" AND TO INSPECT GRAND JURY MINUTES

Marc L. Mukasey (*pro hac admitted*)
Torrey K. Young (BBO# 682550)
MUKASEY FRENCHMAN & SKLAROFF, LLP
140 E. 45th Street, 17th Floor
New York, New York 10017
(212) 466-6400

*Attorneys for Charles Lieber*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................2

    A.    The Charges ............................................................................................................2
    B.    The DOJ's China Initiative ...................................................................................3
    C.    The Thousand Talents Program .............................................................................4
    D.    Statements by U.S. Attorney Andrew Lelling and the FBI about
          Professor Lieber's Case ........................................................................................5
    E.    The Discovery ........................................................................................................9

ARGUMENT .........................................................................................................................10

POINT I ...............................................................................................................................10

    THOUSAND TALENTS PROGRAM AGREEMENTS AND CHINA INITIATIVE
    MATERIALS IN THE GOVERNMENT'S POSSESSION, CUSTODY, OR CONTROL
    ARE MATERIAL TO THE DEFENSE AND MUST BE PRODUCED ...............................10

    A.    Applicable Legal Standard ...................................................................................10
    B.    Analysis .................................................................................................................13

POINT II ..............................................................................................................................15

    THE GOVERNMENT'S SENSATIONAL AND MISLEADING PUBLIC STATEMENTS
    ABOUT THIS CASE GIVE RISE TO A PARTICULARIZED NEED TO INSPECT THE
    GRAND JURY MINUTES ..................................................................................................15

    A.    Applicable Legal Standard ...................................................................................16
    B.    Analysis .................................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Douglas Oil Co. of Cal. v. Petrol Stops N.w.*,
  441 U.S. 211 (1979) ................................................................................................ 16, 17

*Pittsburgh Plate Glass Co. v. United States*,
  360 U.S. 395 (1959) ................................................................................................ 16, 17

*SEC v. Credit Bancorp, Ltd.*,
  194 F.R.D. 469 (S.D.N.Y.2000) ................................................................................ 12

*United States v. Armstrong*,
  517 U.S. 456 (1996) .................................................................................................. 11

*United States v. Bender*,
  304 F. 3d 161 (1st. Cir. 2002) .............................................................................. 10, 15

*United States v. Bravo-Fernandez*,
  239 F. Supp. 3d 411 (D.P.R. 2017) ........................................................................ 17, 20

*United States v. Brown*,
  98–CR–168, 1995 WL 387698 (S.D.N.Y. June 30, 1995) .................................... 17

*United States v. Bruno*,
  159 F. Supp. 3d 311 (E.D.N.Y. 2016) .................................................................... 17

*United States v. Buckley*,
  586 F. 2d 498 (5th Cir. 1978) ................................................................................ 13

*United States v. Carrasquillo-Plaza*,
  873 F. 2d 10 (1st Cir. 1989) .................................................................................. 13

*United States v. Dennis*,
  384 U.S. 855 (1966) ................................................................................................ 17

*United States v. DiGrazia*,
  213 F. Supp. 232 (N.D. Ill. 1963) .......................................................................... 19

*United States v. George*,
  786 F. Supp. 56 (D.D.C. 1992) .............................................................................. 12

*United States v. George*,
  839 F. Supp. 2d 430 (D. Mass. 2012) .................................................................... 17

*United States v. Hogan*,
  712 F.2d 757 (2d Cir. 1983) .................................................................................. 19

*United States v. Lehr*,
  562 F. Supp. 366 (E.D. Pa. 1983) ................................................................ 20

*United States v. Libby*,
  429 F. Supp. 2d 1 (D.D.C. 2006) ........................................................... 11, 15

*United States v. Liuzzo*,
  739 F.2d 541 (11th Cir. 1984) ................................................................... 16

*United States v. Marshall*,
  132 F.3d 63 (D.C. Cir. 1998) ..................................................................... 12

*United States v. Matos-Luchi*,
  529 F. Supp. 2d 294 (D.P.R. 2007) ...................................................... 16, 17

*United States v. Ostrer*,
  481 F. Supp. 407 (S.D.N.Y. 1979) ............................................................ 20

*United States v. Pesaturo*,
  519 F. Supp. 2d 177 (D. Mass. 2007) ....................................................... 12

*United States v. Poulin*,
  592 F. Supp. 2d 137 (D. Me. 2008)............................................................ 12

*United States v. Rodriguez–Torres,*
  570 F.Supp.2d 237 (D.P.R.2008) .............................................................. 20

*United States v. Salyer*,
  271 F.R.D. 148 (E.D.Cal. 2010)......................................................... 11, 13

*United States v. Santiago*,
  46 F. 3d 885 (9th Cir. 1995) .............................................................. 11, 13

*United States v. Sells Eng'g*,
  463 U.S. 418 (1983) .................................................................................. 17

*United States v. Sepulveda*,
  15 F.3d 1161 (1st Cir. 1993) ..................................................................... 15

*United States v. Serubo*,
  604 F.2d 807 (3d Cir. 1979) ...................................................................... 19

*United States v. Stein*,
  488 F. Supp. 2d 350 (S.D.N.Y. 2007) ................................................. 11, 12

*United States v. Twersky*,
  No. S2 92 CR. 1082 (SWK), 1994 WL 319367 (S.D.N.Y. June 29, 1994)............................. 20

**RULES**

Fed. R. Crim. P. 6(e) ...................................................................................................... 16

Fed. R. Crim. P. 16(a)(1)(E) ........................................................................................... 11

D. Mass. Local Rule 116.8 ............................................................................................. 11

**TREATISES**

7 Moore's Federal Practice § 34.14 ............................................................................... 12

**PRELIMINARY STATEMENT**

Pursuant to Federal Rules of Criminal Procedure 16(a)(1)(E) and 6(e), respectively. Professor Charles Lieber, by his counsel, respectfully submits this Memorandum of Law in Support of His Motion to Compel Production of Materials Concerning DOJ's "China Initiative" and the "Thousand Talents Program" and To Inspect Grand Jury Minutes.

The case against Professor Charles Lieber is a product of the Department of Justice's ("DOJ's") China Initiative Task Force. The government trumpeted Professor Lieber's case in numerous interviews and statements concerning the China Initiative, noting observations from the Intelligence Community about conduct that DOJ sought to deter.  Yet, in discovery, the government failed to produce any materials concerning the China Initiative, which are critical to prove that Dr. Lieber's conduct was not criminal.  The Court should order the government to produce these materials.

At the core of the charges is China's Thousand Talents Program and what it means to "participate" in that program.  The terms of all Thousand Talents contracts and agreements, and any correspondence, recordings, seals, signatures, certificates, confirmations, receipts or other materials indicative of "participation" in the Thousand Talents Program are also material to Dr. Lieber's defense.  They too should be produced.

Finally, the DOJ and the U.S. Attorney's Office made a plethora of prejudicial public statements connecting Professor Lieber's case to sensational issues of national security, trade secret theft, hacking, and espionage.  This case, however, does not actually involve any of those issues.  The government's purposeful mischaracterizations of the case necessitate review of the grand jury minutes to assess the extent to which grand jurors heard similar distortions.

**BACKGROUND**

Professor Lieber is a United States citizen and a professor in the Department of Chemistry and Chemical Biology at Harvard University.  (Dkt. No. 35 at ¶ 1).  He was the Chair of the Department of Chemistry and Chemical Biology, has published over 400 papers in peer-reviewed journals, and is the principal inventor on more than 50 patents. *See id.* He served as the Principal Investigator of the Lieber Research Group at Harvard.  The NIH and the DOD funded the Lieber Research Group through research grants awarded to Harvard University.  *See id.* at ¶¶ 2-7.

**A.     The Charges**

On January 28, 2020, Professor Lieber was arrested upon a complaint and charged in two counts with violations of 18 U.S.C. § 1001.  (Dkt. No. 1).

On June 9, 2020, a grand jury in the District of Massachusetts returned a two-count indictment charging Professor Lieber with violating 18 U.S.C. § 1001. (Dkt. No. 26).

On July 28, 2020, the grand jury returned a superseding indictment charging Professor Lieber in six counts (the "Superseding Indictment").  (Dkt. No. 35).  Counts One and Two charge Professor Lieber with making false statements in violation of Title 18 United States Code Section 1001.  *See id.* Counts Three and Four charge him with Filing a False Tax Return in violation of Title 26 United States Code Section 7206(1).  *See id.* Counts Five and Six charge a Failure to File Report of Foreign Bank and Financial Accounts in violation of Title 31 United States Code Sections 5314 and 5322. *See id.*

Professor Lieber has pleaded Not Guilty to all the charges.  (Dkt. No. 38).

**B.      The DOJ's China Initiative**

The case against Professor Lieber is a product of the DOJ's China Initiative Task Force. Upon arrest, DOJ issued a press release declaring that Professor Lieber's case and two other separate China-related cases resulted from the China Initiative, a "strategic priority of countering Chinese national security threats." *Harvard University Professor and Two Chinese Nationals Charged in Three Separate China Related Cases*, Dept. of Justice, (Jan. 28, 2020) https://www.justice.gov/opa/pr/harvard-university-professor-and-two-chinese-nationals-charged-three-separate-china-related.[1]

The China Initiative Task Force includes, but is not limited to, the Department of Justice, various U.S. Attorneys' Offices, the FBI, the U.S. Department of Health and Human Services ("DHHS"), U.S. Department of Commerce, and U.S. Customs and Border Protection and the U.S. Intelligence Community. *See* Information About the Department of Justice's China Initiative and a Compilation of China-Related Prosecutions Since 2018, Dept. of Justice (Sept. 21, 2020) https://www.justice.gov/opa/information-about-department-justice-s-china-initiative-and-compilation-china-related. Andrew E. Lelling, the United States Attorney for the District of Massachusetts, is one of eight members of the China Initiative Steering Committee. *See id.*

The Attorney General set goals for the China Initiative, including to:

- Develop an enforcement strategy concerning non-traditional collectors (e.g., researchers in labs, universities and the defense industrial base) that are being coopted into transferring technology contrary to U.S. interests;

---

[1]      The two other cases entail: 1) a Chinese national charged in an indictment with one counts each of visa fraud, making false statements, acting as an agent of a foreign government and conspiracy; and 2) a Chinese national indicted on one count of smugglings goods from the United States and one count of making false, fictitious, or fraudulent statements. *See id.*

- Educate colleges and universities about potential threats to academic freedom and open discourse from influence efforts on campus;

- Equip the nation's U.S. Attorneys with intelligence and materials they can use to raise awareness of these threats within their Districts and support their outreach efforts…" *Id.*

China Initiative cases involving the Thousand Talents Program, apart from Professor Lieber's, include *United States v. Wang*, No. 1:20-mj-09111 (N.D. Ohio May 12, 2020); *United States. v. Haizhou Hu*, No. 3:20-mj-00036 (W. D. Va. Aug. 28, 2020); and *United States v. Li*, No. 1:20-cr-00164, (N.D. Ga. May 8, 2020).  *See id.*

Additionally, the NIH, the national research agency within DHHS, formed an investigation group that examined more than 180 scientists and more than 65 institutions and their reporting of foreign ties, specifically with a focus on China's Thousand Talents Plan.  *See* Eric Bock, *NIH Investigates Foreign Influence at U.S. Grantee Institutions*, Nat'l. Institutes of Health (Oct. 4, 2019)       https://nihrecord.nih.gov/2019/10/04/nih-investigates-foreign-influence-us-grantee-institutions.  According to NIH, Thousand Talents Plan awardees "typically get laboratory space and equipment, staff, a signing bonus and other benefits." *Id.*  Some awardees "were absent or as much as 150 days from their U.S. labs."  *Id.*  In one [Thousand Talents Plan] contract "a grantee scientist was expected to issue 2-3 Chinese patents."  *Id.*  "[S]ome grantees' Chinese employment contracts included intellectual property clauses that American institutions would likely find unacceptable."  *Id.*

C.      **The Thousand Talents Program**

According to the government, on or about June 27, 2012, a Chinese university ("WUT") professor emailed Professor Lieber a contract titled, "Employment Contract of 'One Thousand

Talent' High Level Foreign Expert" (the Thousand Talents Contract").  Dkt. No. 35 at ¶ 17.  The government alleges duplicate copies of the Thousand Talents Contract – signed by WUT's President were mailed to Professor Lieber, and that Professor Lieber signed the Thousand Talents Contract on or about July 21, 2012.  *Id.* at ¶ 20.

On or about April 24, 2018, DOD investigators interviewed Professor Lieber on the Harvard campus.  During the interview, Professor Lieber allegedly "told the DOD investigators that he had never been asked to participate in China's Thousand Talents Plan, but that he wasn't sure how China categorized him." *Id.* at ¶ 32.

On or about November 15, 2018, NIH asked Harvard whether Professor Lieber and/or Harvard had failed to disclose Professor Lieber's then-suspected relationship with the Chinese institution and the Thousand Talents Program.  *Id.* at ¶ 34.[2]  Based on information from Professor Lieber, Harvard submitted a written response to NIH, stating "Dr. Lieber has represented that he is not and has never been a participant" in Thousand Talents Plan.  *Id.*

**D.     Statements by U.S. Attorney Andrew Lelling and the FBI about Professor Lieber's Case**

In November 2018 remarks following Attorney General Jeff Sessions's launch of the "China Initiative," Assistant Attorney General for National Security John Demers stated that China Initiative prosecutions were launched to counter "agents of the Chinese government . . . systematically stealing our nation's intellectual property for the benefit of their own companies and their own strategic priorities."[3]  Assistant A.G. Demers described one case, misappropriation

---

[2]     The Superseding Indictment refers at times to both the Thousand Talents Plan and Thousand Talents Program.

[3]     Remarks, *Assistant Attorney General for National Security John C. Demers Delivers Remarks Regarding Economic Espionage by the People's Republic of China* (Nov. 1, 2018) https://www.justice.gov/opa/speech/assistant-attorney-general-national-security-john-c-demers-delivers-remarks-regarding (*hereinafter* "Demers Remarks")

of intellectual property of an American company to a Chinese company, as "representative" of "recent cases" the initiative charged.  *Id.*  In another case, Assistant A.G. Demers touted, "defendants conspired to hack U.S. and European defense and aerospace contractors in order to steal information to develop a Chinese version of a commercial airplane turbofan engine."  *Id.*  In another case, the "China Initiative charged an individual with stealing turbine technology and sending it to China."  Mr. Demers summed up the enforcement goal of the China Initiative as follows: "[I]f you work at an American company and you help the Chinese steal its trade secrets, we will find you and prosecute you."  *Id.*

In November 2019, then-Assistant Attorney General Brian Benczkowski stated that, "[u]nder the China Initiative, the Criminal Division, National Security Division, FBI, and U.S. Attorney's Offices have redoubled our efforts to investigate Chinese companies and individuals for the theft of trade secrets" and that "[e]ach of these efforts stem from the recognition that we must not stand by and allow our intellectual property to be stolen."[4]

Thereafter, on January 27, 2020, Professor Lieber was arrested upon a criminal complaint. (Dkt. No. 4).  In the Affidavit in Support of Application for Criminal Complaint, FBI Special Agent Robert Plumb stated that he was "assigned to one of the FBI's Counterintelligence Squads in the Boston Field Office."  ("Plumb Aff." Dkt. No. 1-1, ¶ 1.)  Special Agent Plumb also stated that his responsibilities included "investigating violations of federal criminal laws relating to espionage and theft of trade secrets, the mishandling of classified and defense information, and export control laws."  *Id.*  Elsewhere in the Affidavit, Special Agent Plumb characterized the

---

[4]    Remarks, *Assistant Attorney General Brian A. Benczkowski Delivers Remarks at the Thirteenth Law Enforcement and Industry Meeting on Intellectual Property Enforcement* (Nov. 6, 2019) https://www.justice.gov/opa/speech/assistant-attorney-general-brian-benczkowski-delivers-remarks-thirteenth-law-enforcement.

Thousand Talent Program as "incentiviz[ing]" U.S. researchers to transmit knowledge gained in the U.S. to China and that "[t]he Chinese Talent programs have rewarded individuals for stealing proprietary information and violating export controls." *Id.* ¶ 10.

At the time of Professor Lieber's arrest, U.S. Attorney Andrew Lelling and the FBI made numerous statements suggesting Professor Lieber committed technological theft against the United States and acted as an agent of China. At Mr. Lelling's January 28, 2020 press conference announcing Professor Lieber's arrest, the U.S. Attorney said, "Chemistry, nano technology, polymer studies, robotics, computer science, biomedical research — this is not an accident or a coincidence . . . . This is a small sample of China's ongoing campaign to syphon off American technology and know-how for Chinese gain."[5]

Six days later, in an in-depth interview with *Science*, U.S. Attorney Lelling made vivid and dramatic remarks about Professor Lieber's case, leaving a clear inference that it raised national security and espionage concerns and possibly, treason:

- "That is a corrupting level of money";
- "The fact that Lieber is a prominent academic helps us to get out our message . . . .";
- "you want a little bit of fear out there to sensitize people to the magnitude of the problem";
- "The China Initiative's working group . . . prod[s] the department's 89 field offices 'to be aggressive, because we want them to prioritize these cases.'";
- "The bottom line is that this is an effort by a rival nation state to steal U.S. technology";
- "What concerns us . . . is that a scientist who accepts their support becomes dependent on it to the point where they are willing to accept [an assignment] from the Chinese government or a Chinese university for whatever it is they need… And a large enough amount of money can shift loyalties."[6]

---

[5]    Jackson Cote, *'Chinese economic espionage and theft is a real,' U.S. Attorney Andrew Lelling says after arrest of Harvard professor for undisclosed ties to China*, MassLive (Jan. 28, 2020) https://www.masslive.com/boston/2020/01/chinese-economic-espionage-and-theft-is-a-real-us-attorney-andrew-lelling-says-after-arrest-of-harvard-professor-for-undisclosed-ties-to-china.html.

[6]    Jeffrey Mervis, *U.S. prosecutor leading China probe explains effort that led to charges against Harvard chemist*, ScienceMag (Feb. 3, 2020) https://www.sciencemag.org/news/2020/02/us-prosecutor-leading-china-probe-explains-effort-led-charges-against-harvard-chemist (*hereinafter ScienceMag* Interview).

Lelling is also quoted as saying he, "understands the research community's confusion over exactly what types of behavior could result in criminal charges and what scientists should do to avoid that fate." *Id.*

Four days later, in remarks at the Department of Justice's China Initiative Conference, U.S. Attorney Lelling stated that the academic community should expect a "spike" in prosecutions related to China ties, opining that "China has launched a massive nationwide effort to pilfer U.S. technology and know-how and transfer it to China for its own uses, so . . . this kind of response is needed." In another interview on February 7, 2020, with the New York Times, U.S. Attorney Lelling stated that, "[w]hen Dr. Lieber entered into cooperation with Chinese partners, he 'was by definition conveying sensitive information to the Chinese'" and "[t]he moment he works at Wuhan University of Technology and conveys it to his Chinese counterparts, that research and expertise is now at the disposal of the Chinese government, because that's how it works in China."[7]

In a March 8, 2020 interview with the Boston Herald, U.S. Attorney Lelling had the following exchange:

- **Adriana Cohen:** A Harvard researcher was recently arrested for among other things failing to disclose financial ties to China. What's going on?
- **Andrew Lelling:** The Justice Department and the FBI have been warning about Chinese espionage, Chinese efforts to steal U.S. technology for at least 15 years. . . . So about a year ago Attorney General (Jeff) Sessions set up this group of five U.S. attorneys, I'm one of them. . . . . What he wanted was stepped-up enforcement in this area, a higher profile for the cases, more outreach to private companies and universities about the risks here. I think we've achieved that. People now are more aware that there's a real threat from Chinese nationals whether they are intelligence officers or just private citizens coming to the U.S. collecting U.S. technology or stealing U.S. trade secrets and taking it back to China. Because that movement of technological know-how

---

[7]      Ellen Barry and Gina Kolata, *China's Lavish Funds Lured U.S. Scientists. What Did It Get in Return?*, N.Y. Times (Feb. 7, 2020) https://www.nytimes.com/2020/02/06/us/chinas-lavish-funds-lured-us-scientists-what-did-it-get-in-return.html.

from the U.S. to China is helping fuel China's rise to a rival superpower. And that's the point, that's why the Chinese are doing it.[8]

In a January 2020 statement to National Public Radio, Assistant A.G. Demers stated that "the charges against [Professor] Lieber concern "China's efforts to steal intellectual property and research from our nation's universities.'"[9]

Despite the barrage of public statements summarized above, the government has since acknowledged that the case against Professor Lieber does *not* implicate the inflammatory concerns it expressed in the public remarks over the last eight months.  Professor Lieber is not charged with having engaged in espionage, theft of trade secrets or intellectual property, endangered national security.  He is not accused of a "shift" in loyalties, or being a Chinese agent, or being corrupted by the Chinese.

## E.    The Discovery

Pursuant to Fed. R. Cr. P. Rule 16, the government has provided extensive discovery including documents, phone messages, hard drives, and other tangible evidence.

On May 29, 2020 and September 18, 2020, defense counsel sent discovery requests to the government.  (Exs. 1, 2.)  The requests included production of China Initiative Task Force materials and copies of all Thousand Talents Program agreements.  The government responded that it "has (and will continue to, as appropriate) produce discovery from those agencies formally participating in the criminal investigation that resulted in the case."  Ex. 4. The government further took the position that it "is not obligated to seek out discoverable or potentially discoverable

---

[8]    Andriana Cohen, *Andrew Lelling tackles Chinese espionage, safe injection sites*, Boston Herald (Mar. 8, 2020) https://www.bostonherald.com/2020/03/08/adriana-cohen-lelling-tackles-chinese-espionage-safe-injection-sites/.
[9]    Bill Chappell, *Acclaimed Harvard Scientist Is Arrested, Accused Of Lying About Ties To China* (Jan. 28, 2020) https://www.npr.org/2020/01/28/800442646/acclaimed-harvard-scientist-is-arrested-accused-of-lying-about-ties-to-china.

information from individuals or agencies that are not part of the prosecution team and about which the prosecution team lacks knowledge." *Id*. citing *United States v. Bender*, 304 F. 3d 161, 164 (1st Cir. 2002).  Notwithstanding that the U.S. Attorney's Office in this District is prosecuting at least two other China Initiative cases (identified in the same press release announcing Professor Lieber's arrest), and that U.S. Attorney Lelling is on the steering committee for the China Initiative, the government took the position that it does not have "an affirmative obligation to search the investigative files of other cases wholly unrelated to this one."   The parties conferred in an effort to narrow the scope of their discovery disputes but were unable to do so.

## ARGUMENT

### POINT I

### THOUSAND TALENTS PROGRAM AGREEMENTS AND CHINA INITIATIVE MATERIALS IN THE GOVERNMENT'S POSSESSION, CUSTODY, OR CONTROL ARE MATERIAL TO THE DEFENSE AND MUST BE PRODUCED

Professor Lieber moves, pursuant to Federal Rule of Criminal Procedure 16, for production of China Initiative materials and Thousand Talents Program materials, both of which are critical to his defense. Central to the charges in this case are allegations that Professor Lieber "participated" in the Thousand Talents Program and made false statements to the NIH and DOD regarding any such affiliation.  The government has in its possession, custody, and control documents of Thousand Talents Program arrangements from other China Initiative prosecutions and related NIH investigations. Such information and documentation is material to Professor Lieber's defense that his agreement and his activity did not constitute "participation" in the Thousand Talents Program.  Professor Lieber meets his burden in requesting these documents. The Court should therefore order the government to produce them.

A.      **Applicable Legal Standard**

Federal Rule of Criminal Procedure Rule 16(a)(1)(E) requires, upon request, inspection

or copies of items "within the government's possession, custody, or control" that are "material to

preparing the defense."   Fed. R. Crim. P. 16; *see United States v. Armstrong*, 517 U.S. 456, 463

(1996).  As to the first prong, "possession, custody, or control" extends beyond the particular

United States Attorney's Office's own investigation files. *See, e.g., United States v. Libby*, 429 F.

Supp. 2d 1, 6 (D.D.C. 2006) ("Documents maintained by other components of the government

which are 'closely aligned with the prosecution' must be produced.") (citations omitted).  In fact,

Local Rule 116.8 imposes on the government a broad discovery obligation requiring that the

government "inform all federal, state, and local law enforcement agencies formally participating

in the criminal investigation that resulted in the case of the discovery obligations set forth in

these Local rules and obtain any information subject to disclosures from each such agency."

Thus, it is well established that the United States Attorney's office must produce discoverable

documents in the possession of other agencies.  *See United States v. Santiago*, 46 F. 3d 885, 894

(9th Cir. 1995) (finding that the United States Attorney's Office was required to produce

discoverable documents in possession of the Department of Justice's Bureau of Prisons); *see

also United States v. Salyer,* 271 F.R.D. 148, 156 (E.D.Cal. 2010) (adopting the parties' position

in a criminal antitrust prosecution that "documents within the possession of the United States

Attorney's Office, the Anti–Trust Division of the Department of Justice, the FBI, IRS–CI

(criminal), the USDA and FDA" are within the possession, custody and control of the

"government" for purposes of discovery).

*United States v. Stein*, 488 F. Supp. 2d 350 (S.D.N.Y. 2007) provides a helpful definition

of the word "control." In *Stein*, the government entered into a deferred prosecution agreement

with KPMG, and subsequently indicted a number of individuals. The individuals sought to

compel the government to turn over communications between KPMG and the United States

Attorney's Office as well as communications between KPMG and the IRS (which initially

investigated KPMG and then referred the case to the United States Attorney's Office).  In

analyzing whether the documents between KPMG and the IRS were in the "possession, custody,

or control," of the United States Attorney's Office, the court stated:

> Legal ownership of the requested documents or things is not determinative, nor is actual
> possession necessary if the party has control of the items. Control has been defined to
> include "the legal right to obtain the documents requested upon demand." The term
> "control" is broadly construed.

*Id.* at 361 (citing 7 MOORE'S FEDERAL PRACTICE § 34.14); *see also* id. at 361 n. 45

(citing  *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y.2000)) ("control is the legal

right, authority, or *practical ability* to obtain the materials sought upon demand") (emphasis

added). Ultimately, *Stein* found that the documents were in the "control" of the United States

Attorney's Office as KMPG's deferred prosecution agreement required KPMG to cooperate with

the government's investigation and produce documents at the government's request.

As to the second prong, an item need not be exculpatory or favorable to the defendant to

be considered "material to preparing the defense."  Rule 16 does not limit production to

exculpatory or favorable material, as *Brady* does.  *United States v. Marshall*, 132 F.3d 63, 68

(D.C. Cir. 1998).  Thus, a court may compel the production of evidence even if the evidence is

not directly exculpatory.  See *United States v. Pesaturo*, 519 F. Supp. 2d 177, 191-92 (D. Mass.

2007). The materiality requirement "is not a heavy burden."  *United States v. Poulin*, 592 F.

Supp. 2d 137, 143 (D. Me. 2008) (quoting *United States v. George*, 786 F. Supp. 56, 58 (D.D.C.

1992)).  The defendant need only demonstrate a "prima facie showing of materiality."  *United*

*States v. Carrasquillo-Plaza*, 873 F. 2d 10, 12 (1st Cir. 1989) (quoting *United States v. Buckley*, 586 F. 2d 498, 506 (5th Cir. 1978)).

**B.    Analysis**

Professor Lieber has clearly made the required showing that China Initiative materials, executed Thousand Talents Program agreements, and any correspondence, recordings, seals, signatures, certificates, confirmations, receipts or other materials indicative of "participation" in the Thousand Talents Program are in the government's possession, custody, or control and are material to his defense.

First, these materials likely reside within the United States Attorney's Office given that: 1) the mission of the China Initiative includes "equipping the nation's U.S. Attorneys with intelligence and materials they can use to raise awareness of these threats within their Districts and support their outreach efforts"; 2) the United States Attorney for the District of Massachusetts is one of eight steering committee members for the China Initiative; and 3) this same U.S. Attorney's Office is prosecuting other China Initiative cases.

Second, even if the United States Attorney's Office does not have actual, physical possession of the materials, these materials must still be produced if the government has the practical ability to obtain the documents from the agencies that participated in the investigation. *See Santiago*, 46 F. 3d at 894; *see also Salyer,* 271 F.R.D. at 156. As Professor Lieber's case is a China Initiative matter, the agencies participating in and/or aligned with this case include, but are not limited to, DOJ, DHHS, and the FBI. *See* infra § C. Moreover, the NIH is a part of DHHS, and had a direct investigation focus on the Thousand Talents Program. The NIH's investigation has revealed the terms of several different Thousand Talent Program agreements. *See* infra § C.

There can be no real dispute that this United States Attorney's Office can easily obtain the requested materials.

The government claims its discovery obligations do not "extend to searching the files of agencies that did not participate in the investigation of the defendant and about which the prosecution team otherwise lacks knowledge and access." Ex. 4 at 2. Thjs contention, however, is irrelevant. In this case, the government need not consider other agencies, because the agencies that possess this information *did* participate – according to the government's very own characterization of Professor Lieber's case as a China Initiative matter. *See Information About the Department of Justice's China Initiative and a Compilation of China-Related Prosecutions Since 2018*, Dept. of Justice (Sept. 21, 2020) https://www.justice.gov/opa/information-about-department-justice-s-china-initiative-and-compilation-china-related.

Professor Lieber's case is one of three China Initiative matters involving participation in Thousand Talents. *See id.* Thus, some of the requested information is in the possession, custody, or control of the DOJ.   Additional documentation is in the possession, custody, or control of the FBI and DHHS/NIH.   This is evident from the charging documents.   In addition to the public documentation of the FBI's involvement in the China Initiative, FBI Agent Plumb's affidavit supporting the criminal complaint references his experience in these matters.  (Plumb Aff. Dkt. No. 1-1).  Additionally, the letter by NIH to Harvard that initiated the alleged false statement response is the very type of letter consistent with the NIH's investigation focus.  *See* Superseding Indictment ¶ 5.  The NIH identified Professor Lieber and his "then-suspected relationship with the Chinese institution and the Thousand Talents Program." *Id.* at ¶ 34.  The NIH undoubtedly participated in Professor Lieber's investigation and has additional documents material to his defense.

In rejecting the discovery requests, the government misapplies *United States v. Bender*, 304 F. 3d 161, 163 (1st Cir. 2002); *see* Ex. 4.  *Bender* assesses the government's obligations for *Brady* material, and not the government's broader Rule 16 obligations.  *United States v. Bender*, 304 F. 3d at 163 ("Bender seeks reversal …on the grounds that the government failed to timely disclose…records in violation of *Brady v. Maryland*").  *Bender* focuses on production of exculpatory materials in the context of *Brady*, citing *United States v. Sepulveda*, 15 F.3d 1161, 1170 (1st Cir. 1993) for the proposition that, "the rigors of *Brady* usually do not attach to material outside the federal government's control."  *Bender,* 304 F.3d at 163.

The requested Thousand Talents agreements and any correspondence, recordings, seals, signatures, certificates, confirmations, receipts or other materials indicative of "participation" in the Thousand Talents Program reside with the DOJ, FBI, and DHHS/NIH.  The government must produce responsive documents within the United States Attorney's Office and federal agencies that participated in the investigation of Professor Lieber.  *See Libby*, 429 F. Supp. 2d 1. The United States Attorney's Office has the practical ability to obtain these documents with a minimal amount of effort.  The documents are vital to Professor Lieber's defense, as they will shed light on what it means to "participate" (or not) in the Thousand Talents Program.  The Court should order the government to produce these materials.

**POINT II**

**THE GOVERNMENT'S SENSATIONAL AND MISLEADING PUBLIC STATEMENTS ABOUT THIS CASE GIVE RISE TO A PARTICULARIZED NEED TO INSPECT THE GRAND JURY MINUTES**

Professor Lieber moves, pursuant to Federal Rule of Criminal Procedure 6(e), for inspection of the grand jury minutes related to the indictment and superseding indictment. The government made baseless, sensational and outrageous public statements describing this as a case

implicating national security, international espionage, and theft of trade secrets; it subsequently acknowledged that the case involves none of that. It is critical for Professor Lieber to know whether the inflammatory rhetoric was presented to the grand jury. This creates a compelling and particularized need for inspection. If the Court is unwilling on this record to direct that the grand jury minutes be produced, the Court should conduct an *in camera* inspection to make its own determination.

## A.    Applicable Legal Standard

Grand jury proceedings are generally secret. *See* Fed. R. Crim. P. 6(e). In appropriate circumstances, however, a Court has discretion pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E) to pierce the secrecy of the grand jury and authorize disclosure of grand jury materials at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. *United States v. George*, 839 F. Supp. 2d 430, 437 (D. Mass. 2012) (citing Fed. R. Crim. P. 6(e)(3)(E)). "[A] requesting defendant bears the burden of showing a 'particularized need' for the requested material, that is, that 1) the material sought is needed to avoid a possible injustice in another judicial proceeding, 2) the need for disclosure outweighs the need for continued secrecy and 3) the request is structured to cover only what is needed." *Id.* (citing *Douglas Oil Co. of Cal. v. Petrol Stops N.w.*, 441 U.S. 211, 222 (1979) and *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395 (1959)).

A defendant demonstrates particularized need by establishing "circumstances that: 1) are peculiar to this case; 2) create an increased burden on the defense; and 3) can be alleviated by access to specific grand jury materials." *United States v. Matos-Luchi*, 529 F. Supp. 2d 294, 95–96 (D.P.R. 2007) (quoting *United States v. Liuzzo*, 739 F.2d 541, 545 (11th Cir. 1984)). "A court will not authorize disclosure of grand jury minutes when the defendant alleges 'mere speculation

as to what occurred in front of the grand jury.'" *United States v. Bruno*, 159 F. Supp. 3d 311, 323 (E.D.N.Y. 2016) (quoting *United States v. Brown*, 98–CR–168, 1995 WL 387698, at *7 (S.D.N.Y. June 30, 1995)); *George*, 839 F. Supp.2d at 438 ("no basis for George's speculation of impropriety"). A court called upon to determine whether grand jury materials should be released has substantial discretion. *Matos-Luchi*, 529 F. Supp. 2d at 295 (citing *United States v. Sells Eng'g*, 463 U.S. 418, 442 (1983) and *Pittsburgh Plate Glass Co.*, 360 U.S. at 396–97)). "That discretion, however, is not unlimited." *Id.* (citing *United States v. Dennis*, 384 U.S. 855 (1966) (finding an abuse of discretion in refusing to make grand jury testimony available for cross-examination of government witnesses)).

Courts routinely conduct *in camera* inspection of grand jury minutes when weighing the merits of a defendant's particularized need. *See e.g.*, *United States v. Bravo-Fernandez*, 239 F. Supp. 3d 411, 415 (D.P.R. 2017) ("The Court is satisfied that defendants have demonstrated a particularized need justifying an *in camera* review of grand jury instructions. Indeed, defendants' arguments in support of in camera review amount to more than mere speculation that the Government may have improperly instructed the grand jury.") (quotations and citations omitted).

## B.    Analysis

Professor Lieber meets the high burden necessary to show a "particularized need" to inspect the grand jury minutes. *See Douglas Oil Co.*, 441 U.S. at 222. The government flaunted this case in public statements as a national security achievement of DOJ's China Initiative, a Task Force charged with "identifying and prosecuting those engaged in trade secret theft, hacking, and economic espionage." *See infra* Background § D. And Professor Lieber was described dramatically as "coopt[ed]" for a "campaign to syphon off American technology and know-how for Chinese gain." *Id.* Yet, when the klieg lights went off, the government acknowledged to

defense counsel that this case is not about *any* of those sensational issues.  It is, instead, a straightforward case about allegedly false statements and bank and tax records.  The government's unsupported, inflammatory, and jingoistic statements thus necessitate inspection of the grand jury minutes to determine whether the grand jurors were misled, impermissibly influenced, or swayed by hyperbole in returning the charges.

Upon Professor Lieber's arrest, the government proclaimed a case against Professor Lieber that had all the stuff of an international spy novel.  The charging instrument spelled out the work of an FBI agent responsible for "investigating violations of federal criminal laws relating to espionage and theft of trade secrets, the mishandling of classified and defense information, and export control law."  (Plumb Aff., Dkt. No. 1-1, ¶ 1.)  The government touted the case as part of its program to counter "national security threats" and prosecute persons engaged in "trade secret theft, hacking and economic espionage."[10]  It heralded the need to "protect critical infrastructure against external threats including foreign direct investment, supply chain threats and the foreign agents seeking to influence the American public and policymakers."  *Id.*  The United States Attorney for the District of Massachusetts repeated during a press conference that the case concerned "Chinese economic espionage and theft" and that Professor Lieber was "coopt[ed]" for a "campaign to syphon off American technology and know-how for Chinese gain."[11]  The government's press release stated that the U.S. Attorney's Office's "National Security Unit" was prosecuting the case with the assistance of the National Security Division's Counterintelligence and Export Control Section.[12]

---

[10]    DOJ Press Release, *Harvard University Professor and Two Chinese Nationals Charged in Three Separate China Related Cases* (Jan. 28, 2020) https://www.justice.gov/opa/pr/harvard-university-professor-and-two-chinese-nationals-charged-three-separate-china-related (*hereinafter* "DOJ Press Release").

[11]    *See infra* Background § D.

[12]    *See* DOJ Press Release.  To add to the manufactured drama, the DOJ announced two other arrests at the same time as Professor Lieber's.  Ye Yanqing, a former Boston University student alleged to be a lieutenant in the Chinese military, was charged with lying about her military affiliation on visa documents.  And Zheng Zaosong, a

But what was presented as a bang was, in reality, a whimper. The government has acknowledged, in sum and substance, that this case has nothing to do with national security, economic espionage, trade secret theft, hacking or the protection of critical infrastructure. Neither the charges, nor the discovery to date relate to those issues. Professor Lieber is not a spy or an international thief and is not charged as one. There is not a scintilla of proof that he was "systematically stealing our nation's intellectual property."[13] In fact, U.S. Attorney Lelling later admitted there exists "confusion over exactly what types of behavior could result in criminal charges and what scientists should do to avoid that fate."[14] At bottom, this is a case concerning allegedly false statements and possible failures to declare income from an as-yet-unidentified foreign bank account. A spy novel it is not.[15]

The government's public comments raise a strong likelihood that the grand jury was misled to further the goals of the China Initiative. If so, a motion to dismiss the indictment for misleading or enflaming the grand jury would be warranted. *See United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983) (indictment dismissed where the "impartiality and independent nature of the grand jury process was seriously impaired by the AUSA's argument that [defendant] was a real hoodlum…"); *United States v. Serubo*, 604 F.2d 807, 818 (3d Cir. 1979) (dismissal of indictment appropriate where prosecutor "made graphic and misleading reference" to link defendant to organized crime); *United States v. DiGrazia*, 213 F. Supp. 232, 234-35 (N.D. Ill. 1963) (indictment

---

cancer researcher, was charged with trying to smuggle 21 vials of biological material out of the country and lying about the contents of his suitcase when confronted by federal airport security agents. Professor Lieber's case bears no resemblance in kind or degree to these serious and dangerous matters.

[13]     *See infra* Background § D, Demers Remarks.
[14]     *See infra* Background § D, *Science Magazine* Interview.
[15]     The timing of events further raises concerns about statements to the grand jury. On January 28, 2019 - the eve of the global pandemic - the government arrested Professor Lieber and set in motion their false narrative about his travels to Wuhan, China, believed to be the birthplace of COVID-19. He was indicted in June 2020, at the height of the pandemic amid widespread anti-China rhetoric from the DOJ.

dismissed where prosecutor asked questions "calculated to discredit and impugn her in the eyes of [grand] jurors").

This is not the proverbial "fishing expedition"; there are grounds to believe that wrongdoing may have occurred. *See United States v. Rodriguez–Torres,* 570 F.Supp.2d 237, 241 (D.P.R.2008). The government hyped a mythical case in public. The reality was quite different. The government's false public narrative about "shif[ting] loyalties," its invocation of the language of national security and espionage, and its choreographed nods to the National Security Unit provide a strong factual basis to inspect whether the grand jury was presented with a trumped-up, inaccurate, provocative depiction of this case. Justice requires ensuring that this case was not dressed-up to look like something it is not, and that the grand jurors were not mislead.

At a minimum, the Court should conduct an *in camera* inspection of the grand jury minutes to determine whether the government's unfounded public hyperbole infected the grand jury. *See e.g.*, *Bravo-Fernandez*, 239 F. Supp. 3d at 416 ("Whether the grand jury received [improper instructions] may inform the Court's decision as to whether the indictment pending against defendants is valid."); *United States v. Twersky*, No. S2 92 CR. 1082 (SWK), 1994 WL 319367, at *5 (S.D.N.Y. June 29, 1994) (in camera review warranted to determine what legal instructions, if any, the Grand Jury received); *United States v. Lehr*, 562 F. Supp. 366, 370 (E.D. Pa 1983) (grand jury transcripts requested for an in camera examination); *United States v. Ostrer*, 481 F. Supp. 407 (S.D.N.Y. 1979) (in camera inspection by court to determine whether there had been improper conduct). Such inspection may give rise to a motion to dismiss the indictment.

Respectfully submitted,


CHARLES LIEBER

By his attorneys

/s/ Marc L. Mukasey
Marc L. Mukasey (*pro hac admitted*)
Torrey K. Young (BBO# 682550)
MUKASEY FRENCHMAN & SKLAROFF, LLP
140 E. 45th Street, 17th Floor
New York, New York 10017
(212) 466-6400



Dated: September 30, 2020


## CERTIFICATION OF SERVICE


        I, Marc L. Mukasey, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 30, 2020.


                        /s/ *Marc L. Mukasey*

                        Marc L. Mukasey