UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 20-cr-10111-RWZ |
| CHARLES LIEBER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF MATERIALS CONCERNING DOJ'S "CHINA INITIATIVE" AND THE
"THOUSAND TALENTS PROGRAM" AND TO INSPECT GRAND JURY MINUTES**

Ignoring well-established precedent, the defendant, Charles Lieber, seeks to compel the broad production of unspecified "materials concerning the Department of Justice's China Initiative," materials concerning China's "Thousand Talents Plan," and transcripts of proceedings that occurred before the Grand Jury.  The defendant's motion is without merit and should be denied.

To the extent any of the China-related materials the defendant seeks even exist, he has failed to establish that they are discoverable under Rule 16 of Federal Rules of Criminal Procedure, the Local Rules, or any other relevant authority.  Whatever scant relevance they might have, the defendant has not established that the materials he seeks — information from cases and investigations that have nothing to do with Lieber or the allegations in this case — are material to his defense.  In addition, the defendant's requests are, at least in part, directed at agencies that did not formally participate in the investigation of the defendant.  Thus, this information (if it exists) is not in the government's possession, custody or control.

The defendant's request for grand jury minutes is equally flawed.  In an attempt to dress up his meritless claim that misconduct *might* have occurred before the grand jury, the defendant constructs a dishonest narrative to suggest that the government falsely accused him in public

statements of being a spy engaged in espionage and theft of trade secrets.  But the government did no such thing, as is revealed by an accurate and complete assessment of the public statements made about this case, and the China Initiative generally, by the U.S. Attorney and others.  Because the defendant's request is based only on speculation, he fails to overcome the presumption of regularity in grand jury proceedings, or establish a particularized need for the grand jury minutes.

## **BACKGROUND**

The defendant was arrested on January 28, 2020 and charged by criminal complaint with two counts of making false statements.  Specifically, he was charged with making false statements to the Department of Defense (in particular, agents from the Defense Criminal Investigative Service) and the National Institutes of Health ("NIH") concerning his past affilliation with Wuhan University of Technology ("WUT") and China's Thousand Talents Plan.  The defendant's arrest was the product of a criminal investigation conducted by the U.S. Attorney's Office for the District of Massachusetts ("USAO"), and agents from the Federal Bureau of Investigation ("FBI"), the Defense Criminal Investigative Service ("DCIS"), the Air Force Office of Special Investigations ("AFOSI"), and the Department of Health and Human Services' Office of Inspector General ("OIG").  As described in the Complaint, the Thousand Talents Plan is one of several Chinese talent recruitment plans "designed by the Chinese Government to attract, recruit, and cultivate high-level scientific talent in furtherance of China's scientific development, economic prosperity, and national security."  Docket No. 1 at ¶ 10.  Talent program participants, like Lieber, often receive "salaries, research funding, lab space, honorary titles, and other incentives" for their work.  *Id.*

On the day of Lieber's arrest, the USAO also announced in both a press release and a press conference charges against two Chinese nationals for acting as an unregistered agent of the Chinese government and attempting to smuggle vials containing biological research from the United States

to China, respectively. *See* Jan. 28, 2020 USAO Press Release, available at https://www.justice.gov/usao-ma/pr/harvard-university-professor-and-two-chinese-nationals-charged-three-separate-china. Those two cases, and the case against Lieber, were described as "part of the Department of Justice's China Initiative."[1] *Id.* According to the USAO's January 28th press release and the Department of Justice itself, the China Initiative "reflects the strategic priority of countering Chinese national security threats and reinforces the President's overall national security strategy." *Id.*; *see also* INFORMATION ABOUT THE DEPARTMENT OF JUSTICE'S CHINA INITIATIVE, available at https://www.justice.gov/opa/information-about-department-justice-s-china-initiative-and-compilation-china-related. In addition to describing the allegations against Lieber and the other two cases during the January 28th press conference, the U.S. Attorney for the District of Massachusetts, Andrew Lelling, and the Special Agent in Charge of the FBI's Boston Field Office commented generally on the national security threat posed by China and some of the reasons for the Department of Justice's China Initiative.

A grand jury returned an indictment against Lieber on June 9, 2020 charging him with two counts of making false statements. *See* Docket No. 26. A Superseding Indictment was later returned charging Lieber with additional crimes, namely subscribing to false income tax returns and failing to report his interest in a Chinese bank account to the Internal Revenue Service ("IRS"). *See* Docket No. 35. Since even before he was indicted, in accordance with Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16"), the Local Rules, and *Brady* and its progeny, the government has produced extensive discovery to the defendant, including materials from each agency that participated in the criminal investigation resulting in the charges set forth in the Superseding

---

[1] The other two cases announced on January 28, 2020, were *United States v. Ye*, 20-cr-10021-PBS, and *United states v. Zheng*, 20-cr-10015-DJC.

Indictment.  Those materials include, but are not limited to: the complete contents of Dr. Lieber's personal electronic devices seized by investigators (one of which contained all of Dr. Lieber's Harvard University emails); a recording of Dr. Lieber's post-arrest interview; search warrants and search warrant photos; documents concerning federal research grants involving Lieber; tax, bank and travel records; and thousands of pages of records obtained from Harvard University, including hundreds of emails involving Lieber and various representatives of WUT.

By letter, the defendant submitted extensive discovery requests to the government on May 29, 2020 (before the original indictment) and September 18, 2020 (after the superseding indictment), to which the government respond in turn.  *See* Docket No. 56 at Exhibits 1-4.  Unsatisfied with the government's responses, the defendant filed the instant motion to compel the production certain discovery.  *See* Docket Nos. 55 and 56.  The defendant seeks the production of "materials concerning the China Initiative,"[2] "all Thousand Talent contracts and agreements, and any correspondence, recordings, seals, signatures, certificates, confirmations, receipts or other materials indicative of 'participation' in the Thousand Talents Program," and grand jury minutes.  *See* Docket No. 56 (hereafter "Def. Mem.") at 1.  As to the first two categories of documents, the defendant claims that the government's discovery obligations extend to the entities that make up the so-called "China Initiative Task Force," which the defendant says "includes, but is not limited to, the Department of Justice, various U.S. Attorneys' Offices, the FBI, the U.S. Department of Health and Human

---

[2] For the reasons described below, the government views the defendant's request for "materials concerning the China Initiative" not as a request for particular documents, but rather as an attempt by the defendant to expand the government's discovery obligations under Rule 16 and *Brady* to certain specified government agencies.  *See infra* p.10, n.2.  However, to the extent the defendant intended this to be a request for particular documents, it should be rejected.  For starters, this request is impossibly broad – far too broad for the government to even begin to identify responsive documents.  Second, the defendant has not established why or how "China Initiative materials" are discoverable, or that the documents he seeks are even in the government's possession.

Services ("HHS"), U.S. Department of Commerce, and U.S. Customs and Border Protection and the U.S. Intelligence Community" and NIH.  *See* Def. Mem. at 3-4; *id.* at Exhibit 1, p.3.  For the reasons described in detail below, the Court should deny the defendant's motion.

## RELEVANT LAW

### I.    The Government's Discovery Obligations

The government's discovery obligations in a criminal action are not limitless.  In *United States v. Bulger*, 2013 WL 2146202, at *1 (D. Mass. May 14, 2013), District Court Judge Casper provided a succinct description of the government's discovery obligation:

> [The defendant's] right to discovery from the government originates from specific sources: his constitutional right to exculpatory evidence under *Brady v. Maryland*, *Giglio v. United States*, Fed. R. Crim. P. 16 and the Jencks Act, 18 U.S.C. § 3500. *Brady* and *Giglio* entitle criminal defendants to exculpatory evidence that is material to guilt or innocence. Fed. R. Crim. P. 16(a)(1)(E)(i) states that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy . . . documents . . . if the item is within the government's possession, custody, or control and the item is material to preparing the defense." The Jencks Act requires the government to produce prior statements of government witnesses where such statements relate to the subject matter to which the witness has testified on direct examination.

*Id.* (citations omitted).  A "defendant's right to discover exculpatory evidence … does not include the unsupervised right to search through the [government's] files."  *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).  Similarly, the Constitution "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government.'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (*quoting Jencks v. United States*, 353 U.S. 657, 667 (1957)); *see also United States v. Caro-Muniz,* 406 F.3d 22, 29-30 (1st Cir. 2005) (defendant's discovery request for all previously undisclosed recordings of informant witness in possession of government that may contain evidence that exculpates defendant constituted impermissible fishing expedition).

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure states, in pertinent part, that the government, upon request, "must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects … or copies or portions of any of these items, if the item is within the government's possession, custody, or control" provided the item is "material to preparing the defense."   The defendant bears the burden of demonstrating that requested information is material to his defense.  *See United States v. Carrasquillo-Plaza*, 873 F.2d 10, 12-13 (1st Cir. 1989); *United States v. Thuna*, 786 F.2d 437, 443-44 (1st Cir. 1986).  In order to establish materiality, "the requested information must have more than an abstract relationship to the issue presented; there must be some indication that the requested discovery will have a significant effect on the defense." *United States v. Bulger*, 928 F. Supp. 2d 305, 324 (D. Mass. 2013); *see also United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) ("There must be some indication that the pretrial disclosure of the disputed evidence would enable the defendant significantly to alter the quantum of proof in his favor. (internal quotations omitted)); *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) ("[E]vidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." (citation omitted)).  Accordingly, and consistent with the well-establish principle that the defendant's right to discovery is not limitless, courts in this district have refused to construe the government's obligations under Rule 16(a)(1)(E) broadly and have rejected blanket discovery requests containing conclusory arguments of materiality. *See, e.g.*, *Carrasquillo-Plaza*, 873 F.2d at 12-13; *United States v. Tsarnaev*, 2013 WL 6196279, *3-4 (D. Mass. Nov. 27, 2013).

Not only must the requested evidence be material to the defense in order to be discoverable under Rule 16(a)(1)(E), but it must also be in the government's possession, custody or control.  Just

as courts have placed limits on the definition of materiality for purposes of Rule 16(a)(1)(E), so too have courts limited the prosecutor's obligation to search for discoverable or potentially discoverable information.  To begin with, "the question of whether evidence is in the government's 'possession, custody, or control' has been approached the same way in the *Brady* and Rule 16 contexts by courts in the First Circuit."  *United States v. O'Brien*, 2013 WL 1057929, at *4 (D. Mass. 2013) (citing *United States v. Hall*, 434 F.3d 42, 55 (1st Cir. 2006) (importing the phrase "possession, custody, or control" into a *Brady* analysis) and *United States v. Cameron*, 672 F. Supp. 2d 133, 138–39 (D. Me. 2009) (finding Rule 16 did not obligate government to obtain from internet company evidence requested by the defendant, where criminal prosecution was initiated following referral by company and where the government had requested, received, and disclosed other information from company)).  Accordingly, the government's discovery obligations under Rule 16 have repeatedly been found to extend only to members of the "prosecution team."  *See United States v. Bender*, 304 F.3d 161, 164 (1st Cir. 2002) (limiting government's discovery obligation to members of the "prosecution team"); *Josleyn*, 206 F.3d 144, 153-54 (1st Cir. 2000) (finding that private party who cooperated with the government's investigation was not part of the "prosecuting team" for purposes of Rule 16); *United States v. Cadden*, 2015 WL 13683814, at *3 (D. Mass. 2015) ("Courts have generally held that documents are within the government's possession, custody or control if they are within the possession of a member of the prosecutorial team.").

Courts in this jurisdiction and elsewhere have construed the term "prosecution team" to mean those entities "formally participating in the investigation of the charged offenses."  *O'Brien*, 2013 WL 1057929, at *4; *see also Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995) ("[T]he individual prosecutor has a duty to learn any favorable evidence known to others acting on the government's behalf in the case, including the police."); *United States v. Avellino*, 136 F.3d 249, 255–56 (2d Cir.

1998) ("[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case … would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." (internal quotations omitted)); *Cadden*, 2015 WL 13683814, at *3 ("The prosecution [team] … includes police officers, federal agents, and other investigatory personnel who participated in the investigation and prosecution of the instant case.").  This is, of course, consistent with this district's Local Rules of Court, which reflects that the government's discovery obligations extend only to "federal, state, and local law enforcement agencies formally participating in the criminal investigation that resulted in the case" being prosecuted.  *See* Local Rule 116.8.

"Whether a state or another federal agency may be considered part of a federal prosecution team depends upon the level of involvement between the United States Attorney's Office and the state or agency which holds the alleged … material."  *United States v. Ramos-Cartagena*, 9 F. Supp. 2d 88, 91 (D. P.R. 1998).  "The inquiry is not whether the United States Attorney's Office physically possesses the discovery material; the inquiry is the extent to which there was a 'joint investigation' with another agency."  *Id*. (citations omitted); *see also Cadden*, 2015 WL 13683814, at *3 (applying standards set forth in *Ramos-Cartagena* to defendant's request for discovery from regulatory agencies).

## II.     Grand Jury Secrecy and the Disclosure of Grand Jury Minutes

Grand jury secrecy is an integral part of federal criminal law.  *See Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 218 (1979) ("We have consistently recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."); *United States v. Procter & Gamble, Co.*, 356 U.S. 677, 681 (1958) ("[W]e start with the long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.").  Although the reasons

for grand jury secrecy are "varied," one critical reason is to "encourage all witnesses to step forward and testify freely without fear of retaliation" and "to insure the utmost freedom to the grand jury in its deliberations." *Procter & Gamble*, 356 U.S. at 681 n.6 (internal citations omitted).  The need for such secrecy remains even after grand jury proceedings have ended.  *United States v. McMahon*, 938 F.2d 1501, 1504 (1st Cir. 1991) ("The Supreme Court has repeatedly recognized the importance of secrecy in grand jury proceedings, even after, as in this case, the grand jury has concluded its function.") (citing *Douglas Oil*, 441 U.S. at 222); *see also Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 567 (1983) ("Even after the conclusion of a particular grand jury's investigation, continued secrecy protects the reputations of the innocent and safeguards witnesses from possible retaliation … [and] may be necessary to encourage persons to testify fully and freely before future grand juries.").

Grand jury secrecy is not absolute, however, and Rule 6(e) of the Federal Rules of Criminal Procedure sets forth circumstances in which a court may order the disclosure of grand jury minutes. Among them, Rule 6(e)(3)(E)(ii) provides that a "court may authorize disclosure … of a grand jury matter … at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]"  Under this exception, the court has discretion to pierce grand jury secrecy and authorize disclosure, but only upon a showing by the defendant of a "particularized need" for the material, "that is that 1) the material sought is needed to avoid a possible injustice in another judicial proceeding, 2) the need for disclosure outweighs the need for continued secrecy and 3) the request is structured to cover only what is needed." *United States v. George*, 839 F. Supp. 2d 430, 437 (D. Mass. 2012) (citing *Douglas Oil*, 441 U.S. at 222), *aff'd on other grounds*, 761 F.3d 42 (1st Cir. 2014); *see also United States v. Matos-Luchi*, 529 F. Supp. 2d 294, 295 (D.P.R. 2007) ("The Supreme Court has consistently held that Rule 6(e) requires

a strong showing of "particularized need" for grand jury material before any disclosure will be permitted.").

The heavy burden of showing a particularized need "rests squarely on the defendant," *United States v. Capozzi*, 486 F.3d 711, 727 (1st Cir. 2007), and the demanding standard cannot be satisfied by the mere speculation that something improper might have occurred, *George*, 839 F. Supp. 2d at 437 (noting that Rule 6(e)(3)(E) "is not an invitation to engage in fishing expeditions for misconduct in grand jury proceedings when there are no grounds to believe that any wrongdoing or abuse has occurred") (internal citation omitted); *United States v. Rodriguez–Torres*, 570 F. Supp. 2d 237, 242 (D.P.R. 2008) ("A defendant's particularized need must be based on more than mere speculation" and the defendant's "burden cannot be satisfied with conclusory or speculative allegations of misconduct"). To the contrary, the Supreme Court has stated that "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *United States v. Costello*, 350 U.S. 359, 363 (1956). Consistent with this principle, a "presumption of regularity" attaches to grand jury proceedings. *See United States v. Thomas*, 736 F.3d 54, 61 (1st Cir. 2013) (*quoting In re Lopreato*, 511 F.2d 1150, 1152 (1st Cir. 1975)); *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001) ("[A] party asserting a claim of grand jury abuse must shoulder a heavy burden" to overcome the presumption of regularity).

## LEGAL ARGUMENT

### I.     Materials Concerning the China Initiative, Including Other Thousand Talent Program Agreements, are not Discoverable Under Rule 16(a)(1)(E).

The defendant's motion appears to make two distinct requests for China-related materials. *First*, the defendant asks the Court to order the government to produce so-called "materials concerning the China Initiative." Def. Mem. at 1. Although he does not say what these "materials"

are, the defendant argues that they are somehow "critical to prove that Dr. Lieber's conduct was not criminal."[3]  *Id.*  *Second*, the defendant requests "copies of all Thousand Talent Program agreements" (not just Lieber's agreement), including "any correspondence, recordings, seals, signatures, certificates, confirmations, receipts or other materials indicative of 'participation' in the Thousand Talents Program," arguing that such items are material to his defense.  *Id.*  According to the defendant, the government's obligation to search for these materials extends to the whole of the U.S Department of Justice (DOJ), every U.S. Attorney's Office in the United States, and the entirety of the FBI, HHS (to include NIH), the U.S. Department of Commerce ("DOC"), U.S. Customs and Border Protection ("CBP"), and the U.S. Intelligence Community ("IC").  *Id.* at 3, 11.

The defendant's requests fall short for two reasons.  *First*, the defendant has not shown that items he's seeking — "materials concerning the China Initiative," "copies of all Thousand Talents Program agreements," and other related items — are material to his defense.  His claim that these items "will shed light on what it means to 'participate' in the Thousand Talents Program" is precisely the type of blanket claim of materiality that courts in this district have routinely rejected.  *Second*, the court must deny the defendant's discovery request because he seeks information from individuals and entities that did not formally participate in the investigation of the defendant.  To the extent the materials even exist, they are not within the government's possession, custody or control.

---

[3]  Elsewhere in his motion, the defendant requests "China Initiative Task Force materials."  Def Mem. at 9. The government interprets this request, and the defendant's request for "materials concerning the China Initiative" as one and the same.  In light the defendant's May 28, 2020 and September 19, 2020 discovery letters – Exhibits 1 and 3 to his memorandum of law – the government construes this not as a request for specific documents, but rather as an attempt to expand the scope of the government's overall discovery obligations to the entities that, he says, comprise the DOJ's China Initiative "Task Force," including "the Department of Justice, various U.S. Attorney's Office, the FBI, the U.S. Department of Health and Human Services, U.S. Department of Commerce, and U.S. Customs and Border Protection, in addition to the U.S. Intelligence Community" and the National Institutes of Health.  *See, e.g.,* Defendant's May 28, 2020 Discovery Letter at 3.  The government addresses this flawed argument – that is, the defendant's attempt to improperly enlarge the government's discovery obligations – below beginning on page 15.

**A.      The defendant has not shown that Talent Program agreements from unrelated cases and investigations are material to his defense.**

The defendant seeks "copies of all Thousand Talent Program agreements," including "any correspondence, recordings, seals, signatures, certificates, confirmations, receipts or other materials indicative of 'participation'" in the Thousand Talents Plan.  Def. Mem. at 13.  This request is apparently not confined to materials stemming from the investigation and prosecution of Dr. Lieber.  Instead, the defendant is seeking each and every Talent Program agreement and related materials obtained in connection with the DOJ's nationwide China Initiative.  Even if it was possible for the government to readily identify materials responsive to his request — by and large, it is not — the defendant has not established that these items are material to his defense.   Contracts that other people may have entered into with China in connection with its Thousand Talents Plan are scarcely relevant, never mind material, to whether Dr. Lieber lied to NIH and DOD as alleged in the indictment.

Among other things, the defendant has been charged with lying to NIH and DOD about his participation in China's Thousand Talents Plan between at least 2012 and 2015.  According to the Superseding Indictment, in or about July 2012, the defendant signed a three-year contract with Wuhan University of Technology (WUT) titled "Employment Contract of 'One Thousand Talent' High Level Foreign Expert."  Superseding Indictment ¶¶ 17-20.  The contract required Lieber to perform specific tasks for WUT in the United States and abroad in furtherance of WUT's strategic and scientific goals.  *Id.* ¶ 18.  In turn, WUT paid Lieber a month salary plus personal and other expenses.  *Id.* ¶ 19.  Among other things, the government has produced to the defendant the contract he entered into with WUT; Lieber's travel records from 2012 through 2019 reflecting numerous trips to Wuhan, China; and thousands of pages of emails between Lieber and various representatives of WUT, many of which describe the work that Lieber performed for WUT and corresponding salary

payments made by WUT to Lieber.  Through these documents and the testimony of witnesses, the government intends to prove that the defendant participated in China's Thousand Talents Plan (as his contract with WUT required him to) and later lied about it to DOD and NIH in 2018 and 2019.

The government does not intend to rely upon Talent Program contracts entered into by others to support any of the allegations in this case.  Indeed, the government hardly sees how such contracts—which presumably involve different parties, different contractual obligations, and perhaps even different Talent Programs altogether—would even be relevant to a material fact at issue in this case.  Whether or not the defendant "participated" in the Thousand Talents Plan as alleged in the indictment is a factor of two things: the specific contract that Lieber entered into with WUT, and the parties' (Lieber and WUT) subsequent actions in conformance with that contract.  As to these points, the government has complied with its discovery obligations under Rule 16, the Local Rules, and *Brady* and its progeny.  Therefore, the defendant already *has* the discovery concerning his "participation" in the Thousand Talents Plan needed to prepare his defense.  *Cf. United States v. Rose*, 2012 WL 1744757, at *3 (D. Mass. May 16, 2012) (denying defendant's request for discovery where he "already possess[ed] the necessary information to prepare" his defense).

In *United States v. Tsarnaev*, the court rejected a similar attempt by defense counsel to obtain documents based on a bare bones claim of materiality.  *Tsarnaev,* 2013 WL 6196279, at *5 (rejecting defendant's "general assertions" of materiality, noting that such assertions "conflate[] relevance and materiality").  Just like in *Tsarnaev*, the defendant here makes a nebulous claim of materiality in order to gain "access to the government's information haystack," likely believing "there are useful evidentiary needles to be found there."  *Id*.  The defendant does not come close, however, to establishing that the discovery he seeks will have "a significant effect on the defense," *Bulger*, 928 F. Supp. 2d at 324, or that it will "significantly alter the quantum of proof in his favor," *Maniktala*,

934 F.2d at 28.  For example, the defendant does not even attempt to explain how another Thousand Talents Contract involving different parties, with completely different terms, entered into at a different point in time, would say anything meaningful about the contract that Dr. Lieber signed and whether he completed tasks for WUT in accordance with that contract.  Consistent with other cases in this district involving similarly broad discovery requests backed only by vague claims of materiality, the Court here should deny the defendant's request for Talent Program discovery because it bears no meaningful relationship to this case and is not material.  *See Carrasquillo-Plaza*, 873 F.2d at 12-13; *Bulger*, 928 F. Supp. 2d at 324-25; *Tsarnaev,* 2013 WL 6196279, at *5; *United States v. Pesaturo*, 519 F. Supp. 2d 177, 192 (D. Mass. 2007) (materials concerning confidential informant's activities in other, unrelated cases not material to preparation of defense).

    **B.**    **The requested "materials concerning the China Initiative," including Talent Program agreements obtained through unrelated cases and investigations, are not in the government's possession, custody or control.**

According to the defendant, this case is the product of the "DOJ's China Initiative Task Force," an entity that he says "includes, but is not limited to, the Department of Justice, various U.S. Attorney's Offices," as well as the FBI, HHS (including NIH), DOC, CBP, and the entire "U.S. Intelligence Community."  Def. Mem. at 3.  Arguing that the investigation of Lieber was conducted by this so-called "Task Force," the defense seeks to expand the government's discovery obligations under Rule 16 and *Brady* to each of the above-listed entities.  This argument lacks merit and must be rejected.

In reality, although DOJ announced its "China Initiative" in November 2018, *there is no such thing as the "China Initiative Task Force." See* Nov. 2, 2018 Press Release, available at https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-announces-new-initiative-combat-chinese-economic-espionage.  In fact, nowhere in any of the sources cited by the defendant

(or in any other DOJ publication or resource, for that matter) is a China Initiative "Task Force" ever mentioned, nor are the entities that he claims comprise this "task force" listed anywhere.  As the DOJ's China Initiative information page makes clear, the China Initiative is merely a "strategic priority" of the DOJ designed to "counter[] Chinese national security threats" – nothing more.  *See* INFORMATION ABOUT THE DEPARTMENT OF JUSTICE'S CHINA INITIATIVE AND A COMPILATION OF CHINA-RELATED PROSECUTIONS SINCE 2018, available at [https://www.justice.gov/opa/information-about-department-justice-s-china-initiative-and-compilation-china-related](https://www.justice.gov/opa/information-about-department-justice-s-china-initiative-and-compilation-china-related).   The defendant's characterization of the initiative as a formal "task force" made up of discrete investigative agencies is nothing more than an attempt to further his discovery arguments by drawing connections between agencies where none, in fact, exist.

It is well settled in this district that the government's discovery obligations extend only to the "prosecution team" – that is, those entities "formally participating in the investigation of the charged offenses."  *See, e.g.*, *O'Brien*, 2013 WL 1057929 at *4; *see also* Local Rule 116.8.  As the government's responses to the defendant's discovery letters clearly state, the investigation of Dr. Lieber involved the formal participation of the USAO and agents from the following agencies: the FBI, HHS OIG, DCIS, AFOSI, and IRS Criminal Investigation.  As they relate to these particular entities, the government has already complied with its discovery obligations under Rule 16, the Local Rules, and *Brady* and its progeny.  *See* Def. Mem. at Exhibits 2 and 4.[4]

---

[4] It is worth noting that the government's discovery obligations also do not extend to the entirety of each and every agency that participated in the investigation.  Instead, the government's obligations extend only to the specific agents involved in the investigation.  *See United States v. Locascio*, 6 F.3d 924, 949 (2d Cir.1993); *United States v. Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013) ("[T]he prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation.").  By way of example, therefore, the government has no obligation to seek out potentially discoverable information from every FBI special agent nationwide, but only those agents who participated in the investigation of the defendant.  To hold otherwise would be to "condemn the prosecution of criminal cases to a state of paralysis." *Avellino*, 136 F.3d at 255–56.

Although the defendant attempts to cast them as participants in the government's investigation by claiming they are part of a fictitious China Initiative "task force," the prosecution team here does not include other U.S. Attorney's Offices or any other federal agencies not involved in the investigation of the defendant, including, but not limited to, CBP, DOC or the U.S. intelligence community.  Furthermore, although it is part of HHS, NIH also did not participate the investigation of Lieber and is not a member of the prosecution team.[5]   For starters, NIH is not an investigative agency as such, but rather a "medical research agency" that also awards grants to third-party researchers.  *See* WHO WE ARE – NIH, available at https://www.nih.gov/about-nih/who-we-are.  The defendant correctly points out in his motion that, through its grant-funding arm, NIH examined numerous grantee institutions, including Harvard University, suspected of failing to disclose foreign collaboration and/or foreign sources of research support in grant applications and other submissions to NIH.  *See* NIH INVESTIGATES FOREIGN INFLUENCE AT U.S. GRANTEE INSTITUTIONS, NAT'L. INSTITUTES OF HEALTH, available at https://nihrecord.nih.gov/2019/10/04/nih-investigates-foreign-influence-us-grantee-institutions.  That inquiry, however, was conducted for the purpose of ensuring compliance with NIH's grant funding policies and regulations, not in order to ferret out criminal misconduct.  *Id.*

Despite the defendant's baseless claims, NIH did not formally participate in the criminal investigation of the defendant, and the government's discovery obligations do not extend to NIH. The court's decision in *United States v. Cadden*, a healthcare fraud case, is instructive on this point. In that case, the defense sought discovery from various regulatory agencies, including the

---

[5] Recall that HHS's investigative arm, OIG, *did* participate in the investigation of Lieber.  The government has produced discoverable materials from OIG to the defense in compliance with its obligations under Rule 16, the Local Rules, and *Brady* and its progeny.

Massachusetts Department of Public Health ("DPH"). *See Cadden*, 2015 WL 13683814, at *4. Although the U.S. Attorney's Office had admittedly consulted with DPH in its healthcare fraud investigation of the defendants, the court nonetheless rejected the defense's claim that DPH was part of the prosecution team. *Id.* According to the court, "[a]lthough there appears to have been some cooperation between the federal government and DPH, there is no evidence that the Indictment resulted from a specific cooperative effort between federal prosecutors and the DPH." *Id.* (noting that DPH's own investigation of the defendants was focused on "appropriate regulatory sanctions under administrative law"). Thus, the court found that information maintained by the DPH was "beyond the possession, custody or control of the government." *Id.*

The same is true of the U.S. Attorney's Office and NIH in this case. Although the NIH was, indeed, cooperative with the government's investigation, there was no formal cooperative effort between the two entities, nor did NIH perform any investigative functions on the government's behalf. Furthermore, NIH's inquiry concerning foreign influence in the grant funding process was not a criminal investigation, but a regulatory one. *Cf. Cadden*, 2015 WL 13683814 at *4 (noting that an administrative agency's parallel regulatory investigation did not make the agency part of the prosecution team). Therefore, except as to specific information requested and received by the government from NIH (which the government has already produced to the defense), information maintained by NIH responsive to the defendant's requests is not in the government's possession, custody or control.

## II.     The Defendant Has Not Demonstrated a Particularized Need for Disclosure of Grand Jury Minutes.

When stripped of its hyperbole and allusions to fiction, defendant's argument for inspection of the grand jury minutes stands on nothing more than a hopeful (and baseless) guess that something improper *might* have occurred in the grand jury. To obscure this truth, defendant conflates (and at

times misquotes) three very different types of statements made by government officials.  First are general statements describing the concerns animating, and the goals for, the Department of Justice's China Initiative.  These statements focus on *China's* — not the defendant's — intent and actions, and the potential ramifications thereof on U.S. national security.  Second are statements about charges brought by the USAO against two Chinese nationals, which were announced publically on the day of the defendant's arrest in a press release and press conference that also mentioned Lieber.  And third are statements about the defendant's conduct and this case specifically.  Because the defendant cannot credibly contend that the government has inaccurately described the charges against him or the underlying facts supporting those charges, he resorts to a logical fallacy.  He argues that because the government considers the defendant's case to fall under the China Initiative's broad umbrella, which aims to combat threats to the United States from China in many realms and by many means, the government must have misled the grand jury into believing the defendant engaged in espionage or another similar offense.  But no such conclusion can be drawn from the facts.

The defendant's brief cites a litany of statements by government officials, to include the U.S. Attorney Lelling.  Conveniently, but not surprisingly, the defendant fails to acknowledge the government statements making clear that his case involved (only) false statements to government investigators, and that the defendant is *not* believed to be a spy.[6]  For example, the press release announcing the defendant's arrest stated, in its second sentence, that he was charged only with

---

[6] At the time of his arrest, the defendant was charged by criminal complaint with making false statement in violation of 18 U.S.C. § 1001.  As the Court is aware, the defendant has since also been charged with tax and financial reporting crimes, none of which implicate espionage or similar types of offenses.

"making a materially false, fictitious, and fraudulent statements."[7]  The release goes on to describe with more specificity the nature of the false statements he made, but nowhere does it suggest that the defendant engaged in espionage, theft of trade secrets, or other similar crimes.  In addition, the Science Magazine article the defendant cites, which was based on an interview with Lelling, provides in unambiguous terms—also in its second sentence—that the government does not think "for 1 minute that Lieber is a spy."[8]  And in the Boston Herald interview defendant cites, Lelling made clear that the take-away from the defendant's case for other researchers and professors is "it's all about disclosure. Don't lie when asked if you have ties to a foreign government when you're doing research."[9]  None of these statements appear in the defendant's brief.

Instead, to raise the baseless specter of government misconduct, the defendant cites statements about the government's concerns and enforcement priorities regarding China generally, and about the two other cases the government announced alongside the defendant's.  But when read in their proper context, these statements in no way suggest the defendant committed crimes with which he is not charged.  For example, the statements describing the China Initiative make clear that the purpose of the initiative is to "counter[] Chinese national security threats."[10]  Consistent with

---

[7] DOJ Press Release, Harvard University Professor and Two Chinese Nationals Charged in Three Separate China Related Cases (Jan. 28, 2020), available at https://www.justice.gov/opa/pr/harvard-university-professor-and-two-chinesenationals-charged-three-separate-china-related (hereinafter "DOJ Press Release") (cited in Def. Mem. at 18).

[8] Jeffrey Mervis, U.S. prosecutor leading China probe explains effort that led to charges against Harvard chemist, ScienceMag (Feb. 3, 2020), available at https://www.sciencemag.org/news/2020/02/us-prosecutor-leading-china-probeexplains-effort-led-charges-against-harvard-chemist (hereinafter "*Science Magazine* Interview") (cited in Def. Mem. at 7).

[9] Andriana Cohen, Andrew Lelling tackles Chinese espionage, safe injection sites, Boston Herald (Mar. 8, 2020), available at https://www.bostonherald.com/2020/03/08/adriana-cohen-lelling-tackles-chinese-espionage-safe-injection-sites/ (hereinafter "Herald Interview") (cited in Def. Mem. at 9).

[10] *See* Information About the Department of Justice's China Initiative and a Compilation of China-Related Prosecutions Since 2018, Dept. of Justice (Sept. 21, 2020), available a thttps://www.justice.gov/

this purpose, many of the statements the defendant cites in his brief discuss the China threat generally — not Lieber specifically — including the statements that "*China* has launched a nationwide effort to pilfer U.S. technology and know-how" and "[t]he Justice Department and the FBI have been warning about *Chinese* espionage, *Chinese* efforts to steal U.S. technology, for at least 15 years." Def.'s Mem. at 8 (emphasis added).

What's more, the defendant misquotes one such general statement about China in an apparent effort to recast it as something it is not. The defendant purports to quote the Assistant Attorney General for National Security, John Demers, as saying "'the charges against [Professor] Lieber concern "China's [sic] efforts to steal intellectual property and research from our nation's universities.'" Def. Mem. at 9. In fact, as the article makes clear, Demers actually said that the charges against Lieber "'*illustrate* the serious and persistent *threat* of China's efforts to steal intellectual property and research… (emphasis added).'"[11] By replacing the word "illustrate" with the word "concern" (and also omitting several other words), the defendant inaccurately made it appear as though Demers accused Lieber of stealing or engaging in espionage.

Similarly, the defendant quotes at length statements that clearly relate, in whole or in part, to the two other cases, *United States v. Zheng* and *United States v. Ye*, announced the same day as the defendant's. Unlike the defendant's case, those two cases involved allegations, respectively, that (i) a Chinese national and military officer (Ye) acted as an undisclosed agent of a foreign government while compiling information about scientists with expertise in robotics and computer science, and

---

opa/information-about-department-justice-s-china-initiative-andcompilation-china-related    (hereinafter "China Initiative Background Information") (cited by defendant at Mem. at 3); DOJ Press Release.

[11] Bill Chappell, Acclaimed Harvard Scientist Is Arrested, Accused of Lying about Ties to China (Jan. 28, 2020), available at https://www.npr.org/2020/01/28/800442646/acclaimed-harvard-scientist-is-arrested-accused-of-lying-aboutties-to-china.

(ii) a Chinese national (Zheng) stole and attempted to smuggle vials of biological research from the United States to China.[12]   The defendant fails to acknowledge the relevance of these two cases when quoting the U.S. Attorney's statement that "[c]hemistry, nano technology, polymer studies, *robotics, computer science, biomedical research* — this is not an accident or a coincidence…. This is a small sample of China's ongoing campaign to syphon off American technology and know-how for Chinese gain" (emphasis added).[13]   Nor does the defendant acknowledge that the block quote he cites from a Boston Herald interview similarly relates to these two other cases:  "People now are more aware that there's a real threat from Chinese nationals whether they are intelligence officers or just private citizens coming to the U.S. collecting U.S. technology or stealing U.S. trade secrets and taking it back to China."[14]

The epitome of defendant's conflation of different statements is his claim that Lelling "repeated during a press conference that the case concerned 'Chinese economic espionage and theft' and that Professor Lieber was 'coopt[ed]' for a 'campaign to syphon off American technology and know-how for Chinese gain.'"  Def. Mem. at 18.  But the defendant fails to cite any specific source for this supposed quote, instead referring to an earlier section of his brief (which also provides no support for this particular quote).  *Id.*  In fact, no source cited by the defendant suggests that Lelling stated that the defendant was "coopted" by China.  In the sources the defendant cites in his brief,

---

[12] *See* DOJ Press Release.

[13] Jackson Cote, 'Chinese economic espionage and theft is a real,' U.S. Attorney Andrew Lelling says after arrest of Harvard professor for undisclosed ties to China, MassLive (Jan. 28, 2020), available at https://www.masslive.com/boston/2020/01/chinese-economic-espionage-and-theft-is-a-real-us-attorney-andrewlelling-says-after-arrest-of-harvard-professor-for-undisclosed-ties-to-china.html (hereinafter "MassLive Article") (cited by defendant at Mem. at 7).

[14] Herald Interview (cited by defendant at Mem. at 8).

that verb appears only in (i) general information outlining the Attorney General's goals for the China Initiative, (ii) statements by the A.A.G. made two months *before* the defendant's arrest about *other cases* prosecuted by the Department of Justice, and (iii) an interview the U.S. Attorney gave days *after* the press conference, in which he noted generally that investigators "develop a radar for when person or entity A is *attempting* to coopt or corrupt person or entity B" (emphasis added).[15]  Simply put, defendant was never described as having been "coopted" or engaging in espionage.

Defendant's straw-grasping is further exemplified by his reference to the fact that the FBI agent who swore to the complaint is assigned to a counterintelligence squad and has responsibilities that "include investigations of federal criminal laws relating to espionage and theft of trade secrets." Defendant's suggestion that this fact is somehow material would turn the presumption of regularity on its head.  By the defendant's logic, grand jury minutes must also be disclosed in every felon-in-possession case in which an agent assigned to a violent crime task force testifies.  Baseless speculation of this nature cannot justify piercing grand jury secrecy.  Similarly wanting—and illustrative of the merits of his motion—is defendant's suggestion that something improper might have occurred because the defendant's case is taking place against the backdrop of a pandemic that is believed to have originated in Wuhan, China, the same city in which WUT is located.  The defendant fails to explain how this coincidence is noteworthy, instead asserting only that the "timing … raises concerns."  Def. Mem. at 19, n.15.

In the end, the only statements the defendant can point to about his case specifically are statements accurately describing the allegations against him and statements describing why the

---

[15] China Initiative Background Information; *Remarks*, Assistant Attorney General for National Security John C. Demers Delivers Remarks Regarding Economic Espionage by the People's Republic of China (Nov. 1, 2018), available at https://www.justice.gov/opa/speech/assistant-attorney-general-national-security-john-c-demers-delivers-remarksregarding (cited by defendant at Mem. at 5, n.3); *Science Magazine* Interview.

government believed the facts of his case warranted investigation and prosecution.[16]   Such

statements offer nothing to support the defendant's meritless suggestion that the government *might*

have misled the grand jury about the nature of the defendant's conduct.   Defendant's unartful

mashing together of disparate statements, largely taken out of context, cannot overcome the

conclusion that his argument is nothing more than hopeful speculation.   It is unsurprising, then, that

the defendant cites no cases in which comments to the media about investigative priorities have

established a particularized need to inspect grand jury minutes.   Defendant's speculation that

misconduct might have occurred fails to establish a particularized need for disclosure of the grand

jury minutes, and his motion requesting such disclosure must be denied.   *See, e.g.*, *Matos-Luchi*, 529

F. Supp. 2d at 295–96 (denying motion to inspect grand jury minutes predicated on speculation that

the grand jury was deliberately misled based statements the defendant deemed untrustworthy).

Finally, the defendant's request for *in camera* review of the minutes must also be denied.

*See United States v. Brown*, No. 95 CR. 168 (AGS), 1995 WL 387698, at *7 (S.D.N.Y. June 30,

1995) ("[I]t is well-established … that a defendant's mere speculation as to what occurred in front

of the grand jury does not warrant inspection of the minutes, either by disclosure to defense counsel

… or through *in camera* inspection by the Court.") (citing cases).   Defendant's speculation that the

grand jury might have been misled differs materially from the cases he cites in support his request

for *in camera* review.   In both *United States v. Bravo-Fernandez*, 239 F. Supp. 3d 411 (D.P.R. 2017),

and *United States v. Twersky*, No. S2 92 CR. 1082 (SWK), 1994 WL 319367 (S.D.N.Y. June 29,

1994), the courts ordered *in camera* review after changes in the law that were announced post-

indictment raised the possibility that the grand jury had been instructed inaccurately.   And in *United*

---

[16] *See Science Magazine* Interview.

*States v. Lehr*, 562 F. Supp. 366 (E.D. Pa 1983) and *United States v. Ostrer*, 481 F. Supp. 407 (S.D.N.Y. 1979), specific facts about what transpired in the grand jury were provided in support of arguments that misconduct might have occurred.  No changes in the law have occurred here, nor has the defendant provided specific facts raising questions about the propriety of the government's conduct before the grand jury.  In these circumstances, where all that the defendant offers is speculation, his motion must be denied.


## CONCLUSION

For the reasons set forth above, the government respectfully asks the Court to deny the defendant's motion to compel production of materials concerning DOJ's "China Initiative" and the "Thousand Talents Program," and to inspect Grand Jury minutes.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     */s/ Jason A. Casey*
Jason A. Casey
James R. Drabick
Assistant U.S. Attorneys


## CERTIFICATE OF SERVICE

I hereby certify that this document was filed on October 14, 2020, through the ECF system, which will provide electronic notice to counsel as identified on the notice of Electronic Filing.

*/s/ Jason A. Casey*
Jason A. Casey
Assistant U.S. Attorney