```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3    UNITED STATES OF AMERICA,          )
                          Plaintiff,     )
 4                                       )
      vs.                                )  No. 20-CR-10111-RWZ-1
 5                                       )
      CHARLES LIEBER,                    )
 6                        Defendant.     )

 7

 8

 9


10
                    BEFORE THE HONORABLE MARIANNE B. BOWLER
11                       UNITED STATES MAGISTRATE JUDGE
                               MOTION HEARING
12

13

14

15              John Joseph Moakley United States Courthouse
                            One Courthouse Way
16                      Boston, Massachusetts 02210

17
                             October 16, 2020
18                              11:33 a.m.

19

20

21
                      Kathleen Mullen Silva, RPR, CRR
22                          Official Court Reporter
                John Joseph Moakley United States Courthouse
23                    One Courthouse Way, Room 7209
                        Boston, Massachusetts 02210
24                  E-mail: kathysilva@verizon.net

25            Mechanical Steno - Computer-Aided Transcript
```

```
 1    APPEARANCES:

 2

 3            United States Attorney's Office

 4            AUSA Jason A. Casey

 5            AUSA James R. Drabick

 6            John Joseph Moakley U.S. Courthouse

 7            Boston, Massachusetts 02210

 8            617.748.3498

 9            for Plaintiff

10

11            Mukasey Frenchman & Sklaroff LLP

12            Marc L. Mukasey, Esq.

13            Torey K. Young, Esq.

14            2 Grand Central Tower

15            140 East 45th Street, 17th Floor

16            New York, New York 10017

17            212.466.6400

18            for Defendant

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2           THE COURT:  Good morning.  This is the court.
 3           THE CLERK:  Good morning, Judge.  This is the clerk.
 4           THE COURT:  Do we have everyone?
 5           THE CLERK:  We do.  I think it's worth saying at the
 6    outset that when I got on the call there were 17 people, and
 7    one of the matters that's being --
 8           THE COURT:  I'll deal with it.
 9           THE CLERK:  Okay.  All right.
10           THE COURT:  Please call the case.
11           THE CLERK:  Sure.  The United States District Court
12    for the District of Massachusetts is now in session, the
13    Honorable Marianne B. Bowler presiding.  Today is September 16,
14    2020 in the matter of the United States v. Lieber, Criminal
15    Action 20-10111, which will now be heard.
16           As a reminder, any recording or rebroadcasting of this
17    court proceeding is prohibited, and doing so may result in
18    sanctions as deemed appropriate or necessary by the court.
19           So with that, will counsel please identify themselves
20    for the record, beginning with the government.
21           MR. CASEY:  Good morning, Your Honor.  Jason Casey for
22    the United States.
23           THE COURT:  Thank you.
24           MR. DRABICK:  And J.R. Drabick for the United States
25    as well, Your Honor.  Good morning.
```

1          THE COURT:  Thank you.

2          MR. MUKASEY:  Good morning, Your Honor.  This is Marc

3    Mukasey for the defendant, Charles Lieber, who's also present

4    with us on the phone, as is my co-counsel, who will introduce

5    herself.

6          MS. YOUNG:  Good morning.  This is Torrey Young for

7    the defendant, Charles Lieber.

8          THE COURT:  Thank you very much.

9          Since this is a motion hearing and it doesn't require

10   the presence of the defendant, I will ask defense counsel

11   whether or not you would like me to go through the colloquy

12   regarding physical presence?

13         MR. MUKASEY:  Thank you very much, Your Honor.  We

14   have explained to Professor Lieber that his presence is not

15   technically required.  He's chosen to be on the phone

16   voluntarily and knowingly and willfully, and I don't think the

17   colloquy is necessary.

18         THE COURT:  Thank you.  All right.

19         So let me hear from you first on docket entry 55,

20   which is the defendant's motion to compel, with a memo in

21   support, docket entry 56 for the record, and the government's

22   opposition, docket entry 66.

23         MR. MUKASEY:  Thank you very much, Your Honor.  And

24   this is Marc Mukasey for purposes of the court reporter.

25         Number one, we appreciate being heard by the court on

1    these motions, and I want to say upfront we recognize that it

2    is easy for this court, or any court, to give requests like

3    ours essentially the judicial back of the hand, if you will,

4    because these are unusual requests, and these are requests that

5    a substantial body of case law speaks to.  But this is an

6    unusual case, Judge.  It is borne of unusual circumstances, and

7    it's coming at an unusual time, and it's marked by an unusual

8    disparity between the U.S. Attorney's and the DOJ's public

9    statements about the case and the actual facts of the case, and

10    most especially the U.S. Attorney's own acknowledgement

11    publicly that there exists confusion over what types of

12    behavior could result in criminal charges because of the

13    novelty of this prosecution.

14            So with that, I'm going to turn it over to my partner

15    Torrey Young to discuss the China Initiative prong of our

16    motion, and then I'll handle the grand jury prong.  Torrey.

17            MS. YOUNG:  Thank you.  The government provided an

18    unduly narrow response to our discovery requests.  And

19    proceeding with, you know, blinders essentially on, the

20    government denies Professor Lieber access to information that's

21    material to his defense.

22            So as just mentioned, this prosecution is part of the

23    China Initiative.  That is undisputed.  The China Initiative

24    involved the Department of Justice, the FBI, HHS, Health and

25    Human Services, which is the umbrella agency for OIG and the

1    National Institutes of Health, NIH, and involved U.S.

2    Attorneys' offices around the country.

3        So while this initiative is focused on matters of

4    national security and espionage, it has also targeted the

5    Thousand Talents Program.  In addition to Professor Lieber,

6    there are cases in Ohio, Virginia, in Georgia, all with

7    allegations pertaining to participation in the Thousand Talents

8    Program.

9        As it relates to Professor Lieber, at the heart of the

10   false statement charges against him is what it means to

11   participate in Thousand Talents.  So as a threshold matter, the

12   government must benchmark somehow level of involvement with

13   documentation regarding what it means to participate in

14   Thousand Talents.  So the request for China Initiative

15   materials and specifically other Thousand Talents Program

16   agreements is material to Professor Lieber's defense regarding

17   what it means to participate.

18       And the request also is particularly for executed

19   agreements because we've not received an executed agreement.

20   The verbiage in the complaint and in the superseding indictment

21   from a Thousand Talents contract is from an unexecuted

22   document.  So what it means to participate, you know, has a

23   substantive aspect to it, but there's also going to be

24   information material to Professor Lieber's defense that can be

25   gleaned from the four corners of these documents themselves.

1    You know, are the other documents signed or perhaps an

2    institution that is party to the contract puts a red stamp

3    saying "final" on it or affixes a gold seal welcoming

4    participants or other indications of participation.  That

5    really is the impetus and the rationale behind this request.

6         There's also an aspect of this regarding confusion.

7    You know, even U.S. Attorney Andrew Lelling in his public

8    statement has acknowledged that there is substantial confusion

9    about where the line is drawn for activities that are

10   permissible.  That is actually part of the China Initiative, is

11   to educate both U.S. Attorneys' offices and institutions

12   regarding where the line is drawn.  There must be documentation

13   to support this line, and that's material to Professor Lieber.

14        It also might present a due process issue for

15   Professor Lieber.  So this is not a fishing expedition.  This

16   is not, you know, digging into desk drawers across the country.

17   This is a request for information known to the federal agencies

18   and entities involved in Professor Lieber's prosecution, a

19   China Initiative prosecution.

20        And on the point regarding precedent and the precedent

21   that the government cites, which is in large part easily

22   distinguishable, cases like *United States v. Bender*, where the

23   defendant was seeking documents from a state healthcare

24   facility, that's not a federal agency.  Or *United States v.*

25   *Josleyn*, the defendant was seeking information from American

1   Honda, which is a private third party, still not a federal

2   agency.  Or *United States v. Cadden*, where the defendant was

3   seeking information from the Massachusetts Department of Health

4   and the Massachusetts Board of Pharmacy and the Michigan AG's

5   office, all state agencies.

6        Instead we should be looking to cases like *United*

7   *States v. Osorio*, which talks about how the government is not

8   hermetically sealed into compartments, and that the United

9   States Attorney's Office in which he works and the FBI are not

10  separate sovereignties.

11       The prosecutors have a duty to, you know, learn and

12  identify evidence, particularly favorable evidence, known to

13  others acting on the government's behalf in the case, and

14  that's what we are seeking here.

15       THE COURT:  Mr. Casey, what's your response?

16       MR. CASEY:  Thank you, Your Honor.  First of all, I'll

17  just note that the defendant is not charged with participating

18  in the Thousand Talents Program.  He's charged with lying about

19  his participation in the Thousand Talents Program in addition

20  to the tax and FBAR charges that he's also facing.  So I note

21  that just for clarity.

22       But as for the request for China-related materials,

23  Your Honor, the court should deny the request because the

24  defendant hasn't established that these materials are material

25  to his defense.  And by and large, Your Honor, he's also

1    seeking materials that the government does not possess.

2        We've noted what the defense's burden is in our motion

3    to establish materiality.  The defense has to establish that

4    these materials will have a significant effect on the defense,

5    that's from *U.S. v. Bulger*, or that they will significantly

6    alter the quantum of proof in his favor.  That's from the

7    Second Circuit's decision in *Maniktala*, which is a case often

8    cited in this circuit in discovery disputes.

9        The only specific category of documents they're

10   seeking, again, which is still very, very broad, is executed

11   copies of Thousand Talents agreements and a whole host of other

12   things that they say are relevant to, quote/unquote,

13   participation in the Talents program, like correspondence and

14   recordings and seals, and also some other things that they list

15   in their motion.

16       Other than saying that these are relevant to whether

17   or not Dr. Lieber participated in the Talents program, they

18   don't say anything more about why they're material.  I mean,

19   this is precisely the type of very broad blanket claim of

20   materiality that I think courts routinely reject, and we've

21   cited a number of cases in our motion that support that.

22       Furthermore, Your Honor, I think it strains

23   credibility to say that all of the items that the defendant is

24   requesting, and I'll list them all, correspondence, recordings,

25   seals, signatures, certificates, confirmations, receipts, or

1   other materials indicative of participation in the Thousand

2   Talents Program, it strains credibility to say that all of

3   those items would have a material impact on the defense.

4       The fact of the matter is, Your Honor, Thousand

5   Talents contracts are really just employment contracts.  Right?

6   They're contracts between a person, often a scientist, and a

7   Chinese entity, often one that has some sort of ties to the

8   Chinese government, that impose obligations on the person to

9   engage in various sorts of activities in exchange for a salary

10  or the payment of personal expenses, travel expenses and things

11  like that.  So when someone has a contract like that, whether

12  or not they participated in a contractual relationship depends

13  on their contract, the terms of the contract, their actions or

14  inactions in conformance with the contract, and also the

15  actions of the China entity.  For example, did that entity pay

16  the scientist under the contract?

17      Whether or not there was a contractual relationship

18  had nothing to do with whether or not somebody else at some

19  other point in time might have had a similar contract, what the

20  terms of that contract were, how much they were paid or things

21  like that, which brings us to this case, Your Honor.  The

22  government does not intend to rely on or use other Thousand

23  Talents contracts that other people may or may not have signed

24  because, quite frankly, in the government's view they're just

25  completely irrelevant to the defendant's contract.  And if they

1    aren't relevant, they certainly can't be material.

2           What the defendant really wants to do, I think, is use

3    these other contracts as a measuring stick against Dr. Lieber's

4    contract and his conduct with Wuhan University of Technology.

5    He wants to be able to say that other people, other

6    scientists -- and I'm not sure this is true at all, by the way,

7    but I think he wants to say that these other scientists perhaps

8    did more for the Chinese, or they were paid more, and then

9    somehow that says something about Dr. Lieber's conduct.  But,

10   again, that sort of comparison has absolutely nothing to do

11   with the allegations in this case, which are that Dr. Lieber

12   lied about his participation in the Thousand Talents Program

13   and the fact that he had a contractual relationship with Wuhan

14   University of Technology.  So that type of comparison that I

15   think the defense wants to do, really, I'm not even sure would

16   be a proper defense at trial.

17          But nonetheless, Your Honor, for the reasons that I've

18   stated and in light of the defense's very clear burden to

19   establish materiality, the court should deny the broad request.

20          The other reason to deny it, Your Honor, is that by

21   and large these materials aren't in the government's

22   possession, custody or control.  The case law is very clear in

23   this circuit, Your Honor, that the government's discovery

24   obligations extend only to the prosecution team, that is,

25   individuals who formally participated in the criminal

1    investigation that resulted in the criminal charges.  What the

2    defense is seeking to do, Your Honor, is broaden the scope of

3    the, quote-unquote, prosecution team by claiming that this case

4    was investigated by something that he calls the China

5    Initiative Task Force.  But as we point out in our opposition,

6    Your Honor, there is no such thing as the Chinese Initiative

7    Task Force.  There is such a thing as the China Initiative, but

8    as we make clear in our opposition, that's nothing more than

9    the announcement of a Department of Justice strategic

10   initiative.  It does not represent -- (Inaudible.)

11            (Court Reporter Interrupts.)

12            THE COURT:  We're getting a lot of feedback and

13   background noise.  If you're not speaking, please put yourself

14   on mute.

15            MR. CASEY:  The China Initiative does not represent a

16   formal group of investigative agencies working together to

17   investigate China-related cases.  This case was not

18   investigated by any such task force.  We've made clear to the

19   defense, both before this hearing, and we've also made it clear

20   in our opposition, the agencies that comprise the investigative

21   team in this case.  We've produced Rule 16 materials and Brady

22   material to the extent it exists from each of those agencies,

23   but we have absolutely no obligation, Your Honor, to search for

24   materials from agencies that had nothing to do with this

25   investigation, like the Department of Commerce or Customs and

1    Border Protection or the Department of Justice as a whole or
2    even, you know, the entire intelligence community, which is
3    another request the defense makes.  Those sorts of claims are
4    wildly inconsistent with what courts in this district have
5    clearly said represent the scope of the prosecution team, and
6    thus the scope of the government's discovery obligations.

7           Lastly, Your Honor, I just note that NIH, which is
8    part of the Department of Health and Human Services, an entity
9    that did participate in the investigation, NIH is not part of
10   the prosecution team here.  They're a medical research agency.
11   They award research grants to institutions like the defendant's
12   former employer, Harvard.  The defense is right that NIH did
13   conduct its own inquiry into whether grantee institutions
14   failed to disclose foreign sources of support and foreign
15   collaboration in the grant funding context, but that inquiry
16   had absolutely nothing to do with this criminal investigation
17   or any criminal investigation, as far as I'm aware.  It was a
18   regulatory inquiry:  Were these grantee institutions complying
19   with NIH's regulations about what they were required to
20   disclose.

21          So the fact of the matter is NIH produced some
22   documents to the government here.  The government has turned
23   those over to the defense.  But beyond that, the government has
24   no affirmative duty to seek out materials from NIH because NIH
25   was not a participant in the government's investigation, and we

1    cite *United States v. Cadden*, Your Honor, which I think is

2    highly instructive on this point.  Ms. Young is right that

3    *Cadden* and some of the other cases we've cited involve state

4    agencies, but the question is still the same, whether it's a

5    state or federal agency, did the entity that the defense is

6    seeking discovery from formally participate in the criminal

7    investigation, and I think without any question whatsoever

8    here, NIH did not formally participate in that investigation.

9         So for all of those reasons, Your Honor, I would ask

10   that you also find that these materials are not in the

11   government's possession or control.

12        THE COURT:  All right.  I will take it under

13   advisement and give you a brief ruling shortly.

14        As to the other matter, I don't see any opposition on

15   the docket.  As of this morning there was nothing else pending.

16        MR. CASEY:  I think there's still the request for

17   grand jury minutes, Your Honor, which I think Mr. Mukasey

18   wanted to take up.

19        THE COURT:  Well, there's a motion, docket entry 62,

20   but I don't see any opposition.

21        MR. CASEY:  Your Honor, our opposition to that aspect

22   of their motion was included in our opposition to their request

23   for China-related materials.

24        THE COURT:  Well, that's really not the way it's done

25   in this district.  The motion should have separate opposition.

1            MR. CASEY:  I apologize, Your Honor.  Their docket

2    number 56, if I'm recalling it correctly, addresses both their

3    requests for China-related materials and their request to

4    inspect the grand jury minutes.  That's docket number 56.  So

5    we filed a single docket entry objecting to both motions.

6            THE COURT:  I understand.  All right.  I'll hear you.

7            MR. MUKASEY:  I'm assuming you're speaking to me

8    regarding the defense's motion for production of grand jury

9    minutes.  Again, I completely understand the body of law that

10   backs up secrecy of grand jury proceedings.  It's well

11   established.  But as I say, this is an unusual case.  Our

12   motion really reflects a genuine concern that salacious,

13   sensational rhetoric that would really inappropriately apply to

14   this case at the time of arrest in public by DOJ and the U.S.

15   Attorney's Office and others may have inappropriately been

16   applied in the grand jury as well.  And given the actual facts

17   of this case, which really have nothing to do at all with

18   espionage, national security, theft of trade secrets, treason,

19   spying, et cetera, there's a real concern that these kinds of

20   issues were raised in the grand jury.

21            I should also note that there's an extra danger in

22   this case about the presentation in front of the grand jury,

23   which I believe was in late June or July, because of the

24   COVID-19 issue that we're all grappling with at the moment.

25   And at bottom, at its foundation, this is a case that is not

1    that much different than your regular 18 U.S. Code 1001 case.

2    Did you make a false statement that was material and did you

3    make it knowingly and willfully or did you not?  But there is

4    such hyperbole around this case because of the China Initiative

5    goals and aims, which are somewhat controversial at the moment,

6    and we do buy into the government's political agenda, which

7    obviously is an extremely anti-China agenda.  We think there is

8    enough disparity between how this case is characterized

9    publicly and what it's really about.

10         Was it a national security espionage theft of trade

11   secrets sensational matter, or is it really a relatively

12   routine 1001 case that we satisfy the threshold, albeit a high

13   threshold, for production of the minutes?  And I cannot -- I'm

14   not going to go so far as to say that we know what happened and

15   the grand jury was wrong, but a particularized need as defined

16   in the case law is something that you can sink your teeth into,

17   and something that you can grab onto and say if this happened

18   in the grand jury, then we have a problem.

19         And as Ms. Young mentioned, there's a due process

20   issue here.  The United States Attorney for the District of

21   Massachusetts has admitted himself that there is confusion

22   about what trips the wire and what triggers criminal liability

23   in these kinds of cases.  He acknowledged widespread confusion

24   about that.  And if there is widespread confusion about what

25   constitutes criminal conduct, any misstep, any overstatement,

1    any exaggeration, any embellishment in the grand jury may have

2    had a lethal effect here.

3         So what our motion really comes down to is whether the

4    sensational rhetoric that was inappropriately applied to the

5    case in public was also inappropriately applied in the grand

6    jury such that the grand jury was misled or there was inflaming

7    of the grand jurors so the grand jurors were riled up in this

8    case for reasons that have nothing to do with the government's

9    actual evidence.

10        Thank you, Your Honor.

11        THE COURT:  All right.  Mr. Casey.

12        MR. CASEY:  Your Honor, Mr. Drabick is going to

13   address this aspect of the defense's motion.

14        MR. DRABICK:  Good morning, Your Honor.  J.R. Drabick

15   for the government.

16        Your Honor, I want to start with the defendant here

17   has essentially set up a strawman, in our view, to then knock

18   down, to argue that there were comments made specifically about

19   his case that he identifies as inappropriate or inaccurate and

20   the like.

21        I think if one reads closely the comments that the

22   defendant has cited in their brief and is characterizing today,

23   one sees that there are very different types of comments that

24   were made about the China Initiative generally, which is a

25   broad-ranging initiative, which there have been many cases

1    pursued and fall within that umbrella, and Mr. Lieber's case

2    specifically.

3           Part of what we see is some misquoting and some -- or

4    mashing together of different things to try to make it seem as

5    if the government has characterized Mr. Lieber's case in a way

6    that it has not.  And once we remove that strawman, we see that

7    the government's comments publicly about Mr. Lieber's case have

8    made clear that Mr. Lieber's case is about false statements

9    insofar as what we're talking about today.  Obviously there are

10   the tax-related and disclosure charges as well, but really the

11   thrust here is that false statement about his participation in

12   the Thousand Talents program, and conspicuously absent from

13   defendant's brief and their argument are the statements making

14   clear, for example, in the Science Magazine article which the

15   defendant cites extensively, that the government does not

16   think, and I quote, for one minute that defendant Lieber is a

17   spy, and other statements similarly making clear that the

18   allegations against the defendant are that he lied.  You know,

19   the defendant has himself noted that this is a straightforward

20   1001 case in that regard.  And the government agrees.  It is a

21   straightforward case.  Did the defendant lie about his

22   participation in that program?

23          Mr. Mukasey also points out a comment in an article

24   that I quote from the U.S. Attorney, a characterization of the

25   U.S. Attorney's understanding that there is confusion in the

1   academic community about, you know, where the lines are drawn

2   in this area, in this broad area of working with, collaborating

3   with, providing support for institutions in China.

4         What Mr. Mukasey leaves out is that in the interview

5   that the U.S. Attorney gave to the Herald in which he is

6   actually quoted in response to a question about what guidance

7   should be provided, the U.S. Attorney noted it's all about

8   disclosure, don't lie when asked if you have ties to a foreign

9   government when you're doing research, which is exactly on

10  point, on all fours with the nature of the allegations in this

11  case, that the defendant lied about his participation in that

12  program, nothing more, nothing less.

13        I think that what the government -- excuse me -- what

14  the defendant has latched onto are general statements, more

15  broad statements about the strategic purposes behind the China

16  Initiative, the concerns from a national security standpoint of

17  China's efforts focused on China's conduct and China's intent.

18  But when one leaves the comments in context, one sees that

19  those comments are generally about the initiative and not about

20  the defendant's case specifically, and the comments about the

21  defendant's case have been accurate and not misleading.

22        So once we separate those comments and look at them in

23  context we see that the defendant's argument essentially boils

24  down to the logical fallacy that because the government

25  considers the defendant's case to fall under the broad umbrella

1    of the China Initiative, defendant assumes that there may have

2    or must have been some sort of misconduct in the grand jury.

3    But that's the exact type of speculation that the case law

4    makes clear again and again is not appropriate for piercing

5    grand jury secrecy.

6           For that reason, Your Honor, we believe that the

7    motion should be denied.  And that sort of speculation does not

8    warrant even in-camera review because there's no meat on the

9    bone to their allegations.  There is simple speculation that

10   because Dr. Lieber's case is high profile, the government must

11   have engaged in misconduct, and there's just simply no facts to

12   support that allegation.

13          Thank you, Your Honor.

14          THE COURT:  Well, I must say I'm inclined to agree

15   with the government, but I want to take a further look, and I

16   will take further review and give you rulings promptly.

17          At this time I would also like to set a further status

18   conference out about 60 days, and I'm looking at December 17 at

19   2:30.

20          MR. MUKASEY:  Judge, it's Marc Mukasey for Professor

21   Lieber.  If I may, and I appreciate the court wanting plenty of

22   time to consider these issues, because I do think they are

23   worthy of consideration, may I maybe push the court a little

24   bit to expedite that schedule, perhaps a 30-day window?  It is

25   Professor Lieber's desire to bring this case to trial as soon

1    as possible and to exonerate himself as soon as possible.  I

2    appreciate the vagaries and the difficulties presented by the

3    current pandemic, but if there's any way the court can expedite

4    that, I'd appreciate it.

5         THE COURT:  Well, that is routine.  But, I mean, are

6    you telling me in 30 days you'll be able to get -- is there

7    going to be any motion practice here, dispositive motions?

8         MR. MUKASEY:  Well, part of whether or not we're going

9    to file dispositive motions depends on whether we get our hands

10   on the material that we've been arguing today.  I can tell you

11   for sure there's going to be a suppression motion that we're

12   going to file concerning a post-arrest statement.

13        THE COURT:  Well, I will set a further conference in

14   30 days.  I'm going to give you very prompt rulings on these

15   motions today, but if you wanted the 30 days, then I expect at

16   that time you'll be ready to set a dispositive motion schedule.

17        MR. MUKASEY:  We shall, Your Honor.  Dispositive

18   motions and suppression motion both.  Thank you.

19        THE COURT:  All right.  So let's instead have a

20   conference on -- let's see, November 16 at 2:30.  That will be

21   telephonic.

22        And on behalf of the defendant, do you agree to

23   exclude the time from today until the 16th of November in the

24   interest of justice?

25        MR. MUKASEY:  Yes, we do, Judge.

1          THE COURT:  All right.  Mr. Casey, will you file an

2    assented-to motion to that effect?

3          MR. CASEY:  Yes, Your Honor, I will.

4          THE COURT:  All right.  Then I will talk to you on

5    that date, and we'll go forward with finding a motion date.

6          MR. CASEY:  Your Honor, could I just be heard just for

7    one moment?  This is Mr. Casey.

8          THE COURT:  Yes.

9          MR. CASEY:  So the government obviously filed a motion

10   to compel in compliance with the Grand Jury subpoena.  I

11   believe the defendant has until essentially close of business

12   today to file an objection to that motion.  So I wondered if

13   the court wanted to schedule a hearing on that motion or how

14   the court wants to proceed.

15         THE COURT:  That was where I looked at the docket

16   yesterday, late last night and again this morning, because it

17   seemed absolutely reasonable that that would be dealt with

18   today.  So why not, Mr. Mukasey?

19         MR. MUKASEY:  Judge, we had agreed with the

20   defendant -- I'm sorry -- we had agreed with the government

21   that we were going to brief that issue by the end of business

22   today, and then this hearing came up.  I realize it's not the

23   most efficient way to proceed, but you will get a response from

24   us today, and it can be dealt with.

25         THE COURT:  Well, it's not efficient at all.  I mean,

1    it was due today, and it would have been easier for the court

2    to schedule one hearing.

3             Is it going to be filed by the close of business

4    today?

5             MR. MUKASEY:  Yes, Judge.

6             THE COURT:  All right.  Let's pick the hearing date

7    right now then.  Will you be ready next week?

8             MR. MUKASEY:  We will be ready whenever the court

9    expects us to be ready.

10            THE COURT:  Mr. Putnam, can you give us 30 minutes

11   some day next week?

12            THE CLERK:  Sure, Judge.  You said 30 minutes?

13            THE COURT:  Yes.  I think that should take care of it.

14            THE CLERK:  Okay.  One second.

15            How about 2:00 on the 21st?

16            THE COURT:  All right.  Telephonic hearing 2:00 p.m.

17   on October 21st, docket entry number 62.  And I will expect to

18   see the opposition filed by the close of business today.

19            MR. MUKASEY:  As we agreed with the government, that's

20   terrific.  Thank you, Judge.

21            THE COURT:  You're welcome.  Hearing nothing else

22   then, we stand in recess.

23            MR. CASEY:  Thank you, Your Honor.

24            MR. MUKASEY:  Thank you, Your Honor.

25   (Proceedings adjourned at 12:08 p.m.)

1                    C E R T I F I C A T E

2

3

4    UNITED STATES DISTRICT COURT )

5    DISTRICT OF MASSACHUSETTS    )

6

7

8          I certify that the foregoing is a correct transcript

9    from the record of proceedings taken October 16, 2020 in the

10   above-entitled matter to the best of my skill and ability.

11

12

13

14

15   /s/ Kathleen Mullen Silva                    11/12/20

16

17   Kathleen Mullen Silva, RPR, CRR              Date
     Official Court Reporter
18

19

20

21

22

23

24

25