UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

      V.
                                            CRIMINAL NO.
                                            20-10111-RWZ

CHARLES LIEBER,
     Defendant.

## MEMORANDUM AND ORDER RE:
## MOTION TO DISCLOSE COMMUNICATIONS NOT PROTECTED BY
## DEFENDANT'S ATTORNEY-CLIENT PRIVILEGE
## (DOCKET ENTRY # 100)

### June 15, 2021

**BOWLER, U.S.M.J.**

The present dispute involves defendant Charles Lieber's assertion of a personal attorney-client privilege over certain documents collected by Harvard University ("Harvard") in response to two grand jury subpoenas to the university. Harvard adheres to a position that the privilege belongs to the institution rather than defendant Charles Lieber ("defendant"), and it voluntarily waived the privilege regarding two subsets of the documents Harvard collected.[1] (Docket Entry # 100-13, pp. 1, 5,

---

[1] The parties refer to the subsets as "Tab A" and "Tab B." (Docket Entry # 100, p. 7) (Docket Entry # 105, p. 8). In providing "the 67 Tab B communications" (Docket Entry # 100, p. 9) for in camera review, a filter Assistant United States Attorney ("Filter AUSA") submitted 22 of the Tab B communications on May 28 and an additional 45 of the Tab B communications on June 3. A cover letter explains that "[t]he May 28 production inadvertently included only a portion of the 'Tab B' documents." A "communication" may include a range of pages and is referenced interchangeably as either a Tab B communication or a Tab B document.

11)[2] (denoting subsets as Attachment A and Attachment B).
Harvard initially produced both subsets of documents to the
Filter AUSA and thereafter produced the Tab A documents to the
Assistant United States Attorneys prosecuting this case ("the
Prosecution Team").  In a sealed motion, the Filter AUSA
presently seeks a court order allowing production of the Tab B
documents to the Prosecution Team.  (Docket Entry # 100).

Defendant, a longtime chemistry professor and chair of the
department of chemistry and chemical biology at Harvard from 2015
to 2019 (Docket Entry # 35, ¶ 1) (Docket Entry # 105-1, ¶ 2),
maintains "that the Harvard lawyers and their designees
represented [him] individually in connection with the" two
government inquiries at issue, the first by the United States
Department of Defense ("DOD") and the second by the National
Institutes of Health ("NIH").  (Docket Entry # 105-1, ¶ 8).[3]  The
United States of America ("the government") agrees with Harvard
that the privilege belongs exclusively to the university and that

--------

[2]  Page numbers in docket entries refer to the page number
in the upper, right-hand corner of the docketed filing.

[3]  Defendant's declaration (Docket Entry # 105-1) does not
identify the designees.  Defendant's opposition identifies the
designees as "Administrators Elizabeth Lennox and Roseann Luongo"
(Docket Entry # 105, pp. 4-5, 14) as well as Michael Fox,
("Fox"), an attorney and senior research compliance officer in
the Office of the Vice President for Research ("OVPR") at
Harvard.  (Docket Entry # 100-14, p. 2).  Otherwise, the
opposition simply refers to "designees" without referring to any
particular individual.  (Docket Entry # 105, pp. 8, 10-11, 13,
17-18).

Harvard's attorneys did not represent defendant personally.
(Docket Entry ## 100, 114).  In support of its position, the
government relies on the analysis in <u>In re Grand Jury Subpoena,</u>
<u>A. Nameless Lawyer</u>, 274 F.3d 563, 571 (1st Cir. 2001) ("<u>Nameless</u>
<u>Lawyer</u>") (quoting <u>In re Bevill, Bresler & Schulman Asset Mgmt.</u>
<u>Corp.,</u> 805 F.2d 120, 123 (3d Cir. 1986) ("<u>Bevill</u>")).  (Docket
Entry # 100, pp. 11-15) (Docket Entry # 114, pp. 4-8).  The
government additionally argues that even if defendant had a
"personal privilege, he" waived the privilege for the withheld
Tab B documents "by agreeing that Harvard could produce" the Tab
A documents "to the Prosecution Team directly."  (Docket Entry #
100, p. 2).  The government further submits that the crime-fraud
exception to the privilege applies to the NIH communications, and
defendant fails to "support his assertion of attorney-client
privilege on a document-by-document basis."  (Docket Entry # 100,
p. 2).  Defendant disagrees and requests an evidentiary hearing
to "demonstrate a reasonable, subjective belief that an
attorney-client relationship" protected the communications.
(Docket Entry # 105, p. 2).  After hearing oral argument, this
court took the motion (Docket Entry # 100) under advisement.
Subsequently, this court ordered production of the Tab B
documents for in camera review and reviewed each Tab B document.

<u>BACKGROUND</u>

A First Superseding Indictment charges defendant with two

3

counts of making false statements, knowing they were false, to DOD (Count One) and making false statements to cause Harvard to make false statements to NIH (Count Two) in violation of 18 U.S.C. § 1001(a)(2) ("section 1001(a)").[4]  Count One alleges that on April 24, 2018, defendant made false statements to investigators from DOD's Defense Criminal Investigative Service ("DCIS") regarding his participation in the Thousand Talents Program of the People's Republic of China ("China").  (Docket Entry # 35, ¶¶ 31-32, 43).  The false statements occurred during a DCIS interview of defendant in connection with three active DOD grants awarded to Harvard.  (Docket Entry # 100-3).  Defendant was the principal investigator and the grants helped fund the Lieber Research Group at Harvard, which focuses on science and technology relative to nanomaterials.  (Docket Entry # 35, ¶¶ 2, 6-7, 31-32) (Docket Entry # 100-3, p. 2).[5]  The Lieber Research Group includes a lab "staffed by Harvard graduate students and various postdoctoral researchers."  (Docket Entry # 35, ¶ 2)

---

[4]  The First Superseding Indictment additionally charges defendant with two counts of filing false tax returns (Counts Three and Four) and two counts of failing to file reports of foreign bank and financial accounts (Counts Five and Six). (Docket Entry # 35).

[5]  ██████████████████████████████████████████ (Docket Entry # 100-3, p. 2), the First Superseding Indictment ████ ██████ identify him as the principal investigator (Docket Entry # 35, ¶ 31) (Nos. 14, 17, 21, Tab B, June 3, 2021 submission, ████████████████████████████████████████ ████████  The discrepancy is not material.

4

(Docket Entry # 100-3, p. 2).

Count Two alleges that on or about January 10, 2019, defendant caused Harvard to make false statements to NIH regarding his participation in China's Thousand Talents Program in or about July 2012.  (Docket Entry # 35, ¶¶ 33-34, 45).  ████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████  (Docket Entry # 100-12, pp. 6-7).

A.  DOD Inquiry and Harvard's Response

█████████████████████████████████████████████

████████████████████████████████████████████████

██████████  (Docket Entry # 100-1, pp. 3-4) (Docket Entry # 100-3, p. 2).  ███████████████████████████████████████

█████████████████████████████████████████████████

██████████  (Docket Entry # 100-1, p. 3) (Docket Entry # 105-2, pp. 9-10).  █████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

████████████████  (Docket Entry # 100-1, p. 3).  ████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████      (Docket Entry # 100-1, p. 3) (Docket Entry # 105-2,

p. 10).

██████████████████████   ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████   (Docket Entry # 114-1, ¶ 5)

(Docket Entry # 105-2, pp. 9-10).   ███████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████   (Docket

Entry # 114-1, ¶ 3) (Docket Entry # 100-2, p. 2) (Docket Entry #

105-2, p. 9).   ██████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████   ████████████████████████

███████████████████████████   (Docket Entry # 105-2, p. 12).

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████      (Docket Entry # 105-2, p. 8) (Docket Entry # 100-1, p.

2).   ████████████████████████████████████████

███████████████      (Docket Entry # 105-2, p. 8).   ████████████████

████████████████████████████████████████████████

████████████████████████████████  (Docket Entry # 105-2, p.

8).

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████  (Docket Entry # 100-

2, p. 2).  ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████  (Docket Entry # 100-2, p. 2).

█████████████████████████████████████████

█████████████████████████████████████████

███████████████████  ███████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

<hr />

⁶  Defendant argues that ████████████████████████

(Docket Entry # 105, p. 4).  In a post-litigation affidavit,

████████████████████████████████████████████████

███████████████  (Docket Entry # 114-1, ¶ 5).

⁷  Defendant cites ████████████████████████████

████████████████████████████████████████████████

█████████████████████  (Docket Entry # 105, p. 17) (citing

Docket Entry # 105-2, p. 2, exhibits four and nine).  The cited

(Docket Entry # 105-2, pp. 16-17). ███████████████████

███████████████████████████████ (Docket

Entry # 105-2, p. 19).

    Meanwhile, ████████████████████████

████████████████████████████████████

████████████████████████████████

██████████   ████████████████████

█████████████████████████████████████

█████████████████████████ (Docket Entry #

114-1, ¶ 2), ████████████████████

████████████████████████ (Docket Entry

# 105-2, p. 26). █████████████████████

██████████████████████████████████

██████████ (Docket Entry # 105-2, p. 26).

█████████████████████████████████

██████████████ (Docket Entry # 114-1, ¶ 4) ████████

██████████████████████   ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

_____

exhibits (Docket Entry # 105-2, pp. 15-17, 33-35) ████████

██████████████████████ Defendant elsewhere cites ████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

(Docket Entry # 105-2, p. 38); (Docket Entry # 105, p. 5) (citing
exhibit ten).



(Docket Entry # 114-1, ¶ 5).

---

        [8]    The above are not <span style="background:black">       </span> within the meaning of Fed. R. Evid. 801(a) and are otherwise not considered for the truth of the matters asserted.  <u>See</u> <u>Xiaoyan Tang v. Citizens Bank, N.A.</u>, 821 F.3d 206, 221 n.15 (1st Cir. 2016).  Neither defendant nor the government object to this court's consideration of documents, including emails, on the basis of hearsay thereby waiving the issue.  <u>See</u> <u>Bellone v. Southwick-Tolland Reg'l Sch. Dist.</u>, 748 F.3d 418, 420 n.2 (1st Cir. 2014) (rejecting argument that affidavit included hearsay and explaining that "because Bellone did not raise any objection to the affidavit below, the district court was free to consider it"); <u>see</u> <u>also</u> <u>Eldridge v. Gordon Brothers Grp., L.L.C.</u>, 863 F.3d 66, 84 (1st Cir. 2017); <u>Vallejo v. Santini-Padilla</u>, 607 F.3d 1, 7 & n.4 (1st Cir. 2010).

[9]



(Docket Entry # 129-1, p. 5).



███████████████████████████████ ▬ (Docket Entry #
105-1, ¶ 4). █████████████████████████████████

████████████████████████████ (Docket Entry
# 35, ¶ 32). ██████████████████████████████

(Docket Entry # 100-3, p. 2) (Docket Entry # 105-2, p. 30).

███████████████████████████

████████████████████████ ██████████

█████████████████████████████████████

██████████████████████████████████████

████████████████████████████

(Docket Entry # 105-2, p. 31).[11] █████████████████

███████████████████████████████

██████████████████████ (Docket Entry #
105-2, p. 32); <u>see</u> (Docket Entry # 100-3, p. 4). ████████

████████████████████████████████

██████████████████████████████████

████████████████████████████

---

[10]   Defendant's opposition likewise represents ██████████████
███████████████████████████████ (Docket Entry # 105,
p. 10).

[11]   The Filter AUSA does not challenge ████████████
█████████ (Docket Entry # 105, p. 5). █████████████
██████████████████████████████████ (Docket
Entry # 105-2, pp. 30-32) (Docket Entry # 100-3, p. 4).

███████████████████████████████████ (Docket Entry #
105-2, pp. 31-32); <u>see</u> (Docket Entry # 100-3, p. 4). ██████████

██████████████████████████████████████

███████████████████████████████ (Docket Entry #
105-2, p. 31) (Docket Entry # 100-3, p. 4) (Docket Entry # 100-
11, p. 3).

██████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████ (Docket
Entry # 100-11, pp. 7-8). ████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████ (Docket Entry # 105-2,
p. 40). ███████████████████████████████████

---

[12] Count One of the First Superseding Indictment charges
that defendant did not disclose that in or about July 2012 he
signed a three-year "'Employment Contract of "One Thousand
Talent" High Level Foreign Expert'" with WUT in which he agreed
to publish articles in the name of WUT, assemble a research team
in defendant's field of expertise, invite one to three
"'international top scientists to work in the [WUT] lab as
visiting scholars,'" and work "at or for WUT" for "'not less than
nine months a year.'"  (Docket Entry # 35, ¶¶ 18, 43).  The
contract allocated "roughly $1.74 million" dollars for a "joint
Harvard-WUT Nano Key Lab and related research."  (Docket Entry #
35, ¶ 19).

[13] See footnote seven.

11



(Docket Entry # 100-5, p. 40) (Docket Entry # 100-5, p. 2).

" (Docket Entry # 105-2, p. 40).

(Docket Entry # 105-2, p. 38).

(Docket Entry # 105-2, p. 37).

(Docket Entry # 105-2, pp. 37-38).

(Docket Entry # 100-11,

p. 10). ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████   (Docket Entry # 100-11, p. 10).

████████████████████████████████████

██████████████   ████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████   (Docket Entry # 105-2, pp. 34-35).   ████████

████████████████████████████████████

█████████████   ███████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████   (Docket Entry # 105-
2, p. 34).

B.   ███████████████████████████

   ████████████████████████████████

████████████████████████████████

█████████████████████████████████████

████████████████████████████   ████████

█████████████████████████████████████

████████████████████████████████████

███████████████████   (Docket Entry # 100-7)
(Docket Entry # 105-2, pp. 46-48).   █████████████████████



(Docket Entry # 100-7, p. 3) (Docket Entry # 105-2, p. 47).

(Docket Entry # 100-11, pp. 2-6).

(Docket Entry # 105-2, p. 46) (emphasis added).

(Docket Entry # 105-2, p. 46).

---

[14] (Docket Entry # 100-7, p. 2) (Docket Entry # 105-2, p. 47).

[15] (Docket Entry # 100-14, pp. 2-3).



(Docket Entry # 105-2, p. 46).

(Docket Entry # 100-14, p. 2).

(Docket Entry # 105-2, p. 45).

(Docket Entry # 105-2, pp. 43-44).



███████████████████████████████████████████

████████████████          (Docket Entry # 105-2, pp. 42-43).

     ██████████████████████████████████████████

███████████████████████████████████████████████

████████████████          (Docket Entry # 100-8) (Docket Entry # 100-

13, p. 11, No. 11).[16] ████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████          (Docket

Entry # 100-6).

     ██████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████          (Docket Entry # 100-9).

████████████████████████████████████████████

██████████████████████████████████          (Docket Entry # 105-2, p.

52).

     ████████████████████████████████████████

████████████████████████████████████████

████████████          (Docket Entry # 100-9).   ████████████

_____

[16]   The document date for the notes in defendant and
Harvard's privilege logs is January 13, 2020.  (Docket Entry #
105-2, p. 69) (Docket Entry # 100-13, p. 11, No. 11).



(Docket Entry # 100-9, p. 3). ███████████████████████

███████████████████████████████████████

███████████████████████████████████

██████████████████████ █████████████████████

████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ (No. 8, Tab B,

May 28, 2021 submission, █████████████████. ███████

████████████████████████████████████

██████████████████████████████████████████

███████████████████████ (Docket Entry # 100-11,

p. 4). █████████████████████████. (No.

8, Tab B, May 28, 2021 submission, ████████████████.

████████████████████████████████████████

██████████████████████████████████████████

---

[17] ███████████████████████████████ and
does not support an objectively reasonable belief of an
individual attorney-client relationship.

17



(Docket Entry # 100-9, p. 3).

(Docket Entry # 100-9, p. 3).

(Docket Entry #
100-9, p. 4).

(Docket Entry # 105-2, p. 54)  (Docket Entry # 100-10,
p. 2).

C.   OGC's Website

In April 2018 and thereafter during the relevant time
period, OGC's website included information answering the
question of whether OGC represented Harvard employees or could
give legal advice to faculty members such as defendant.  The
answer was "No":

> Does the OGC represent or give legal advice to faculty
> members or employees in their individual capacities?
>
> No. The OGC is able to represent the University only, and
> the OGC works only on University-related matters. Harvard
> faculty and employees may be able to obtain legal services

through Harvard's Employee Assistance Program. See the
Harvie website for information on this program.

(Docket Entry # 114-1, ¶ 8) (citing website's language at Docket
Entry # 100, p. 14, as "the same as" language appearing in April
2018 "[u]pon information and belief").  An archived copy of text
from OGC's website as of October 5, 2017 states that "OGC is
responsible for all the legal work arising from the activities
of Harvard's Faculties and departments."[18]  (Docket Entry # 105-
2, p. 59) (Docket Entry # 105-2, p. 2, ¶ 3).  Elsewhere on the
website, it reads as follows as of October 2017:

Attorney-Client Privilege

A Guide for *Harvard*

The attorney-client privilege preserves the confidentiality
of communications between lawyers and their clients. The
privilege protects individuals and institutions. Thus,
communications that Harvard faculty and staff have with
Harvard attorneys, in confidence, for the purpose of
seeking legal advice concerning *Harvard* legal matters, are
protected by the attorney-client privilege from disclosure
to opposing parties.

(Docket Entry # 105-2, p. 60) (emphasis added).[19]  Placed in the
context of the question and answer that explicitly addresses and
rejects an individual relationship between OGC and Harvard
faculty, these more general statements cited by defendant do not

───────────────

[18] ██████████████████████████████████████████████████████████
██████████████████████████████████     ████████████████████████
████████████████████████████████████████████████████
(Docket Entry # 105, pp. 14-15).

[19]  See the previous footnote.

advance the reasonableness of his belief or, as he suggests,
"highlight[] the existence of individual faculty-OGC attorney-
client relationships with OGC" (Docket Entry # 105, pp. 14-15).

D.   Harvard's Limited Waiver of Communications

The parties concur that in July 2019 Harvard received a
grand jury subpoena from the government seeking records about
defendant relevant to the DOD and NIH inquiries.  (Docket Entry
# 100, p. 5) (Docket Entry # 105, p. 6).  ███████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████         (Docket Entry # 100-12).

As set forth in the letter, Harvard states it will produce
documents for three time periods and describes the documents
subject to the waiver as follows:



(Docket Entry # 100-12, pp. 2-3). ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████    (Docket Entry # 100-12, p. 3).

In a follow-up letter dated June 15, 2020, Harvard attached
a log of documents divided into Attachment A, i.e., Tab A, and
Attachment B, i.e., Tab B, ("the Privilege Log").[20]  (Docket
Entry # 100-13).  Tab A lists email communications that include
defendant as a party and Tab B lists "email communications,
memoranda or other documents to which [defendant] was not a
party."[21]  (Docket Entry # 100, p. 7); (Docket Entry # 105, p. 8)
(emphasis omitted); (Docket Entry # 100-13); (Docket Entry #
105-2, pp. 63-70).  With respect to the subject matter, the
communications in both Tab A and Tab B concern the DOD and NIH
inquiries into defendant's activities, Harvard's internal
investigations, and Harvard's responses.  (Docket Entry # 105-2,
p. 52) (Docket Entry # 100-13, Tab A, p. 9, No. 89); (Docket
Entry # 105-2, pp. 52, 54-55) (Docket Entry # 100-13, Tab A, p.
9, No. 95); (Docket Entry # 100-9) (Docket Entry # 100-13, Tab
A, p. 9, Nos. 83, 84); (Docket Entry # 100-18) (Docket Entry #
100-13, Tab A, p. 7, No. 55); (Docket Entry # 100-14) (Docket

---

[20]  See footnote one.

[21]  Defendant represents that the Filter AUSA provided him
"with the Tab B communications in their redacted form."  (Docket
Entry # 105, p. 8).  The in camera Tab B documents include
redactions.

21

Entry # 100-13, Tab A, p. 5, No. 1); (Docket Entry # 100-5)
(Docket Entry # 100-13, Tab A, p. 5, No. 14); (Docket Entry #
100-15) (Docket Entry # 100-13, Tab B, p. 11, No. 7); (Docket
Entry # 100-8) (Docket Entry # 100-13, Tab B, p. 11, No. 11);
(Docket Entry # 100-10) (Docket Entry # 100-13, p. 11, Tab B,
No. 9); (Docket Entry # 100-6) (Docket Entry # 100-13, Tab B, p.
11, No. 4).

    Harvard's June 15, 2020 letter also ███████████

████████████████████████████████████████████████████████

███████████████████████████  In pertinent part, the

letter reads that:

       ███████████████████████████████████
       ███████████████████████████████████
       ████████████████████████████████████
       ███████████████████████████████████
       ████████████████████████████████
       ██████████████████████████

(Docket Entry # 100-13, p. 2).

    In a June 22, 2020 letter emailed to Harvard, defendant's

counsel counters ████████████████████████████████

██████████████████████ ███ ██████████████████████████████

████████████████████ (Docket Entry # 100-16,

p. 3).  The letter then states defendant ████████████████████

████████████████████████ in the Privilege

Log listed in Tab A.  (Docket Entry # 100-16, p. 3).  It

concludes that, "*This is not a general waiver of [defendant's*

*attorney-client privilege and he preserves all rights in that
regard.*" (Docket Entry # 100-16, p. 3) (emphasis in original).
An October 2, 2020 email from defendant's counsel to the Filter
AUSA goes farther by expressing a belief that ████████████

████████████████████████████████ (Docket Entry # 100-16, p.
3) (Docket Entry # 100-17, p. 2).

The government represents and defendant does not dispute
that Harvard produced the Tab A communications directly to the
Prosecution Team after the June 22, 2020 letter. (Docket Entry
# 100, p. 8). The Filter AUSA presently seeks to produce the
Tab B communications to the Prosecution Team.[22] (Docket Entry #
100, p. 20).

## DISCUSSION

The government maintains defendant fails to establish that
Harvard's OGC counsel represented him individually and, in
particular, that he satisfied "the *Nameless Lawyer* benchmarks."
(Docket Entry # 100, p. 12) (quoting Nameless Lawyer, 274 F.3d
at 571, quoting Bevill, 805 F.3d at 123); see Nameless Lawyer,

---

[22] The motion only seeks a court order authorizing the
Filter AUSA to disclose the Tab B communications to the
Prosecution Team. In producing the Supplemental Log and adding
them to exhibit 16 (Docket Entry # 105-2, pp. 63-70), defendant's
counsel states that ████████████████████████████████████████████
████████████████████ (Docket Entry # 129, p. 1). The Filter
AUSA did not file a response to the Supplemental Log and, hence,
this court assumes he does not seek to include them as part of a
Tab B production to the Prosecution Team at this juncture.

274 F.3d at 571 (quoting "test explicated in" <u>Bevill</u>, 805 F.3d at 123, which "enumerates five benchmarks").  The government additionally asserts defendant waived the privilege by not objecting to production of the Tab A documents concerning the same subject matter as the Tab B documents and, as to the NIH documents in Tab B, the crime-fraud exception applies.  (Docket Entry ## 100, 114).

Defendant submits ███████████████████████ ████████████████████████and he ███████████████████████ ██████████████████████████████████████████ (Docket Entry # 105, pp. 9-15).  He points out that Harvard ███ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████ (Docket Entry # 105, p. 10).  He also relies on various statements in emails to support the reasonableness of his belief and the existence of an individual attorney-client relationship.[24]

---

[23]  "Waived Communications" refers to the Tab A and Tab B documents.  (Docket Entry # 105, pp. 6-7) (Docket Entry # 100-12) (Docket Entry # 100, pp. 6-7).

[24]  For example, he cites the following, all of which this court has considered: ████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████

Defendant additionally argues the <u>Bevill</u> test does not apply and, in any event, he satisfies the test. (Docket Entry # 105, pp. 15-19). Regarding waiver, he asserts ██████████████ ██████████████████████████████████████ ██████████████████████████████████████. (Docket Entry # 105, pp. 19-20). As to the crime-fraud exception, defendant criticizes the government's reliance on the First Superseding Indictment,[25] and maintains that ██████████████████████████████



(Docket Entry # 105, pp. 4-6, 10, 13, 17) (Docket Entry # 105-2, pp. 9-10, 12-13, 16, 19, 26, 39, 45, 50, 52).

[25] The government correctly notes (Docket Entry # 100, p. 18) that an "indictment provides a reasonable basis to believe that [a defendant] was engaged in criminal or fraudulent activity." <u>United States v. Gorski</u>, 807 F.3d 451, 461 (1st Cir. 2015) (addressing crime-fraud exception).

██████████████████████████████   (Docket Entry #

105, p. 21).

## I.  Attorney-Client Privilege

The general contours of the attorney-client privilege under

federal common law are "well honed."[26]  Lluberes v. Uncommon

Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011).  The privilege

"protects 'only those communications that are confidential and

are made for the purpose of seeking or receiving legal advice.'"

Id. (internal citation omitted); see id. (if "communication

contains only client confidences made in pursuit of legal

advice—or legal advice based on such client confidences—that

communication . . . should be covered" regardless "whether it

came from" client or attorney).  Defendant states he sought

legal advice from Lopez "and the Harvard Office of General

Counsel."  (Docket Entry # 105-1, ¶ 6).  In addition to Lopez

and OGC, he contends that Fox and/or Ponting, each attorneys who

did not work in OGC, were OGC designees who, along with Harvard

personnel, represented him "individually in connection with the

DOD and NIH inquiries."  (Docket Entry # 105-1, ¶¶ 7-8) (Docket

--------

[26]  Defendant's reliance on Massachusetts law (Docket Entry #
105, p. 9) is misguided.  "[F]ederal common law of attorney-
client privilege applies in federal criminal cases."  United
States v. Rankin, No. 3:18-cr-00272 (JAM), 2020 WL 3036015, at *2
(D. Conn. June 5, 2020); see Fed. R. Evid. 501;  In re Grand Jury
Subpoena (Mr. S.), 662 F.3d 65, 70 (1st Cir. 2011) ("scope of the
attorney-client privilege must be ascertained by reference to
'principles of [federal] common law as'" interpreted in "'light
of reason and experience'") (quoting Fed. R. Evid. 501) (brackets
in original).

Entry # 105).

The privilege does not immunize underlying facts. <u>See</u>
<u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395-96 (1981).
Furthermore, because the privilege "stands in the way of a grand
jury's right to every man's evidence," it "applies *only* to the
extent necessary to achieve its underlying goal of ensuring
effective representation through open communication between
lawyer and client." <u>Nameless Lawyer</u>, 274 F.3d at 571 (emphasis
added); <u>accord</u> <u>In re Keeper of Records (Grand Jury Subpoena</u>
<u>Addressed to XYZ Corp.)</u>, 348 F.3d 16, 22 (1st Cir. 2003)
(privilege applies "only to the extent necessary to achieve its
underlying goals" and "comes with substantial costs and stands
as an obstacle of sorts to the search for truth") (citations
omitted). The rationale underlying "the privilege is easily
understood: treating communications between lawyer and client as
confidential encourages full and frank disclosure that better
enables the lawyer to represent the client and better enables
the client to conform his conduct to the law." <u>In re Grand Jury</u>
<u>Subpoena (Mr. S.)</u>, 662 F.3d 65, 70-71 (1st Cir. 2011); <u>see</u>
<u>Lluberes</u>, 663 F.3d at 23 ("privilege encourages disclosures that
facilitate the client's compliance with law and better enable
him to present legitimate arguments when litigation arises").
Defendant, as the party "invoking the privilege[,] must show
both that it applies and that it has not been waived."

27

Lluberes, 663 F.3d at 24; see In re Grand Jury Subpoena (Mr. S.), 662 F.3d at 71 ("party seeking to invoke the attorney-client privilege" has "devoir of persuasion to show that it applies to a particular communication").

At the outset, the parties dispute the application of the "benchmarks" in Bevill.  (Docket Entry # 100, p. 12) (Docket Entry # 105, pp. 15-16).  The government submits they apply and preclude defendant's assertion of an individual attorney-client privilege.  (Docket Entry # 100, pp. 12-15) (Docket Entry # 114, pp. 4-8).  Defendant maintains the Bevill test does not apply and, in any event, defendant satisfies each of the five benchmarks.  (Docket Entry # 105, pp. 15-19).

A.   Bevill's Application

Defendant argues that Bevill does not apply because, unlike the former corporate officers asserting an individual attorney-client privilege in Nameless Lawyer, 274 F.3d at 571-572, defendant is not a corporate officer.  (Docket Entry # 105, pp. 15-16).  Rather, he is an employee and, although "the cases at times" refer to an "employee," as does Nameless Lawyer, 274 F.3d at 571, the cases apply the Bevill analysis to individuals who were "corporate officials, founders, CEOs, trustees," or board members of single-family corporations.  (Docket Entry # 105, p. 16).  Defendant also distinguishes Nameless Lawyer because it "addresses the question when a corporate official, who is not a

client, may" protect his communications with corporate counsel under "an implied privileged relationship," whereas defendant established an attorney-client relationship or at least a reasonable belief one existed.  (Docket Entry # 105, p. 15) (emphasis in original).

The First Circuit in <u>Nameless Lawyer</u> approved the <u>Bevill</u> "benchmarks" and adhered to the Tenth Circuit's interpretation of the fifth benchmark.  <u>Nameless Lawyer</u>, 274 F.3d at 571-72 (citing <u>In re: Grand Jury Proceedings v. United States</u>, 156 F.3d 1038, 1041 (10th Cir. 1998)).  <u>Bevill</u> addresses "the relationship between a corporation's waiver of its privilege and the individual directors' assertion of a claim of personal attorney-client privilege with respect to counsel consulted on both a personal and corporate basis after the counsel has been retained by the corporation."  <u>Bevill</u>, 805 F.2d at 124.  Other than the circumstance that defendant is not a corporate director of Harvard, this is precisely the circumstance here: ███████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ (Docket Entry # 105, p. 2).

In endorsing the <u>Bevell</u> benchmarks, the First Circuit in

Nameless Lawyer faced circumstances, like those in Bevill, 805
F.3d at 124, of "determin[ing] whether a corporate officer or
employee may claim an attorney-client privilege in
communications with corporate counsel" in the context of a
corporation's waiver. Nameless Lawyer, 274 F.3d at 571.  Here
again, the circumstances in the case at bar involving a
corporate employee asserting a personal privilege for corporate
communications when the corporation is waiving its privilege are
similar.  The Nameless Lawyer court held "that a corporation may
*unilaterally* waive the attorney-client privilege with respect to
any communications made by a corporate officer in his corporate
capacity, notwithstanding the existence of an individual
attorney-client relationship between [the corporate officer] and
the corporation's counsel."  Nameless Lawyer, 274 F.3d at 573
(emphasis added); see id. (citing Fed. Deposit Ins. Corp. v.
Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000), discussing joint
representation, and distinguishing such circumstances because
"former co-clients were not independent actors, but, rather,
corporate officers who owed fiduciary duty to" corporation); id.
(noting that "employee has a duty to assist his employer's
counsel in" investigation "pertaining to the employer's
business").

　　　With regard to joint representation, i.e., when a single
lawyer represents two clients, the privilege adheres to

statements made during joint conferences but dissolves "in
subsequent litigation between the joint clients." Id. at 573
(citation omitted).  In that "situation, one client's interest
in the privilege is counterbalanced by the other's interest in
being able to waive it." Id.  This case falls into the middle
where the interests of the purported co-clients (Harvard and
defendant) diverge short of adverse litigation against each
other.  In a similar vein, the Nameless Lawyer court describes
an analogous scenario in which a criminal investigation embroils
one former co-client (defendant) and the other co-client
(Harvard) "is willing to aid in the prosecution of the other,"
such as testifying about their joint consultation, id., or here
by waiving its privilege in certain communications.  Noting that
"courts have split on whether the target of the prosecution may
block disclosure in this context," the Nameless Lawyer court
considered the privilege issue it faced, namely, corporate
officers claiming an individual privilege over purportedly
"jointly privileged" documents in which the corporate subsidiary
waived its privilege, "entirely congruent." Id. at 568, 573.
The congruent circumstance here in which Harvard's waiver will
likely aid the prosecution and defendant is seeking to block
disclosure of the same communications yields the same result as
in Nameless Lawyer, allowing Harvard to waive unilaterally the
privilege.

The Nameless Lawyer court found another difference "significant," i.e., when the former co-client is not an "independent actor[], but, rather, [a] corporate officer[] who owed a fiduciary duty to the corporation." Id. at 573; see United States v. Stein, 463 F. Supp. 2d 459, 461 (S.D.N.Y. 2006) (noting that employee has duty to disclose information pertinent to employment). Drawing a line parallel to Bevill, the court in Nameless Lawyer arrived at the above holding allowing the corporation to waive unilaterally the privilege. Nameless Lawyer, 274 F.3d at 573. Interpreting Bevill's fifth factor, the court denied the individual privilege based on the absence of "communications regarding individual acts and liabilities" that were "segregable from discussions about the corporation." Id.

Defendant's argument that the Nameless Lawyer court addressed the question of a corporate official's privilege for communications with corporate counsel when the official "is not a client" (Docket Entry # 105, p. 15) (emphasis in original) is misguided. The First Circuit in Nameless Lawyer espouses that individual representation "might have occurred" and "there are potentially some communications protected." Id. at 570, 572 (emphasis added). The court did not reject the existence of an individual privilege entirely or address the situation only for a corporate official who is not a client. Rather, the court

32

found that the individual officers "may only assert an
individual privilege" for "communications regarding individual
acts and liabilities" that were "segregable from discussions
about the corporation."  Id. at 573; accord id. at 568 ("We hold
that an individual privilege *may* exist in these circumstances
only to the extent that communications made in a corporate
officer's personal capacity are separable from those made in his
corporate capacity.") (emphasis added).  Defendant's argument
that Nameless Lawyer only addresses corporate officials who are
not clients understates the reach of the decision and ignores
the holding that allows an individual privilege for
communications with corporate counsel made in the officer's
personal capacity to the extent "separable from those made in
his corporate capacity."  Id. at 568, 573-74.  In other words,
defendant's argument runs contrary to the Nameless Lawyer
court's recognition that the corporate officer can have an
individual privilege in the limited circumstance of segregable
communications regarding the official's individual acts and
liabilities.  Id. at 573.

     The rational for the ruling is that "[h]olding otherwise
would open the door to a claim of jointly held privilege in
virtually every corporate communication with counsel."  Id. at
573.  Likewise, defendant's reasonable belief "standard would
provide employees seeking to frustrate internal investigations

33

with an exceedingly powerful weapon, and would stray quite far
from the principle that the attorney-client privilege should be
'strictly confined,' in order to allow public access to 'every
man's evidence.'"   United States v. Int'l Brotherhood of
Teamsters, 119 F.3d 210, 216-217 & n.2 (2d Cir. 1997) (declining
appellant's invitation to adopt "reasonable belief" standard)
(internal citations omitted).

In the alternative, the record fails to show a jointly-held
client relationship.  The in camera documents submitted by
Harvard dispel any such relationship and evidence defendant's
understanding that Harvard was representing Harvard, not
defendant and Harvard.  In the context of Lopez's April 24, 2018
morning conversation with defendant, a putative client would
lack an objectively reasonable belief that Harvard represented
both him and the university.  Defendant's post-litigation
subjective belief, which Harvard's in camera contemporaneous
documents belie, is insufficient under the circumstances.  See
Stein, 463 F. Supp. 2d at 465 (partner's "subjective belief
alone" that in-house counsel for accounting firm represented him
personally "does not support a conclusion that [accounting
firm's] acts were responsible for that belief"); Flaherty v.
Baybank Merrimack Valley, N.A., 808 F. Supp. 55, 60-61 (D. Mass.
1992) (refusing to find attorney-client relationship between
bank's attorney at closing and purchasers because "'law requires

34

more than an individual's subjective, unspoken belief that the
person with whom he is dealing, who happens to be *a* lawyer, has
become *his* lawyer'") (internal citation omitted); see also
Cavallaro v. United States, 284 F.3d 236, 248 (1st Cir. 2002)
(indicating preference for contemporaneous evidence).[27]

Defendant's corporate officer/employee argument frustrates
the same policy rational the Nameless Lawyer and Int'l
Brotherhood courts cite.  See generally In re Keeper of Records
(Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d at 22
(privilege applies "only to the extent necessary to achieve its
underlying goals").  The reasoning used by the First Circuit in
Nameless Lawyer applies to corporate *employees* acting in their
corporate capacity in responding to a corporate investigation
just as it does to corporate *officers* acting in their corporate
capacity.  Holding otherwise, would ignore the realities of what
a corporate investigation entails.  "The first step in the
resolution of any legal problem is ascertaining the factual
background and sifting through the facts with an eye to the

---

[27]  Although defendant cites In re Teleglobe Commc'n Corp.,
493 F.3d 345 (3d Cir. 2007), which addresses joint representation
in the context of parent and subsidiaries, see id. at 362-363,
the case does not change the result.  The court applied Delaware
law and did not directly address Bevill.  Net2Phone, Inc. v.
Ebay, Inc., Civil Action No. 06-2469 (KSH), 2008 WL 8183817, at
*9 (D.N.J. June 26, 2008) (distinguishing Teleglobe)
(unpublished); see Teleglobe, 493 F.3d at 359.  As discussed
below, the Bevill analysis constitutes the predominant view under
federal common law.

legally relevant." Upjohn, 449 U.S. at 390–91 (questionnaire completed by Upjohn employees privileged in corporate counsel's internal investigation of questionable payments by subsidiary to secure foreign business); see United States ex rel. Wollman v. Mass. Gen. Hosp., Inc., 475 F. Supp. 3d 45, 63 (D. Mass. 2020).

> In the corporate context, . . . it will frequently be employees beyond the control group as defined by the court below–"officers and agents responsible for directing the company's actions in response to legal advice"–who will possess the information needed by the corporation's lawyers.  Middle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

Upjohn, 449 U.S. at 391 (internal ellipses and brackets omitted); see Wollman, 475 F. Supp. 3d at 64.  Where, as here, corporate counsel embarks on an internal investigation to uncover facts and render legal advice to the corporation in response to a government inquiry regarding questionable practices, counsel needs to engage and speak with individual employees (not just officers) about the corporate investigative matter while clothed in the corporation's attorney-client privilege and counsel needs to retain the ability to waive the privilege if it serves the corporation's interest.  See United States v. Graf, 610 F.3d 1148, 1160-61 (9th Cir. 2010). Allowing a corporate employee to prevent such a waiver for his non-segregable corporate communications with corporate counsel

about corporate investigative matters would "open the door" to a claim of the corporate employee's privilege "in virtually every corporate communication." Nameless Lawyer, 274 F.3d at 573. Indeed, the Ninth Circuit in Graf used similar reasoning to apply Bevill to an outside consultant who the court determined was a "functional employee" of the corporation.[28]  Graf, 610 F.3d at 1159-1161.  Finding "strong policy reasons to adopt the Bevill test," the Graf court reasoned that:

> any time a corporation retains counsel, counsel will have to talk to individual employees to represent the company effectively. The *Bevill* test responds to this reality by ensuring that a corporation is free to obtain information from its officers, employees, and consultants about company matters and then control the attorney-client privilege, waiving it when necessary to serve corporate interests. The test also preserves the individual's ability to claim a personal attorney-client privilege when the individual makes clear he or she is seeking personal legal advice and the communications relate to personal legal affairs, not to the company's business.

Id. at 1160-61.

Although defendant is not a corporate officer, he is an employee of Harvard and, as such, has an obligation or "a duty to disclose to the employer," Harvard, "information pertinent to

---

[28]  Defendant's contention that defendant was not "'the company voice in its communications with counsel,'" (Docket Entry # 105, p. 16) (quoting Graf, 610 F.3d at 1157) fails to distinguish Graf from the case at bar.  Defendant himself was the chair of the chemistry and chemical biology department at Harvard from 2015 to 2019, and principal investigator on the three DOD grants awarded to Harvard (Docket Entry # 100-3, pp. 2, 5) (Docket Entry # 35, ¶¶ 6, 31-32, 42-43) (No. 14, Tab B, June 3, 2021 submission, ██████████████████ as well as three NIH-funded research grants (Docket Entry # 35, ¶¶ 33-34).

the employment." Stein, 463 F. Supp. 2d at 461 ("employee, like
any other agent, owes the employer a duty to disclose to the
employer any information pertinent to the employment"). Even
regardless of any duty, defendant, as an employee, occupies a
role closer to a corporate officer with duties towards the
corporation than an independent actor without such duties. See
generally Nameless Lawyer, 274 F.3d at 573. Cases also apply
Bevill to employees. See, e.g., Graf, 610 F.3d at 1159–61
(applying Bevill to outside consultant considered "functional
employee" of corporation and, as such, consultant did not hold
personal attorney-client privilege); United States ex rel. Magid
v. Wilderman, Civil Action No. 96-CV-4346, 2006 WL 2346426, at
*3-5 (E.D. Pa. Aug. 10, 2006) (applying five-factor analysis in
Bevill, 805 F.2d at 123, to corporate defendant's office manager
employee, who failed to show personal privilege under Bevill
factors based on in camera review); see also United States v.
Ferrell, No. CR07-0066MJP, 2007 WL 2220213, at *4 (W.D. Wash.
Aug. 1, 2007) (attorney-client privilege belongs to Federal
Aviation Administration ("FAA"), not "its individual employees,"
such as Ferrell) (citing Bevill, 805 F.3d at 125, without
reciting its test). Defendant's argument that the Bevill test
does not apply to corporate employees is therefore not
convincing.

Finally, "if the purpose of the attorney-client privilege

38

is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected." Upjohn, 449 U.S. at 393. "An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." Id.; accord Graf, 610 F.3d at 1161 (using this reasoning to support adoption of "Bevill test in the Ninth Circuit"). In the circumstance of a corporate official's communications with corporate counsel regarding corporate matters and a corporation seeking to waive that privilege in the face of the official's claiming a personal attorney-client privilege, Bevill represents the predominant view adopted by the Ninth, First, Tenth, and Second Circuits. See Graf, 610 F.3d at 1160-1161; Nameless Lawyer, 274 F.3d at 571-574; In re Grand Jury Subpoenas, 144 F.3d 653, 659 (10th Cir. 1998); United States v. Int'l Brotherhood of Teamsters 119 F.3d at 215;[29] Sovereign Holdings, Inc. v. Deck, 4:17-CV-04105-KES, 2018 WL 4441468, at *10 (D.S.D. Sept. 17, 2018) (collecting circuit cases); In re Grand Jury Subpoena 2009R00030 Served on Jan. 19, 2012, No. 1:13-cr-12(WLS), 2013 WL 3990655, at *2 (M.D. Ga. June 2, 2013) ("[m]ost courts to tackle the question" adopt "Third

---

[29] As explained in greater detail in MacKenzie-Childs, "the Second Circuit has acknowledged the Bevill test" without "clearly adopt[ing] it." MacKenzie-Childs LLC v. MacKenzie-Childs, 262 F.R.D. 241, 251 (W.D.N.Y. 2009) (citing Int'l Brotherhood of Teamsters, 119 F.3d at 215-16).

Circuit's multi-factor test" in <u>Bevill</u>, 805 F.2d at 123).
Adhering to this relatively uniform view under federal common
law, <u>Bevill</u> applies.

     As indicted above, defendant's objectively reasonable
belief standard does not supplant <u>Bevill</u> in the circumstances
presented here.  Under <u>Bevill</u>, "[a] personal privilege does not
exist merely because the officer 'reasonably believed' that he
was being represented by corporate counsel on an individual
basis."  <u>In re Grand Jury Subpoenas</u>, 144 F.3d at 659 (citing
<u>Int'l Brotherhood of Teamsters</u>, 119 F.3d at 216).  As aptly
framed by the Tenth Circuit in <u>In re Grand Jury Subpoenas</u>, "[i]n
certain circumstances, reasonable belief may be enough to create
an attorney-client *relationship*," such as in the context of
attorney disqualification, "but it is not sufficient here to
create a *personal* attorney-client *privilege*."  <u>Id.</u> (emphasis in
original) (citing <u>Cole v. Ruidoso Mun. Schools</u>, 43 F.3d 1373,
1384 (10th Cir. 1994)); <u>see</u> <u>Int'l Brotherhood of Teamsters</u>, 119
F.3d at 216 (declining to adopt "alternative" reasonable belief
"standard . . . to govern cases of this sort" which address
"competing claims to privilege" when "employee's communications
with corporate counsel" may create "personal privilege that
could effectively destroy the corporation's ability to waive its
own privilege").  Where, as here, the circumstances involve the
competing concerns of an employee seeking to exercise a personal

privilege to prevent a corporation's waiver of its privilege,
defendant's argument that he reasonably believed ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

(Docket Entry # 105, pp. 11-15) does not override or displace
the Bevill test.   See Int'l Brotherhood of Teamsters, 119 F.3d
at 216; MacKenzie-Childs, 262 F.R.D. at 251, 253 ("Second
Circuit" expressly rejects "reasonable reliance test" and
requires, as "prerequisite to assertion of a personal privilege
by a corporate representative" that "employee 'made it clear to
corporate counsel that he sought legal advice on personal
matters'") (quoting Int'l Brotherhood of Teamsters, 119 F.3d at
215) (internal brackets omitted).  Having determined that Bevill
applies, defendant's related argument that he had an attorney-
client relationship with OGC under a general attorney-client
privilege standard under Massachusetts law[30] (Docket Entry # 105,
pp. 9-11) does not obviate the need to satisfy Bevill.

   In the alternative, defendant fails to show he reasonably
believed he formed a personal attorney-client relationship with
OGC and its designees.   See In re Grand Jury Investigation,
Grand Jury Action No. 19-15 (BAH), 2019 WL 2179116 (D.D.C. Mar.
4, 2019) (former law firm partner's subjective belief he formed
personal attorney-client relationship with former law firm and

_____

[30]   See also footnote 26.

two of its partners when they represented law firm in responding
to four Department of Justice letters regarding unregistered
work for foreign government was not reasonable, even though
three of the four letters were addressed to former law firm
partner, he prepared draft responses, and no Upjohn warning
given).  Furthermore, the in camera documents submitted by
Harvard refute the existence of an objectively reasonable belief
as previously discussed.  Defendant's post-litigation asserted
subjective belief of a personal attorney-client relationship is
insufficient.

B.  Bevill Test

The government argues that defendant cannot satisfy any of
the five benchmarks in Bevill and Nameless Lawyer.  (Docket
Entry # 100, pp. 10-15) (Docket Entry # 114, pp. 5-9).
Defendant maintains that: ██████████████████████████████████
████████████████████████████████████████████████████████
███████████ ██ ████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████
████████;[32] the communications were confidential because ██████
██████████████████████████████████████████████████████████
██████████████████████████████; and the communications concern

_____

[31]  See footnote 24.

[32]  See footnote seven.

42

defendant's ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████    (Docket Entry # 105, pp. 17-18).

    In the post-litigation affidavit, defendant attests he

███████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████    (Docket Entry # 105-1).  The government also filed a

post-litigation affidavit by Lopez ███████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████    (Docket Entry # 114-1, ¶ 6).

She ████████████████████████████████████████████████████

█████████████████████████████████████████████████

(Docket Entry # 114-1, ¶ 6).

_____

    [33]  As discussed below and elsewhere, ██████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

43

Under Bevill, "corporate employees seeking to assert a personal claim of attorney-client privilege must" demonstrate the following:

> "First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company."

Nameless Lawyer, 274 F.3d at 571 (quoting Bevill, 805 F.2d at 123, and stating "Bevill's general framework is sound"); Bevill, 805 F.2d at 123.  Under Bevill's fifth factor, as interpreted by the First Circuit in Nameless Lawyer, the employee or corporate officer can exercise his individual privilege when the communication "'focuses upon the individual officer's personal rights and liabilities . . . even though the general subject matter of the [communication] pertains to matters within the general affairs of the company.'"  Nameless Lawyer, 274 F.3d at 572 (quoting Tenth Circuit's decision in Grand Jury Proceedings v. United States, 156 F.3d at 1041).  For example, a corporate officer or employee's discussion with corporate counsel can satisfy the fifth factor if he "discusses his individual liability for jail time arising from conduct interrelated with

corporate affairs 'because the officer's potential prison sentence is outside the scope of the corporation's concerns and affairs.'" <u>MacKenzie-Childs</u>, 262 F.R.D. at 250 (quoting <u>In re Grand Jury Proceedings</u>, 156 F.3d at 1041).

"Contemporaneous evidence is the most compelling in determining the purpose for" retaining counsel. <u>Wollman</u>, 475 F. Supp. 3d at 64 (citing <u>Cavallaro</u>, 284 F.3d at 248). After-the-fact statements made "in the midst of litigation, with little support in the contemporaneous record," <u>Cavallaro</u>, 284 F.3d at 248, are discounted. <u>See</u> <u>Wollman</u>, 475 F. Supp. 3d at 64; <u>United States v. Adams</u>, Case No. 0:17-cr-00064-DWF-KMM, 2018 WL 5311410, at *10 (D. Minn. Oct. 27, 2018) (rejecting personal attorney-client relationship in part because "substance of the emails" did not show attorney advising "Adams in his individual capacity"). Having reviewed each of the Tab B documents in camera, none of them support the premise that defendant satisfied the fifth factor. They uniformly pertain to Harvard's internal investigations regarding the DOD and NIH inquiries and Harvard's response to NIH. Although they concern defendant's activities, they do not focus on *his* liability or rights, and the communications in these documents that pertain to his individual acts and liabilities are not segregable or separable from the discussions about Harvard and matters of corporate concern. <u>See</u> <u>Nameless Lawyer</u>, 274 F.3d at 573 ("Roe or Moe may

45

only assert an individual privilege to the extent that communications regarding individual acts and liabilities are segregable from discussions about the corporation"). Defendant's personal legal problems and the factual basis for those problems are inextricably intertwined with Harvard's concerns ████████████████████████████████████

████████████████████████████  ██████████  ████████

    Pertinent to the fifth factor regarding the DOD inquiry, the inquiry centered around the ███████████████████████

██████████████████████████████████████████████

███████████████████████████████  ████████████████

(Docket Entry # 100-3, p. 2) (emphasis added); (Docket Entry # 35, ¶ 32) ████████████████████████████████

██████████████████  ███  ████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

(emphasis added); (No. 33, Tab B, June 3, 2021 submission, ████

██████████████████████)  ██████████████████████████

████████████████████████████  ████

████████████████████████████████████████

████████████████████████████████████

████████████████████████             (Docket Entry # 35, ¶¶ 6, 31-32)

(Docket Entry # 100-3, pp. 2, 5).

██████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████ ▪  (Docket Entry # 105-2, pp. 16-17).  ████████████

████████████████████████████████████████████

████████████████████████████████████████████

(Docket Entry # 100-3, p. 5).  Defendant's purportedly protected
Tab B communications regarding the COI are therefore not
distinguishable or separable from Harvard's corporate
requirements and responsibilities regarding the COI in
connection with the DOD grants awarded to Harvard.  See Nameless
Lawyer, 274 F.3d at 572.

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

████████  ████████████████████████████████████

_____

[34] ███████████████████████████████████ (Docket
Entry # 100-1, p. 4) ██████████████████████████████
████████████████████  (Nos. 31, 35, Tab B, June 3, 2021
submission, ████████████████████████████).  ████
██████████████████  (No. 35, Tab B, June 3, 2021 submission,
███████████████████████).  Another Tab B document ████████
████████████████████████████████  (Nos. 35,
37, Tab B, June 3, 2021 submission, ████████████
████████████████).

(Docket Entry # 100-3, p. 4).  The use of Harvard's name as associated with the WUT research laboratory is a corporate matter or concern and addressed in conjunction with the use of defendant's name regarding the same. ███████████████

█████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████ (Docket Entry # 100-3, p. 5).  Here again, the Tab B communications ████████████████████████████████████████████

████████████████████████████████████ are not segregable from the same communications which also pertain to the use of Harvard's name.  See, e.g., (No. 38, Tab B, June 3, 2021 submission, ████████████████████) (Nos. 10, 12 to 16, Tab B, May 28, 2021 submission, ███████████████████ ██████████████████).[35]  More broadly, none of the Tab B documents during the time period of the DOD inquiry include segregable material relative to defendant's individual acts and liabilities.

As to the fifth factor, the same is true for the NIH inquiry. ████████████████████████████████

████████ ████████████████████████████████████

████████████████████████████████████████████

---

[35] A number of these Tab B communications regarding the use of defendant's name and Harvard's name pertain to the NIH inquiry as well as the DOD inquiry.

██████████████████████████████████████████

██████████████  (Docket Entry # 100-7).  █████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████  ████████████████████████████

██████████████████████████  ████████████████████

██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████, the
communications, like those in <u>Nameless Lawyer</u>, "do not appear to
be distinguishable from discussions between the same parties in
their capacities as corporate officers" (or corporate employees)
"and corporate counsel" regarding "matters of corporate
concern."  <u>Nameless Lawyer</u>, 274 F.3d at 572.

"The default assumption is that the attorney only
represents the corporate entity," Harvard, and it is the burden
of the individual, defendant, "to dispel that presumption."
<u>Nameless Lawyer</u>, 274 F.3d at 571.  Defendant does not satisfy
his burden to show that the Tab B documents focused on his
individual acts and liabilities segregable from discussions
about Harvard corporate matters.  <u>See</u> <u>id.</u> at 573 (corporate
officers "Roe or Moe may only assert an individual privilege to
the extent that communications regarding individual acts and
liabilities are segregable from discussions about the

corporation"). Here, as in <u>Nameless Lawyer</u>, the difficulty arises because the discussions set out in the in camera Tab B documents are not distinguishable from discussions regarding Harvard's internal investigation relative to the NIH inquiry and Harvard's response.

Turning to the third <u>Bevill</u> factor or benchmark, defendant fails to demonstrate that Lopez or any other Harvard attorney (such as Ponting and Fox) "'saw fit to communicate with [him] in [his] individual capacit[y], knowing that a possible conflict could arise.'" <u>Nameless Lawyer</u>, 274 F.3d at 571 (internal citation omitted). ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████    ██████████████

█████████████████████████████████████    ████████████

██████████████████████████████████████████████████

████████████████████    ███████████████████████    █

████████████████████████████    ██████████████████████

███████████████████████████████████████████████████

██████████    ████    ███████████████████████████████

██████████████████████████    (Docket Entry # 105-1, ¶ 4).   █████████

████████████████████████████████████████████

██████████████████████████████████    ██████████

██████████████████████████████████████████



(Docket Entry # 35, ¶¶ 6, 31-32, 43) (Docket Entry # 100-1).

(Docket Entry ## 100-1, 100-2).

(Docket Entry # 105-2, p. 8).

(Docket Entry # 114-1, ¶ 5) (Docket Entry # 100-2, p. 2) (No. 28, Tab B, June 3, 2021 submission,                         ).  An attorney was not present at the meeting with the DCIS special agent.  Having reviewed all of the Tab B communications regarding the DOD inquiry, they do not evidence or intimate that Harvard's counsel saw fit to communicate with defendant in his individual capacity, "'knowing that a possible conflict could arise.'" Nameless Lawyer, 274 F.3d at 571 (internal citation omitted).

With respect to the NIH inquiry,



██████████████████████████████ .  ███████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████  ████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████  ██████

███████████████████████ (Docket Entry # 100-8, pp. 2-3) (No.

9, Tab B, May 28, 2021 submission, ██████████████████ )

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████ .  The

Tab B documents ████████████████████████████████

████████████████████████████████████████████████

███████  ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████  ███████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ (Docket

Entry # 100, p. 14) (font size altered); (Docket Entry # 114-1,

¶ 8) . ██████████████████████████████████

███████████████████████████████████████

███████████████████████  Overall, defendant fails to

demonstrate that Lopez or any other Harvard attorney or even a

"designee" "'saw fit to communicate with [defendant] in [his]

individual capacit[y], knowing that a possible conflict could

arise.'"  Nameless Lawyer, 274 F.3d at 571 (internal citation

omitted).

The failure to give an Upjohn warning does not lead to a

different result.  See United States v. Int'l Brotherhood of

Teamsters, 119 F.3d at 217 (recognizing that "attorneys from CW

& S did not do all that they could have done to clarify the

conflicts of interest that can and do develop between

organizations and their employees, or to clarify that CW & S

represented the Campaign" but noting these actions do not

"change our interpretation of the law of attorney-client

privilege"); accord In re Grand Jury Investigation, 2019 WL

2179116, at *16 (despite default rule that general counsel

represents "entity not individuals within that entity," grand

jury "Target twists" absence of "Upjohn warning" as evidence

that "subpoenaed [law firm] partners intended to represent him

personally" and thereby "mischaracterizes" purposes of "Upjohn

warning and" circumstances in which warning needed); In re

Fidelity Guarantee Mortg. Corp., 150 B.R. 864, 868 (Bankr. D.

Mass. 1993).  As noted above, the default rule "is that the

attorney only represents the corporate entity, not the individuals within the corporate sphere, and it is" defendant's "burden to dispel that presumption." Nameless Lawyer, 274 F.3d at 571; see Restatement (Third) of the Law Governing Lawyers § 96 cmt. b (2000) (lawyer employed to represent organization "does not thereby also form a client-lawyer relationship with all or any individuals employed by it or who direct its operations or who have an ownership or other beneficial interest in it"). Here, the absence of an Upjohn warning does not satisfy defendant's burden to dispel this presumption. Defendant's argument that OGC and its designees never gave him an Upjohn warning satisfies the third Bevill factor (Docket Entry # 105, p. 17) is not well taken.  Defendant's further assertion that OGC and its designees ██████████████████████ ████████████████████████████████████████████ ██████████ (Docket Entry # 105-2, p. 38) █████████████████ ███████████████████████ (Docket Entry # 105, p. 17) is not fully born out in the record and, in any event, does not overcome the default rule.

Defendant next points out ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████

████████████████████████████████████████████ (Docket Entry #

105, p. 18) (citing "Docket Entry 15, 20-CV-02441, Middlesex

Superior Court").  He therefore argues ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ (Docket

Entry # 105, pp. 18-19).  First, the argument is devoid of any

legal authority.  Second, it seeks to import an argument made in

a different court in the context of a different legal principle

as applicable to the attorney-client privilege issues in this

criminal prosecution.

     In sum, defendant fails to satisfy the third factor in

Bevill or the fifth factor as interpreted in Nameless Lawyer,

274 F.3d at 572-574.  Harvard's unilateral waiver of the

attorney-client privilege in the Tab B documents therefore

defeats defendant's attempt to block disclosure on the basis of

an individual privilege in the Tab B documents.[36]

II.  Evidentiary Hearing

     As a final matter, defendant ████████████████████████

████████████████████████████████████████████████████████

---

     [36]  It is therefore not necessary to address the government's
alternative grounds to authorize disclosure, including the crime-
fraud exception and waiver.  See Graf, 610 F.3d at 1164 (finding
that under "Bevill test Graf does not hold a personal
attorney-client privilege over any of his communications with the
above attorneys" and therefore not necessary to address
government's waiver argument).

55

████████████████████████████████████████████

████████████████████ (Docket Entry # 105, p. 2).  At the

January 15, 2021 hearing, he argued this court should hold an

evidentiary hearing based on a number of factual disputes,

including the dispute regarding an <u>Upjohn</u> warning.

As explained in <u>Nameless Lawyer</u>:

> Our cases exhibit a strong preference for "a 'pragmatic
> approach' to the question of whether, in a given situation,
> an evidentiary hearing is required. The key determinant is
> whether, 'given the nature and circumstances of the case[,]
> . . . the parties [had] a fair opportunity to present
> relevant facts and arguments to the court and to counter
> the opponent's submissions.'"

<u>Nameless Lawyer</u>, 274 F.3d at 576 (quoting <u>In re Thirteen Appeals</u>

<u>Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.</u>, 56

F.3d 295, 302 (1st Cir. 1995)).

Here, defendant had a fair opportunity to present the

relevant facts.  He had access to the Tab B communications,

albeit with portions redacted, in order to formulate his

arguments.[37]  He had an opportunity to counter the government's

arguments in his 20-page opposition and at the January 15, 2021

hearing.  This court undertook in camera inspection of all of

the Tab B documents.  Because defendant had a fair opportunity

to present the relevant facts, to make arguments to this court,

and to counter the government's positions, an evidentiary

---

[37]  The government represents and defendant does not dispute

that ███████████████████████████████████████████████

████████████████████████████ (Docket Entry # 100, p. 9)

(Docket Entry # 105).  The Tab B documents include redactions.

hearing is not required.  Moreover, the material facts are reliably resolved on the paper record before this court.  <u>See United States v. Jiménez</u>, 419 F.3d 34, 42 (1st Cir. 2005).  An evidentiary hearing is therefore unnecessary.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, the motion to disclose communications not protected by defendant's attorney-client privilege (Docket Entry # 100) is **ALLOWED.**


        /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge