UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Case No. 20-cr-10111-RWZ<br>CHARLES LIEBER, )<br>)<br>Defendant. )<br>) | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO SUPPRESS POST-ARREST STATEMENTS**

Defendant Charles Lieber respectfully submits this Reply Memorandum of Law in further support of his Motion to Suppress His Post-Arrest Statements.

**I.  The Agent's Misrepresentation of *Miranda* Coerced Professor Lieber**

*Miranda* is directed at police misconduct.  *See Miranda v. Arizona,* 384 U.S. 436 (1966). Misconduct occurs when an agent coerces statements from a defendant who has invoked his right to counsel.  *See Colorado v. Connelly*, 479 U.S. 157 (1986).  The coercion here occurred when the Agent misstated the law by claiming that a request for counsel necessitated another reading of *Miranda.*  That is false.

While courts permit certain deceptive tactics by agents, lies about a defendant's rights are coercive.  *See e.g.*, *United States v. Lall*, 607 F.3d 1277, 1283-84 (11th Cir. 2010) (holding that the detective's representation that he would not pursue any charges contradicted the *Miranda* warnings previously given and as a result the defendant did not truly understand the nature of his rights or consequences of waiver); *see also Hopkins v. Cockrell*, 325 F.3d 579, 585 (5th Cir. 2003) ("An officer cannot read the defendant his Miranda warnings and then turn around and tell

1

him that despite those warnings, what the defendant tells the officer will be confidential and still use the resultant confession against the defendant."); *see also United States v. Conley*, 859 F. Supp. 830, 837 (W.D. Pa. 1994) (mem.) (finding coercion where agent told suspect that their conversation was "off the record"); *see also State v. Stanga*, 2000 S.D. 129, ¶¶ 1–5, 617 N.W.2d 486, 487 (holding that promise by officer that statements would be kept "between you and me" constituted coercion); *see also Linares v. State*, 471 S.E.2d 208, 211–12 (Ga. 1996) (finding coercion where officer told suspect that nothing he said would be used against him).

Here, Professor Lieber requested a lawyer. The Agent then not only interrupted Professor Lieber, but mischaracterized the Agent's obligations under *Miranda*. *See* ECF 171, Ex. 2 at 00:02:50 – 00:04:57 ("So ah, what I – <u>what I have to do</u> again um just because you said that is <u>I have to review the form again with you</u> to make sure you understand the rights and as we go through it. I want you to understand…" *emphasis added*). That is not the law. The law does *not* mandate a re-reading of rights upon request for counsel. Officers must not do or say anything that is reasonably likely to elicit an incriminating response after invocation of counsel. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Rather, Professor Lieber's request for counsel should have been scrupulously honored and the interview terminated. *See United States v. Davis*, 512 U.S. 452, 459.

Accordingly, even if the Court construes Professor Lieber's request for counsel as ambiguous, the Agent still failed to accurately describe the Agent's legal obligations, and therefore failed accurately to inform Professor Lieber of his rights. As the government acknowledges in its own papers, "…officers may – but are not required to – attempt to clarify whether the suspect wants a lawyer to assist with the interrogation or for some other reason." ECF 177 at 6 (citing *United States v. Carpenito*, 948 F.3d 10, 25 (1st Cir. 2020) and also *United*

*States v. Oguendo-Rivas*, 750 F.3d 12, 19 (1st Cir. 2014) (nothing that, when faced with an ambiguous statement, it is often good police practice to clarify whether a suspect actually wants an attorney.)). Here, however, the Agent did not "clarify" anything. Rather, he simply misinformed Professor Lieber of his rights. The Agent did not *have to* start over re-Mirandizing Professor Lieber; he should have stopped the interview, and then he could have tried to do or say something that actually clarified the situation.

The government's construction of the Agent's statement as a clarification rings hollow. In *Carpenito*, the troopers made markedly different clarifying statements, asking "Is that what you wanna do or do you want to talk to an attorney?" and "…I have to make sure that we're clear on this. You want to talk to us." *Carpenito*, 948 F.3d at 18-19. In other words, the agent did not misstate the *Miranda* rules.

Likewise, in *Oguendo-Rivas,* the agent asked Oquendo, what did Oquendo not understand. *Oquendo-Rivas*, 750 F.3d 12, 14-15 (1st Cir. 2014). Here, the government emphasizes the use of the Agent's word "if" and conveniently truncates the Agent's words to suggest that the Agent sought clarification. *See* ECF 177 at 9. The Agent did *not* simply say, as the government now puts it, "if you request an attorney, because of that privilege, we are not able to continue the conversation with you." *Id.* Nor did he say something to the effect of, "are you requesting a lawyer?" The Agent *continued* speaking. He mis-stated the law and Professor Lieber's rights, asserting "So ah, what I -- what I have to do again um just because you said that is I have to review the form again with you to make sure you understand the rights…"

The Agent's misstatement of the law coerced Professor Lieber to succumb to the interview. In hearing that a request for counsel would only trigger another recitation of his rights, Professor Lieber reasonably thought requests for counsel would result in a ceaseless cycle

3

until he surrendered to an interview. Professor Lieber understood that as a rejection of his request for counsel. *See* ECF 172. As such, Professor Lieber proceeded to sign the form. This is the normal foreseeable effect of the Agent's misstatement. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

The Agent's misstatement of the law caused Professor Lieber to falsely believe that he had to forego counsel. A reasonable person in Professor Lieber's position would have the same belief. The Agent's mischaracterization went beyond mere emotionalism, trickery or confusion and passed the line into the realm of misstatement that deprives a defendant "of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Moran v. Burbine*, 475 U.S. 412, 424 (1986). Thus, Professor Lieber did not voluntarily waive his privilege. *See Miranda v. Arizona,* 384 U.S. 436, 476 (1966).

**II.     Custodial Interviews Cannot Be Compared to Autonomous Professional Time**

The government makes a gross comparison between Professor Lieber's ability to voluntarily submit to a custodial interrogation and his ability to conduct scientific research. *See* ECF 177 at 15, FN 6. While working in his laboratory, Professor Lieber had the comforts of a personal restroom, a couch to adjust positions for his painful bone lesions, the ability to take breaks and rest, and food that he could be sure would not cause negative side effects. The government thus urges the following inference: because Lieber showed up in his lab that day to do his life's work – a welcomed distraction from his ailing health – he therefore voluntarily succumbed to a government interview. The inference is untenable.

We respectfully request oral argument, and if the court deems necessary an evidentiary hearing.

Respectfully submitted,

CHARLES LIEBER

By his attorneys,

 /s/ Torrey K. Young
Marc L. Mukasey (*pro hac admitted*)
Torrey K. Young (BBO# 682550)
MUKASEY FRENCHMAN, LLP
570 Lexington Avenue, Suite 3500
New York, New York 10022

Dated: August 13, 2021

## CERTIFICATION OF SERVICE

I, Torrey Young, hereby certify that this memorandum of law filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 13, 2021.

 /s/ Torrey K. Young
Torrey K. Young