```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


                                      )
    UNITED STATES OF AMERICA,          )
                                       )
             Plaintiff,                )
                                       )   Criminal Action
    v.                                 )   No. 1:20-cr-10111-RWZ-1
                                       )
    CHARLES LIEBER,                    )
                                       )
             Defendant.                )
                                       )


            BEFORE THE HONORABLE RYA W. ZOBEL
                UNITED STATES DISTRICT JUDGE


                     STATUS CONFERENCE
                       Via Telephone


                      October 14, 2021
                         2:50 p.m.


         John J. Moakley United States Courthouse
                     Courtroom No. 12
                    One Courthouse Way
                 Boston, Massachusetts 02210




                  Linda Walsh, RPR, CRR
                 Official Court Reporter
         John J. Moakley United States Courthouse
              One Courthouse Way, Room 5205
                 Boston, Massachusetts 02210
                  lwalshsteno@gmail.com
```

```
APPEARANCES:

On Behalf of the Government:

     UNITED STATES ATTORNEY'S OFFICE
     By: AUSA Jason A. Casey
         AUSA James R. Drabick
     1 Courthouse Way, Suite 9200
     Boston, Massachusetts 02210
     617-748-3264
     jason.casey2@usdoj.gov


On Behalf of the Defendant:

     MUKASEY FRENCHMAN LLP
     By: Marc L. Mukasey, Esq.
         Torrey K. Young, Esq.
     570 Lexington Avenue, Suite 3500
     New York, New York 10022
     212-466-6400
     marc.mukasey@mfsllp.com

ALSO PRESENT:   Professor Lieber



               Proceedings reported and produced
                by computer-aided stenography.
```

```
 1                     P R O C E E D I N G S
 2            THE CLERK:  Can counsel state who's on the line,
 3   please, for the Judge.
 4            MR. CASEY:  Good afternoon, Your Honor.  Jason Casey
 5   and J.R. Drabick for the United States.
 6            MR. MUKASEY:  Good afternoon, Judge.
 7            THE COURT:  Hold it.
 8            THE CLERK:  Wait a minute.  One second.
 9            THE COURT:  Mr. Casey and Drabick.
10            And for the defendants?
11            THE CLERK:  There you go.
12            THE COURT:  Who is here for the defendant?
13            MR. MUKASEY:  For the defendant is Marc Mukasey and
14   Torrey Young, and our client, Professor Lieber, is on the line
15   as well.
16            THE COURT:  Mr. Leiber is on the line, too?
17            MR. MUKASEY:  Yes, Judge.
18            THE DEFENDANT:  Yes, Your Honor.
19            THE COURT:  Now, I know that you're --
20            (Discussion off the record.)
21            THE CLERK:  Linda, are you on the line?
22            THE COURT REPORTER:  I am, Lisa.  I'm here.
23            THE CLERK:  Okay.  Thank you.
24            THE COURT:  Ms. Urso -- because we marked this hearing
25   on the docket sheet, there was much interest in the case.
```

1  There may be some people on the line who are not parties to the
2  case, like newspaper people or other people who are interested,
3  and since this was in open court, there was not much I could do
4  about that.  I just needed to tell you that.  Okay?
5          MR. MUKASEY:  That's okay.
6          THE CLERK:  And the court reporter is on, too.
7          THE COURT:  Yes.
8          Now, what I would like to do is to find out where we
9  go next with this case.  The trial date that the defendant
10 wants, December 13th, we can't do.  Because of the pandemic and
11 because of the restrictions that we have, we no longer impanel
12 on Mondays.  We have to impanel in sort of seriatim on other
13 days of the week.  We also -- we put in for the 14th.
14         THE CLERK:  December 14th.
15         THE COURT:  December 14th, which is a day on which
16 jurors are coming.  However, there are still some other cases
17 before us, so I cannot guarantee.  We will try, and
18 historically those earlier cases go away.  They are there in
19 order to be sure that they go away, but we are down for a trial
20 starting on the 14th with the impaneling of the jury.  And
21 normally I would try, and do try, from 9:00 to 1:00 because I
22 do other things like this in the afternoon.  And we will go
23 from 9:00 to 1:00.
24         And we will just key up the monitors.  I think that
25 there is a great likelihood that we will actually start.  In

1    fact, I'm almost certain we will probably start on that day.
2            THE CLERK:  I do, too, because there would be one
3    criminal.  The only one that would go before us is the
4    criminal.
5            THE COURT:  Yes, the criminal cases take precedence.
6    So I think it's pretty sure that we will start on the 13th.
7            THE CLERK:  14th, Judge.  Sorry.
8            THE COURT:  14th, 14th.  So anyhow, that is what the
9    trial looks like.  We will -- we normally would get the jurors
10   sometime -- because we have a fairly -- we do this fairly
11   rapidly in this session, we get preference from the jury
12   clerks.  So we usually get them at the beginning of the day,
13   which is a good thing.
14           Do we still have to impanel downstairs?
15           THE CLERK:  Well, Judge Stearns impaneled regular in
16   his courtroom.  So I don't know which way you prefer.
17           THE COURT:  We can't tell you exactly how it goes
18   because all of the usual practices have been in some ways
19   changed by the new rules under which we now operate.  The way
20   it used to be is that the jury clerk would send 40 or 50 or 60
21   people, depending on the number that was needed, to impanel,
22   whether it's criminal, civil, and particular problems with the
23   case.  If we need more, we'd use up the ones that we had and
24   then ask for more and more will come.
25           And normally what I would ask counsel to do is to let

1  me know what questions you want me to ask of the jury and
2  certain questions that would fairly make the juror not
3  available to us and experiences in certain kinds of cases or
4  whatever, knowing the defendant or knowing somebody that's
5  involved for the Government; those people I would ask -- I
6  would ask the entire venire those questions, and anybody who
7  answers yes, we will probably agree to excuse immediately.  And
8  then I would also, of the remaining jurors, ask any additional
9  questions that both parties happen to inquire about.  And then
10 we would speak individually with each of those jurors to
11 determine whether the juror can sit.  I mean, it would involve,
12 among other things, vacation plans, as well as issues having to
13 do with this case, relationships.  So that would be how we
14 progress.
15         Once the jury has been picked, we will immediately
16 start with opening statements and then the evidence, which I
17 see no reason why we can't begin before the 1:00 o'clock
18 closing time.
19         How long -- how many days do you anticipate this trial
20 will last?
21         MR. CASEY:  Your Honor, this is Jason Casey.
22         I think there's a possibility that we could squeeze it
23 in during one week, the week of the 14th.  It's possible,
24 however, that it would bleed into the week of the 20th.  It's
25 sort of impossible to say at this point, but that's the best

1   estimate we can give.

2           (Judge and Clerk confer.)

3           THE COURT:  Ms. Urso points out that takes us into

4   Christmas week.  When we last talked, we were talking about a

5   two-day trial.

6           MR. CASEY:  My recollection is we said we thought we

7   could get it done in a week, and I still think that's possible.

8   But we have, you know, based upon how some things shake out

9   here in the next month or so, between approximately 10 and 15

10  witnesses.  And none of them are particularly long witnesses,

11  but depending on cross-examination and those sorts of things or

12  if the defense puts on a case, it very well could bleed into a

13  second week.  I don't imagine it would go much beyond the 20th,

14  if we didn't wrap up during the week of 14th, but that's our

15  best estimate.

16          THE COURT:  Well, we do what we can do.

17          MR. MUKASEY:  Your Honor?

18          THE COURT:  Yes.

19          MR. MUKASEY:  This is Marc Mukasey.  The parties

20  jointly submitted a scheduling order agreeing on dates for

21  certain disclosures and motions in limine, et cetera.  That

22  joint proposed scheduling order had December 13th erroneously

23  as the trial date.  But I think both parties would be --

24          THE COURT:  It doesn't matter.

25          MR. MUKASEY:  I think if both parties could agree that

```
 1   it's December 14th, and Your Honor wanted to enter that
 2   scheduling order, then we could all have the dates agreed upon,
 3   that would be great.
 4            THE COURT:  It's done.
 5            MR. DRABICK:  Your Honor, this is AUSA J.R. Drabick.
 6   To the extent it's helpful for the Court, I was one of the
 7   AUSAs handling the case before Judge Stearns last week, the
 8   trial, and from an impanelment perspective, the clerk brought
 9   up 50 jurors by about 9:30 a.m.  They were seated in the
10   courtroom, four to a bench, in the gallery, and we were able to
11   proceed with jury impanelment in more or less the ordinary
12   course.
13            THE COURT:  Okay.  That's fine.  That's the way we
14   will try to do it.
15            Did the jurors, once picked, all go into the jury box
16   or did they sit out in the open?
17            THE CLERK:  No.  They were in the jury box.
18            MR. DRABICK:  The first 13 went into the jury box.
19            THE COURT:  Oh, good.
20            THE CLERK:  Yes.  That's what Judge Stearns had.
21            THE COURT:  We were trying it out at one point, just
22   amongst ourselves, and it feels very odd in the middle of the
23   well of the courtroom.
24            THE CLERK:  With the four chairs.
25            THE COURT:  We had the four chairs there.  I think we
```

1    probably, given even a week-long trial at that time of year, my
2    sense is that we should impanel 14, with two alternates is
3    enough probably, I hope, and we will progress.  We will try as
4    expeditiously as we can, and as fairly as we can, to go 9:00 to
5    1:00 every day.  I tend to be pretty prompt about starting, and
6    we tend to take not very long recesses, like, namely, one at
7    around 11:00.  And at 1:00 o'clock we disassemble.
8            THE CLERK:  Yes.
9            THE COURT:  So what I think would be very helpful to
10   me is to have your proposed questions to the jury on voir dire
11   maybe the week before, the Tuesday before.
12           MR. CASEY:  Your Honor, this is Jason Casey.
13           We had proposed in the joint status report that voir
14   dire questions and jury instructions -- proposed jury
15   instructions would be due ten days before the trial.  So you'll
16   certainly have them at least a week before.
17           THE COURT:  I'm not going to look at them until --
18           MR. CASEY:  Well, fair enough.
19           MR. MUKASEY:  Judge, Marc Mukasey here.
20           THE COURT:  So when are you going to file your --
21   let's talk about the questions to the jury.  Those are the
22   important things at the beginning of the case.  When would you
23   file those?
24           THE CLERK:  Ten days before.
25           MR. CASEY:  We've agreed to file them no later than

```
 1   ten days before the trial.
 2             THE COURT:  Okay.  We'll adhere to that.
 3             And then with respect to the instructions, I mean,
 4   given this case is going to take a week, I don't know that you
 5   need to file it before the trial even starts.  However, if you
 6   want me to instruct the jury very briefly about the general
 7   nature of the trial, tell me what you want me to tell them.
 8             I mean, I would normally outline to them the elements
 9   of each of the three separate offenses that have been charged,
10   but very -- in a very truncated way to at least let the jury
11   understand that there are three different allegations of
12   wrongdoing.  And if you -- and if you can agree on what you
13   want me to say, that's even better.  But, otherwise, that I
14   would like -- I mean, maybe at the same time as these other
15   briefs, ten days before.  Although -- okay.  We'll do it ten
16   days before, also.
17             Motions in limine I find generally very unhelpful.
18   Are we going to have any?
19             MR. CASEY:  I think it's possible we will, Your Honor.
20             MR. MUKASEY:  This is Marc Mukasey for a moment,
21   Judge.  I think what I'm about to say goes to jury selection,
22   jury instructions, and motions in limine.  We're going to try
23   to agree on the scope of this case with the Government before
24   we submit anything and proceed in that amicable way.  However,
25   there are some hot-button issues in this case, including the
```

1  United States' relationship with the Chinese Government,
2  including the fact that Professor Leiber had been giving some
3  lectures and interacting with some folks at Wuhan University of
4  Technology right around the time that the COVID pandemic was
5  breaking out, and Dr. Leiber was the subject of a lot of online
6  hatred and vitriol about supposedly bringing the COVID pandemic
7  from Wuhan, which is obviously completely fictional.
8              THE COURT:  What does that have to do with this case?
9              MR. MUKASEY:  I agree that it has nothing to do with
10 this case, but there may be some instructions that we want to
11 give or some questions we want to ask jurors -- potential
12 jurors in order to avoid any of that being part of this case.
13             THE COURT:  You mean you want me to rule on specific
14 questions ahead of time before we know what's going on?
15             MR. MUKASEY:  No.  We'll submit questions that we
16 think will make sure that the issues are the issues and nobody
17 is considering issues that are not properly before the Court,
18 and we'll discuss with the Government their proof or expected
19 proof to make sure that we can all agree that no prejudicial
20 issues will be brought before the larger panel or the petit
21 jury.
22             THE COURT:  Let me ask the Government.  Why do we need
23 to go forward with three separate offenses?
24             MR. CASEY:  Are you referring to the three categories
25 of charges, Your Honor?

```
 1                    THE COURT:  Correct.
 2                    MR. CASEY:  Well, Your Honor, I think the indictment I
 3    hope makes this clear, but I think what we expect the evidence
 4    will show at trial is that the defendant signed a contract that
 5    entitled him to money, the payment of money, that he was paid
 6    money that he failed to disclose in the tax years identified in
 7    the indictment, and that he also failed to disclose a bank
 8    account in which some of the money that he was paid under that
 9    contract was deposited.
10                    And so the tax crimes in this case, Counts 3 and 4,
11    and the fraud charges, Counts 5 and 6, are sort of part of the
12    story of Counts 1 and 2, the false statements about his
13    participation in this program and the contract that he signed.
14                    THE COURT:  I have forgotten.  Counts 3 and 4 are
15    what?
16                    THE CLERK:  They're here.  Right here (indicating).
17                    THE COURT:  Yes, Counts 3 and 4 were -- both false
18    statements are 1 and 2.
19                    THE CLERK:  They superseded it.  These are superseded.
20                    THE COURT:  Well, the false tax return I thought was 5
21    and 6.  No.  The tax returns are 3 and 4.  Are you also going
22    forward with 5 and 6, the foreign bank?
23                    MR. CASEY:  We are, Your Honor, yes.
24                    THE COURT:  Why?  I mean, it just makes it more
25    complicated.  The case is essentially not so complicated.
```

```
 1              MR. CASEY:  I don't think, Your Honor, the proof as to
 2    Counts 5 and 6 is significantly different than the proof as to
 3    counts -- as to Counts 3 and 4 or even Counts 1 and 2 for that
 4    matter.  I mean, Counts 1 and 2, we expect, will involve
 5    evidence that the defendant had a bank account in China in
 6    which money was deposited pursuant to the contract that he
 7    signed.
 8              THE COURT:  Why do we need the two other counts?
 9              MR. CASEY:  We think they're an important part of the
10    case, Your Honor.
11              THE COURT:  That doesn't tell me why other than that
12    you want to cover every little piece.  Well, it's your call.  I
13    can't tell you not to do that, although I'm asking.  What else
14    do we need to do today?
15              MR. CASEY:  Do you want to set a date for a final
16    pretrial conference, Your Honor?
17              THE COURT:  Why do we need another one?
18              MR. CASEY:  We may not.
19              THE COURT:  But what's the point of that one?
20              MR. CASEY:  I don't know, Your Honor, if it's Your
21    Honor's practice to rule on motions in limine before the trial.
22    That can be an opportunity to do that.
23              THE COURT:  All right.  We'll set another date, but I
24    don't know that we will spend it on motions in limine, which I
25    hope will not be needed.
```

```
1                MR. CASEY:  Fair enough.
2                THE CLERK:  Okay.  What about a pretrial maybe
3    December 1?
4                THE COURT:  That's a little bit too early.
5                THE CLERK:  Oh, too early?
6                THE COURT:  Yeah.
7                THE CLERK:  Okay.
8                THE COURT:  December 8th?
9                THE CLERK:  We could actually -- I'm sorry.  We could
10   actually do December 8th.  We could do it at 3:00 o'clock.  Is
11   that okay?
12               MR. CASEY:  That works for the Government.  Thank you.
13               THE CLERK:  Okay.  So 3:00 o'clock on December 8th for
14   a pretrial.
15               THE COURT:  By telephone?  I'm asking.
16               MR. MUKASEY:  I will tell you that -- it's Marc
17   Mukasey -- by December 8th we will be in Boston.  So if you
18   wanted to do it in person, that would be fine with us.
19               THE COURT:  We'll do it in person.
20               THE CLERK:  Okay.  It's in person, okay.
21               THE COURT:  And to the extent that you have some kind
22   of an agenda for that particular pretrial, let us know.
23               MR. CASEY:  Absolutely, Your Honor.  We will.
24               THE COURT:  What else can we do today to move this
25   along?
```

1          MR. MUKASEY:  We can thank you for giving us the
2    December 14th trial date.  We appreciate it.
3          THE COURT:  You know, we do what we can.  I mean,
4    you're entitled to have it.
5          THE CLERK:  I know.  But I think because -- the only
6    thing -- because what I was saying to them when you were saying
7    December 14th, we have three ahead of us.  That's why I was
8    thinking they were saying thank you.  But now I think we would
9    be able to fit ours in.
10         THE COURT:  Okay.
11         MR. MUKASEY:  Thank you, Your Honor.
12         THE COURT:  It's a peculiar position where we are
13   literally having to negotiate with our reverend, and there are
14   a few sisters, too, for courtrooms on particular dates but in
15   particular juries because we find that there are a fair number
16   of jurors who, when we ask them about exposures to COVID, give
17   us answers to make it quite clear that you really don't want to
18   be here and have a good excuse or shouldn't be here, so we just
19   excuse them.  And it has made for a far more difficult time for
20   the jury clerks, and we call far more than we normally would
21   for the trials that we're impaneling.  It's simply to deal with
22   the circumstances of what is happening now.  So everything is
23   in the air and more difficult than it might otherwise be.
24         MR. MUKASEY:  May I ask one administrative question?
25   It's Marc Mukasey.  Do we need to speak with someone in the

1  courthouse or Ms. Urso about electronics and technology and
2  screens and things like that?  Is there a person that we should
3  speak with in terms of making sure the evidence presentation is
4  as smooth as possible technologically-wise?
5          THE CLERK:  Can I make a suggestion?  When we have
6  this pretrial conference in person, if you wanted to bring any
7  tech people with you, we can go over the technology then after
8  the conference.
9          THE COURT:  With the appropriate tech people here.
10         THE CLERK:  Uh-huh.
11         MR. MUKASEY:  Do we need any kind of court order to
12 bring in our computers and screens and iPads, et cetera?
13         THE CLERK:  No.
14         MR. MUKASEY:  Okay.  That's terrific.
15         THE CLERK:  You just need your Bar card.
16         MR. MUKASEY:  In the Southern District of New York you
17 have to get an order to bring in your computer.
18         THE COURT:  If it's a huge number of people going to
19 bring these in, let us know ahead of time, and we'll talk to
20 the guards downstairs.
21         THE CLERK:  We only have a certain amount of people
22 inside the courtroom still.  You know what I mean?  We'll
23 discuss all that on the 8th, okay?
24         MR. MUKASEY:  Thank you so much.  Thank you so much.
25         THE COURT:  Mr. Casey or Mr. Drabick, anything else

```
 1    from the Government?
 2              MR. CASEY:  No, Your Honor, I don't think so.  Unless
 3    Your Honor -- I don't know.  Do we need to exclude the time
 4    between now and the start of trial?  I don't know if that's
 5    been done.
 6              THE COURT:  Yes, we'll do it.
 7              THE CLERK:  I will do that.
 8              MR. CASEY:  Thank you.  We appreciate that, Your
 9    Honor.
10              THE COURT:  Thank you for reminding me.  I'll make a
11    note about that.
12              THE CLERK:  I will do that when I do the clerk bill,
13    okay?
14              MR. CASEY:  Thank you.
15              THE COURT:  So we will see you on the 8th --
16              THE CLERK:  8th.
17              THE COURT:  -- in anticipation of the 14th, and I
18    think that we're in pretty good shape.  If anything arises,
19    Ms. Urso is always available to solve every problem.  I will be
20    absent doing other things.  No, seriously, if anything arises,
21    just let us know.
22              MR. CASEY:  Thank you, Your Honor.
23              MR. MUKASEY:  Thank you, Judge.
24              THE CLERK:  If you do need me for anything, it would
25    be best for an email, okay?
```

```
 1          MR. MUKASEY:  Yes.  You got it.
 2          THE CLERK:  Okay.
 3          MR. MUKASEY:  Thank you.
 4          THE COURT:  Thank you very much.
 5          THE CLERK:  Have a good day.
 6          MR. CASEY:  Take care.
 7          (Adjourned at 3:13 p.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 1:20-cr-10111-RWZ   Document 198   Filed 11/12/21   Page 19 of 19

19


```
 1                    CERTIFICATE OF OFFICIAL REPORTER
 2
 3              I, Linda Walsh, Registered Professional Reporter
 4    and Certified Realtime Reporter, in and for the United States
 5    District Court for the District of Massachusetts, do hereby
 6    certify that the foregoing transcript is a true and correct
 7    transcript of the audio-recorded proceedings held in
 8    the above-entitled matter, to the best of my skill and ability.
 9                    Dated this 12th day of November, 2020.
10
11
12                         /s/ Linda Walsh
13                         Linda Walsh, RPR, CRR
14                         Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```