UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cr-10111-RWZ |
| | ) | |
| CHARLES LIEBER | ) | |
| | ) | |
| Defendant. | ) | |

## **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE***

The defendant moves *in limine* to preclude the government from introducing three discrete pieces of evidence: (1) an employment contract between the defendant and Wuhan University of Technology ("WUT") called the "Employment Contract of 'One Thousand Talent' High Level Fortign [sic] Expert" (hereafter "the Thousand Talents Contract" or "the Contract"); (2) expert testimony from Dr. Barry Naughton concerning China's Thousand Talents Program designed to give the jury context and help them better understand the evidence; and (3) translations of Chinese language documents and tangible objects found on the defendant's electronic devices and at his home intended to help the jurors understand the evidence.  As described in detail below, all this evidence is relevant and admissible.  The Court should deny the defendant's motion accordingly.

### **Summary of Argument**

The Thousand Talents Contract — Exhibit A to the defendant's motion — appears in discovery not as a standalone document, but as an attachment to multiple email communications between the defendant and WUT officials.[1]  Generally speaking, these email communications

---

[1] The defendant attaches the contract as Exhibit A to his motion but omits the email to which the contract was attached.  The government includes both the email *and* the attached Thousand Talents Contract here as Exhibit C.

demonstrate that the contract was offered, negotiated, agreed to, and signed by the defendant and WUT officials (in hard copy, not electronically) between approximately April and July 2012. These email communications are admissible as "verbal acts" and "verbal parts of an act" to prove *the fact* that the defendant and WUT discussed and agreed to the Thousand Talents Contract, and what the terms of that contract were.   *See* Fed. R. Evid. 801, Advisory Committee Note (c) (excluding from hearsay "verbal acts and verbal parts of an act, in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights").   These emails are also admissible for another non-hearsay purpose: to prove the defendant's knowledge, state of mind, and intent, as well as the extent of his relationship with WUT.   In these circumstances — where the government will not be offering the Thousand Talents Contract to prove that the defendant (or WUT for that matter) later acted in conformity with its terms — the Contract and related emails are not hearsay.   To be sure, significant additional evidence will prove the defendant followed through on his commitments under the Thousand Talents Contract.[2]

As for Dr. Naughton, his testimony will concern matters — namely, the purpose and scope of China's Thousand Talents Program[3] — that are outside the knowledge and understanding of the average juror.   His testimony will be relevant and helpful to the jury in understanding the

---

[2] Extensive evidence—including the defendant's own admissions and adoptive admissions—will establish that he performed various tasks for and with WUT in furtherance of the Thousand Talents Contract, including by advising WUT graduate students, reviewing draft manuscripts written by WUT graduate students, agreeing to allow WUT graduate students to work in his lab at Harvard, traveling to WUT, acknowledging WUT in scientific articles, and engaging in other tasks.   Other emails sent by the defendant, as well as documents found at the defendant's home on the day of his arrest, will prove that WUT paid the defendant for his services.

[3] The government expects the evidence will show that the Thousand Talents Program is a program established by the Chinese national government to attract, recruit, and cultivate high-level scientific talent in furtherance of China's scientific development, economic prosperity, and national security.   The evidence will establish that the Thousand Talents Program is often implemented by universities in China – in this case, the Wuhan University of Technology – on behalf of the national government.

evidence, including why the defendant's false statements were material.  Dr. Naughton's testimony will *not* be unduly prejudicial, and the jury should be permitted to hear it in its entirety. Nonetheless, if the Court is inclined to entertain the defendant's motion, the Court should defer any ruling on the admissibility of Dr. Naughton's testimony until an out-of-jury hearing the morning he is scheduled to testify at trial.

Finally, translations of select Chinese language documents will be relevant and helpful to the jury regardless of whether the defendant speaks, reads, or understands Mandarin.  These select translations — likely in the form of brief oral testimony from a Chinese linguist — are necessary to give the jury context and to explain, as a factual matter, what certain documents are (for example, that documents found in the defendant's home are account opening forms from the Industrial and Commercial Bank of China).  A pretrial ruling that generally precludes the government from offering *any* Chinese to English translations is inappropriate.

### Background

The defendant has been charged by Superseding Indictment with making false statements related to his involvement with China's Thousand Talents Program, subscribing to materially false income tax returns, and failing to file Reports of Foreign Bank and Financial Account ("FBAR") with the IRS disclosing his interest in a Chinese bank account.  Of most relevance to the defendant's motion are the false statement offenses, which are alleged in Counts One and Two of the Superseding Indictment.  To prove those offenses, among other things, the government must establish that the defendant's statements were false, and that the defendant *knew* his statements were false.  *See* FIRST CIRCUIT PATTERN JURY INSTRUCTION 4.18.1001; *United States v. Duclos*, 214 F.3d 27, 33 (1st Cir. 2000).

Count One specifically alleges that the defendant falsely told investigators from the Defense Criminal Investigative Service ("DCIS") in April 2018 that he "was never asked to participate in

3

China's Thousand Talents Program" and that "he 'wasn't sure' how China categorized him" vis-à-vis the Thousand Talents Program.    Superseding Indictment ¶¶ 32, 43.   In Count Two of the Superseding Indictment, the defendant is alleged to have caused Harvard University to falsely tell the National Institutes of Health ("NIH") that he "[wa]s not and has never been a participant in" the Thousand Talents Program.  *Id.* at ¶¶ 34, 45.  As to Count One, therefore, the government expects to prove that:

(1)     Lieber was asked to participate in the Thousand Talents Program by WUT officials at various times in 2012 and again in 2015 (after his initial Thousand Talents Contract expired); and/or

(2)     that Lieber was aware that WUT officials and others consistently characterized him as a Thousand Talents Program member between at least 2012 and 2015.

As to Count Two, the government expects to prove:

(3)     that Lieber willfully participated in the Thousand Talents Program.

To prove these three things, the government intends to rely in part on email communications between the defendant and WUT officials.    Among these emails are communications reflecting the genesis, negotiation, and completion of the Thousand Talents Contract.  These Contract-related emails reflect, among other things, (i) WUT officials informing the defendant that he has been selected for the Thousand Talents Program and then providing him iterative drafts of the Thousand Talents Contract; (ii) the defendant's appreciative and engaged responses to those emails; and (iii) communications discussing the acceptance, signing, sending, and receipt of the Thousand Talents Contract.   The following are examples of some of these communications:

1)     An email from a WUT official dated April 3, 2012 notifying the defendant that he has been "approved and awarded as invited strategic foreign expert by Chinese government" to participate in the "Word Recruitment Plan of renowned experts in China (also called as [sic] one thousand plan of foreign experts)," and the defendant's response thereto.  *See* Exhibit A.

2)  An email from a WUT official to the defendant dated June 1, 2012 attaching the Thousand Talents Contract and soliciting the defendant's "comments/modifications." *See* Exhibit B.

3)  An email from the defendant to the WUT official dated June 2, 2012 acknowledging receipt of the Thousand Talents Contract and saying he will "review the documents for the 1000 plan when I have time."[4] *See* Exhibit C.

4)  An email from the WUT official dated June 27, 2012 attaching a revised Thousand Talents Contract and asking for the defendant's "response/reply" within one week. *See* Exhibit C.

5)  An email from the defendant to the WUT official dated June 28, 2012, in which the defendant writes, among other things, "I think this revised version [of the Contract], which addresses the previous concerns we discussed at Harvard, is good. How should we proceed with completing (signing)?" *See* Exhibit D.

6)  An email from the WUT official responding to the defendant's June 28, 2012 email, in which the official writes, "Our university will sign 1000 plan agreement and send to you for your signature by Fedex." *See* Exhibit D.

7)  An email chain dated between July 13 and July 21, 2012, involving the defendant, the WUT official and others, in which the defendant acknowledges receipt of the Thousand Talents Contract and states his intention to sign it. The WUT official, in turn, writes that he has received the signed contract approximately one week later. *See* Exhibit E.

As discussed below, all these emails are admissible for non-hearsay purposes.

## **Argument**

### I.      **The Contract and Communications About the Contract are Not Hearsay.**

"So long as out-of-court statements are not offered for their truth, they are not hearsay...."

*United States v. Murphy*, 193 F.3d 1, 5–6 (1st Cir. 1999) ("It is unnecessary to fit such statements into one particular category, like verbal act, although this is often done, primarily as a short-hand way of explaining the non-hearsay purpose for which the statement is offered."); *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 575 (1st Cir. 1989). An example of this is so-called "verbal acts." The

---

[4] The defendant's statements are not hearsay under Fed. R. Evid. 801(d)(2).

Committee Notes to Federal Rule of Evidence 801 expressly exclude from the definition of hearsay "verbal acts and verbal parts of an act, in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." A verbal act is an utterance of an operative fact that gives rise to legal consequences. *See United States v. Diaz*, 597 F.3d 56, 65 (1st Cir. 2010); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 567, n.50 (D. Md. 2007) ("Verbal acts … are not hearsay, because the statement is admitted merely to show that it was actually made, not to prove the truth of what was asserted in it."). "A contract … is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay." *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992); *Murphy*, 193 F.3d at 6 (noting that "the 'I accept' that shows that an agreement has been formed" is an example of a verbal act). Thus, "the hearsay rule does not exclude relevant evidence as to what the contracting parties said or wrote with respect to the making or the terms of an agreement." *Lorraine,* 241 F.R.D. at 567, n.50.

Since the very outset of this case, the defendant has disputed that he entered into a Thousand Talents Contract with WUT. The defendant's motion *in limine* to exclude the Contract only reinforces this point. The defendant's effort to keep the Thousand Talents Contract from the jury is not surprising: that he negotiated and agreed to the Contract are strong indicators that the defendant, in fact, participated in the Thousand Talents Program. Consequently, these communications are highly relevant to the government's case (in particular, Counts One and Two). These communications will be offered by the government as verbal acts to show the offer and acceptance of the Thousand Talents Contract: first, that WUT selected the defendant to participate in the Thousand Talents Program (Exhibit A); second, that WUT offered the defendant the Thousand Talents Contract (Exhibit B); third, that WUT made a revised offer incorporating revisions suggested by the defendant (Exhibit C); and fourth, that the defendant and WUT agreed to sign, and did sign, the Thousand Talents Contract (Exhibit D). All of these communications

constitute "what the contracting parties said or wrote with respect to the making or the terms of an agreement." *Lorraine,* 241 F.R.D. at 567, n.50. Thus, they are admissible as verbal acts and verbal parts of an act.

Email communications about the formation of the Thousand Talents Contracts are also admissible for another non-hearsay purpose: to prove the defendant's knowledge, state of mind, and intent.[5] It is well established that "the mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind ... of the declarant and is not hearsay." *Smith v. Duncan*, 411 F.3d 340, 346 n. 4 (2d Cir. 2005) (internal quotation marks omitted); *see also* MCCORMICK ON EVIDENCE § 249 ("A statement that D made a statement to X is not subject to attack as hearsay when its purpose is to establish the state of mind thereby induced in X, such as receiving notice or having knowledge[.]").

As described above, to prove Counts One and Two, the government must prove one or more of the following:

(1)   Lieber was asked to participate in the Thousand Talents Program by WUT officials at various times in 2012 and again in 2015 (after his initial Thousand Talents Contract expired); and/or

(2)   that Lieber was aware that WUT officials and others consistently characterized him as a Thousand Talents Program member between at least 2012 and 2015; and/or

(3)   that Lieber willfully participated in the Thousand Talents Program.

Regardless of whether the WUT official's statements in the emails themselves are true, email communications from the WUT official concerning and/or attaching the Thousand Talents

---

[5] Such communications could also be used to demonstrate the nature of the defendant's relationship with WUT. The nature and extent of the relationship is circumstantial evidence of the defendant's participation in the Thousand Talents Program. Insofar as the defendant also lied to DCIS and NIH about the nature and duration of his relationship with WUT, it also tends to establish that his lies about the Thousand Talents Program were not an innocent mistake.

Contract are relevant to all three points.  For example, an email from the WUT official asking for the defendant's comments and suggestions on the Thousand Talents Contract, *see* Exhibit B, tends to establish the defendant's awareness of the fact that he was asked to participate in the Thousand Talents Program.  Similarly, emails notifying the defendant of his Thousand Talents Program award, *see* Exhibit A, and the parties' subsequent agreement as to the Thousand Talents Contract, *see* Exhibits B, C and D, tend to establish that the defendant *knew* how China categorized him — namely, as a member of the Thousand Talents Program — as well as his knowledge that he participated in the Thousand Talents Program.

Stated more broadly, without regard to their truth, these emails are relevant to establishing the defendant's state of mind, including his knowledge that his statements to the DCIS investigators and NIH were false.  When offered for this purpose, communications about the Thousand Talents Contract (including the contract itself) are not hearsay.  *See United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006) (emails from investors to defendant making accusations of fraud not hearsay when offered to show defendant's knowledge of fraud); *United States v. Hanjuan Jin*, 833 F. Supp. 2d 957, 969 (N.D. Ill. 2011) (email from Chinese business to defendant about Chinese business' customer admissible to show that defendant "was on notice" that Chinese business "performed work for … a unit of the Chinese military").  For these reasons, the Court should deny the defendant's motion to exclude the Contract.[6]

---

[6] The defendant also argues that the government cannot authenticate emails attaching the Thousand Talents Contract because the WUT employee who sent the emails will not be testifying at trial.  This argument has no merit.  While it is true that the sender of these emails will not testify for the government—there is no legal mechanism to compel him to travel from China to the United States for trial—that does not preclude the government from authenticating his emails and the attachments thereto.  It is well established that email communications can be (and often are) authenticated absent testimony from the sender or the recipient of the email.  *See, e.g.*, *United States v. Fluker*, 698 F.3d 988, 998-1000 (7th Cir. 2012) (holding that emails were properly authenticated even though neither the author nor anyone who saw the author write the emails testified given sender's email address and the content of email); *United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (holding that distinctive characteristics were sufficient to authenticate emails where emails contained names of senders and recipients and contents discussed various professional and personal

## II.     The Testimony of Dr. Barry Naughton Concerning the Thousand Talents Program is Relevant and Admissible.

Dr. Naughton's testimony is relevant to this case and essential to helping jurors understand a Chinese government program that they will likely be hearing about for the first time during this trial. Contrary to defendant's claims, it will not be unfairly prejudicial, confusing, or a waste of time. It should be allowed in full.

Rule 702 of the Federal Rules of Evidence governs testimony by expert witnesses.   In pertinent part, it states that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the expert's scientific, technical, or other specialized knowledge "will help the trier of fact to **understand the evidence** or to determine a fact in issue…." Fed. R. Evid. 702 (emphasis added).  According to the Advisory Committee Notes, "[a]n intelligent evaluation of the facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge."  The First Circuit has said, therefore, that the proper inquiry is "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject matter involved." *United States v. Lamatiina*, 889 F.2d 1191 (1st Cir. 1989) (internal quotations omitted).  The trial court has wide discretion in determining whether to admit expert testimony. *Id.*

At the core of this case — particularly Counts One and Two — is China's Thousand Talents Program.  To convict on Counts 1 and 2, among other things, the jury must find that the defendant made *materially false* statements about whether he was asked to participate in the Thousand

---

matters); *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000) (holding that emails were authenticated by contents – including email address, automatic reply to sender, and use of nicknames – and context where messages indicated knowledge of matter at issue in obstruction charge); *United States v. Bertram*, 259 F. Supp. 3d 638, 641 (E.D. Ky. 2017) (stating that "participation in a particular email is not a prerequisite to authenticating it" while also noting the "low bar" for authenticating emails).

Talents Program (Count 1), whether he did participate in the Program (Count 2), and whether he knew how China categorized him with respect to the Program (Count 1). A statement is "material" if is has "a natural tendency to influence or to be capable of influencing the decision of the decisionmaker to which it was addressed, regardless of whether the agency actually relied upon it." *See* FIRST CIRCUIT PATTERN JURY INSTRUCTION 4.18.1001. During the trial, the government will present evidence concerning the questions posed to the defendant about the Thousand Talents Program and his corresponding answers. The government also intends – as it must – to present evidence concerning materiality; that is, why the defendant's false statements were, at a minimum, capable of influencing DCIS and NIH.

Dr. Naughton's testimony will help the jury understand the origin, purpose, scope and implementation of the Thousand Talents Program. Not only is this context critical to the jury's basic understanding of what the Thousand Talents Program is, but it will also help explain *why* DCIS and NIH asked the defendant about the Thousand Talents Program in the first place and why the defendant's statements were capable of influencing their respective decision-making. As set forth in the government's expert disclosure, Dr. Naughton testimony will consist of basic, uncontroverted information about the Thousand Talents Program. He will testify that in about 2006, the Chinese government initiated a technology-advancement strategy that continues to this day. He will testify that this strategy was critical to China's economic survival and covered numerous technical areas, including materials science (the defendant's area of study and expertise). He will testify that the Thousand Talents Program, and its provincial and local analogues, were important parts of this strategy. He will testify generally about the types of individuals targeted for the Thousand Talents Program (prominent scientists and researchers) and the benefits offered to such individuals (salary, research funding, etc.). And he will testify that these facts, while likely unknown to jurors in this case, were and are common knowledge to anyone

10

with a passing familiarity with the Chinese economy, in part because the Chinese government has stated them publicly.

Should Dr. Naughton be permitted to testify, for the reasons described above, the government expects that emails attaching the Thousand Talents Contract — attached Exhibits A, B, C, and D, among potential others — will already be in evidence.  The government anticipates asking Dr. Naughton to review the contract and give *brief* testimony concerning whether the contract is consistent with the overall goals, aims and structure of the Thousand Talents Program. This sort of testimony is widely permitted by expert witnesses.  It is no different, for example, than expert testimony about whether coded text messages or telephone conversations involving the defendant are consistent with the methods and techniques employed by drug conspirators.  *See, e.g., Lamattina*, 889 F.2d at 1194 (holding that "[e]xpert testimony … is helpful in cases where juries must determine the meaning and significance in recorded conversations of the jargon used in criminal operations").   In light of his education, training and experience, *see* Exhibit F (Naughton CV), Dr. Naughton is more than qualified to explain how the Thousand Talents Contract fits within China's overall economic, technology and national security policies.  Such testimony is critical to the jury's ability to understand the significance and materiality of the defendant's false statements.

Dr. Naughton's testimony will not be unfairly prejudicial.  The defendant appears to want to exclude as much testimony as possible about "China" because he perceives it to be prejudicial. But the simple fact of the matter is that the defendant's conduct concerns China and its most prominent talent recruitment program.  Many jurors – perhaps all of them – will be hearing about talent recruitment programs for the first time during this trial.  For this reason, and to prove that the defendant's statements were material to DCIS and NIH, the government must give context to the Thousand Talents Program.  Other than the fact that it involves China, the defendant does not

11

explain why this context (including fundamental testimony about the policies that justify and gave rise to the Thousand Talents Program) is unfairly prejudicial.  Indeed, by the defendant's logic, any testimony connecting the defendant to China would be unfairly prejudicial.  Such a position is not tenable.  China and the Thousand Talents Program are unavoidably part of this case. Whatever prejudice accompanies Dr. Naughton's testimony, it is not unfair because it will not have "an undue tendency to suggest decision on an improper basis…." *United States v. Vazquez-Soto*, 939 F.3d 365, 371 (1st Cir. 2019) (rejecting Rule 403 challenge to introduction of photographs of defendant riding his motorcycle in case involving alleged false statements regarding disability status).

The government respectfully asks the Court to deny this aspect of the defendant's motion. To the extent the Court is inclined to entertain the defendant's request, however, the government asks the Court to defer any ruling on the motion until an out-of-jury hearing the morning Dr. Naughton is expected to testify at trial.

## III.   Chinese to English Translations of Select Documents and Objects Will be Relevant and Helpful to the Jury.

The defendant is correct that certain documents and objects relevant to this case contain Chinese characters.  At this juncture, the government is likely to seek to introduce translations of just two documents, both of which will be offered through a qualified Chinese linguist.[7]  Neither translation is likely to be controversial.  The translations will be offered to help the jury understand two particular pieces of evidence.

First, on the day of the defendant's arrest, his residence contained apparent application forms from a bank in China that contained both English and Chinese characters.  A translation of

---

[7] The government's witness and exhibit lists are due to be exchanged with defense counsel tomorrow, November 30, 2021.  The government is in the process of completing its exhibit designations.

the Chinese characters will aid the jury in understanding the nature of the document that was in the defendant's possession (*i.e.*, a Chinese bank account application).  Second, shortly after his interview with DCIS, the defendant emailed a contact in China requesting their assistance deleting or, short of that, modifying certain language about the length of the defendant's association with WUT found on a publicly available website associated with the Chinese Academy of Sciences. On one of the defendant's digital devices, investigating agents found a PDF copy of the website (bearing the same print date as the above-referenced email to the defendant's Chinese contact) with certain language highlighted.  The name and content of the website are all in Chinese characters, and a translation of the highlighted portion will aid the jury in understanding what language the defendant wanted changed.  The fact that the defendant does not read or understand Chinese does not preclude the government from offering translations for this purpose, where the documents at issue were either in his home or sent by him.

The government is in the process of completing its proposed translations and will share them with defense counsel forthwith.  To the extent the defendant continues to object to the translations' use at trial, the government respectfully asks that the Court make admissibility determinations during the trial.

## **Conclusion**

For the reasons set forth above, the government respectfully asks the Court to deny the

defendant's motion in its entirety.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:     */s/ Jason A. Casey*
Jason A. Casey
James R. Drabick
Assistant United States Attorneys

Dated: November 29, 2021

CERTIFICATE OF SERVICE

I hereby certify that this document was filed of November 29, 2021, through the ECF
system, which will provide electronic notice to counsel as identified on the notice of Electronic
Filing.

*/s/ Jason A. Casey*
Jason A. Casey
Assistant United States Attorney

14