UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 20-cr-10111-RWZ |
| CHARLES LIEBER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
PRECLUDE EVIDENCE PURSUANT TO
FEDERAL RULES OF EVIDENCE 403 AND 404(B)**

Defendant Charles Lieber respectfully moves, pursuant to Federal Rules of Evidence 403

and 404(b), to exclude eight categories of evidence that the government seeks to admit at his

upcoming trial. The evidence is neither "intrinsic" to the charged crimes nor admissible as

"other acts" evidence under Fed. R. Evid. 404(b). Each category of evidence is intricate and is

disputed by Professor Lieber and will necessitate a series of "mini-trials" that will unduly

complicate and delay the proceedings.

The evidence should be precluded.

**Background**

Counts One and Two of the Superseding Indictment charge Professor Lieber with

violating Title 18 U.S.C. § 1001. Count One alleges that:

> [O]n April 24, 2018, Professor Lieber made a false statement to the DOD's Defense
> Criminal Investigative Service ("DCIS") when he stated that "he was never asked to
> participate in China's Thousand Talents Program, but that he 'wasn't sure' how China
> categorized him" when in fact, Lieber previously had been asked by representatives of
> Wuhan University of Technology ("WUT") in China to participate in China's Thousand
> Talents Program, and in or about July 2012, signed a three-year contract with WUT
> entitled 'Employment Contract of One Thousand Talent' High Level Foreign Expert.'
> (ECF 35).

Count Two alleges that:

[O]n or about January 10, 2019, Professor Lieber [caused] Harvard to tell the [National Institute of Health] that he "'[wa]s not and has never been a participant' in China's Thousand Talents Program, when, in fact, Lieber had signed a three-year Thousand Talents Agreement with WUT entitled 'Employment Contract of One Thousand Talent' High Level Foreign Expert in or about July 2012." (ECF 35).

Counts Three and Four charge Professor Lieber with filing false tax returns in 2013 and 2014, respectively, in violation of Title 26 U.S.C. §7206(1). Counts Five and Six charge that he failed to file a report of a foreign bank account in 2014 and 2015, in violation of Title 31 U.S.C. §§ 5314 and 5322.

On November 23, 2021, the government sent a letter to defense counsel that outlined numerous categories of uncharged conduct that it intends to offer in evidence at Professor Lieber's trial. Ex. 1. The letter attached to an email entitled "Lieber 404(b) disclosure." The letter asserted that the categories of evidence are "intrinsic" to the charged conduct, and do not "fall within" Fed. R. Evid. 404(b). *Id.* At the same time, the letter suggested that, in the alternative, the conduct is admissible under Rule 404(b). Exactly what the government seeks to admit is unclear; the evidence is described using only the most general and elastic terms like "see e.g.," "among other things," "and others," "including," "for example."

Whatever the theory of admissibility, the government is wrong. The categories of conduct are neither intrinsic to the offenses charged, nor proper under 404(b).

The evidence is inadmissible.[1]

## Legal Standards

### A. "Intrinsic" Evidence

---

[1] The ninth and final category of evidence cited in the government's letter – ████████████████████████ ██████████████████████ – cannot be assessed for admissibility without additional government disclosure and thus are not addressed herein.

In *United States v. Roszkowski*, 700 F.3d 50 (1st Cir. 2012), the First Circuit described "intrin[sic evidence]" as evidence that "comprises part and parcel of the core events undergirding the crime for which [the defendant] was charged." *Id.* at 56.  In that case, the court held that, in a prosecution for being a felon in possession of a firearm, an undercover detective's testimony that the defendant shot himself during an attempted arrest was intrinsic to the charged crime and, therefore, Rule 404(b) was not implicated.  *See also United States v. Epstein*, 426 F.3d 431, 438-39 (1st Cir. 2005).

By characterizing uncharged conduct as "intrinsic to" or "inextricably intertwined with," charged conduct, federal courts have allowed prosecutors to introduce evidence of uncharged acts free from Rule 404(b)'s protections.  At this point, "inextricably intertwined" has "become a doctrinal juggernaut capable of battering down ancient evidentiary walls[.]"  Milton Hirsch, *"This New-Born Babe an Infant Hercules": The Doctrine of "Inextricably Intertwined" Evidence in Florida's Drug Wars*, 25 Nova L. Rev. 279, 296 (2000).

Prosecutors typically invoke various mantras to twist unrelated acts into "intrinsic" or "inextricably intertwined" evidence.  As the D.C. Circuit put it:

> "Some [justifications] are circular: inextricably intertwined evidence is intrinsic, and evidence is intrinsic if it is inextricably intertwined. Others are over-broad. The 'complete the story' definition of 'inextricably intertwined' threatens to override Rule 404(b). A defendant's bad act may be only tangentially related to the charged crime, but it nevertheless could 'complete the story' or 'incidentally involve' the charged offense or 'explain the circumstances.' If the prosecution's evidence did not 'explain' or 'incidentally involve' the charged crime, it is difficult to see how it could pass the minimal requirement for admissibility that evidence be relevant. See Fed. R. Evid. 401 and 402."

*United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000).

Some courts have recognized the harm caused by granting prosecutors leeway to supplement charged crimes with so-called "intrinsic" acts.  *See e.g. United States v. Gorman,*

613 F.3d 711, 719 (7th Cir. 2010) (abandoning the "inextricable intertwinement doctrine" because it "has outlived its usefulness" and "become overused, vague, and quite unhelpful"); *United States v. Green,* 617 F.3d 233, 248 (3d Cir. 2010) ("[T]he inextricably intertwined test is vague, overbroad, and prone to abuse, and we cannot ignore the danger it poses to the vitality of Rule 404(b)"). *See also United States v. Irving,* 665 F.3d 1184, 1215 (10th Cir. 2011) (Hartz, J., concurring) (stating that "the intrinsic/extrinsic dichotomy serves no useful function and consumes unnecessary attorney and judicial time and effort," and that "the distinction between intrinsic and extrinsic evidence is unclear and confusing, and can lead to substituting conclusions for analysis").

## B.   "Other Acts" Evidence and Rule 404(b)

"Rule 404(b) provides that evidence of a defendant's prior bad acts may not be admitted to prove his criminal character or propensity to commit crimes of the sort for which he is on trial." *United States v. Varoudakis,* 233 F.3d 113, 118 (1st Cir. 2000). "Although logically relevant, 'propensity' or 'bad character' evidence carries an unacceptable risk that a jury will convict for crimes other than those charged, or that it will convict, although uncertain of guilt, because a bad person deserves punishment." *United States v. Frankhauser,* 80 F.3d 641, 648 (1st Cir. 1996) (citing *United States v. Arias-Montoya,* 967 F.2d 708, 709 (1st Cir. 1992) and *United States v. Moccia,* 681 F.2d 61, 63 (1st Cir. 1982)). "Such evidence therefore is inadmissible as a general rule, but may be admissible if it has a 'special' probative value beyond mere relevance that does not derive from 'bad character' or 'propensity.'" *Id.* (citations omitted).

The First Circuit has adopted a two-pronged test to determine if evidence of a defendant's prior bad acts may be admitted. *See, e.g., United States v. Centeno-Gonzalez,* 989 F.3d 36, 51-52 (1st Cir. 2021); *United States v. Van Horn,* 277 F.3d 48, 56-57 (1st Cir. 2002); *Varoudakis,*

233 F.3d at 118; *Frankhauser*, 80 F.3d at 648.  "First, to overcome the 'absolute bar' of Fed. R.

Evid. 404(b), the evidence must be 'specially probative' of an issue in the case—such as intent or

knowledge—without including bad character or propensity as a necessary link in the inferential

chain." *Van Horn,* 277 F.3d at 57 (quoting *Frankhauser*, 80 F.3d at 648).  *See also Varoudakis*,

233 F.3d at 118 (referring to "special relevance").  "Second, under Rule 403, evidence that is

specially relevant may still be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice." *Varoudakis*, 233 F.3d at 118.  *See also United States v. Sebaggala*,

256 F.3d 59, 67 (1st Cir. 2001) ("Rule 404(b) incorporates *sub silentio* the prophylaxis of

Federal Rule of Evidence 403.").  The Supreme Court of the United States has described unfair

prejudice in terms of "the capacity of some concededly relevant evidence to lure the factfinder

into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*

*v. United States*, 519 U.S. 172, 180 (1997).

Under Rule 403, the inherent "risk of an improper criminal propensity inference should

be considered in light of the totality of the circumstances, including the government's need for

the evidence given other available testimony, to prove the issue identified pursuant to the 404(b)

special relevance analysis." *Varoudakis*, 233 F.3d at 122 (citing *Old Chief*, 519 U.S. at 184).

### C.  Discussion

Whether analyzed as "intrinsic evidence" or 404(b) evidence, the categories of conduct

proffered by the government share the same three fatal flaws.  First, beyond a robotic incantation

that the evidence is relevant to Lieber's "knowledge," "intent" or "absence of mistake," the

government provides no explanation whatsoever of how it does so – and indeed it does not.

Second, each category of proffered conduct presupposes Lieber's guilt on the charges alleged in

the Superseding Indictment in order to bootstrap the proffered conduct into relevance.  Third,

each uncharged vignette or anecdote will take the jury on a confusing detour into knotty

relationships, outdated correspondence, and convoluted rules, regulations, and legal concepts that are completely detached from the charged conduct.  The government's proffer thus fails Rule 403's balancing test: any arguable relevance of the uncharged conduct would be far outweighed by the substantial delay it will cause, because Professor Lieber will be required to contest the facts surrounding the uncharged conduct in what will devolve into multiple mini-trials within a trial.

Each category of proffered conduct also suffers from its own unique and disqualifying flaws as follows:



This proffered evidence concerns ██████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████.  *See* Ex. 2 ██████████████████; Ex. 3 ██████████████████.

This evidence is not intrinsic to Counts One or Two.  ████████████████

██████—which extend well beyond the two emails cited by the government—do not speak to the elements of the crime charged in Counts One and Two and have nothing to do with false statements regarding the Thousand Talents Program.  Discussions about ██████████ took place over an extended period of time in 2015; the charged false statements were allegedly made on specific dates in 2018 and 2019.  The correspondence about ████ cited by the government precedes the false statement charges in Count One by three-and-a-half years and Count Two by four years.  A fair assessment of ██████████ issue would require an analysis of correspondence and conduct dating back to at least 2011.  And Professor Lieber is not charged

with an ongoing scheme or plan or course of conduct that might otherwise connect such disparate events and conduct.

The evidence is also improper under 404(b).  The government's conclusory assertions that the evidence is relevant to the defendant's "intent and motive…and absence of mistake" on Counts One and Two are devoid of any support or articulable theory.  The government seems to be arguing that because Professor Lieber lied in 2015 about ███████████████████ ███████████████████████████████, he must have also been lying years later when he was questioned about the Thousand Talents Program.  That is precisely the kind of propensity evidence barred by Rule 404(b).

Under either theory, the evidence is complicated and will cause undue delay.  Veering off into testimony about this laboratory will introduce a mountain of correspondence and testimony and will require production of discovery that was not within the Rule 16 material produced in this case.  And unlike a prior conviction, for example, this evidence is nuanced and subject to interpretation.  If admitted, it can be and must be contested, which will only cause delay and confusion.  *See United States v. Guzman-Ortiz*, Criminal No. 15-10182-RWZ, 2 (D. Mass. Jun. 15, 2018) (expressing concern about possible confusion and delay that a "trial within a trial" would present).



This proffered evidence concerns ████████████████████████ ██████████████████ *in addition to* the statement from that interview that is already charged in Count One.

This request is remarkable.  The government has had ███████ (Ex. 4 ████████████) and ████████████ (Ex. 5 ████████████) of the DCIS interview for three-and-a-half years.  It chose only to charge a specific statement—*i.e.,* that Professor Lieber falsely claimed that "he was never asked to participate in China's Thousand Talents Program and that he 'wasn't sure' how China categorized him."  (ECF 35).  It charged that statement in the original complaint, again in the initial indictment, and again in the Superseding Indictment.  That is the statement Professor Lieber has prepared to defend.

Now, at the eleventh hour, the government seeks to move the goalposts by introducing evidence that ████████████████████████████████.  What the government *actually* seeks is blanket authority to introduce all statements uttered by Professor Lieber ████████████, based on the government's naked assertion that they are all false, and therefore, automatically related to the charged statement.  This logic is flawed.  Not only is this an absolute failure to provide Professor Lieber with adequate notice, especially at this late juncture, this pivot would give the jury multiple *uncharged* alternative bases on which to convict the defendant beyond those charged in the Superseding Indictment.  Such a last-minute bait-and-switch would be a manifestly unfair variance.  *See United States v. Dove*, 884 F.3d 138 (2d Cir. 2018) ("variance occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment") (quoting *United States v. D'Amelio*, 683 F.3d 412, 417 (2d Cir. 2012)).  And there is no time left for Professor Lieber to commence an investigation into a brand new assortment of supposedly false statements.

The problems do not end there.  The proposed evidence is not intrinsic to the false statement charged in Count One.  ████████████████████████████████

██████████████████████████████████ and form the basis for Count
One.  The rest of ██████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████.

None of these issues are relevant to the Thousand Talents Program or Count One; they are
attempts at character assassination.  And because much of the information in the notes is not
false, and is in fact true, it would require trips down several complicated rabbit holes to explain
to the jury.

The evidence is also improper under 404(b).  Although the government mechanically
recites that these false statements on unrelated topics demonstrate Professor Lieber's "intent," its
boilerplate assertion is unsupported.  The government provides no explanation as to why
supposedly false statements about one topic show an intent to mislead on a completely unrelated
topic.  Clearly, the government hopes that the jury will conclude that Professor Lieber is a
dishonest character with a propensity for lying.  *See United States v. Gilbert,* 229 F.3d 15, 24 (1st
Cir. 2000) ("[W]e simply do not see how the jury could regard the [prior bad act] evidence as
specially relevant without drawing a forbidden inference of criminal propensity."); *United States
v. Lynn*, 856 F.2d 430, 436 (1st Cir. 1988) ("The ordinary inference here would seem very close
to the inference the Rule was designed to avoid.").



This request, like the previous one, is an ambush.  At the last minute, the government seeks to expand the bases for conviction—and the length of the trial—by adding to the proof multiple uncharged false statements.  The government's request refers to "[o]ther false and misleading statements made by the defendant to…others," which it claims are relevant to intent, "among other things."  Even if the request were not otherwise improper, this hollow "notice" does not provide any clue about what the defense should prepare for.

This vague and unspecific conduct cannot be "intrinsic" to Count Two.  The conduct charged in Count Two is alleged to have occurred "on or about January 10, 2019."  (ECF 35).  The proffered conduct covers forty days of correspondence—in hundreds of emails.  The document specifically referenced by the government, ██████████████████, is a drop in the bucket of a much longer and more complicated story.  *See* Ex. 6 ████████████ ██████████.  The discussions referenced by the government took place among multiple members of Harvard's administration, including members of the Office of General Counsel, the Office of Sponsored Projects, Research Support Administration, the Lieber Lab, and numerous administrative assistants and would be heavily contested by Professor Lieber.  It is clear that the government wishes to introduce these statements to provide the jury with another basis on which to convict that is not found in the Superseding Indictment.

This evidence—whatever statements it consists of—is not proper under 404(b) either.  It is offered to show that Professor Lieber allegedly made false statements to many people about many topics, and therefore that he must have made the false statements alleged in Count Two.  This is simply propensity evidence disguised as "intent" or "absence of mistake."  Moreover, to be comprehensible, the conduct will require the jury to appreciate the roles of numerous Harvard

administrative and compliance offices and personnel, which will cause unnecessary delay and confusion.

This request calls to mind the First Circuit's warning that "the prosecution too often pushes the limits of admissibility of [prior bad act] evidence, knowing its propensity power and gambling that the time constraints on the trial court, the court's broad discretion, the elasticity of Rule 404(b), and the harmless error rule of the appellate court, will save it from the consequences of overreaching." *Varoudakis*, 233 F.3d at 125.



This proffered evidence █████████████████████████████████████████████ ████████████████████████████████████████████████████. *See* Ex. 7 ████████████████████. The government itself cannot explain what information is available in Harvard's systems regarding these forms, it is unfamiliar with the complete version of the forms, and it has not produced them in discovery. The government does not even attempt to explain the connection between these forms and any of the charged conduct. Nonetheless, the government seeks to show that Professor Lieber's ████████████████████████████ are somehow relevant to the charged false statements to government agencies.

Nothing about the ████████████████████████ dating back to 2012 through 2015 is intrinsic to Counts One or Two. These forms predate the conduct charged in Counts One and Two by six years (Count One) and three years (Count Two). The conduct charged in Counts One and Two is alleged to have occurred on specific dates in 2018 and 2019; there is no allegation that the conduct started any earlier or was part of an ongoing scheme or plan that

stretched back to 2012.  Indeed, the forms at issue do not ask a single specific question about "talent programs," "participation" in such programs, or the Thousand Talents Program.  Nor is this a case like *United States v. Anming Hu*, No. 3-20-CR-21 TAV-DCP (E.D. Tenn. 2021) that involves grant program fraud through alleged falsification of university Conflict of Interest forms.

The proffered evidence also fails a 404(b) analysis.  The government's suggestion that the forms are incomplete and misleading is dubious and would be challenged vigorously by Professor Lieber.  Whether or not false statements were made on the forms is an assessment that cannot be made from the face of the forms and would require extensive explanation about the Harvard computer system that housed the online forms; the byzantine disclosure rules applicable to ███████████████████████ at *each* time, and the vagaries of Harvard's conflict-management process.  There is no better indication of the complexities of the forms than the fact that Harvard devotes an entire department, a team of compliance officers, and a labyrinth of a website to these forms.  ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████.

The forms do not tend to show "absence of mistake."  Volumes have been written about the complicated, unclear and ever-changing interpretations and requirements of university ██████████████████████.  *See United States v. Anming Hu*, No. 3-20-CR-21 TAV-DCP (E.D. Tenn. 2021) (granting motion for judgment of acquittal based in part on lack of clarity in university conflicts regime).  To further complicate matters, Harvard's forms were modified before, during, and after the charged conduct.  It is well-known to the government that to help navigate the peculiarities of these forms, Harvard faculty relied on specialists and administrators

from the Office of General Counsel, the Office of the Vice Provost, the Human Resources Department, and the Faculty of Arts and Sciences Research Administration office.  In an acknowledgment to the complexities of these forms, the government does not intend to call the heads of these departments to testify at trial.

In sum, admitting random and incomplete ██████████████████████ ████████████████ would be a gross misrepresentation and oversimplification of a complicated and highly-regulated conflict of interest regime.  The confusion that will result from admitting evidence of conduct that is remote in time, complicated, and governed by murky rules and regulations will unduly complicate and lengthen the trial and do violence to any search for the truth.



and



This proffered evidence refers to supposed "agreements" that are sporadically mentioned in emails, apparently aimed at Professor Lieber by persons in China.  *See* Ex. 8 ███████████ ███ ; Ex. 9 ████████████████ .  It is unclear whether or not these "agreements"—or other versions of them—were ever edited, finalized, consummated, or executed.  *See* ECF 196.

The government may claim that these "agreements" are "part and parcel" of the charged conduct.  They are not.  They are not alleged to be part of the charged false statements in Counts One or Two, and the government cannot otherwise connect them to Counts Three and Four. They were not performed contemporaneously with the charged conduct, and they did not facilitate the commission of the charged crimes.  *See U.S. v. Bowie*, 232 F.3d at 929.  Moreover, they appear to have been emailed to Professor Lieber by persons in China who will not appear at trial and not subject themselves to cross-examination.[2]

It is also impossible to see how this evidence is admissible under 404(b) without presuming Professor Lieber's guilt on the charged counts.  The government cannot explain how an email from China aimed at Professor Lieber and containing a draft ███████████ ██████ in 2011 or ███████████████████ in 2013, that may or may not have been executed, could provide "motive" to lie in 2018 or 2019.  This is simply an attempt to inject prejudicial atmospherics into the trial by dragging in superficial "evidence" of Professor's Lieber alleged contacts with China.



and

---

[2] Problems with documents from China overcoming authentication and hearsay issues are set forth in ECF 196 and incorporated by reference herein.

These categories of conduct refer to confusing ████████████ that occurred *after* the tax years implicated in Counts Three and Four (2013 and 2014).

These vignettes are not intrinsic to the charged conduct.  The tax crimes charged in Counts Three and Four relate to income that supposedly came from Wuhan University and a foreign bank account related thereto.  The correspondence proffered by the government does not involve Wuhan University or placement of money in a foreign bank account.  The correspondence has no relationship whatever to Wuhan, is not part of the necessary description of events leading up to the charged crimes, and does not go to any element of the charged offenses.  *See United States v. Souza*, 749 F.3d 74, 84 (1st Cir. 2014).  This uncharged conduct is in no way part of a scheme or series of transactions or some similar *modus operandi* as the charged offenses such that it would constitute intrinsic evidence.

The proffered conduct is not admissible under 404(b) either.  The emails referenced by the government cannot be offered to show Professor Lieber's "general" knowledge or awareness of tax implications; otherwise, every news article, pay stub, or e-mail concerning the general subject of taxation would be "relevant."  They lack any temporal connection, and they are not part of any alleged ongoing "plan."  The correspondence about the ██████████████ (Ex. 10 ███████████████) discusses one form of payment, and the correspondence with ██████████ (Ex. 11 ██████████████) cites another.  Thus, they show nothing consistent about knowledge, intent or plan.  Putting aside the issue of whether any payments were actually made—which is also unclear—there is nothing illegal about the act of receiving payments.  Indeed, the government has provided no justification for this proffered evidence, other than an empty recitation that the proof meets the standards of Fed. R. Evid. 404(b).  It does not.

**Conclusion**

For the foregoing reasons, defendant Charles Lieber respectfully requests that the Court preclude introduction of the first eight categories of evidence set forth in the government's November 23, 2021 disclosure letter.

Respectfully submitted,

By:  /s/ Marc L. Mukasey
Marc L. Mukasey (*pro hac admitted*)
Torrey K. Young (BBO# 682550)
Catherine M. Deist (*proc hac admitted*)
Stephanie Guaba

MUKASEY FRENCHMAN, LLP
570 Lexington Avenue, Suite 3500
New York, New York 10022
(212) 466-6400

*Counsel for Defendant Charles Lieber*

## CERTIFICATE OF SERVICE

I, Marc L. Mukasey, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 30, 2021.

 /s/ Marc L. Mukasey
Marc L. Mukasey