UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>CHARLES LIEBER )<br>)<br>Defendant. )<br>) | Case No. 1:20-cr-10111-RWZ |

**GOVERNMENT'S MOTION *IN LIMINE* TO
EXCLUDE IRRELEVANT EVIDENCE CONCERNING
HARVARD UNIVERSITY AND OTHER HARVARD FACULTY MEMBERS**

This case centers on whether Charles Lieber lied in two discrete instances about his association with China's Thousand Talents Plan (or "TTP") through Wuhan University of Technology ("WUT"): once during an in-person interview with agents from the Defense Criminal Investigative Service ("DCIS") on April 24, 2018, and again in a letter to the National Institutes of Health ("NIH") on January 10, 2019.[1]  The jury's consideration of this case will necessarily focus on the defendant: the nature of the *defendant's* association with the Thousand Talents Program and WUT; what the *defendant* told DCIS and NIH about that association; whether the *defendant* knew that his statements to DCIS and NIH were false; and the *defendant's* motive. Notwithstanding this focus, the defense is likely to introduce evidence that Harvard's leadership and some of its faculty members have engaged in various commercial and research-related activities in China over time.  Such evidence is irrelevant to the issues the jury will be asked to consider during the trial.  Whatever its scant probative value, evidence concerning unrelated

---

[1] Lieber is also charged with subscribing to materially false income tax returns and failing to disclose his Chinese bank account to federal regulators.  Broadly speaking, these charges stem from salary payments made to the defendant by WUT between 2012 and 2015.

activities of Harvard University and/or its faculty should be excluded pursuant to Federal Rules of Evidence 401 and 403 because it will confuse the issues, mislead the jury, and waste time.

Early in this case, the defendant signaled his interest in pursuing a defense based on the conduct of others rather than his own conduct. During discovery, the defense moved to compel the government to produce "Thousand Talents agreements and any correspondence, recordings, seals, signatures, certificates, confirmations, receipts, or other materials" related to other TTP participants. ECF No. 56 at 13-14. Separately, the defendant requested materials concerning other "Harvard faculty participating in the [TTP]," arguing that it was relevant to his (the defendant's) "subjective understanding" of what it means to "participate" in TTP. *See* ECF No. 141 at 9-10. The Magistrate Court rejected the defendant's requests in part because he presented no evidence that he was aware of these supposed activities at the time of the alleged false statements (such that they might have affected his state of mind or intent). *See* ECF No. 153 at 12.

The defendant's proposed exhibit list takes things one step further: he appears intent on presenting the jury with evidence of the activities of Harvard University and its employees in China over the last decade, or perhaps longer.[2] For example, several proposed defense exhibits are news articles from 2015 or earlier published in Harvard Magazine and on Harvard's website. Among other things, these articles describe visits to China by Harvard's former president and various members of Harvard's faculty. At least one of these exhibits discusses a longstanding Harvard-sanctioned collaboration with a Chinese university designed to study and reduce climate change. And other defense exhibits describe similar university-sanctioned activities in China during the early 2010s. None of these exhibits pertain to the defendant, much less the defendant's association

---

[2] Pursuant to the schedule set forth in the parties' joint status report submitted on September 28, 2021 (Dkt. #188), the parties exchanged preliminary exhibit lists earlier this week.

with the TTP and WUT. The relevance of these materials, therefore, is as much a mystery to the government as their admissibility.

At best, the defendant seems to want to argue that he was not the only person at Harvard engaged in activities in China or with Chinese universities during the 2010s. At worst, he intends to suggest that Harvard generally condoned unbridled collaborations in China by its faculty members during this time, but somehow tuned its back on the defendant when federal agencies inquired. Regardless of the defense's theory, this evidence has little or no probative value. As a general matter, Harvard's historical stance on international collaborations involving China is not relevant to any of the issues the jury will be asked to decide. The primary question the jury must answer is whether the defendant made deliberate false statements to DCIS during the April 2018 interview; and whether he deliberately caused Harvard to make a false statement to NIH in January 2019. The fact that other Harvard faculty have engaged in formal activities in China, with or without Harvard's consent, is simply not germane to this or any other issue in the trial. Stated differently, evidence that other Harvard-affiliated individuals engaged in activities in China does not make it any more or less likely that *this* defendant lied to DCIS and NIH. This evidence will only serve to mislead the jury, confuse the issues, and waste time. *See* Fed. R. Evid. 403.

For the same reasons, the defendant must not be permitted to probe witnesses — namely those who are or have been employed by Harvard — about other Harvard-affiliated individuals associated with or rumored to be associated with the Thousand Talents Plan. This evidence serves absolutely no purpose other than to confuse the jury by improperly suggesting that they should somehow weigh the defendant's conduct against the conduct of others. Any such comparison has no probative value here for many reasons, not the least of which is that the defendant is not charged with participating in a talent recruitment program. He is charged with lying about it. His

innocence or guilt must be determined by a fair and unbiased assessment of the defendant's statements and the defendant's intent. The non-criminal conduct of other individuals, wholly unrelated and unknown to the defendant, is irrelevant to the jury's assessment of whether the defendant lied as alleged.

## Conclusion

For the reasons set forth above, the government respectfully asks the Court to grant this motion and exclude from the trial evidence concerning the unrelated activities of Harvard University and its faculty members in or involving China.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   */s/ Jason A. Casey*
Jason A. Casey
James R. Drabick
Assistant United States Attorneys

Dated: December 3, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed of December 3, 2021, through the ECF system, which will provide electronic notice to counsel as identified on the notice of Electronic Filing.

*/s/ Jason A. Casey*
Jason A. Casey
Assistant United States Attorney