UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:20-cr-10111-RWZ |
| ) | |
| CHARLES LIEBER ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
PURSUANT TO FEDERAL RULES OF EVIDENCE 403 AND 404(b)**

The defendant moves *in limine* to preclude the government from introducing broad swaths of relevant evidence concerning his affiliation with Wuhan University of Technology ("WUT") and concerning his many intertwined and cascading falsehoods to Harvard and the Department of Defense. He also seeks to exclude relevant evidence concerning his knowledge of his tax obligations and his intent to evade them. His motion should fail. The evidence in this case concerning the scope and nature of the defendant's affiliation with WUT – the entity through which he is alleged to have participated in the Thousand Talents Program – and the many false statements he made about WUT and the Thousand Talents Program to Harvard and the Department of Defense cannot be neatly disentangled. Put simply, the conduct the defendant seeks to keep from the jury is part and parcel of his alleged crimes. And even if the conduct could be deemed extrinsic to the charged events, the evidence the government intends to offer on these matters is admissible for multiple permissible reasons under Federal Rule of Evidence 404(b)(2), including to prove the defendant's intent, knowledge, motive, plan, and absence of mistake. This is particularly true given that the defendant apparently intends to put forth a good faith defense at trial.

**Background**

As described more fully in the Government's Trial Brief (Dkt. #208), the defendant has been charged by Superseding Indictment with making false statements related to his involvement with China's Thousand Talents Program, subscribing to materially false income tax returns, and failing to file Reports of Foreign Bank and Financial Accounts ("FBARs") with the IRS disclosing his interest in a Chinese bank account. As to the false statements charges, they concern (i) the defendant's statements to investigators from the Department of Defense's Defense Criminal Investigative Service ("DCIS") that he was never asked to participate in the Thousand Talents Program and that he "wasn't sure" how China categorized him, and (ii) the defendant's statement to the National Institutes of Health ("NIH") that he never participated in the Thousand Talents Program.[1]  *See* Superseding Indictment ¶¶ 32, 34, 43, 45. As to the false tax return charges, they concern the defendant's alleged receipt of salary from WUT as part of the defendant's participation in the Thousand Talents Program, which salary the defendant failed to report on this tax returns. *Id.* ¶¶ 47-48.

To prove his guilt on Counts One and Two, the government will need to prove not just that the defendant made material false statements, but that he did so knowingly and willfully. *See* Gov't's Proposed Jury Instructions at 9 (Dkt. #203). And to prove his guilt on the false tax returns charges, the government will need to prove not just that his tax returns were false as to a material matter, but that the defendant signed the returns willfully and knowing they were false. *Id.* at 12.

---

[1] The government alleges that the defendant made the false statements verbally to the DCIS investigators and that he caused his employer, Harvard University, to make the false statements to NIH, which were transmitted in a letter.

In other words, as to Counts One through Four, the defendant's intent is on trial just as much as the falsity of the defendant's statements and tax filings.[2]

On November 23, 2021, the government provided notice to the defendant of certain categories of evidence it anticipated it might present at trial. The notice identified the defendant's contemporaneous other contracts involving WUT; false statements made by the defendant to Harvard and DCIS that are closely related to those charged in the indictment, as well as related omissions made by the defendant in conflict-of-interest disclosures submitted to Harvard; and two instances where the defendant stated a preference for how he wanted to receive money for work performed in China. The notice declared the government's position that these areas of evidence are intrinsic to the offenses charged. Nevertheless, the government explained that it was providing the notice in an abundance of caution should the defendant believe the evidence falls only within the ambit of Rule 404(b). *See* Ex. 1 (Sealed) to Def.'s Mem. in Support (Dkt. #202) (hereinafter the "Gov't's Notice Letter).

The defendant's motion *in limine* argues that, for eight areas identified by the government, the evidence is neither intrinsic to the charged crimes nor admissible for a permissible, non-propensity purpose under Rule 404(b). The defendant further complains that the categories of evidence will necessitate "mini-trials" that will unduly complicate and delay the proceedings. The defendant's arguments are without merit.

## Argument

Notwithstanding the defendant's protestations, it remains the law that evidence of acts that are "part and parcel of the core events undergirding the crime for which [the defendant is] charged … [are] not 'other acts' evidence at all, and, accordingly, Rule 404(b) is not implicated." *United States*

---

[2] The defendant's intent is also relevant to Counts Five and Six – the FBAR charges – but the evidence at issue in the defendant's motion *in limine* does not pertain to those counts.

*v. Roszkowski*, 700 F.3d 50, 56 (1st Cir. 2012). Indeed, one of the cases the defendant cites in his broadside attack on the "intrinsic" evidence doctrine actually reiterates this sensible approach, stating that "if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) (adding that "some uncharged acts performed contemporaneously with the charged crime may [also] be termed intrinsic if they facilitate the commission of the charged crime"). The First Circuit has further explained that evidence "concerning matters intrinsic to the crime charged does not trigger" Rule 404(b), and "[s]uch 'intrinsic' evidence includes the necessary description of the events leading up to the charged crime." *United States v. Robles-Alvarez*, 874 F.3d 46, 50–51 (1st Cir. 2017) (internal citations and quotations omitted). Intrinsic evidence also includes evidence that goes to "an element of the charged offense." *United States v. Souza*, 749 F.3d 74, 84 (1st Cir. 2014)

Here, the evidence the defendant seeks to exclude is indeed "part and parcel of the core events undergirding" the crimes charged. Even if it were not, however, it is still admissible for one or more permissible purposes. Under Federal Rule of Evidence 404(b)(1), prior act evidence that is not intrinsic to the charged crime cannot be admitted if its only purposes is to show a propensity toward criminal activity. But prior act evidence *is* admissible if it has "a special relevance, i.e., a non-propensity relevance, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *United States v. Centeno-Gonzalez*, 989 F.3d 36, 51 (1st Cir. 2021). Many of these permissible purposes are present here, which is unsurprising given that admissible prior act evidence is a common feature in false statement cases. *See, e.g.*, *United States v. Sebaggala*, 256 F.3d 59, 67 (1st Cir. 2001) (affirming the admission of evidence under Rule 404(b) of stolen and altered travelers' check as probative of motive on the charged false statement counts); *United States v. Cancelliere*, 69 F.3d 1116, 1124 (11th Cir. 1995), as amended on clarification (Feb. 2, 1996) (affirming admission, in bank fraud and false statements case, of evidence reflecting that

defendant made same misrepresentations to uncharged banks as he was making to the charged banks); *United States v. Magoti*, 352 Fed. App'x 981, 984 (6th Cir. 2009) (affirming admission of evidence that defendant had backdated four I-9 forms for her employees in false statements case for backdating her own I-9 form).

### I. The Defendant's Other Contemporaneous Agreements with WUT and Other False and Misleading Statements to Harvard and DCIS are Admissible.

*A. The Contemporaneous Agreements and Other False and Misleading Statements are Part and Parcel of the Core Events in this Case.*

While the government's notice letter broke out various areas of evidence into distinct categories for clarity purposes, the reality is that six of the eight areas are unavoidably enmeshed together with the charged conduct, and therefore the evidence about all six is admissible. Those six areas include: (i) the two agreements the defendant entered into with WUT in close proximity to, and as part of the evolution and implementation of, his Thousand Talents Program agreement and participation (Items 5 & 6 in the Gov't's Notice Letter); (ii) the defendant's incomplete and misleading financial conflicts of interest disclosures to Harvard during the timeframe of his Thousand Talents Program participation (Item 4); (iii) the defendant's false and misleading statements to Jeremy Bloxham, then the Dean of Science at Harvard, about the WUT lab bearing Harvard's name that the defendant supported during and in connection with his Thousand Talents Program participation (Item 1); and (iv) the other related false statements the defendant made to Harvard and DCIS in 2018 while he was denying his participation in the Thousand Talents Program (Items 2 and 3). Put simply, the defendant's participation in the Thousand Talents Program did not take place in a vacuum, nor did his false statements.

To begin, the government's notice letter cites the "Contract for Strategic Scientist's Appointment" that the defendant entered into with WUT in or about November 2011 (Item 5). That contract and appointment are part and parcel of WUT's invitation to the defendant to participate

in Thousand Talents Program. ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████. As such, his entry into the Strategic Scientist contract is linked to not just the larger description of events concerning his Thousand Talents Program participation, but it is directly relevant to whether he made a material false statement about whether he had ever been *asked* to participate in the Program (one of the alleged false statements in Count One).

The Strategic Scientist contract is also linked to the defendant's misleading and/or incomplete financial conflicts of interest disclosures to Harvard, which are in turn linked to Harvard's letter to NIH containing his false statements. ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████ As such, these disclosures were the first of many falsehoods the defendant would submit to Harvard in relation to WUT and his Thousand Talents

6

Program participation. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ That false description was consistent with, and it enabled the defendant to cause, the charged false statement to NIH that he had never participated in the Thousand Talents Program. Put another way, if the defendant had been honest in his conflict-of-interest disclosures between 2012 and 2015, it would have been impossible for him to cause Harvard – which was reviewing those disclosures to inform its response to NIH – to have made a false statement. In this way, the 2012 through 2015 disclosures are intertwined not just with the Strategic Scientist contract (which is itself intertwined with the defendant's invitation to join the Thousand Talents Program), but with the defendant's false statements about his participation in the Thousand Talents Program as well.

A similar analysis applies to the Academic Cooperation Agreement the defendant entered into with WUT on behalf of Harvard in or about January 2013 (Item 6) and the defendant's subsequent false and misleading statements to Harvard Dean Jeremy Bloxham about the defendant's involvement in WUT's use of Harvard's name (Item 1). In January of 2013, approximately six months into the defendant's alleged participation in the Thousand Talents Program, the WUT Professor sent the defendant a draft "Academic Cooperative Agreement" between Harvard and WUT. *See* Ex. 9 (Sealed) to Def.'s Mem. in Support. The stated purpose of the agreement, which had a five-year effective term, was to "carry out advanced research and development of nanowire-based lithium ion batteries." *Id.* at 4. Such research would be conducted

7

by WUT researchers who would visit Harvard for two months each year and Harvard researchers visiting WUT for one to two weeks per year. *Id.* ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████ This tethering made the Academic Cooperation Agreement, like the Strategic Scientist contract, intertwined with the defendant's Thousand Talents Program participation. And the evidence will show that the defendant executed the agreement on behalf of Harvard, despite having no authority whatsoever to bind Harvard. *See* Jan. 11, 2013 Lieber Email, attached at Ex. B (Under Seal).

Harvard, however, caught wind of the use of its name by WUT in late 2014 after an administrator did some searching on the internet. Specifically, testimony at trial will show that Harvard staff brought to Dean Bloxham's attention online evidence of a laboratory at WUT named the "WUT-Harvard Joint Nano Key Laboratory," which the defendant was identified as directing. Finding no evidence that Harvard had authorized the use of its name in this way, Dean Bloxham approached the defendant about it in early 2015. Numerous emails between the defendant and the WUT Professor between 2011 and early 2015 reflect that defendant was well aware of and allowed the "WUT-Harvard" lab name and that he referred to the lab by that name himself. ████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ But rather than confess error

8

to Dean Bloxham and/or truthfully explain the nature of his collaboration with WUT – i.e., that he allowed the use of Harvard's name and had signed an Academic Cooperative Agreement on Harvard's behalf as part of his Thousand Talents Program participation – the defendant pled ignorance. He told Dean Bloxham that he had nothing more than an informal collaboration with WUT, and that the WUT Professor had exceeded the defendant's permission by using Harvard's name. ████████████████████████████████████████████████████████████████████████████████████████████████████████ By doing so, the defendant locked in his (false) story, such that he was compelled to tell the same story in 2018 and 2019 when DCIS and NIH came knocking.

Which leads to the final two categories of intertwined evidence: the defendant's other false and misleading statements to DCIS and to Harvard when responding to DCIS's and NIH's questions. While the defendant cries foul about the government supposedly moving the goalposts, the false statements at issue in these categories are, and have been, obvious and intrinsic since the beginning of this case. They are the defendant's false statements about the nature and scope of his affiliation with WUT – the entity through which he participated in the Thousand Talents Program – and the fact and extent of his salary payments from WUT (the salary that undergirds the false tax return charges in Counts Three and Four).³ Following the defendant's (false) story to Dean Bloxham, the defendant invoked and relied on the same (false) story in his interview with DCIS

---

³ The Superseding Indictment, for example, makes clear for each of Count One and Count Two the relevant topics about which the defendant was asked – including foreign affiliations generally and, by Harvard, "any connection he might have had to WUT." *See* Superseding Indictment ¶¶ 32, 34. And the allegations about the defendant's conduct throughout the Superseding Indictment make clear that he is alleged to have had affiliations he did not disclose and received salary he did not report. Finally, the jury instructions will make clear which alleged false statements – namely, the ones specifically charged in the Superseding Indictment only – are the false statements that can support a conviction. *See* Gov't's Proposed Jury Instructions at 6.

and in his interactions with Harvard, including by providing his 2015 "cease and desist" email to both as proof that he had no formal association with WUT. In so doing, the defendant himself enmeshed his 2015 false statements with his 2018 and 2019 false statements. Common sense dictates that he could not backtrack from his (false) story from 2015 or he would risk significant consequences at Harvard, where he had become the chair of his department. In addition, the false statements about the scope of his WUT relationship and his salary were part and parcel of his false statements about the Thousand Talents Program for the basic reason that his WUT relationship and his salary were tied to his participation in the Program. The defendant's emails with the WUT Professor, as described above, reflect that the Thousand Talents Program was the linchpin of his relationship with WUT. And the salary he received – which he failed to report on his taxes, and about which he also lied to DCIS and Harvard – is alleged to have been paid pursuant to his Thousand Talents Program contract. In short, his false statements about the Thousand Talents Program were simply the culmination and capstone to his related false statements about WUT generally and the money he was paid. As such, evidence about those false statements – and about his other agreements with WUT and his other false and misleading statements to Harvard in his conflict-of-interest disclosures and to Dean Bloxham – is intrinsic to the charged crimes and admissible.

   B. *The Contemporaneous Agreements and Other False and Misleading Statements are Also Admissible Under Rule 404(b).*

In any event, these same categories of conduct and evidence are admissible for permissible purposes under Rule 404(b). Most obviously, several of the categories of evidence outlined in the government's notice are probative of an absence of good faith in the defendant's interactions with DCIS and with Harvard when he was responding to questions about the Thousand Talents Program. As the defendant's proposed jury instructions suggest, the defendant apparently intends

10

to argue that the government cannot meet its burden that the defendant acted with the requisite willful intent. *See* Def.'s Proposed Request to Charge at 5 (Dkt. #207) (Proposed "Good Faith Doctrine" Instruction). Evidence supporting the absence of good faith – to include evidence that the defendant made other related false statements similar to the charged false statements, failed to report his Thousand Talents Program participation, and misled Dean Bloxham when confronted about WUT's use of Harvard's name – is therefore highly probative of his intent and his absence of mistake, and it all should be admitted for that purpose. *See United States v. Grissom*, 44 F.3d 1507, 1513 (10th Cir. 1995) (affirming admission of defendant's prior acts of submitting false information in false statements case where defendant offered a good faith defense). These same categories are all also highly probative of the defendant's motive, another basis for admission under Rule 404(b). Simply stated, the fact that the defendant failed to disclose his Thousand Talents Program participation to Harvard in his conflict-of-interest disclosures (which disclosures Harvard reviewed to prepare its response letter to NIH), and the fact that he misled Dean Bloxham about the true nature his WUT relationship, is strong evidence of his motive to continue to provide false answers in 2018 and 2019 to DCIS and NIH.

The evidence concerning the defendant's Strategic Scientist contract and appointment and his entry into the Academic Cooperation Agreement on behalf of Harvard is also admissible to show the defendant's knowledge. Two of the false statements the defendant is alleged to have made are that he was never asked to participate in the Thousand Talents Program and that he "wasn't sure" how China characterized him. The evidence regarding these two related agreements is probative of the defendant's knowledge that these statements were false. ███████

████████████████

████████████████

████████████████

11

▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬ In turn, the fact that he acted on that request and signed the agreement is probative of his knowledge that WUT considered him a member of the Program. Accordingly, because all these areas of evidence are admissible for permissible 404(b) purposes, and do not rely on a propensity inference, this evidence is admissible.

## II. The Tax Evidence is Also Admissible.

The defendant also seeks to exclude two emails relevant to the tax charges in Counts Three and Four, which emails are identified in Items 7 and 8 in the government's notice. *See* Ex. 1 (Sealed) to Def.'s Mem. in Support. ▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬

These emails are admissible to prove that the defendant "willfully and knowingly" filed false tax returns, which is an element of the offense. *See* Gov't Proposed Jury Instructions at 12; *Souza*, 749 F.3d at 84 (providing that intrinsic evidence includes evidence that goes to "an element of the charged offense"). The government must prove that the defendant knew his tax returns for 2013 and 2014 were false as to a material matter – in this case, false because he failed to report his income from WUT. The two emails described above are both probative of the defendant's

knowledge of the tax implications flowing from whether, and how, one receives money. As such, they are admissible pursuant to Rule 404(b), at a minimum. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████. As such, the email is probative of the defendant's knowledge of his tax obligations. Rule 404(b) permits admission of these emails for these reasons.

### III.   Rule 403 Does Not Bar the Proposed Evidence.

Finally, the defendant's arguments that the evidence discussed herein should be excluded under Rule 403 must also be rejected. The defendant's Rule 403 argument does not appear to be one of unfair prejudice, but rather only undue delay. For one, as the above discussion makes clear, the evidence the defendant seeks to exclude is closely wrapped up with the evidence of the defendant's crimes. As such, even if the Court were to exclude the evidence the defendant complains about, it would not materially reduce the number of exhibits, materially shorten the government's witness list, or materially shorten the events to be explored on direct exam. Nor will it necessitate "mini-trials"; rather, because the evidence concerns events and conduct contemporaneous (and intertwined) with the charged conduct, introduction of the evidence will simply be part of the same trial—with the same issues and defense arguments—that will take place regardless.

**Conclusion**

For the reasons set forth above, the government respectfully asks the Court to deny the defendant's motion in its entirety.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:  */s/ James R. Drabick*
Jason A. Casey
James R. Drabick
Assistant United States Attorneys

Dated: December 7, 2021

CERTIFICATE OF SERVICE

I hereby certify that this document was filed of December 7, 2021, through the ECF system, which will provide electronic notice to counsel as identified on the notice of Electronic Filing.

*/s/ James R. Drabick*
Jason A. Casey
Assistant United States Attorney