UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:20-cr-10111-RWZ |
| ) | |
| CHARLES LIEBER ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S MOTION TO ADMIT
EXHIBITS AND FOR LIMITING INSTRUCTION**

For the below reasons, the government respectfully requests that the Court (i) formally admit those exhibits that were only provisionally admitted on Thursday, December 16, 2021, and (ii) provide the jury with a general limiting instruction regarding communications admitted into evidence for reasons other than the truth of the matter asserted.

**Background**

On the third day of trial, the government called FBI Special Agent Kara Spice as a witness. A substantial portion of Agent Spice's testimony included her identification and reading of exhibits containing emails between the defendant and third parties, many of whom were in China. At the outset of this portion of Agent Spice's testimony, the government introduced a string of exhibits reflecting an ongoing discussion and negotiation of a Thousand Talents Program contract and related conduct. Specifically, the exhibits included:

    i)      emails concerning the defendant's agreement to enter into a Strategic Scientist contract with Wuhan University of Technology (WUT), which contract contemplated that the defendant would gain a "Chinese-government sponsored

    position through successful application for various Chinese talent-related projects" (Exs. 11 & 12);

ii) emails immediately after a trip to WUT only weeks later concerning the defendant's "hopes [that] we can push forward per discussions to build up the joint laboratory to a truly world-level facility" and his receipt of PDF printouts of the lab's website for his review (Exs. 13 & 14); and

iii) email exchanges reflecting the defendant's receipt of initial and revised versions a Thousand Talents Program contract, his subsequent agreement to the revised version, and WUT's notice to the defendant that it had received the signed contract (Exs. 17a and 18-26).

With the exception of Exhibit 17a, the defendant objected to all of these exhibits as they were introduced, and the Court expressly admitted some of them only *de bene esse* – i.e., provisionally – including specifically Exhibits 12 and 13. The Court, however, permitted all of them to be viewed by and read to the jury, and the Court's colloquy with the parties as the documents were introduced indicated to government counsel that all of these exhibits (with the exception for 17a, to which the defendant did not object) might also have been subject to provisional admittance only (in an abundance of caution and for purposes of this motion, referred to collectively as the "Provisionally Admitted Exhibits").

  Thereafter, the government introduced and the Court admitted numerous exhibits reflecting the defendant's conduct in accordance with the revised Thousand Talents Program contract found in Exhibit 23 (one of the Provisionally Admitted Exhibits). For example, the contract included provisions requiring the defendant to mentor WUT students as well as publish articles in journals in the name of WUT. *See* Ex. 23 at 4-5. Exhibits admitted into evidence reflect him doing both.

*E.g.*, Exs. 31, 33, 49, 59, 60, 158a, and 159.  In addition, the contract provided that WUT would "conduct regular supervision and review" of the defendant's "working performance," and the government introduced exhibits reflecting the defendant responding to requests from WUT Professor Liqiang Mai to take certain actions for the purpose of the defendant's Thousand Talents Program evaluation.  *E.g.*, Exs. 156-57, 166-67.  The contract also called for the defendant to be paid, and the government introduced numerous exhibits reflecting the defendant's requests to be paid and his verbal admissions that he was in fact paid.  *E.g.*, Exs. 44, 52, 151, 304.

As Agent Spice's testimony continued, the government introduced numerous additional email exchanges between Prof. Mai and the defendant, as well as certain other communications to the defendant from individuals identified as representatives of W.U.T.  The defendant objected to many of them on hearsay grounds, arguing that Prof. Mai's emails were hearsay and, in some instances, contained hearsay within hearsay when they referenced statements by WUT's president.  The Court admitted a number of these exhibits and provided limiting instructions at various points regarding the limited purpose for which the jurors could use Prof. Mai's emails.

Finally, during cross-examination of Agent Spice (which cross-examination is ongoing at the time of this motion), defense counsel also asked Agent Spice about three of the Provisionally Admitted Exhibits – exhibits to which he had earlier objected to their admittance.  Specifically, defense counsel asked Agent Spice about Exhibit 11 (the Strategic Scientist contract), Exhibit 14 (PDF copies of the WUT-Harvard joint lab website), and Exhibit 23 (the revised Thousand Talents Program contract).

## Argument

The Provisionally Admitted Emails are relevant and admissible and, for those that are only provisionally admitted at this juncture, the "provisional" label should be lifted.  In addition, to

ensure the jury properly considers those portions of the exhibits that contain emails from Prof. Mai or other communications from WUT representatives, the government proposes a general limiting instruction be read to the jury at an appropriate time before deliberations.

The government has introduced substantial evidence that the Provisionally Admitted Emails reflect the defendant's negotiation of and entry into a Thousand Talents Program contract. The Provisionally Admitted Emails and other exhibits admitted to date further reflect that the discussion and negotiation of that contract began with the defendant's entry into the Strategic Scientist contract and that the defendant's Thousand Talents Program participation (and later false statements about it) were intertwined with the WUT-Harvard joint laboratory. As such, the Provisionally Admitted Emails are relevant and part and parcel of the conduct that underlies the charged crimes. *See United States v. Roszkowski*, 700 F.3d 50, 56 (1st Cir. 2012) (noting that evidence of acts that are "part and parcel of the core events undergirding the crime for which [the defendant is] charged … [are] not 'other acts' evidence at all, and, accordingly, Rule 404(b) is not implicated").

In addition, the fact that the Provisionally Admitted Exhibits contain emails from Prof. Mai is of no moment. First, the emails from Prof Mai concerning the negotiation of the Strategic Scientist and Thousand Talent Program contracts are not to be admitted for the truth of the matter asserted, but rather as context for the defendant's emails in response and as evidence of the *acts* of Prof. Mai and the defendant negotiating these contracts.[1] *See United States v. Colon-Diaz*, 521 F.3d 29, 33–34 (1st Cir. 2008) ("While an out-of-court statement may be hearsay if offered to prove the truth of the matter asserted, it is nonhearsay if offered for some other purpose, including when offered

---

[1] *See generally* Gov't's Opp'n to Def. Motion in Limine at 5-8 (Dkt. #200).

"'only for context.'"); *United States v. Diaz*, 597 F.3d 56, 65 n.9 (1st Cir. 2010) (providing that "'verbal acts' include statements whose utterance 'gives rise to legal consequences,' such as the words used by contracting parties in reaching an agreement …."*)*; *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 567, n.50 (D. Md. 2007) ("[T]he hearsay rule does not exclude relevant evidence as to what the contracting parties said or wrote with respect to the making or the terms of an agreement."). In addition, Prof. Mai's emails are also properly admitted for other non-hearsay purposes; namely to prove the defendant's knowledge, state of mind, intent, and absence of mistake. *See* Court's Order on Motions in Limine at 1, Dkt. # 217 (providing the government may introduce evidence regarding the Thousand Talents Program contract *de ben esse* for purposes of showing state of mind, knowledge, [and] intent…."). For example, regardless of whether Prof. Mai's statements in the emails themselves are true, the simple fact that the defendant received and responded to email communications from Prof. Mai concerning the Thousand Talents Program contract are relevant to whether Prof. Lieber knew he had been asked to participate (and did participate) in the program, whether Prof. Lieber knew how he was categorized by China, and whether Prof. Lieber willfully told falsehoods about the same. *See* MCCORMICK ON EVIDENCE § 249 ("A statement that D made a statement to X is not subject to attack as hearsay when its purpose is to establish the state of mind thereby induced in X, such as receiving notice or having knowledge[.]") (citing cases). These conclusions are reinforced by the sheer number of emails between Prof. Mai and the defendant that have been admitted into evidence in which Prof. Mai references the defendant's Thousand Talents Program participation. These statements by Prof. Mai are not offered by the government for the truth of the matter(s) asserted, but rather as evidence of the defendant's state of mind when he (allegedly falsely) stated that he was never asked to participate in the program, did not participate, and was not sure how China categorized him.

Given these permissible non-hearsay uses, the government respectfully suggests that it is appropriate to provide a limiting instruction to the jury regarding communications the defendant received from WUT representatives, including Prof. Mai. *See, e.g.*, *United States v. Simon*, 12 F.4th 1 (1st Cir. 2021) (affirming limiting instruction for permissible non-hearsay use of out-of-court statement and noting that "we long have held that courts may presume that jurors will follow the judge's instructions"); *United States v. Colon-Diaz*, 521 F.3d at 33–34 (holding that district court "adopted the proper procedure" when it issued a limiting instruction regarding permissible non-hearsay use of an out-of-court statement). To that end, the government proposes that the Court issue the following general limiting instruction at an appropriate juncture before jury deliberations[2]:

> A number of exhibits were entered during this trial that reflected communications the defendant received from individuals identified as associated with the Wuhan University of Technology, including WUT Professor Liqiang Mai. At various points, I instructed you that the communications the defendant received from Prof. Mai and other WUT representatives may only be used for limited purposes in your deliberations. I will reiterate and further explain that instruction now. You may only consider emails and other communications the defendant received from WUT representatives (i) for context for the defendant's responses, if any, or (ii) for the defendant's state of mind, knowledge, and/or intent. You may not consider such

---

[2] The government endeavored to reach agreement with the defendant on this proposed instruction but agreement was not reached as of the filing of this motion. The government will continue to confer with the defendant on this matter.

communications for the truth of the matter asserted in the emails or other communications from Prof. Mai and other WUT representatives. For example, Prof. Mai's emails are not to be considered as evidence of the truth of Prof. Mai's assertions regarding any particular event or action. Rather, Prof. Mai's emails may only be considered insofar as you find that they are relevant context for the defendant's responses, if any, or if you find that Prof. Mai's emails tend to prove the defendant's state of mind, knowledge, and/or intent regarding the charged offenses. You may, however, always consider the defendant's own statements for the truth of what is asserted.

## Conclusion

For the reasons set forth above, the government respectfully requests that the Court (i) formally admit those exhibits that were only provisionally admitted on Thursday, December 16, 2021, and (ii) provide the jury with a general limiting instruction regarding emails admitted into evidence for reasons other than the truth of the matter asserted.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:  */s/ James R. Drabick*
Jason A. Casey
James R. Drabick
Assistant United States Attorneys

Dated: December 19, 2021