UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHARLES LIEBER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)    Criminal No. 20-cr-10111-RWZ<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION
TO ADMIT EXHIBITS AND FOR LIMITING INSTRUCTION**

Defendant Charles Lieber respectfully requests that this Court (i) deny the exhibits that were provisionally admitted into evidence; and (ii) in the event that this Court admits certain exhibits, Professor Lieber requests that this Court provide the jury with a limiting instruction relevant to each exhibit.

## I. Background

The government's star witness in this case is a summary case agent who spent two days reading approximately 75 email exchanges between Professor Lieber and unavailable, phantom individuals who will not testify in this trial.

The email exchanges covered a whole host of topics over the course of 8 years, which the government was able to sneak into evidence under the guise that the statements from these unavailable declarants were all admissible under some inarticulate hearsay exception or non-hearsay theory. At trial, the government asserted that all statements made to him via email (regardless of whether he responded) were all relevant to Professor Lieber's "state of mind" when he spoke to the Department of Defense ("DOD") and National Institutes of Health ("NIH") years after the fact, and the government stated generally that they were admissible as non-

hearsay, for "continuing communications" (which is stated nowhere in the Federal Rules of Evidence), or for Professor Lieber's "knowledge, state of mind, intent, and absence of mistake." [ECF 234, p. 5].

This Court admitted some emails, though it is unclear on what non-hearsay basis or hearsay exception. For others, this Court permitted the government to publish the emails to the jury in that they were conditionally admissible (though also unclear on what grounds this Court reserved judgment).

As such, Professor Lieber respectfully requests that this Court rule that the conditionally admissible documents are, in fact, not admissible for the reasons stated herein. Additionally, Professor Lieber requests that this Court provide a jury instruction that articulates the ground(s) for admissibility for *each* email admitted under a non-hearsay theory or hearsay exception. If the full contents of almost 75 emails are admitted, there is no conceivable jury instruction that can safeguard Professor Lieber against the extreme prejudice that he will suffer. Likewise, a limiting instruction after the presentation of each email or each statement will be repetitive, unyielding, and wholly ineffective.

## II. Argument

### a.  Government Exhibits: GX 11, GX 12, GX 13, and GX 14

Government Exhibits (hereinafter "GX") 11, GX 12, GX 13, and GX 14 all contain impermissible FRE 404(b) evidence – emails regarding completely separate events between Professor Lieber and a third party including: (1) discussions regarding a Strategic Scientist agreement in November 2011, which took place 8 months before the government alleges that the Thousand Talents Plan was signed, and (2) discussions in December 2011 regarding a joint lab

between Harvard and Wuhan University of Technology ("WUT"), which took place 7 months before the government alleges that the Thousand Talents Plan was signed.

The government cannot explain how these emails from China sent to Professor Lieber in 2011 could provide "motive" to lie in 2018 and 2019 to investigators about his alleged involvement with the Thousand Talents Plan between 2012 and 2015.  The charged conduct does not state – nor does the government allege – a scheme, though the government wishes to string every event between 2011 and 2018 in effort to inject prejudicial atmospherics into the trial by dragging in superficial "evidence" of Professor's Lieber alleged contacts with China.  The government clearly sees a delineation between the joint lab, Strategic Scientist, and the Thousand Talents Plan, because it is able to identify specific emails where these separate events are refenced.

Additionally, statements written by Professor Mai, a third-party, unavailable declarant, are hearsay, and are not admissible under any hearsay exception.  Statements made by Professor Mai in GX 11 and GX 12 are not admissible for Professor Lieber's state of mind and knowledge regarding his participation in the Thousand Talents Program.  In GX 11, GX 12, GX 13, and GX 14, Professor Mai's unsolicited statement that Professor Lieber had been recommended for "The Recruitment Program of Global Experts" can only affect Professor Lieber's state of mind and/or knowledge of his involvement with the Thousand Talents Plan if (1) Professor Mai's statement is true (which means that it is inadmissible hearsay); and (2) Professor Lieber understood that this plan was synonymous for the Thousand Talents Plan (which is nowhere in evidence).

Furthermore, statements written by either Professor Lieber or Professor Mai regarding a joint lab between Harvard and Wuhan University of Technology in December 2011 are hardly

probative as to whether Professor Lieber knew that he was a participant of the Thousand Talents Plan, which was not specifically mentioned by either party until months later.

b.  **Government Exhibits: GX 18, GX 19, GX 21, GX 22, GX 23, GX 25, GX 26**

The government seeks to admit six (6) exhibits in which Professor Lieber does not respond [GX 18, 19, 20, 21, 22, 25]. To find that these emails are admissible to show Professor Lieber's state of mind or knowledge that he participated in the Thousand Talents Plan is absurd. First, the only way that Professor Mai's statements could be considered for Professor Lieber's state of mind is if Professor Mai's statements and assertions about the Thousand Talents Plan are *true*. Second, whether Professor Lieber actually read the email or noticed any portion relating to a mention of the Thousand Talents Plan is purely speculative and hardly probative.

The government would like to argue that an email that Professor Lieber *never responded to* is relevant Professor Lieber's state of mind *years later*. The government has no evidence that these emails were ever viewed by Professor Lieber, let alone that they would have some bearing on his state of mind years after they were sent to him. Statements from Professor Mai wherein he mentions that the parties are negotiating, or asks for comments and suggestions regarding the contract, or relays that some other person ("President Zhang") thanks Professor Lieber for his comments do not qualify as verbal acts. All cases cited by the government have one thing in common: the existence of a contract, or the unrefuted fact that a contract or contractual relationship exists. That is not the case here. Here, the government has a Word document that it purports to be a valid contract, and it seeks to use language such as "give your further comments/modifications if you have" to prop it up. [e.g., GX 22]. These emails from Professor

4

Mai do not contain a statement that "affects the legal rights of the parties," *see* FED. R. EVID. 801 advisory committee's note, or an utterance of "operative fact that gives rise to legal consequences," 31A C.J.S. Evidence § 477.  This is not a situation where only the simple fact that the statements in the emails were made is relevant (as in, for example, slander, extortionate threat, or certification).  Here, it seems, the "sincerity and reliability of the declarant" is also relevant.  For example, the relevance of Professor Mai's statement that Lieber had been selected for Thousand Talents Plan depends entirely on his credibility and authority, which is unknown.

Professor Mai's statement that he "will sign" or that he had received "signed documents" without specifying which documents or from whom are not "verbal acts" indicating contract formation.  [e.g., GX 24, 25, 26].  Moreover, any relevance the statement might have is based on it being true.

### c. The Defense's Use of GX 11, GX 14, and GX 23

Defense Counsel's use of GX 11, GX 14, and GX 23 has no bearing on whether the government's use of it is relevant and admissible.  Defense Counsel used the exhibits to demonstrate the *lack* of relevance and *lack* of probative value between it and the Thousand Talents Plan.

### III. Conclusion

Evidence does not become admissible under a domino effect theory; a statement is not suddenly admissible because of its proximity to another statement, and careful consideration must be made when such a statement purportedly originates from an unavailable declarant.  If these statements are not barred from admission, Professor Lieber will suffer unjust prejudice with absolutely no recourse, and a blanket curative instruction will not suffice.  For the reasons set forth above, Professor Lieber respectfully requests that this Court (i) deny the exhibits that

were provisionally admitted into evidence; and (ii) in the event that this Court admits certain exhibits, Professor Lieber requests that this Court provide the jury with a limiting instruction relevant to each exhibit.

Respectfully submitted,

By: /s/ Marc L. Mukasey
Marc L. Mukasey (*pro hac admitted*)
Torrey K. Young (BBO# 682550)
Catherine M. Deist (*proc hac admitted*)
Stephanie Guaba (*proc hac admitted*)

MUKASEY FRENCHMAN, LLP
570 Lexington Avenue, Suite 3500
New York, New York 10022
(212) 466-6400

*Counsel for Defendant Charles Lieber*

## CERTIFICATION OF SERVICE

I hereby certify that on December 20, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: Boston, Massachusetts
December 20, 2021

/s/ Marc L. Mukasey
Marc L. Mukasey