UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)  Case No. 20-cr-10111-RWZ<br>CHARLES LIEBER,  )<br>)<br>Defendant.  )<br> )| |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29(a)**

PRELIMINARY STATEMENT

Defendant, Charles Lieber, respectfully submits this Memorandum Of Law In Support of his Motion For Judgment Of Acquittal, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. Professor Lieber moves for a judgment of acquittal on Counts One, Two, Three, Four, Five and Six of the Superseding Indictment. ECF 35. The government failed to present at trial proof beyond a reasonable doubt of the essential elements of the crimes charged. *See Jackson v. Virginia*, 443 U.S. 307, 381-319 (1979); *United States v. Ortiz*, 447 F3d 28 (1st Cir. 2006).

INTRODUCTION AND
 SUMMARY OF THE ARGUMENT

Count One alleges that Professor Lieber knowingly and willfully made a false statement to the Department of Defense, on or about April 24, 2018. Count Two alleges that Professor Lieber knowingly and willfully caused a false statement to be made to the National Institutes of Health, on or about January 10, 2019. The applicable statute is Title 18, United States Code, Section 1001(a)(2), which provides:

1

> [W]hoever, in any matter within the jurisdiction of the executive . . . branch of the Government of the United States, knowingly and willfully . . . . makes any materially false, fictitious, or fraudulent statement or representation shall be [guilty of a crime].

Count Three of the indictment alleges that Professor Lieber knowingly and willfully filed a false tax return on or about April 15, 2014, for the 2013 tax year. Count Four of the indictment alleges that Professor Lieber knowingly and willfully filed a false tax return on or about September 29, 2015, for the 2014 tax year. The applicable statute is Title 26, United States Code, Section 7206(1), which provides:

> Any person who willfully makes and subscribes any return . . . which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter [shall be guilty of a crime].

Counts Five and Six charge, in pertinent part, that Professor Lieber "did willfully fail to file . . . a Report of Foreign Bank and Financial Accounts . . . disclosing that he had an interest in, and signature and other authority over, a bank, securities, and other financial account in a foreign country, to wit, at least one bank account located in . . . China at the Industrial and Commercial Bank of China ["ICBC"][.]" First Superseding Indictment, ECF 35, ¶ 51. The Indictment charges that such failure to file constitutes a crime because that failure violates a section of the Bank Secrecy Act (the "BSA"), 31 U.S.C. § 5314, and a regulation promulgated by the Secretary of the Treasury (the "Secretary"), 31 C.F.R. § 1010.350 (the "Regulation").

This Court "must enter judgment of acquittal of any offense for which the evidence is insufficient to obtain a conviction," Fed. R. Crim. P. 29(a), because a defendant cannot be

convicted "except upon proof of each element of the offense charged beyond a reasonable doubt." *Oses v. Massachusetts*, 775 F. Supp. 43, 465 (D. Mass. 1991). That high bar is "an essential component" of due process, reducing the risk of wrongful convictions, improving the fundamental fairness of criminal proceedings, and enhancing public confidence in the legal system. *Murray v. United States*, No. 01-cv-11271-WGY, 2002 U.S. Dist. LEXIS 8980, at *21-22 (D. Mass. May 10, 2002) (quoting *In re Winship*, 397 U.S. 358, 363 (1970)) (stating the requirement of proof beyond a reasonable doubt "provides concrete substance for the presumption of innocence—that bedrock, axiomatic and elementary principle whose enforcement lies at the foundation of the administration of criminal law"). Where "the chain of inferences forged by the prosecution is too loose," the jury is left to speculate about a key fact, or sufficient proof is altogether missing on any element, a conviction must be vacated. *United States v. Houlihan*, 92 F.3d 1271, 1295 (1st Cir. 1996).

Here, acquittal is required because the evidence at trial was insufficient prove every element of each offense beyond a reasonable doubt.

ARGUMENT

POINT I

THE COURT SHOULD ENTER JUDGMENT OF ACQUITTAL ON COUNTS FIVE AND SIX BECAUSE THE REGULATION EXPANDS REGULATORY AUTHORITY TO REACH CONDUCT THAT SECTION 5314(a) DOES NOT OUTLAW

The Court should enter a judgment of acquittal on Counts Five and Six. As demonstrated below, the Regulation "add[s] to the statute . . . something which is not there[.]" *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 42 (1st Cir. 2015) (internal quotation marks omitted). Specifically, the Regulation adds a requirement that a U.S. person report a "relationship" with a

foreign bank.  Such a requirement "is not there" in the statute, which requires that a U.S. person report a "transaction[,]" not a "relationship[.]"

A "transaction" and a "relationship" are different things.  Accordingly, the Regulation expands regulatory authority to reach conduct that the statute does not outlaw.  The Regulation is therefore a nullity.

Under the Constitution, and its principle of separation of powers, "the power to define criminal offenses . . . resides wholly with the Congress." *Whalen v. United States*, 445 U.S. 684, 689 (1980).  Congress, of course, may empower an agency of the Executive Branch to promulgate regulations, but the "scope" of a regulation "cannot exceed the power granted [to the agency] by Congress[.]" *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213-14 (1976).

The First Circuit has summarized the law: "The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law.  Rather, it is the power to adopt regulations to carry into effect the will of Congress as expressed in the statute. . . . Where Congress has spoken with specificity, an agency may not promulgate regulations that are an attempted addition to the statute of something which is not there, even if the intent behind the attempted addition is consistent with the intent behind the authorizing statute." *JPMorgan*, 799 F.3d at 42 (internal quotation marks omitted), citing *Hochfelder*, 425 U.S. at 213-14; *United States v. Calamaro*, 354 U.S. 351, 358-59 (1957).

*Calamaro*, a criminal case, is particularly instructive.  *Calamaro* involved "a type of lottery[,]'" which employed three participants -- a "banker," a "writer," and a "pick-up man[.]" 354 U.S. at 353 (internal quotation marks omitted).  The Court affirmed the reversal of the conviction of a pick-up man, holding that the applicable statute reached the banker and the writer but not the pick-up man.

The Government sought to salvage the conviction on the ground that "the Treasury Regulations relating to the statute purport to include the pick-up man[.]" *Id*. at 358. The government contended that the regulation "constitutes an administrative interpretation to which [the Court] should give weight in construing the statute[.]" *Id*. The Court rejected the contention: "[W]e cannot but regard this Treasury Regulation as no more than an attempted addition to the statute of something which is not there. As such the regulation can furnish no sustenance to the statute." *Id.* at 359 (footnote omitted).

Here, Congress has spoken "with specificity[.]" *JPMorgan*, 799 F.3d at 42. Thus, 31 U.S.C. § 5314(a) provides, in pertinent part, that the Secretary shall require a U.S. person to file a report when the U.S. person "makes a transaction" with a foreign financial agency."[1] Treasury, however, promulgated a regulation that imposes an "addition to the statute of something which is not there[.]" *JPMorgan*, 799 F.3d at 42. Thus, the Regulation provides, in pertinent part, that a U.S. person having a specified interest in, or specified authority over, a specified kind of account shall report such "relationship[.]"

A "transaction" and a "relationship" are different things.[2] The Regulation therefore expands regulatory authority to reach conduct that the statute does not outlaw. The Regulation "operates to create a rule out of harmony with the statute," *United States v. Kahn*, 5 F.4th 167, 176 (2d Cir. 2021) (internal quotation marks omitted), by "broaden[ing] [Treasury's] regulatory authority over activities that the plain language of the statute would not otherwise permit."

---

[1] The Regulation also empowers the Secretary to require a U.S. person to file a report when the person "maintains a relation for any person" with a foreign financial agency. Here, however, the Indictment does not charge, and the government did not prove, that Professor Lieber maintained a relation with ICBC "for any person[.]"

[2] See Black's Law Dictionary (11th ed. 2019) (defining "transaction" as "The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract. . . . Something performed or carried out; a business agreement or exchange. . . . Any activity involving two or more persons.") (defining "relationship" as "The nature of the association between two or more people; esp., a legally recognized association that makes a difference in the participants' legal rights and duties of care.")

5

*Didrickson v. Dep't of Interior*, 796 F. Supp. 1281, 1291 (D. Alas. 1991). Such a regulation "is a mere nullity[;]" *Kahn*, 5 F.4th at 176 (internal quotation marks omitted); it "can furnish no sustenance to the statute." *Calamaro*, 354 U.S. at 359 (footnote omitted).

The history of the BSA and the Regulation confirm the foregoing conclusion. "'It is well-settled that when a regulation conflicts with a subsequently enacted statute, the statute controls and voids that regulation.'" *Kahn*, 5 F.4th at 175, quoting *Norman v. United States*, 942 F.3d 1111, 1118 (Fed. Cir. 2019).

Here, Congress, in 1970, enacted the BSA. Treasury, in turn, in 1977, promulgated a regulation, which provided that a U.S. person "having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country shall report such relationship[.]" 42 Fed. Reg. 63774 (Dec. 20, 1977), amending 31 C.F.R. § 103.24.

Congress, next, in 1982, amended the BSA, by enacting section 5314, which empowers the Secretary to require a U.S. person to file a report when that person "makes a transaction" with a foreign financial agency. Treasury, however, failed to amend its 1977 regulation so as to harmonize it with the 1982 statute, which imposed no requirement that a U.S. person file a report regarding a "relationship[.]" On the contrary, Treasury simply carried forward, to this day, the pertinent part of the 1977 regulation, including its requirement that a U.S. person having a specified interest in, or specified authority over, a specified kind of account, report "such relationship[.]" 31 C.F.R. § 1010.350(a).[3] *Cf. Kahn*, 5 F.4th at 175 (noting that "Treasury's relaxed approach to amending its regulations to track Code changes [wa]s well documented[]") (internal quotation marks omitted).

---

[3] The 1977 regulation, 31 C.F.R. § 103.24, remained in effect until 2011, when the current Regulation, 31 C.F.R. § 1010.350(a), came into effect. Meanwhile, Treasury renumbered the sections, without "intend[ing] to have any substantive effect on the BSA regulations." See 76 Fed. Reg. 10234, 10235 (Feb. 24, 2011).

6

It follows in this case that the Regulation is void and cannot provide the foundation for a conviction.  The Regulation, which originated in pertinent part in 1977, "conflicts with a subsequently enacted statute[.]"  *Kahn*, 5 F.4th at 175.  Accordingly, "the statute controls and voids that regulation."  *Id*.

Finally, the delegation-of-authority provision set forth in section 5314 does not save Counts Five and Six.  Section 5314(b)(5) provides, in pertinent part: "The Secretary may . . . prescribe other matters the Secretary considers necessary to carry out this section[.]"  That delegation, however, merely gives the Secretary power to promulgate regulations that "carry out this section[;]" -- that is, section 5314 itself.  That delegation therefore merely returns the analysis to its starting place -- the language of section 5314, which, as shown above, conflicts with the language of the Regulation.

Section 5314(b)(5), in short, "does not constitute authorization to issue a regulation that contradicts" or exceeds "an express provision of the statute[,]" *Kahn*, 5 F.4th at 173, no matter how convenient the government may find the Regulation.  "[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Lawrence + Memorial Hosp. v. Burwell*, 812 F.3d 257, 267 (2d Cir. 2016) (internal quotation marks omitted).

POINT II

IN THE ALTERNATIVE,
THE COURT SHOULD NOT SUBMIT
THESE COUNTS TO THE JURY ON THE THEORY THAT
PROFESSOR LIEBER HAD "SIGNATURE OR OTHER AUTHORITY"

In the alternative, the Court should not submit Counts Five and Six to the jury on the theory, charged in the Indictment, that Professor Lieber violated the Regulation in that he had "signature or other authority over" the bank account at ICBC.  As demonstrated below, that theory fails as a matter of law.

31 C.F.R. § 1010.350(a) provides, in pertinent part: "Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship[.]"  The Indictment charges that Professor Lieber committed the offenses alleged in Counts Five and Six by failing to file a report disclosing that he had both a "financial interest in[]" an account, and "signature or other authority over[]" the account.  Here, however, as a matter of law, the latter prong of the Regulation -- that is, the "signature or other authority over" prong -- does not apply.  Thus:

Section 1010.350(c) makes sub-section (a) applicable to three "[t]ypes of reportable accounts[]" -- a "Bank account[,]" a "Securities account[,]" and an "Other financial account."  Sub-section (e), in turn, describes how the government may prove "[a] financial interest in a bank, securities or other financial account[.]"  Sub-section (f), by contrast, describes how the government may prove "[s]ignature or other authority" over "a financial account[]" -- but not over "a bank [or] securities account[.]"  Accordingly, for the following three reasons, sub-section (f) excludes "bank [and] securities . . . account[s.]"

First, "Congress [or here, the Secretary] generally acts intentionally when it uses particular language in one section of a statute [or here, a regulation] but omits it in another." *Dep't of Homeland Security v. MacLean*, 574 U.S. 383, 391 (2015).  Accordingly, the omission in one section of language present in another section "gives rise to a negative inference" that the draftsperson intentionally omitted the language.  *Trenkler v. United States*, 268 F.3d 16, 23 (1st Cir. 2001).

Here, the Secretary included particular language in sub-section (e) of the Regulation but omitted it in sub-section (f) of the Regulation.  The Court should therefore draw the negative inference: The Secretary intentionally omitted "bank account" and "securities account" from

8

sub-section (f), and intentionally limited sub-section (f) to "financial account."  *See MacLean*, 574 U.S. at 391 ("Congress's choice to say 'specifically prohibited by law' rather than 'specifically prohibited by law, rule or regulation' suggests that Congress meant to exclude rules and regulations."); *Dep't of Treasury v. FLRA*, 494 U.S. 922, 932 (1990) ("A statute that in one section refers to 'law, rule or regulation,' and in another section to only 'laws' cannot, unless we abandon all pretense at precise communication, be deemed to mean the same thing in both places.").

Had the Secretary intended to include all three types of accounts in sub-section (f), the Secretary "presumably would have done so expressly, as [the Secretary] did in the immediately [preced]ing subsection" (e).  *Russello v. United States*, 464 U.S. 16, 23 (1983).  The Court should "refrain from concluding here that the differing language in the two subsections has the same meaning in each[,]" *id*., especially where, as here, one "speaks broadly" and the other uses "less expansive language[.]" *Id.*

Second, the expressio unius canon applies here.  That canon "translates roughly as 'the expression of one thing is the exclusion of other things[.]'" *United States v. Hernandez-Ferrer*, 599 F.3d 63, 67 (1st Cir. 2010).  "Th[at] maxim instructs that, when parties list specific items in a document, any item not so listed is typically thought to be excluded." *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179 (1995).

Here, the Secretary listed "financial account" in sub-section (f).  Therefore, "bank account" and "securities account" are excluded from sub-section (f).  The expression of one thing in sub-section (f) (coverage of only one type of account) is the exclusion of other things from sub-section (f) (coverage of the other two types of accounts).

Third, the history of the Regulation shows that the Secretary explicitly narrowed the reach of this prong of the Regulation.  Thus, 31 C.F.R. § 103.24, effective from 1977 until 2011, provided, in pertinent part: "Each person subject to the jurisdiction of the United States . . . having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country shall report such relationship[.]"  In 2011, however, the Secretary amended the Regulation.  That amended version, which remains in force, revised the definition of "Signature or other authority[]" so as to include only "the authority of an individual . . . to control the disposition of money, funds or other assets held in a financial account[,]" but not in "a bank [or] securities account[.]"  Plainly, the "signature or other authority over" prong of the  Regulation does not apply to a "bank account" or a "securities account."

Accordingly, in this case, the government cannot invoke the "signature or other authority over" prong, set forth in sub-section (f).  This case, according to paragraph 51 of the Indictment, involves a "bank account," not a "financial account[.]"  Indeed, the government does not and cannot contend that the account at ICBC meets the definition of "[o]ther financial account[,]" set forth in sub-section (c)(3).  Therefore, the Court should not submit Counts Five and Six to the jury on the theory that Professor Lieber had "signature or other authority over" the bank account at ICBC.

For the foregoing reasons, the Court should enter a judgment of acquittal on Counts Five and Six.  In the alternative, the Court should not submit Counts Five and Six to the jury on the theory that Professor Lieber had "signature or other authority over" the bank account at ICBC.

POINT III

THE COURT SHOULD ENTER JUDGMENT OF ACQUITTAL ON ALL COUNTS
BECAUSE THE EVIDENCE IS INSUFFICIENT

For Counts One, Two, Three, Four, Five, and Six, the prosecution failed to prove the essential elements of the crimes. The prosecution's failures include, but are not limited to:

- For the false statement charges, the prosecution failed to prove beyond a reasonable doubt that Professor Lieber willfully and knowingly made a material false statement. (Counts One and Two);

- For the tax charges, the prosecution failed to prove Professor Lieber willfully violated a known legal duty in filing his 2013 and 2014 tax returns (Counts Three and Four); and

- For the FBAR charges, the prosecution failed to prove Professor Lieber had a financial interest in, [or signature or other authority over], a bank account in a foreign country during the calendar year specified in the count with an aggregate value of any such account exceeded $10,000 during 2014 and 2015 (Counts Five and Six).

## CONCLUSION

For the reasons set forth above, Professor Lieber respectfully requests that this Court enter a judgment of acquittal for Counts One, Two, Three, Four, Five, and Six.

## CERTIFICATION OF SERVICE

I hereby certify that on December 21, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: Boston, Massachusetts
December 21, 2021

/s/ Torrey K. Young
Torrey K. Young
Mukasey Frenchman, LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
Tel: (212) 466-6400
