<pre>
 1                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
 2

 3
                                    )
 4   UNITED STATES OF AMERICA,       )
                                    )
 5          Plaintiff,               )
                                    )   Criminal Action
 6   v.                              )   No. 1:20-cr-10111-RWZ-1
                                    )
 7   CHARLES LIEBER,                 )
                                    )
 8          Defendant.               )
                                    )
 9


10


11               BEFORE THE HONORABLE RYA W. ZOBEL
                   UNITED STATES DISTRICT JUDGE
12


13                         JURY TRIAL
                             DAY 1
14


15                     December 14, 2021
                         9:03 a.m.
16


17         John J. Moakley United States Courthouse
                     Courtroom No. 12
18                   One Courthouse Way
                 Boston, Massachusetts 02210
19


20


21


22              Linda Walsh, RPR, CRR
                  Official Court Reporter
23         John J. Moakley United States Courthouse
             One Courthouse Way, Room 5205
24             Boston, Massachusetts 02210
                  lwalshsteno@gmail.com
25
</pre>

1    APPEARANCES:

2    On Behalf of the Government:

3         UNITED STATES ATTORNEY'S OFFICE
          By: AUSA Jason A. Casey
4              AUSA James R. Drabick
          1 Courthouse Way, Suite 9200
5         Boston, Massachusetts 02210
          617-748-3264
6         jason.casey2@usdoj.gov

7

8    On Behalf of the Defendant:

9         MUKASEY FRENCHMAN LLP
          By: Marc L. Mukasey, Esq.
10             Torrey K. Young, Esq.
               Catherine M. Deist, Esq.
11             Stephanie Guaba, Esq.
          570 Lexington Avenue, Suite 3500
12        New York, New York 10022
          212-466-6400
13        marc.mukasey@mfsllp.com

14

15

16                 Proceedings reported and produced
                    by computer-aided stenography.

17

18

19

20

21

22

23

24

25

1                              <u>INDEX</u>

2
                                                           <u>PAGE</u>
3
     Jury Impanelment....................................    26
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2           THE CLERK:  This is the United States versus Charles
 3    Lieber, and it's Criminal 20-10111.
 4           Can I ask counsel please to identify themselves for
 5    the record.
 6           MR. CASEY:  Good morning, Your Honor.  Jason Casey for
 7    the United States.
 8           MR. DRABICK:  And J.R. Drabick for the United States.
 9    Good morning, Your Honor.
10           THE COURT:  Hold it one second.  Casey and Drabick, is
11    it?  Is that how you pronounce it?
12           MR. DRABICK:  Yes, Drabick, Your Honor.
13           THE COURT:  Okay.  Thank you.
14           And Mr. Mukasey.
15           MR. MUKASEY:  Hi, Judge.  I'm here with Torrey Young,
16    Catherine Deist, Stephanie Guaba --
17           THE COURT:  And Ms. Deist is here also?
18           MR. MUKASEY:  Ms. Deist is back here.  Ms. Young is
19    right here.  Dr. Lieber is right next to me.
20           THE COURT:  Okay.  Thank you.
21           MR. MUKASEY:  Good morning.
22           THE COURT:  I understand that we will be able to get
23    jurors in about half an hour, 40 minutes.  Until then, there
24    are a couple of things we can talk about.
25           First of all, those people in the back who hope to
```

1    watch this trial, we will have to throw you out when the jury

2    comes because we will have 60 jurors, and they will need to be

3    in the courtroom for purposes of impaneling in this case.  And

4    we don't have enough room for everybody, so you will be

5    temporarily evacuated.

6         Let me start by -- just in case they get here early --

7    telling you what I propose to ask the jury on voir dire.  I

8    will explain to the jury that this is a criminal case, and who

9    the parties in the case are, who the lawyers are, and I will

10   introduce each of you to all the jurors.

11        They will be sitting, as I said, in the back of the

12   courtroom, probably somewhat closer together than they might

13   like.  I will suggest to everybody in the courtroom that they

14   probably should wear a mask, except when they're speaking.  I

15   exclude the lawyers from wearing a mask if they not want to do

16   it, even when they're not speaking, just to make it easier.

17        I will explain to the jurors that the defendant -- who

18   the defendant is, obviously, and -- not who he is, but the

19   person sitting here is the defendant and that the indictment is

20   the document that contains the accusation against him and to

21   which the jury will have to then decide -- with respect to

22   which the jury has to decide whether the government has proven

23   him guilty.

24        I will tell them that it describes the offense

25   charged, and then explain to them that Counts 1 and 2 accuse

1    him of making false statements to the government pertaining to

2    some -- to a Chinese education program.

3          The next two counts, 3 and 4, charge him with filing

4    false tax returns for the years -- with the federal -- the U.S.

5    Government for 2014 and '15, and that he failed to include

6    certain assets and income from work that he did in China.

7          And that Counts 5 and 6 charge him with failing to

8    file certain reports of bank accounts that resulted from his

9    work in China to the Federal government, here for years 2015

10   and '16; that those are the accusations against him that are

11   contained in an indictment, which is the document that is the

12   accusation in this case; and that it will be up to the jury to

13   determine whether the government has proven him guilty beyond a

14   reasonable doubt of each of these.

15         Now, I do have a question before continuing.  I

16   received this morning a stipulation.  Of course I have

17   misplaced it.  I don't know exactly what I did with it.  It's a

18   stipulation pertaining to two of the counts of the indictment,

19   namely -- what did I do with it?  Tell me what it is.

20         MR. DRABICK:  Your Honor may be referring to the FBAR

21   stipulation that refers to Counts 5 and 6.

22         THE COURT:  Yes.  Does that leave anything to be

23   tried?

24         MR. DRABICK:  It does, Your Honor.

25         THE COURT:  Meaning the willfulness?

1           MR. DRABICK:  Exactly, Your Honor.

2           THE COURT:  Okay.  I think I've got it right then.

3           MR. CASEY:  Your Honor, if I could point out one

4    thing.  I think when Your Honor described Counts 5 and 6, you

5    said that the allegation was that the defendant didn't file

6    these reports for 2015 and 2016.  According to the indictment,

7    the charged years are 2014 and --

8           THE COURT:  Actually, my notes say that he failed in

9    2015 and '16 to file reports of interest in bank accounts.

10          MR. CASEY:  Correct, the filing dates were those

11   dates.  The applicable calendar years were the previous years.

12   I just wanted to make that clear.

13          THE COURT:  So it's '14 and '15?

14          MR. CASEY:  Those are the operative calendar years,

15   correct.  The deadlines for filing the reports fall within the

16   following year, just like a tax return would.

17          THE COURT:  Yes, but the failure to file was '15 and

18   '16, not '14 and '15.

19          MR. CASEY:  I think that's correct.  I just wanted to

20   make that clear.

21          THE COURT:  Any objection?

22          MR. MUKASEY:  And, Judge, with respect to the FBAR

23   counts, I think it's not only the willfulness that may be

24   contested but also the requirement, because there are threshold

25   amounts that triggered the filing.  So whether the filing was

1    ever triggered will be another issue to be tried.

2              MR. DRABICK:  We do not disagree, Your Honor.

3              THE COURT:  I'm sorry?

4              MR. DRABICK:  We do not disagree with Mr. Mukasey.

5              THE COURT:  Okay.  Well, I don't have to tell them a

6    whole lot about that now because it really doesn't make sense

7    to the jury -- wouldn't make sense -- I just want to have a

8    very broad understanding of the total nature of the case

9    because part of the problem we have is that this case has

10   attracted a certain amount of publicity, and that's really the

11   issue on which -- with which I'm concerned.

12             Okay.  So then I will ask the obvious, whether any of

13   them have heard about this case or read anything about it or

14   seen anything about it on television.  And my -- I will make

15   note of every juror who raises a hand and answers yes to any of

16   these questions.  And the next step will be, when we finish

17   going through the set of questions, is to interrogate each of

18   those who answered yes independently, separately.  And I think

19   we will do this in what will ultimately be their jury room one

20   flight up because our normal room for this is too small for all

21   the people we have.

22             In any event, I anticipate there will be a fair number

23   of people who will have heard about this case, and we will need

24   to talk to them and find out how much they know and not -- I

25   don't intend to excuse any of them immediately just because

1     they've heard about the case.

2            MR. MUKASEY:  Yeah, in that regard, Judge, just for

3     informational purposes, the case is on the front page of this

4     morning's Boston Globe.

5            THE COURT:  I heard.  I saw.

6            MR. MUKASEY:  Okay.  I am just throwing it out there.

7            THE COURT:  I will ask them whether any of them or the

8     members of their immediate family, which I define as spouses,

9     children, parents, but not the aunts and uncles and cousins,

10    either direct or once or twice or three times removed, have

11    been involved in any criminal proceeding as a defendant,

12    victim, witness, or juror.  And then we will need to inquire

13    further as to what effect that has had on the juror if the

14    answer is yes.

15           I will ask them whether any of them have had any

16    experience, either good or bad, with state or -- with the state

17    or federal criminal justice system that would make it difficult

18    for them to be a fair and impartial juror in this case.

19           The next question, whether they have had any

20    experience with the Internal Revenue or any other U.S. agency

21    that would make it difficult, again, to be a fair juror in this

22    case.  I will ask whether any of them have feelings about the

23    U.S. tax laws, including prosecution for alleged failure to

24    file tax returns, paid taxes, that would make it difficult to

25    render a fair verdict.  That's sort of the end of all of these

 1    questions.

 2          Whether any of them have feelings about China, the

 3    Chinese government, that would make it difficult to render a

 4    fair verdict.

 5          I will ask them whether any of them read or speak

 6    Chinese.

 7          I will explain to them that the defendant has been

 8    accused by the government, and when a person has been accused

 9    by the government of a criminal act, then he has a right to say

10    to the government, You accused me.  Now you prove it.  And he

11    does not have to testify.  He does not have to offer any

12    evidence whatsoever.  He can simply insist that the government

13    prove him guilty and prove him guilty beyond a reasonable

14    doubt.  Does anybody have any problem accepting that principle

15    of our laws, our Constitution?

16          I will ask them whether any of them have any ethical,

17    cultural, religious, political, or other beliefs that may

18    prevent them from being a fair and impartial juror in this

19    case; whether there is any other reason why any of the people

20    there feel they cannot be fair and impartial jurors.

21          That will all allow them to tell me about the

22    vacations they have and how they're trying to get ready for

23    Christmas and can't possibly be here, and we will have to deal

24    with that person by person.

25          That is, in essence, what I propose to ask on voir

 1   dire.

 2          Any suggestions of errors or omissions?

 3          I know that you asked a whole lot more questions, but

 4   I don't think they are necessary for this purpose.

 5          Anything from the government?

 6          MR. CASEY:  I don't think so, Your Honor.  Thank you.

 7          THE COURT:  For the defendant?

 8          MR. MUKASEY:  No, Judge.

 9          THE COURT:  Well, then, we're in good shape for that.

10          So I think the next thing we can do is to review some

11   of the still pending motions in limine, although motions in

12   limine are difficult sometimes to do before the trial even

13   starts and -- okay.

14          I thank you for the stipulations.  Anything helps.

15          And I thank you for your witness lists, which I assume

16   are longer than they will actually be.

17          And why don't we start with the defendant telling me

18   which motions they need to have addressed now.  Some of the

19   motions in limine are very difficult to deal with before the

20   trial even starts, so....

21          (Attorneys confer.)

22          MR. MUKASEY:  Judge, I think there's one pending

23   motion that I'd like to talk to Mr. Casey about before we tee

24   it up for the Court.  It's the government's motion --

25          THE COURT:  These are the motions in limine?

1          MR. MUKASEY:  It's 206, I believe, in the docket.  And

2     it concerns the government's fear, I guess, that we're going to

3     somehow put Harvard University on trial and --

4          THE COURT:  In fact, I was wrong.  There is just one.

5     The government's opposition.  Sorry about that.

6          MR. MUKASEY:  The bottom line is I think, if I talk to

7     Mr. Casey, we may be able to take this off the table, and

8     certainly doesn't need to be teed up today even if we got to

9     openings.

10          THE COURT:  Excuse me.  Which motion are we talking

11     about now?

12          MR. MUKASEY:  Do you want to describe your motion?

13          MR. CASEY:  Your Honor, it's docket number 206.  It's

14     the government's motion to exclude what the government views as

15     irrelevant information concerning Harvard University, other

16     Harvard faculty members, aside from the defendant.  We haven't

17     discussed it directly with Mr. Mukasey.  It sounds like perhaps

18     he's in agreement that some of this information is not relevant

19     to the case, but, again, we haven't discussed it.  I don't know

20     if it's going to impact the defense's opening statements.  So

21     we do think -- we would like some guidance from the Court, if

22     not a decision from the Court, some guidance from the Court

23     about, you know, the parameters concerning other people's

24     conduct that's not related to the defendant or the allegations

25     in this case.

1          MR. MUKASEY:  Judge, if it makes it easier, it's not
2     going to come up in the opening.
3          MR. CASEY:  Fair enough.
4          MR. MUKASEY:  So I don't think it has to be teed up
5     today, if that's okay with the Court.
6          THE COURT:  So we just start and go forward and see
7     what happens and then rule on this motion?
8          MR. MUKASEY:  Well, I think we'll alert Mr. Casey and
9     the Court if we think that we're coming near the danger zone
10    that he's concerned about.  I don't think that's going to
11    happen today.
12         MR. CASEY:  I would note, the defense has not opposed
13    the motion.
14         THE COURT:  Did not oppose it?
15         MR. CASEY:  They have not opposed the motion.  It's
16    unclear exactly what their response to it is.
17         MR. MUKASEY:  I can address it now, if it pleases the
18    Court.
19         The government essentially is concerned that we are
20    going to highlight, rather than Dr. Lieber's involvement or
21    alleged involvement with China, all of Harvard University's
22    deep ties to China.  Harvard has funds in China.  They have
23    classes in China.  They have centers in China.  Many Harvard
24    faculty and presidents have traveled to China.
25         THE COURT:  Was this true at the time --

1            MR. MUKASEY:  Yes.

2            THE COURT:  -- that is at issue in this case?

3            MR. MUKASEY:  Absolutely, absolutely.  Harvard has

4   touted its own connections to China literally going back to I

5   think 1869 when the first professor from China came to Harvard

6   for an exchange program.  We're not getting into that.

7            The fact that it is acceptable in the university world

8   to travel and give lectures and mentor students and that many

9   faculty at Harvard and other places do that and it's a regular

10  thing and it's not toxic, is something that we would like to

11  raise.  That's about it.

12           They're calling a witness who spent time in China,

13  who's a Harvard dean.  We're not going to turn this case into

14  Harvard on trial but what Dr. Lieber viewed as acceptable

15  and --

16           THE COURT:  Well, his going to China isn't the issue.

17  The issue has to do with money.

18           MR. MUKASEY:  The issue, I think -- I don't want to

19  speak for the government, but I think it's going to have to do

20  in some respects with this alleged collaboration with a

21  university in China.  This is not a centerpiece of our defense.

22  But the fact --

23           THE COURT:  Well, the parties agree, do they not, that

24  Mister -- Dr. Lieber went to China and that he got paid for

25  what he did there; right?

1          MR. MUKASEY:  The parties agree that he went to China.

2     The parties agree that there was some compensation.

3          What it was for, how much it was, how often it was

4     paid, why it was paid is probably in dispute.

5          THE COURT:  But that's not the issue.  The issue is

6     that there was a bank account in China into which were paid the

7     monies that he was given by the Chinese government -- that's

8     how I understand the indictment -- and that he then failed to

9     disclose to anybody in the United States who would have an

10    interest in this that he had money -- that he had an account in

11    China and that there was money in it that China had then given

12    to him.

13         MR. MUKASEY:  We are going to dispute a bunch of that.

14         THE COURT:  I'm sorry?

15         MR. MUKASEY:  We are going to dispute some of that.

16         THE COURT:  You are going to dispute?

17         MR. MUKASEY:  Yes.

18         THE COURT:  But not all of it.

19         MR. MUKASEY:  We are not going to dispute that he went

20    to China, and we are not going to dispute that there was some

21    money paid.  Whether it was money that needed to be disclosed,

22    what it was for, when it was paid, why it was paid is all in

23    dispute.

24         THE COURT:  Okay.  So the government has the burden to

25    show that.

1       MR. MUKASEY:  Correct.

2       THE COURT:  But it's -- there certainly is -- I mean,

3  presumably there is evidence that the government will put forth

4  to show that, and I thought we were talking about what evidence

5  is admissible and is not, and that would seem to me is evidence

6  that is admissible.

7       MR. MUKASEY:  Whatever they can prove about why he got

8  paid and what he got paid is okay with us.

9       THE COURT:  Okay.

10       MR. MUKASEY:  What we're talking about is the concept

11  of traveling to China and lecturing, mentoring, giving a

12  speech, talking to students in China.

13       THE COURT:  Is the government talking about that?  Is

14  the government offering evidence to show that he -- his travel

15  was improper?

16       MR. CASEY:  No, Your Honor, not that it was improper,

17  but that he engaged in that conduct pursuant to a contract that

18  he agreed to with Wuhan University that also entitled him to

19  money.  So he agreed to the contract, performed under the

20  contract, and that that constitutes participation in this

21  Chinese talent recruitment program that he later was not

22  truthful about.

23       MR. MUKASEY:  We dispute that he traveled pursuant to

24  the contract.

25       THE COURT:  Yes, that's where the dispute will lie.

 1          MR. MUKASEY:  That's where the dispute is.

 2          THE COURT:  Well, because the contract was never

 3   signed.

 4          MR. MUKASEY:  Among other reasons.

 5          THE COURT:  But the government can attempt to prove

 6   that, can it not?

 7          MR. MUKASEY:  Sure.

 8          THE COURT:  So the evidence is admissible, whatever

 9   the government has -- whatever appropriate evidence the

10   government has to prove that there was an arrangement of some

11   kind, that he did get paid, and that there was a bank account,

12   that is all part of -- appropriately part of the government's

13   case to show, to prove the allegations.

14          MR. MUKASEY:  If it comes in admissible form, yes,

15   that's absolutely relevant.

16          THE COURT:  Okay.  So we don't have a problem.  To the

17   extent that it is not in admissible form, obviously you will

18   object, and I will --

19          MR. MUKASEY:  Right, and that raises another issue,

20   but just to get back to the Harvard issue for one second.  The

21   government is going to claim that Dr. Lieber traveled to China

22   pursuant to this contract.  We're going to claim that he

23   traveled to China for very normal professorial, typical

24   academic reasons, not because of the contract.  And that's

25   why --

```
 1          THE COURT:  You know, that's part of the evidence.
 2    They will have the evidence one way; you have evidence the
 3    other way.
 4          MR. MUKASEY:  Fair enough.
 5          THE COURT:  But it doesn't make the evidence
 6    inadmissible.
 7          MR. MUKASEY:  Correct.  I agree.
 8          MR. CASEY:  I think where we started was our motion to
 9    sort of understand the contours of what the defense intended to
10    present regarding other people at Harvard unrelated to this
11    defendant.  And it sounds like, and I don't want to put words
12    in Mr. Mukasey's mouth, that they may ask questions or offer
13    evidence designed to show that people go to China, professors
14    like Dr. Lieber go to China in the ordinary course of their
15    work.  It's perfectly normal.  The government has no problem
16    with that.  It might explain from their perspective why he
17    went.
18          But when we start veering off into specific professor
19    X was doing things in China that Harvard, you know, may or may
20    not have known about, I mean, that would seem to us to be
21    something completely different, and that's really what our
22    motion, docket number 206, is designed to address, conduct
23    involving others in China that does not bear on the defendant's
24    state of mind, the defendant's intent, things like that.
25          THE COURT:  Okay.  So I understand the broad picture
```

1    about academics going to China at this time is perfectly

2    appropriate and the government doesn't object.  It does object

3    to specific people going and being mentioned for one reason or

4    another that may or may not be part of this big picture.  So

5    the big picture is okay, the details may be objectionable as

6    far as the government is concerned, and I will rule on them

7    when that happens.

8            MR. MUKASEY:  Perfectly fine.

9            THE COURT:  Thank you.

10           MR. MUKASEY:  Just maybe another big picture idea to

11   just put on the Court's radar screen, much of the government's

12   evidence of Dr. Lieber's alleged participation and the reason

13   that he went to China and this contract that he supposedly

14   signed will come in the form of emails from seven, eight, ten

15   years ago that were written -- many of which were written by a

16   professor in China who obviously is not going to be here for

17   the trial.

18           The government is going to put in emails between this

19   person in China and Dr. Lieber, I mean, a pretty good volume of

20   them, 15, 16, 20, 30, something like that.  We're going to have

21   objections, not to all of them but to many of them, on

22   authentication grounds, on hearsay grounds.  I'd like to say

23   Confrontation Clause grounds, but I'm not sure I'm there yet,

24   but certainly on authentication and various hearsay.  They have

25   some hearsay exceptions that they believe apply.  We disagree.

1    I don't think the Court can make or should make a blanket

2    ruling now.  I just want to put it on the Court's radar screen.

3          MR. CASEY:  And --

4          THE COURT:  Well, I accept with anticipation.  I wish

5    it weren't so.

6          MR. CASEY:  I'll just note for Your Honor, just so

7    Your Honor is aware, the parties have agreed and stipulated to

8    the fact that essentially all of the email evidence that's

9    coming in -- and I want to be careful with my language -- are

10   true and correct copies of documents either found on the

11   servers of Harvard University or electronic devices seized on

12   the day of the defendant's arrest either from his office or his

13   home.

14         And so the defense is correct that a summary witness

15   will authenticate, after we read the stipulation, authenticate

16   some emails from the individual in China to Dr. Lieber.  Many

17   of those emails will contain Dr. Lieber's statements.  In some

18   instances, the last email in the chain is the individual in

19   China, and those emails will be offered for nonhearsay

20   purposes, the defendant's state of mind, and so forth.  And

21   they'll be authenticated --

22         THE COURT:  You mean the Chinese person's email is

23   designed for the defendant's state of mind?

24         MR. CASEY:  To the defendant, telling the defendant

25   certain things about, for example --

1          THE COURT:  The last one, you say, will be from

2     the -- from China?

3          MR. CASEY:  Correct.  And then below that will be

4     emails from the defendant going back and forth, that sort of

5     thing.

6          THE COURT:  He doesn't object to those?

7          MR. CASEY:  Well, certainly -- I don't know what he

8     will object to.  But certainly the defendant's emails are his

9     admissions.  But emails from the individual in China, again,

10    after we read the stipulation, will be authenticated by the

11    fact that -- well, other witnesses will testify about the

12    defendant's email address and, you know, how he engaged in

13    email exchanges and so forth.

14         But I don't think -- it won't be in dispute that the

15    person in China who sent these emails is an individual who used

16    to work in Dr. Lieber's lab who is now employed at the Wuhan

17    University of Technology.  I don't really think that's going to

18    be in dispute.  The summary witness, we believe, will be able

19    to authenticate those emails and they'll come in, or not if

20    Your Honor believes they are hearsay or something like that.

21         THE COURT:  Okay.  I think I'm fully primed with all

22    the difficulties that you are going to present to me.  Is there

23    anything else that we can do now before the jury gets here?

24         MR. MUKASEY:  No, Judge.

25         MR. DRABICK:  Your Honor, just to confirm for jury

1     selection, the number of peremptories the parties will receive?

2            THE COURT:  The defendant has ten, the government has

3     six.  Each has one with respect to the -- to the alternates.  I

4     intend that we impanel a total of 14 jurors, 12 regulars and

5     two alternates.

6            What is the best judgment as to when the case will go

7     to the jury?

8            MR. DRABICK:  The government anticipates and hopes to

9     have its case in by the end of the day Friday.  We don't

10    know -- it may be midday on Friday.  We'll have a better sense.

11    Frankly, the longest and most uncertain witness will be the

12    government's introduction of the emails that Mr. Mukasey and

13    Mr. Casey were just discussing, but we anticipate that our case

14    will go in by the end of the trial day on Friday.

15           THE COURT:  That assumes that we start the evidence

16    today?

17           MR. DRABICK:  It assumes doing openings today and

18    potentially the first witness starting today.

19           THE COURT:  Okay.  And how much does the defendant

20    have?  I mean, how many days, hours or whatever?

21           MR. MUKASEY:  Obviously we can't commit fully, but I

22    think it's not going to be more than two hours total.

23           THE COURT:  So the likelihood is that we will conclude

24    the evidence on Monday.

25           MR. MUKASEY:  I think that's right.

1          MR. DRABICK:  I think that's fair, Your Honor, that

2     the evidence will be concluded by Monday with potentially

3     closings --

4          THE COURT:  What is counsel's preference concerning

5     arguments and charge, to put it over to Tuesday morning or to

6     start it Monday?  I mean, if the defendant has only two hours,

7     we will theoretically finish the evidence by 11:00.  We will

8     need to have a charge conference.  It probably makes sense to

9     do that -- to have the charge conference that day but do the --

10    finish the -- I don't know.  You will have argued.  What's your

11    preference?

12         MR. MUKASEY:  My preference would be to do the charge

13    conference Monday afternoon or early Monday afternoon and sum

14    up on Tuesday morning.

15         MR. DRABICK:  Your Honor, the government will be

16    prepared to sum up on Monday, and given the holidays would --

17    we would suggest --

18         THE COURT:  How long will your argument be, I mean,

19    your statement to the jury?

20         MR. DRABICK:  About a half hour, Your Honor.

21         THE COURT:  And the defendant's?

22         MR. MUKASEY:  Probably longer than that.  Probably 45

23    minutes or an hour.  I'm going to give a really short opening,

24    so you are going to get me on that end.

25         THE COURT:  So in any event, the jury will be here

1    Tuesday, probably.  I mean, we certainly can finish all of the

2    presentations on Monday.  The charge will take me maybe 30, 40

3    minutes.

4            MR. MUKASEY:  Let me propose this:  If you give me

5    Monday night to work on the closing argument, it will be

6    shorter on Tuesday morning.

7            THE COURT:  I'll think about it.

8            MR. MUKASEY:  Fair enough.

9            THE COURT:  All right.  Well, I think at the moment

10   there is really not much more that we can do until the jurors

11   get here, and I don't know exactly when that will be but we

12   were told it was about 40 minutes.

13           THE CLERK:  They are just finishing up downstairs.

14   They are going to take a break and then they are going to line

15   them up.  She said about 20 of or quarter of at the latest.

16           THE COURT:  We'll take a recess until the jury gets

17   here.  And then you will get a list of the jurors who will be

18   in the courtroom.  They have numbers that are simply the number

19   by the computer -- the first one shows and the second one

20   shows, and one, two, the computer does all of that.  It simply

21   allows us to identify and deal with them.

22           The way I intend to proceed is to ask the questions

23   that I outlined to you, make a note of everybody who says yes,

24   and then proceed to talk to that individual juror.  And I think

25   for that purpose, as I said before, we will recess to the jury

1    lounge -- the jury room that they will ultimately use for

2    their -- well, we'll have to check to see whether we really

3    want them to deliberate there.

4             THE CLERK:  I know.  I haven't got -- we'll see.

5             THE COURT:  We may need to put them in a courtroom for

6    both recesses and deliberations because that room may not be

7    big enough under the COVID circumstances.

8             THE CLERK:  Right.  Right now we have to use it

9    because Judge Saylor has three courtrooms today.

10            (Discussion off the record.)

11            THE COURT:  Precisely how we will accommodate the

12   jurors, once we have them, we are still talking about.

13   Ms. Urso suggested that we have several jury rooms upstairs,

14   and we can divide the jury so that half of them are in one and

15   half in the other and that will certainly allow the distance so

16   we don't have to worry about moving them too far away, but

17   we'll work it out in such a way as to make it as easy as

18   possible.

19            So we'll take a recess now until the jurors come, and

20   then we'll proceed to the next step.  And I thank you all.

21            THE CLERK:  All rise, please.

22            (Recess taken from 9:36 to 9:53 a.m.)

23            (Prospective jurors enter the courtroom.)

24            THE CLERK:  All rise, please.

25            THE COURT:  Please be seated.

 1          Once you've found your chair, you are welcome to sit

 2     down.

 3          You may be seated.

 4          THE CLERK:  I just want to set the defendant to the

 5     bar.  Mr. Lieber, you are now set to the bar to be tried.  And

 6     these good jurors whom I shall call are to pass between the

 7     United States and upon your trial.  If you were to object to

 8     any of them, you must do so before they are sworn.  Okay?

 9          Okay.  Thank you.

10          THE COURT:  Please be seated.

11                         JURY IMPANELMENT

12          THE COURT:  Members of the Jury, I am Judge Zobel, and

13     I will be presiding over this case.  I need to ask you some

14     questions to make sure that -- some of you may wish not to be

15     here, and we will deal with that as well.

16          The case that we're about to try is a criminal case.

17     The defendant is the gentleman in the middle between counsel

18     who just stood up, and his name is Charles Lieber.  And he has

19     been charged -- I will come to that in a moment -- with several

20     different, allegedly, criminal conduct.

21          Let me just review with you a couple of things.

22     First, let me introduce you to counsel in the case.  In a

23     criminal case it is the government that is the entity that

24     brings the action.  It is in this case represented by two

25     Assistant United States Attorneys, Mr. Jason A. Casey and

1   Mr. James R. Drabick sitting here.

2            And the question to you is do you know either of them?

3   Do any of you know either of the prosecutors in this case?

4            THE CLERK:  Could you hold up your number, ma'am,

5   please.

6            Okay.  Thank you.  Number 11.

7            THE COURT:  Lisa, do you by any chance have a pencil?

8   I lost my pencil.

9            THE CLERK:  Yes, sure.  So number 11.  That's it,

10  okay.

11           THE COURT:  The way we will proceed is that as I

12  explain this to you and ask you whether you have any problems

13  with any part of what a trial sometimes presents, the reason is

14  that those of you who answer yes -- and it's easier for us to

15  hold up the numbers because otherwise we have to have a list --

16  I need to talk with you individually.  And once I record the

17  number, it's much easier to do that and much more efficiently.

18           And I thank Ms. Urso for doing just exactly the right

19  thing in this respect, too.

20           Ms. Urso, by the way, is the so-called courtroom

21  deputy.  Her primary job is to schedule all of my cases that

22  have many, many meetings and court hearings and so on.  The

23  trial is really just the last piece of that.

24           Also present on my behalf are my two law clerks, who

25  are sitting over here and help out with legal questions and the

1    like.  I don't know who you are.

2         THE CLERK:  Doug Warnock.  He's our new clerk.

3         THE COURT:  And the gentleman is from the clerk's

4    office.

5         THE CLERK:  Yes.

6         THE COURT:  This is our administrative arm that takes

7    care of scheduling and a pile of other things.

8         Now, for the defendant is Mr. Lieber, who was rising

9    earlier, and he is represented by Mr. Marc L. Mukasey,

10   Ms. Catherine M. Deist, D-e-i-s-t, and Torrey K. Young, all of

11   whom who are of the law firm of Mukasey and Frenchman in New

12   York.

13        Do any of you know any of defense counsel or the

14   defendant?

15        (No response.)

16        THE CLERK:  No.

17        THE COURT:  Okay.  Please be seated.

18        Now, the indictment is the document that describes the

19   offense in this case.  And in this case there are three sets of

20   allegations, six different counts, if I can just find them.

21        Counts 1 and 2 say -- accuse the defendant of having

22   filed false statements to the United States Government,

23   particularly the Defense Department, concerning his

24   participation in the Chinese education program.  This is very

25   broad.  And I am not exactly sure what period this was, but it

1    was in the two thousand --

2              MR. CASEY:  Late 2018, early 2019.

3              THE COURT:  Okay.  And by the way, if anybody doesn't

4    hear or understand, just raise your hand, and I will try to do

5    better.

6              The second two counts are alleged that he filed false

7    tax returns for 2014 and 2015 and that he failed to include

8    certain assets and certain income from work he did in China.

9              The last two counts say that he in 2015 and 2016

10   failed to file reports of his interest in a -- in bank accounts

11   in China which had a total value of more than $10,000.

12             Those are the accusations.  He denies them all.  And

13   the job for the jury will be to listen to the evidence

14   presented by the government and presented by the defendant and

15   then decide whether the government has proven him guilty beyond

16   a reasonable doubt.  I will define that to you as we go along

17   and certainly in the final instructions before you deliberate

18   on your verdict.  But that is what the case is about.

19             Is there anything about these accusations that causes

20   any of you to not be able to be a juror in this case?

21             57.

22             THE CLERK:  Juror number 57, okay.  Wait a minute.

23   Hold on.  So 57.  And then we have -- Judge, we have 41.

24             THE COURT:  Wait a minute.  I need to figure out --

25             THE CLERK:  Oh, sorry.  57.

1          THE COURT:  57.

2          THE CLERK:  And then 41.

3          THE COURT:  And 41?

4          THE CLERK:  Yep.  And number 26, Judge.

5          THE COURT:  26, also?

6          THE CLERK:  Yes, Judge.

7          THE COURT:  Okay.  Now, the -- I told you more or less

8    how we will proceed, but let me be a little more specific.  The

9    way a trial goes forward is that the government starts it --

10   well, after we have a jury -- by outlining the evidence that it

11   would present -- or will present as the case progresses.

12          The defendant has an opportunity when the government

13   finishes either to also describe what the defense is or to wait

14   until the government's case is finished and then do that.

15   So -- and after that, the government will continue the

16   progress.  It is the one who accused the defendant so it has

17   the burden of proving what it has said he did wrong.  And for

18   that purpose, the government will present evidence, witnesses,

19   and other documents and emails and other things like that and

20   put all of those before you.

21          The defense will have an opportunity to do likewise

22   and also to object to any evidence that the government may have

23   and also to question the testimony of the witnesses, and that

24   will take place by the government calling a witness, conducting

25   a direct examination, asking questions.  The defendant will

1    have an opportunity to cross-examine the witness to test the

2    witness's credibility, the witness's memory, and so on.

3            And then the government has an opportunity for a short

4    second try at that witness and the defense similarly.  After

5    that, we -- the witness is excused, and we go to the next

6    witness.

7            There may also be agreements between the parties as to

8    certain evidence that will come before you, certain documents

9    or certain pictures or whatever.

10           Once the government has completed offering all of the

11   evidence it has -- and the evidence is the work that includes

12   everything that the government presents to you for the purpose

13   of showing that the defendant did what it says he did and prove

14   it to you beyond a reasonable doubt.

15           After that happens, then the defense can offer its

16   witnesses or simply decline to offer any more because the

17   defendant is entitled to say you, government, has now -- now

18   you have accused the defendant.  You prove it.  And the

19   defendant has no obligation whatsoever to offer any evidence to

20   defend himself in any way other than by questioning the

21   evidence.  They can just leave it entirely to the government

22   because it is the government's burden.  And I will explain to

23   you what beyond a reasonable doubt means when we get to that

24   point in the trial.  So that's how the case will progress.

25           After the parties have finished their evidence and

1  have argued the case to you, I will instruct you on the law and

2  then you will retire to the jury room to deliberate on your

3  verdict.  And once you have a verdict, we will all -- those of

4  you who are the jurors in the case, we will reconvene in this

5  room, you in the jury box, me here, counsel over there, and the

6  defendant over there, and you will tell us whether or not the

7  government has proven him guilty beyond a reasonable doubt on

8  one or more of the counts.

9        So that is how the trial will proceed.  And after

10  you've done that, you are excused.  So I thank you for your

11  service here, and this is how we will progress.

12        Is there anybody who has -- who doesn't understand any

13  of what I have just tried to explain?

14        (No response.)

15        THE COURT:  Okay.  I now have some questions for you

16  that will determine whether you will be jurors in the case or

17  not.

18        Has anyone -- any one of you read -- I laugh because

19  we have had a fair amount of publicity.  Has anyone read

20  anything about the case in the newspapers or heard about it on

21  radio or television or from any source this particular case,

22  United States against Mr. Lieber?

23        THE CLERK:  Just keep your numbers up, please.

24        THE COURT:  So let me do that one at a time.

25        In the jury box, number 8.

1          THE CLERK:  Yes, Judge.  And 16.

2          THE COURT:  And 16?

3          THE CLERK:  Yes, Judge.

4          THE COURT:  Once I have mentioned your number, you can

5    lower it.

6          THE CLERK:  Thank you.  So now we have Juror number

7    19.

8          THE COURT:  So nobody else in the jury box?

9          THE CLERK:  No.  19.

10          THE COURT:  Number 19.

11          THE CLERK:  21.  Thank you, sir.  And then we go

12    across.

13          THE COURT:  The reason I'm doing this one by one is

14    that I will need to talk with each of you individually once we

15    finish these four questions here.

16          THE CLERK:  Judge, we also have -- sorry.

17          THE COURT:  And there is 30.

18          THE CLERK:  30, yes.  And then we have got 34.

19          THE COURT:  And 34.

20          THE CLERK:  Judge, and then we have 48.

21          THE COURT:  48.

22          THE CLERK:  And 60, Judge.

23          THE COURT:  And 60?

24          THE CLERK:  Yes.

25          THE COURT:  Next question to you -- they are not all

1    together -- there are not very many, except the next one has

2    disappeared.

3              Have any of you or members of your immediate families

4    ever been involved in a criminal proceeding as defendant,

5    victim, witness, or juror?  Anybody in the jury box?

6              THE CLERK:  Yes.

7              THE COURT:  Number 6.

8              THE CLERK:  Juror number 6.

9              THE COURT:  This is Question 4.

10             THE CLERK:  Yes.  Number 7.

11             THE COURT:  Wait a minute.

12             THE CLERK:  Oh, sorry.

13             THE COURT:  6, 4.  Number --

14             THE CLERK:  7.

15             THE COURT:  Number 7.

16             THE CLERK:  Yes.

17             THE COURT:  Number --

18             THE CLERK:  9.

19             THE COURT:  -- 9.

20             THE CLERK:  10.

21             THE COURT:  Number 10?

22             THE CLERK:  Yes.  Number 14 and 16 in the jury box.

23             THE COURT:  My pages insist on not separating.

24    14, did you say?

25             THE CLERK:  Yes.  14 and 16 in the jury box.

1           THE COURT:  And 16.  And then we have 18 and 19.

2           THE CLERK:  Other side we have 18 and 19.  Then we go

3     over to 31, Judge.

4           THE COURT:  31.

5           THE CLERK:  Yes.

6           THE COURT:  And then 33.

7           THE CLERK:  Then we have 33 and 34.

8           THE COURT:  And 39.

9           THE CLERK:  39.  41.

10          THE COURT:  And 41.

11          THE CLERK:  42.

12          THE COURT:  42 is up there?

13          THE CLERK:  Yes, 42 was just there.  And 48.

14          THE COURT:  And 60.

15          THE CLERK:  Then we have 51.

16          THE COURT:  Oh, 51.

17          THE CLERK:  And then 60, Judge.

18          THE COURT:  Did I miss anybody -- or rather did

19    Ms. Urso miss anybody?

20          THE CLERK:  Oh, I'm sorry.  Am I helping you or am I

21    confusing you?

22          THE COURT:  No.

23          THE CLERK:  Oh, okay.

24          THE COURT:  Have any of you or -- well, have any of

25    you had any experience, good or bad, with either state or

1   federal criminal -- with either the state or the federal

2   criminal justice system that would make it difficult for any of

3   you to be fair and impartial jurors in this case?

4            41.

5            THE CLERK:  41.  Thank you, sir.

6            THE COURT:  That's it?  7.

7            THE CLERK:  Oh, 7.  I'm sorry.

8            THE COURT:  Anybody else?

9            (No response.)

10            THE COURT:  Have any of you had any experience with

11   the Internal Revenue Service or any other agency that may be

12   involved in this case that would make it difficult to render a

13   fair and impartial verdict?  But it's the Internal Revenue

14   primarily.

15            THE CLERK:  Okay.  41 and 55.

16            THE COURT:  41.

17            THE CLERK:  41 and 55.

18            THE COURT:  I'm sorry.  Who is the other one?

19            THE CLERK:  41 and 55.

20            THE COURT:  Too many pages is a nuisance.  Okay.

21            Do any of you have any feelings about the tax laws,

22   including prosecutions like this one, for alleged failure to

23   file tax returns, pay taxes, that would make it difficult for

24   you to be a fair juror?

25            (No response.)

```
 1              THE COURT:  Okay.  Do any of you have feelings about
 2    China, the Chinese government, or the way it operates that
 3    would make it difficult for you to render a fair verdict in
 4    this case?
 5              THE CLERK:  We have 27 and 38 --
 6              THE COURT:  27 and 38.
 7              THE CLERK:  -- Judge.  Two-seven and 38.
 8              THE COURT:  Two-seven and which one?
 9              THE CLERK:  Two-seven and 38, Judge.  27 and 38.
10              THE COURT:  Who's the person who just came in?
11              THE CLERK:  Not a juror.
12              THE COURT:  Do any of you read or speak the Chinese
13    language or in Chinese?
14              THE CLERK:  No.
15              (No response.)
16              THE COURT:  Now, as I mentioned to you earlier, a
17    person who has been accused of a crime has an absolute right
18    not to testify, not to offer any evidence.  The burden is
19    entirely, entirely on the government to prove that person
20    guilty and to prove that person guilty beyond a reasonable
21    doubt.
22              Is there anyone among you who has difficulty accepting
23    that principle of which it underlies pretty much everything we
24    do in criminal law?
25              (No response.)
```

```
 1              THE CLERK:  No.

 2              THE COURT:  Okay.  Do any of you have any ethical,

 3    cultural, religious, political, or other beliefs that may

 4    prevent you from being a fair and impartial juror in this case,

 5    in deciding it based on the evidence that is presented to you

 6    as well as the law as it is given to you?

 7              (No response.)

 8              THE COURT:  Are there any reasons that I haven't

 9    specifically asked about why any of you feel you cannot be fair

10    jurors in this case?

11              THE CLERK:  Juror number 22.  Wait.  I'm sorry, Judge.

12    4 in the jury box, number 4.

13              4 in the jury box and 22.

14              THE COURT:  And 21, did you say?

15              THE CLERK:  22.

16              THE COURT:  22?

17              THE CLERK:  Yes.

18              THE COURT:  Okay.  I think what we will do now is

19    we'll take the -- we will ask the jurors to wait.  We'll go

20    upstairs and bring them in one by one.

21              THE CLERK:  Do you want to do the witness list?

22              THE COURT:  Oh, the witness list, yes, yes, yes.

23              THE CLERK:  Yes, please.

24              THE COURT:  One more thing, Ms. Urso points out, I

25    neglected to read to you a list of witnesses.  This is a list
```

1    of witnesses.  Don't panic when you hear the number of them

2    because both parties have to tell me ahead of time who's going

3    to testify because if they don't tell us now, that person can't

4    testify.  So here are the people who will be witnesses or may

5    be witnesses as the case goes forward.

6            On behalf of the government, Benjamin Hochberger.

7            Now, I do not know where these people come from.  Do

8    you want me to read their offices?  I think we need something.

9            They do criminal investigative services for the

10   government, I guess; right?

11           MR. CASEY:  Defense criminal investigative services,

12   Your Honor.

13           THE COURT:  Okay.  So Benjamin Hochberger, Amy

14   Mousseau, M-o-u-s-s-e-a-u, Nathan Livesay, Samantha Abbott,

15   Robert Plumb; do those names sound familiar to any of you?

16           (No response.)

17           THE COURT:  Kara Spice, just like paprika, Kirstin

18   Koch, Courtney Pillsbury, Michelle Gamble, Colleen Ranahan, and

19   then those are all people who work for law enforcement in one

20   way or another, federal law enforcement mostly.

21           These are civilian witnesses, Dr. Jeremy Bloxham,

22   B-l-o-x-h-a-m, Kathleen Ledyard, Sarah Axelrod, Matthew Fox,

23   Renee Donlon; are those names familiar to any of you?

24           (No response.)

25           THE COURT:  Jennifer Ponting, Dr. Michael Lauer, who

 1  is the defendant [sic], Carl Goodman.

 2          In addition to that, are we still talking about

 3  Mr. Beckstrom?  Is Mr. Beckstrom still a likely witness?

 4          MR. CASEY:  Not likely, Your Honor.

 5          THE COURT:  And then there are some record keepers

 6  from the Financial Crimes Network, but I don't have any name.

 7  And that's about it.

 8          Then there is a separate list -- there is a separate

 9  list from the defendant, Ariel de Botton or Botton,

10  B-o-t-t-o-n, Carl Goodman, Sean Tuttle, and Anqi, A-n-q-i,

11  Zhang, Z-h-a-n-g; anybody know any of these people?

12          (No response.)

13          THE COURT:  And finally, we will try this case from

14  9:00 to 1:00 every day.  And we will start promptly at 9:00 and

15  end promptly at 1:00 until it is done.  I anticipate that we

16  will -- we may start the evidence today if we have time enough,

17  perhaps, and we will continue tomorrow -- tomorrow is

18  Wednesday, Thursday, Friday, and we will almost certainly

19  finish all the evidence on Monday.

20          And on -- you will hear probably counsel's argument on

21  that day and probably -- you may start your deliberations that

22  day but more likely on Tuesday.  It depends on how long the

23  evidence goes.  It's a good idea generally not to separate out

24  pieces of the closing argument and the like, so we may do that

25  on Tuesday.  But you will get the case on Tuesday, and then

```
 1    when -- at that point you will be here as long as you need to
 2    be here or want to be here, until you have a verdict.  Or if
 3    you haven't reached a verdict, then I would ask you to come
 4    back the next day at 9:00 o'clock and go through for as long as
 5    you want to be, including into the evening, and have a verdict.
 6            Does that schedule cause anyone serious inconvenience,
 7    other than everybody?
 8            THE CLERK:  I figured that.  In the first row, Judge,
 9    it would be Juror number 2 and 6.
10            THE COURT:  Anybody else in the first row?
11            THE CLERK:  2 and 6.
12            THE COURT:  The second row?
13            THE CLERK:  8 and 16.  8 and number 16, also, Judge.
14            THE COURT:  And 16?
15            THE CLERK:  Yes.
16            THE COURT:  And then 17.
17            THE CLERK:  We have 17, 18, and 19, Judge.  17, 18,
18    and 19.
19            THE COURT:  19?
20            THE CLERK:  Yep.
21            THE COURT:  And --
22            THE CLERK:  And we have 22.
23            THE COURT:  22 and 24.
24            THE CLERK:  22, 24, yep.  26.
25            THE COURT:  26 and 27.
```

1          THE CLERK:  26 and 27, yes, Judge.  Then we have 29

2     and 30.

3          THE COURT:  Okay.

4          THE CLERK:  29 and 30.

5          And then we have 34, 35, and 36.  34, 35, and 36.

6          And then 43 and 44.

7          THE COURT:  43 and 44.

8          THE CLERK:  43 and 44.

9          And then 45 and 47.

10          And then 56 and 60.

11          THE COURT:  And 60.

12          THE CLERK:  56 and 60.

13          THE COURT:  That's it?

14          THE CLERK:  Uh-huh.

15          THE COURT:  Is there any reason that I have not

16     specifically mentioned to you why any of you feel you cannot be

17     fair jurors?

18          THE CLERK:  25.

19          THE COURT:  25.

20          THE CLERK:  Okay.  Okay.

21          THE COURT:  Okay, relax.

22          I will now go to the jury room upstairs, and we will

23     call those of you who answered yes to any questions one by one,

24     and we will try to get this done as quickly as we can.

25          And I think -- do we have any law enforcement or any

```
 1  marshals or anything?

 2          THE CLERK:  No.

 3          THE COURT:  If any of you need to use the bathrooms,

 4  they are outside the courtroom and down the hall near the

 5  elevator.  What else?

 6          THE CLERK:  That's it.

 7          THE COURT:  But please don't go away.

 8          (Recess taken.)

 9          (At sidebar.)

10          THE CLERK:  Okay.  This is Juror number 2.

11          THE COURT:  Ms. Ginsberg, have a seat.  Now, you have

12  met all the counsel and the defendant, because I introduced

13  them before.  And you told us that you had a problem with our

14  schedule.

15          THE JUROR:  Yes.  I'm very early stages of pregnancy,

16  and I have some doctors' appointments this week.

17          THE COURT:  When is your doctor's appointment?

18          THE JUROR:  One is specifically Thursday morning.

19          THE COURT:  I'm sorry.  Can you unmask?

20          THE JUROR:  Thursday morning.

21          THE COURT:  What time?

22          THE JUROR:  8:30 in the morning.

23          THE COURT:  So you wouldn't be here.  Where's the

24  doctor?

25          THE JUROR:  Chestnut Hill.
```

```
 1              THE COURT:  So you won't be able to be here by 9:00.
 2              THE JUROR:  Not by 9:00 a.m.  Any other day is all
 3    okay because all the other appointments are later in the day.
 4    But it's a pretty important one.
 5              THE COURT:  When do you think you would get here if
 6    you were to come?
 7              THE JUROR:  Probably 10:00 a.m.
 8              THE COURT:  This would be on Thursday?
 9              THE JUROR:  Thursday.
10              THE COURT:  Okay.  Is there any reason why we should
11    not consider excusing Ms. Ginsberg?  Maybe we don't want to
12    wait until 10:00, and she can't guarantee she will be here at
13    10:00.
14              MR. MUKASEY:  I have no problem excusing her.
15              THE COURT:  Well, I hope the doctor will say you are
16    totally in good shape.
17              THE JUROR:  Thank you.
18              THE COURT:  And have a great holiday.
19              THE JUROR:  Thank you so much.
20              THE COURT:  Thank you.  You can disappear, but check
21    in the jury room.  Check with the jury clerk before you go.
22              THE JUROR:  Thank you so much.
23              THE CLERK:  Okay.  Thank you.
24              THE COURT:  The next one is Bryanna Deveau, who
25    teaches Little Sprouts in Arlington.
```

1          Is somebody arranging to have somebody waiting

2     outside?

3          MS. PEARLMAN:  No.

4          THE COURT:  We need to do that.

5          THE CLERK:  This is Juror number 4.

6          THE COURT:  Hi.  Ms. Deveau, you told us that there

7     was a general reason --

8          THE JUROR:  I was just telling her, I'm hard of

9     hearing, so you might have said it.  I just didn't hear you and

10    I raised my number.  I was going to wait until the end to just

11    raise it and say something.

12         THE COURT:  I'm sorry.  Say that again.

13         THE JUROR:  I didn't hear -- some of the reasons I

14    didn't hear so I was just going to wait until the end to raise

15    it to ask you to repeat it.  I just didn't really hear half of

16    the reasons.

17         THE COURT:  Could you do me a favor and move the mask

18    down while you speak.

19         THE JUROR:  Yes.  Sorry.  I'm hard of hearing so I

20    didn't hear some of the reasons.  I was waiting until the

21    end --

22         THE COURT:  Did you have any trouble when I was asking

23    questions understanding what I was saying?

24         THE JUROR:  A little bit, yes.

25         THE COURT:  We have a remedy for that.  We have

1    earphones, right, Linda?

2            THE COURT REPORTER:  Yes.

3            THE COURT:  The Court has earphones that you could

4    use.  So if that's the only problem, we have --

5            THE JUROR:  No, that wasn't the only problem.  I do

6    have something personal that I went through.  I was in a -- I

7    was a witness to a murder case so I --

8            THE COURT:  You testified at --

9            THE JUROR:  It was my family that I was a witness to.

10           THE COURT:  Would that make it difficult for you to be

11   a juror?

12           THE JUROR:  Yes, because I have different opinions as

13   in, like, I'm -- it was, like, a different case.  I would just

14   stay with, like, the person that is guilty because of my

15   experience.

16           MR. CASEY:  Could we excuse her for a moment?

17           THE COURT:  I'm sorry?

18           MR. CASEY:  Could we excuse her for a moment?

19           THE COURT:  Okay.  Could you do me a favor and wait

20   outside for a moment.

21           THE JUROR:  Yes.

22           (Juror not present.)

23           MR. CASEY:  I believe she was the daughter of the

24   victim of a homicide case that I prosecuted -- that I defended

25   against.

```
 1              THE COURT:  I think there's no reason not to excuse
 2     her.  So we'll excuse her.  Do you agree, Mr. Mukasey?
 3              MR. MUKASEY:  I do.
 4              THE CLERK:  This is Juror number 6, Judge.
 5              THE COURT:  6?
 6              THE CLERK:  Yes.  Mr. George.
 7              THE COURT:  Mr. George, have a seat.
 8              I think you told us that you had a problem with the
 9     case.  No, wait a minute.  Hold it.
10              THE JUROR:  No, I think it had to do with any of my
11     siblings or anything.
12              THE COURT:  Whether you've been engaged in any
13     criminal case, either directly or through your family or
14     whatever.
15              THE JUROR:  Just my brother, for my sibling, for
16     domestic stuff.  Nothing to do with this.
17              THE COURT:  Would that affect -- first of all, what
18     happened to him?
19              THE JUROR:  It was all thrown out.
20              THE COURT:  Was he a defendant?
21              THE JUROR:  Yes.  No, I came here --
22              THE COURT:  Was it in the state court?
23              THE JUROR:  Yeah.  But I came up here just to tell
24     you, is one of the two things giving false statements?
25              THE COURT:  Would you do me a favor and bring the mask
```

1    down.

2           THE JUROR:  Is one of the two things false statements?

3    I'd have a huge problem, like, being unbiased towards that

4    because that happens all the time, and the government chooses

5    when and when not to enforce it.

6           THE COURT:  You mean the fact that there's a charge

7    that he made false statements?

8           THE JUROR:  Yes.  Because the government does it all

9    the time, and they pick and choose --

10          THE COURT:  You have difficulty thinking about that

11   and talking about it and deciding it?

12          THE JUROR:  Yes.

13          THE COURT:  Is there any reason not to excuse

14   Mr. George?

15          MR. MUKASEY:  May I inquire?

16          THE COURT:  Yes.

17          MR. MUKASEY:  Do you think you could set aside your

18   views on other false statement cases that you've heard of and

19   keep an open mind in this one?

20          THE JUROR:  If it's two different people, I can sit

21   there, you know, and separate them.  But when it's the

22   government saying you made a false statement about this, the

23   amount of times we read and see the government make false

24   statements and nothing gets done about it, I have a hard time

25   then blaming a person -- a citizen who then the government

1   claims made false statements when we know the government has

2   made false statements.  That's my problem.

3            THE COURT:  Is there any objection to excusing

4   Mr. George?

5            MR. MUKASEY:  No, Your Honor.

6            THE COURT:  Thank you very much.  You are free to go,

7   but please go by way of the jury lounge.

8            THE CLERK:  We are going back to 2, Judge?  Yes?

9            THE COURT:  Yes, Mr. George is excused.

10            Now we go to Mr. Pintal, yeah, Pintal.

11            THE CLERK:  This is Juror number 7, Judge.  Right

12   here, sir.  Thank you.

13            THE JUROR:  Have a seat?

14            THE CLERK:  Yes, please.  Thank you.

15            THE COURT:  Good morning.

16            THE JUROR:  Good morning.

17            THE COURT:  You indicated that you -- that either

18   somebody in your family or you had had some issues with a

19   criminal proceeding and -- yeah, have been involved in a

20   criminal proceeding and maybe had some issues.  Can you tell us

21   about that.

22            THE JUROR:  It involved --

23            THE COURT:  Excuse me.  It's easier if you can speak

24   without the mask.

25            THE JUROR:  Sorry.  I'm a little nervous.

1          THE COURT:  I know this is terribly contradictory in a

2     way, but it's hard to understand through the mask.

3          THE JUROR:  I've been arrested for a few things.  I

4     always stood up for them.

5          THE COURT:  What kind of few things?

6          THE JUROR:  Driving after rev.

7          THE COURT:  I'm sorry?

8          THE JUROR:  Driving after rev, receiving a stolen

9     plate, as far as that goes.  The other one -- there was two

10    reasons why.  The other one was when I was younger I had an

11    incident with a police officer who I was trying to date a girl,

12    and he was a little older but he was trying to date her, too.

13    He told me to leave.  He grabbed me by the neck, picked me up

14    and threw me against the wall and told me to leave.  When I

15    left, I went to the police station to try to report.  The

16    police at the police station accused me of being on drugs and

17    literally threw me out under threat of arrest.

18          Now, I know that was a long time ago and I don't

19    really think about it, but when you said that, it kind of

20    popped into my mind.

21          THE COURT:  Do you think you could be a fair juror?

22          THE JUROR:  I think I could.  I'm just being honest

23    with it under the circumstances.

24          THE COURT:  What exactly was the false statement part

25    of it?

1          THE JUROR:  False statements?

2          THE COURT:  You said that you had problems with making

3    a statement that was not correct to the police or somebody?

4          THE JUROR:  As far as me or them?

5          THE COURT:  Yeah, you.

6          THE JUROR:  Well, maybe I misunderstood.

7          THE COURT:  Or them, if you perceived them to make a

8    false statement.

9          THE JUROR:  Yes, because he was trying to -- first of

10   all, he grabbed me and threw me against the wall, threw me down

11   and told me he was going to arrest me.

12         THE COURT:  This was the police officer?

13         THE JUROR:  The police officer.  And then when I went

14   to the police station to try to report it, they wouldn't even

15   listen to me.  They immediately told me I was on drugs and told

16   me to leave or they would arrest me.  Didn't even listen to

17   what I said.

18         THE COURT:  Any questions, Mister -- no.

19         MR. MUKASEY:  How long ago did this happen?

20         THE JUROR:  This happened a while ago.  Again, I only

21   brought it up because the question triggered it.  I don't think

22   about it often.

23         THE COURT:  Is "a while ago" five years, ten years?

24         THE JUROR:  I'm sorry.  I was young.  18.  I'm 56 now.

25   Again, it does come up in my mind when somebody says something

 1   like this.  To answer her question, I do think I could be

 2   impartial.

 3          MR. MUKASEY:  You realize the law enforcement agents

 4   that had an issue with you are not the ones in this case --

 5          THE JUROR:  And that's why I say I think I could be

 6   okay.

 7          MR. MUKASEY:  You could be an open-minded juror in

 8   this case?

 9          THE JUROR:  I think I could.  I just didn't want to

10   not bring that up because it was asked of me.

11          THE COURT:  Any other questions?

12          MR. CASEY:  Anything about your arrest that would

13   cause you to be unfair to either side?

14          THE JUROR:  No.  I did the -- you know, I was the

15   problem.  I stood up for it.  I did what I thought was right.

16   So to answer your question, no, I don't think that would be a

17   problem.  I would still like to go through, if I could.  It's

18   not like I don't want to.  I'm a little nervous again so.

19          MR. MUKASEY:  So are we.  Don't worry.

20          THE JUROR:  All right.  If you were looking at me, I'd

21   be nervous, too.

22          THE COURT:  Anything else?  Any questions?

23          Thank you.  Why don't you wait for us downstairs.

24          THE CLERK:  Yes, so if you could just go back to the

25   jury room.

```
 1              THE JUROR:  Okay.  Thank you.
 2              THE CLERK:  Just take your card, sir.  Thanks.  I'm
 3      sorry.  Back to the courtroom.
 4              THE COURT:  What's the government's view?  Keep him?
 5              MR. CASEY:  Sure.
 6              THE COURT:  Keep him?
 7              MR. MUKASEY:  Agreed.
 8              THE CLERK:  This is Juror number 8, Judge.
 9              THE COURT:  Mr. Pintal -- no.  I'm sorry.  Ms. White.
10              THE CLERK:  Ms. White.
11              THE COURT:  I'm sorry.  Ms. White, please have a seat.
12              Now, you had two issues.  One was that you had heard
13      all the news about this case, and second you have a problem
14      with the schedule.
15              THE JUROR:  Yes.
16              THE COURT:  Let's start with the second.
17              THE JUROR:  I had already told, when I called for jury
18      duty, that I was going to visit family out of state on December
19      22nd.  And that --
20              THE COURT:  Where are you going?
21              THE JUROR:  I'm going to Vermont.
22              THE COURT:  I'm sorry.  Could you take --
23              THE JUROR:  Vermont.
24              THE COURT:  To Vermont?
25              THE JUROR:  Yes.
```

```
1                THE COURT:  And when do you leave for that?

2                THE JUROR:  On the 22nd and we return on the 24th.

3                THE COURT:  That's after our trial.

4                THE JUROR:  That's the deliberation of the jurors may

5       extend to the 22nd.

6                THE COURT:  Okay.  If we agreed that you could leave

7       here in time to go to Vermont, would you be able to be a juror?

8                THE JUROR:  If you could say that it was going to be

9       completed by Wednesday at 1:00, yes, I could be a juror.

10               THE COURT:  I don't see any reason why it would take

11      longer than that.

12               MR. CASEY:  I hope we're done by then.

13               THE JUROR:  You just mentioned the deliberations can

14      take as long as we need.

15               THE COURT:  I understand what I said and how you took

16      it, and you did just right.  I think the case will -- the jury

17      will start deliberations on Tuesday morning, the way I now see

18      it.  Usually juries rarely go beyond the first day, but it can

19      happen.  And you have to leave around noon on Wednesday?

20               THE JUROR:  Well, we were actually hoping to leave

21      around 10:00, but I can try to stretch that if that's

22      necessary.

23               THE COURT:  Any questions, Mr. Mukasey?

24               MR. MUKASEY:  No.  I have a commentary I think after

25      Ms. White leaves.
```

```
 1            MR. CASEY:  I believe she also answered yes to the
 2   question of pretrial publicity.
 3            THE JUROR:  I did.  And I have opinions about this
 4   trial.
 5            THE COURT:  Well, what did you hear?
 6            THE JUROR:  I'm a member of the Harvard community.
 7            THE COURT:  You are?
 8            THE JUROR:  Yes.  So it's been interesting to just --
 9            THE COURT:  What is the aspect of your --
10            THE JUROR:  My husband works for Dana Farber Cancer
11   Institute, and I am a graduate of Harvard Medical School.  And
12   from what I've read, I have a bias against the defendant.
13            THE COURT:  You know, it occurred to me, in a sense I
14   am a member of the Harvard community, too, in that respect,
15   having graduated from the college and the law school and having
16   served as an overseer on one occasion.
17            MR. MUKASEY:  Well, then you are dismissed.
18            THE COURT:  Thank you.
19            MR. CASEY:  Marc will take over.
20            THE COURT:  Is there any objection to --
21            MR. MUKASEY:  I think with the combination of the time
22   pressure and the bias, she should be dismissed with the thanks
23   of the Court.
24            THE COURT:  I think so.
25            THE JUROR:  Okay.
```

```
 1              THE COURT:  And I hope you have a good trip and don't
 2    crash.
 3              THE JUROR:  Thank you.  Thank you very much.
 4              THE COURT:  Thank you.
 5              THE CLERK:  Thank you.  He's going to take you back
 6    down to jury assembly.
 7              THE COURT:  Now we have Edna Borges.
 8              THE CLERK:  Edna, you can sit right here, please.
 9    This is Juror number 9.
10              THE COURT:  Good morning.
11              THE JUROR:  Good morning.
12              THE COURT:  Now, you told us that you or your family
13    had some kind of issues with some government?
14              THE JUROR:  Yes.
15              THE COURT:  Would you mind taking the mask off so I
16    can hear you.
17              THE JUROR:  Sure.
18              THE COURT:  Thank you.  Not entirely.  I mean, as much
19    as you want.  I understand it's a difficult business with the
20    mask.  I must confess, I hate it.
21              In any event, what should we know about any such
22    involvement by members of your family?
23              THE JUROR:  I have prior cases that I had to seal for
24    my professional reason.
25              THE COURT:  You had to do what?
```

1          THE JUROR:  I had a case before, and I had to seal it
2     because I'm in the medical field.
3          THE COURT:  This was you as a defendant?
4          THE JUROR:  Uh-huh.
5          THE COURT:  And this was for stealing something?
6          THE JUROR:  Yeah.
7          THE COURT:  How long ago was that?
8          THE JUROR:  1998.
9          THE COURT:  Eight years?
10          THE JUROR:  No.  1998.
11          THE COURT:  1998.  And what happened to you as a
12     result of this?
13          THE JUROR:  I did probation.
14          THE COURT:  Which is all finished?
15          THE JUROR:  Yes.
16          THE COURT:  Would that part of your background make it
17     difficult for you to be a fair juror?
18          THE JUROR:  No.
19          THE COURT:  Any questions?
20          MR. MUKASEY:  Do you think the justice system treated
21     you fairly?
22          THE JUROR:  Yeah, in that case.
23          MR. CASEY:  Is there anything else?  I mean, you said
24     "in that case."  Is there some other experience?
25          THE JUROR:  Yeah, I had a different experience, but I

1    don't hold it against --

2            THE COURT:  You mean an additional case?

3            THE JUROR:  Yes.  They used me as leverage over my

4    baby's father so he would plead guilty.  So the DA tried me and

5    indicted me for the same case as my baby's father just so he

6    would plead guilty.

7            THE COURT:  But you ended up being a defendant again?

8            THE JUROR:  Yes.

9            THE COURT:  When was that?

10           THE JUROR:  Nineteen -- I think it was, like, 1999,

11   2000.

12           THE COURT:  I'm sorry.  What year?

13           THE JUROR:  1999, 2000.

14           THE COURT:  So the first one was 1998 and now another

15   one in 1999.

16           THE JUROR:  Yeah.

17           THE COURT:  Were there any others beyond that?

18           THE JUROR:  No.

19           THE COURT:  What happened as a result of the second

20   case?

21           THE JUROR:  He ended up pleading guilty.

22           THE COURT:  And what was the result of that?

23           THE JUROR:  And they dismissed mine.

24           THE COURT:  Eight months?

25           THE JUROR:  They dismissed mine.

1          THE COURT:  Dismissed.  Do you think that you can be a

2    fair juror?

3          THE JUROR:  Yes.

4          THE COURT:  Mr. Casey or Mister -- whichever of you?

5          MR. DRABICK:  Do you believe the DA's office treated

6    your child's father fairly in that case?

7          THE JUROR:  Yes.

8          MR. DRABICK:  You mentioned that you believe they used

9    you as leverage.  Do you think that that would affect your

10   ability to be a fair juror in this case at all?

11         THE JUROR:  No.  It was honest.

12         MR. DRABICK:  Thank you.

13         THE COURT:  Mr. Mukasey, any questions?

14         MR. MUKASEY:  No, ma'am.  No.

15         THE COURT:  Thank you.  Why don't you return to the

16   jury room -- I mean to the courtroom.  Thank you.

17         THE JUROR:  Thank you.

18         THE CLERK:  All right.  So return to the courtroom.

19         MR. CASEY:  I think we would like to challenge for

20   cause.  I thought her body language suggested something.

21         THE CLERK:  This is Juror number 10.

22         THE COURT:  Hold it one second.

23         THE CLERK:  I'm so sorry, sir.

24         THE COURT:  Just one second.

25         THE CLERK:  Okay.

1            MR. CASEY:  Her body language to the government

2       suggested that the words she was speaking might not necessarily

3       be the whole truth, plus it took a few minutes to get out of

4       her the fact that she was indicted in another case, which she

5       didn't mention initially.  So the government has some concerns

6       about her ability to be fair and impartial and to listen to

7       Your Honor's instructions.

8            MR. MUKASEY:  I think she was very clear that she

9       could be impartial and independent.

10           THE COURT:  I think I will excuse her.  I don't quite

11      believe it.

12           THE CLERK:  Okay.  So number 9 is going?

13           THE COURT:  Number 9 is excused.

14           Now we get Mr. Queally.

15           THE CLERK:  Number 10.  I'm sorry, sir.

16           THE COURT:  Good morning.

17           THE JUROR:  Hi.  Good morning.

18           THE COURT:  Please be seated.

19           And I would appreciate removing your mask just long

20      enough -- no, no.  Just one piece of it is fine, just so we can

21      hear you.  That's great.

22           THE JUROR:  Sure.  No problem.

23           THE COURT:  You indicated you had some experience with

24      the criminal law system?

25           THE JUROR:  Yes.  I guess -- I hope I interpreted the

1   question correctly, but I was -- I was in a jury before, about

2   five years ago.

3          THE COURT:  You were in a jury?

4          THE JUROR:  I was a member of the jury.

5          THE COURT:  And that's the experience that you've had

6   with the criminal law?

7          THE JUROR:  Well, I was pulled over 14 years ago for

8   OUI and --

9          THE COURT:  And what happened as a result of that?

10          THE JUROR:  It was dismissed, but -- it was a

11   roadblock, but it was dismissed.

12          THE COURT:  And that's it?

13          THE JUROR:  That's it, yeah.

14          THE COURT:  We don't normally excuse jurors because

15   they've been jurors once.  Even Ms. Urso was a juror once.

16          THE CLERK:  Twice.

17          THE JUROR:  I wasn't asking to be dismissed.  I just

18   thought that was something you need to know.

19          THE COURT:  No, no, I think you did just right.  Do

20   you think you could be a fair juror in this case?

21          THE JUROR:  I don't see why not.

22          THE COURT:  Mr. Mukasey?

23          MR. MUKASEY:  Sir, were you a juror in a civil case or

24   criminal case?

25          THE JUROR:  Criminal.

1          MR. MUKASEY:  Without telling me what the verdict was,

2     did the jury reach a verdict?

3          THE JUROR:  Yes.

4          MR. MUKASEY:  Thank you.

5          THE COURT:  Any questions from you?

6          (No response.)

7          THE COURT:  Thank you very much.  We are happy to have

8     you at the moment, at least.

9          Anybody want him excused?

10         MR. MUKASEY:  No problem.

11         THE COURT:  Lisa, we go to the next one.

12         THE CLERK:  Ms. Wilcox, please.  This is Juror number

13    11, Judge.

14         THE COURT:  Okay.

15         THE CLERK:  You can come in, please.

16         THE COURT:  Hello, Ms. Wilcox.  As best as I

17    understood, you told us that you knew one or more of the

18    Assistant U.S. Attorneys?

19         THE JUROR:  Yes.

20         THE COURT:  Do they know you?

21         MR. CASEY:  I think she works in our office, Your

22    Honor.

23         MR. DRABICK:  Yes, Your Honor.

24         THE COURT:  She works where?

25         MR. CASEY:  She works in our office, Your Honor.

 1          THE COURT:  How did you get on this jury?

 2          THE JUROR:  They told me to report and so I came.

 3          THE COURT:  Is there any reason why she couldn't be on

 4    this jury?

 5          MR. MUKASEY:  I'd like to ask her to be excused, but I

 6    would like to have some conversations with you about these two

 7    guys.

 8          THE COURT:  Well, I'm sorry, but the connection is too

 9    close.

10          THE JUROR:  That's okay.

11          THE COURT:  I'm sorry about that.  But I hope you had

12    an interesting morning.

13          THE JUROR:  Very interesting.  Thank you very much.

14          THE COURT:  Have a good Christmas.

15          THE CLERK:  Thank you.

16          THE COURT:  We go to page 2.  That is certainly

17    progress.

18          Number 14 is next, according to my list.

19          THE CLERK:  This is Juror number 14, Judge.  Right

20    here.  Thank you.

21          THE COURT:  Have a seat.  And you can dump your stuff

22    on the empty chair, if you want.

23          You indicated that you had some experience with the

24    criminal law --

25          THE JUROR:  Yes.

```
 1              THE COURT:  -- or your family had?

 2              THE JUROR:  I've been -- I was a juror in a trial.  So

 3     that's really my only experience is that I've served on a jury.

 4              THE COURT:  How long ago was that?

 5              THE JUROR:  I am trying to remember.  It was not -- it

 6     was not in Boston.  It was in Falmouth, Massachusetts.

 7              THE COURT:  '93?

 8              THE JUROR:  No, no.  Probably 10 to 15 years ago.

 9     It's been a while.

10              THE COURT:  Ten years ago?

11              THE JUROR:  Yeah.

12              THE COURT:  In the federal court or state court?

13              THE JUROR:  State court.

14              THE COURT:  What kind of a case?

15              THE JUROR:  Drunk driver, DUI.

16              THE COURT:  DUI?

17              THE JUROR:  Yeah.

18              THE COURT:  What did the jury do?

19              THE JUROR:  Found him guilty.

20              THE COURT:  Would you be averse to being a juror yet

21     again?

22              THE JUROR:  No.

23              THE COURT:  Would you be able to be fair in this case

24     from what you've heard about it?

25              THE JUROR:  Yes.
```

```
 1              THE COURT:  Mr. Mukasey, any questions?
 2              MR. MUKASEY:  Yes.  Ms. Benway, I noticed that you're
 3      a federal scientist.
 4              THE JUROR:  My husband is a federal scientist.
 5              MR. MUKASEY:  Can you tell us what department he's in?
 6              THE JUROR:  He works for the Department of Interior,
 7      U.S. geological surveyor.
 8              MR. MUKASEY:  Okay.  Can you explain what kind of
 9      scientist he is?
10              THE JUROR:  So he is a geologist by training, and then
11      he has -- right now he's getting his master's degree in
12      information science, information management.
13              MR. MUKASEY:  And you know the charges in this case
14      relate to false statements supposedly made to government
15      agencies.  Would your husband's occupation influence the way
16      you looked at this case or could you look at it with an open
17      mind?
18              THE JUROR:  I'm pretty sure I could be open.
19              MR. MUKASEY:  Fair enough.  Thank you.
20              THE COURT:  Any questions from the government?
21              MR. CASEY:  No, Your Honor.
22              THE COURT:  Thank you very much.  Please return to the
23      courtroom, which is now the jury room.
24              THE CLERK:  Yes.
25              THE COURT:  Number 16 is next.
```

```
 1              If anybody wants to recess at any time, just let me
 2      know.
 3              THE CLERK:  This is Juror number 16, Judge.
 4              THE COURT:  Okay.
 5              THE CLERK:  Hi.  Please have a seat, please.
 6              THE COURT:  Hello.
 7              THE JUROR:  Hello.
 8              THE COURT:  Could you do me a favor and tell me how to
 9      pronounce your last name?
10              THE JUROR:  Yes.  Kogut.
11              THE COURT:  Kogut.  Now, you indicated that you had
12      heard about this case and also that you had a scheduling
13      problem.  Let's start with the second.
14              THE JUROR:  I'm scheduled for surgery on January 6th.
15              THE COURT:  Would you do me a favor and take -- yeah,
16      it's hard to hear through the mask.  Thank you.  One ear is
17      fine.
18              THE JUROR:  Okay.  I'm scheduled for surgery January
19      6th and some mandatory preop appointments, one on December 21st
20      and then another which potentially --
21              THE COURT:  In the morning or afternoon?
22              THE JUROR:  3:45 on the 21st.
23              THE COURT:  8:45?
24              THE JUROR:  No.  3:45.
25              THE COURT:  The 21st is what day of the week?
```

```
1                 THE JUROR:  Tuesday.

2                 MR. DRABICK:  Next Tuesday, Your Honor.

3                 THE COURT:  That's the date, then, the jury might be

4      deliberating?

5                 MR. DRABICK:  Correct, Your Honor.

6                 THE COURT:  You also had heard about this case, I

7      gather?

8                 THE JUROR:  Yes.

9                 THE COURT:  Would that -- what you have heard make it

10     difficult for you to decide the case based on what you -- only

11     on what you hear in the courtroom?

12                THE JUROR:  No.

13                THE COURT:  As a lawyer, you know that you need to

14     sort it out?

15                THE JUROR:  Yes.

16                THE COURT:  Well, the problem is that the case likely

17     will go to the jury on Tuesday, I think.  Is that counsel's --

18                MR. DRABICK:  Our best estimate, Your Honor.

19                THE COURT:  And I would hope that we would be able to

20     get a verdict on that day, but for you to be at the -- at your

21     doctor's in mid-afternoon would mean you'd leave probably

22     shortly after lunch, and that probably isn't time enough.  I

23     mean --

24                THE JUROR:  Right.  And the surgeon is only available

25     on that Tuesday before the surgery.
```

1          THE COURT:  Is there any objection to excusing --

2          MR. MUKASEY:  No.

3          THE COURT:  -- Ms. Kogut?

4          MR. DRABICK:  No, Your Honor.

5          THE COURT:  Thank you very much.  Please -- as you're

6    leaving the courthouse, please stop by at the jury lounge and

7    tell them that you have been excused.

8          THE JUROR:  Okay.  Thank you.

9          THE COURT:  Thank you very much.  And good luck with

10   your appointment.

11         THE JUROR:  Thank you.

12         THE CLERK:  This is Juror number 17.

13         THE COURT:  Hello.  Please have a seat.  And if you

14   wouldn't mind removing the mask temporarily.  Thank you.

15         Now, your last name is Yousri?

16         THE JUROR:  Yousri, yeah.

17         THE COURT:  Is that how you pronounce it?

18         THE JUROR:  Yes.

19         THE COURT:  And you indicated that you had a problem

20   with our schedule?

21         THE JUROR:  Yeah.  First, I have my kids at school.

22         THE COURT:  I'm sorry.  Could you speak up a little.

23         THE JUROR:  Yeah.  I have my kids at school, then -- I

24   work per diem.  If I work, I get paid.  If I don't, I won't get

25   paid.

1        THE COURT:  So what are the children's school hours?

2        THE JUROR:  For today it's 7:30 to 1:30.

3        THE COURT:  And that's pretty much every day?  So you

4   would have difficulty being here?

5        THE JUROR:  Yeah.

6        THE COURT:  I'm sorry.  What time do they finish?

7        THE JUROR:  For today it's 1:30.  Every day is

8   different.

9        THE COURT:  Is there an earlier time during this

10  coming week?

11       THE JUROR:  No.

12       THE COURT:  Well, we would -- where is the school?

13       THE JUROR:  East Boston.

14       THE COURT:  So you couldn't get there by 1:30?

15       THE JUROR:  No.

16       THE COURT:  We stop promptly at 1:00.

17       THE JUROR:  No, I won't.  I have to take a train and

18  two buses.

19       THE COURT:  Any questions?

20       MR. MUKASEY:  No.  We think --

21       THE COURT:  Any objections to excusing her?

22       MR. MUKASEY:  No.

23       MR. DRABICK:  No, Your Honor.

24       THE COURT:  So please -- you are excused from further

25  service here.  Please stop in the jury lounge on your way out

1    so that they know that you are no longer here.

2              THE JUROR:  Okay.  Thank you.

3              THE COURT:  Thank you very much.

4              THE JUROR:  Have a nice day.

5              THE CLERK:  Thank you.  He'll be right up to take you

6    down to 2, okay?

7              This is Juror Number 18.  There you go, sir.  Thank

8    you.

9              THE COURT:  Hello.  You are Mr. Days?

10             THE JUROR:  I am.

11             THE COURT:  Okay.  And you told us that you have a

12   problem with our schedule and you also have a problem with the

13   case.  So if you don't mind taking off the mask, just halfway.

14   You don't have to take the whole thing off.

15             THE JUROR:  It's all right.  You had asked a

16   questioned if I had served on a trial before for a criminal

17   trial.

18             THE COURT:  And you had?

19             THE JUROR:  I was a foreman on a jury for an assault

20   and battery case.

21             THE COURT:  So if you were on this jury, would you

22   insist on being foreman again?

23             THE JUROR:  No.

24             THE COURT:  Would your prior experience make it in any

25   way difficult for you to be a fair juror in this case?

```
 1              THE JUROR:  Oh, no.
 2              THE COURT:  Okay.  You also told us that you had heard
 3     about this case in the news?
 4              THE JUROR:  Nope.
 5              THE COURT:  Oh.
 6              THE JUROR:  No.  I just had a problem with the
 7     schedule.
 8              THE COURT:  I'm sorry.  You had a scheduling issue.
 9     That's it.
10              THE JUROR:  I am a sole proprietor of a small
11     furniture company.  I am the only employee.  I have a
12     commission that is due on Christmas Eve that is a present for
13     my client.
14              THE COURT:  You could work at night, couldn't you?
15              THE JUROR:  I can work at night, and I'm going to be
16     working at night whether I'm on the trial or not.  I have about
17     50 hours of work to get done before Sunday so that I can get
18     finished on the piece.
19              THE COURT:  This coming Sunday or the next Sunday?
20              THE JUROR:  Before this Sunday.
21              THE COURT:  Any questions, Mr. Mukasey?
22              MR. MUKASEY:  I have 50 hours of work to get done by
23     tomorrow.
24              In your prior jury service, did the jury reach a
25     verdict?
```

```
 1                THE JUROR:  We did.
 2                THE COURT:  I want to know what it was.  Ms. Urso was
 3    on a jury once.
 4                THE CLERK:  Twice.
 5                MR. MUKASEY:  I was always told it was verboten to
 6    ask, but if you want to tell us, that's fine with me.
 7                THE JUROR:  It was not guilty.
 8                MR. MUKASEY:  He's good with us.
 9                THE COURT:  That was your verdict, too, wasn't it?
10                THE CLERK:  We couldn't reach one.
11                THE COURT:  That's right.  You had one dissident.
12                THE CLERK:  Two, ten to two.
13                THE COURT:  Any questions?  Any reason not to excuse
14    Mr. Yousri [sic]?
15                MR. CASEY:  We're happy to excuse him, Your Honor.  I
16    hope you get your furniture done.
17                THE JUROR:  Thank you very much.
18                THE COURT:  And I hope they pay you for it.
19                THE JUROR:  They will.
20                THE COURT:  Thank you.
21                THE JUROR:  Thank you.  Not Mr. Yousri.  Mr. Days.
22    Sorry.
23                Now we come to Susan Gannon.
24                THE CLERK:  Judge, this is Juror number 19.  Just come
25    in and sit, please.  Thank you.
```

1            THE COURT:  Ms. Gannon, welcome.

2            THE JUROR:  Thank you.

3            THE COURT:  Would you mind at least half off.

4            THE JUROR:  Oh, sure.

5            THE COURT:  Thank you.  You indicated several things.

6     One, that you had a scheduling problem.

7            THE JUROR:  Yes.

8            THE COURT:  And that you had heard news about this

9     case, and also that you had been involved in a criminal -- some

10    kind of a judicial proceeding earlier.

11           THE JUROR:  My father was.

12           THE COURT:  Your father was?

13           THE JUROR:  Yes.

14           THE COURT:  And what was the nature of that

15    proceeding?

16           THE JUROR:  My father was a Boston cop, and he was one

17    of the ones that was convicted back in 1987.

18           THE COURT:  He did what?

19           THE JUROR:  He was one of the Boston cops that was

20    convicted in 1987.

21           THE COURT:  And that was a while ago.

22           THE JUROR:  Yes.

23           THE COURT:  But it affected you?

24           THE JUROR:  Oh, extremely, yeah.

25           THE COURT:  Would that fact make it in any way

1  difficult for you to be a juror in this case?

2       THE JUROR:  Well, he passed away.  But I have my

3  mother as my hardship.  So my mother is 87.  I have an

4  appointment with her Friday and an appointment with her Monday.

5  She doesn't drive, so I have to take her to all of her

6  appointments.  That's basically my issue.  But it does bring

7  back memories coming in here.

8       THE COURT:  What is the news that you've heard about

9  this case?

10       THE JUROR:  I believe I read in the Wall Street

11  Journal -- I just remember something about China, the schools.

12  I have a very good friend that adopted a child from China, so

13  that stuck in my mind.  I believe I did read something.

14       THE COURT:  Would what you have read make it in any

15  way difficult to be a fair juror, if you were to be a juror?

16       THE JUROR:  I don't recall exactly what I read, but I

17  do remember reading something, so I just -- if something were

18  to come out --

19       THE COURT:  No, you did right.

20       THE JUROR:  -- I don't want to have it -- I don't know

21  if there was something that was in there that I would recall

22  that would come out.

23       THE COURT:  Would your other impediments that you have

24  mentioned make it difficult for you to be a juror?

25       THE JUROR:  It would, if I have to go to these

1   appointments Friday and Monday.

2          THE COURT:  Any questions?  Any questions,

3   Mr. Mukasey?

4          MR. MUKASEY:  No, Judge.

5          THE COURT:  Any objection to excusing her?

6          MR. MUKASEY:  No.

7          THE COURT:  As you leave the building, go by way of

8   the jury lounge and let them know --

9          THE CLERK:  Yes, Judge.  I have -- Doug is bringing

10  them down.

11         THE COURT:  Oh, you are doing it.  You are free to go.

12         THE CLERK:  Free to go downstairs for the next one,

13  Judge?  She's free to go to the next?

14         THE COURT:  She's free to go period.

15         THE CLERK:  For the day?

16         THE COURT:  For the day.  She's not going to be a

17  juror.

18         THE CLERK:  I'm sorry.  She's free to go for the day.

19         THE COURT:  I think we need a total of 36 jurors now.

20         THE CLERK:  This is Juror number 21, Judge.

21         THE COURT:  When we get to that number, we'll see

22  where we go.

23         THE CLERK:  Juror number 21.

24         THE JUROR:  Good morning, Your Honor.

25         THE COURT:  Good morning.  Mr. Kaitz or Kaitz?

```
 1              THE JUROR:  Kaitz.
 2              THE COURT:  If you wouldn't mind taking your mask half
 3   off.
 4              THE JUROR:  Is that good?
 5              THE COURT:  All I want is to be able to hear you.
 6              THE JUROR:  Sure, Your Honor.
 7              THE COURT:  Thank you.  You indicated that you had
 8   heard about this case in the news one way or another?
 9              THE JUROR:  That's correct, Your Honor.
10              THE COURT:  What did you hear?
11              THE JUROR:  I just read a Boston Globe article at some
12   point.
13              THE COURT:  Did you believe it?
14              THE JUROR:  Well, I understood there were allegations
15   that had been brought.  I don't know if they're true or not.
16              THE COURT:  Would you be able to be a fair juror and
17   decide this case based on what is presented to you in the
18   courtroom as opposed to what the Globe says?
19              THE JUROR:  I think so, Your Honor.
20              THE COURT:  Any questions from the government?
21              MR. CASEY:  None, Your Honor.
22              THE COURT:  Mr. Mukasey?
23              MR. MUKASEY:  Mr. Kaitz, what kind of lawyer are you?
24              THE JUROR:  I'm an employment lawyer as well as
25   litigation.  I actually tried a case in front of Judge Zobel.
```

```
 1              THE COURT:  I'm sorry?

 2              THE JUROR:  I've tried a case in front of Judge Zobel.

 3              THE COURT:  When was that?

 4              THE JUROR:  2015.

 5              THE COURT:  My memory doesn't go back that far.

 6              MR. MUKASEY:  Could you give us some tips?

 7              THE COURT:  What was the case?

 8              THE JUROR:  It was -- it was an employment

 9    discrimination retaliation case.

10              THE COURT:  But what were the nature -- what were the

11    facts?

12              THE JUROR:  An assistant district attorney was

13    terminated after she had went on a tirade at the Bar.

14              THE CLERK:  I remember.

15              THE COURT:  You represented the plaintiff?

16              THE JUROR:  No, the defendant.

17              THE COURT:  No, the defendant.  And you won?

18              THE JUROR:  Correct.  I made quite the impression.

19              THE CLERK:  I remember that case.

20              MR. MUKASEY:  Was it a jury trial?

21              THE JUROR:  Correct.

22              MR. MUKASEY:  Do you have any experience in criminal

23    law?

24              THE JUROR:  No.

25              MR. MUKASEY:  Can you keep an open mind both for the
```

1    defense and the government in a criminal case?

2             THE JUROR:  Yes.  I understand my duties as a juror.

3             THE COURT:  Would you be able to be a fair juror?

4             THE JUROR:  I hope so.  I think so.

5             THE COURT:  Despite the fact that you got the same

6    judge that tried the case that you tried once with somebody

7    else?

8             THE JUROR:  I figured it was a worthwhile disclosure

9    in case that would impact anything.

10            THE COURT:  Oh, absolutely.  You did just right.

11            THE JUROR:  But yeah, I believe I could be a fair

12   juror.

13            MR. MUKASEY:  What about in the jury room when you

14   deliberate; can you apply the facts and the law sort of without

15   maybe using your lawyerly tendencies to persuade others and

16   explain things from an insider's perspective?

17            THE JUROR:  Well, I certainly wouldn't consider myself

18   an insider with regards to criminal lawyer, but I also do have

19   lawyerly tendencies, so I can't lie about that.

20            MR. MUKASEY:  They'll go away.  Don't worry.  I'm

21   good.

22            THE COURT:  Thank you very much.

23            THE JUROR:  Thank you, Your Honor.  Thank you,

24   counsel.

25            THE COURT:  Go back to the courtroom, please.

```
1              THE CLERK:  Yes, Judge.

2              THE COURT:  Nobody wants him excused; right?

3              MR. MUKASEY:  Not yet.

4              MR. DRABICK:  We are not objecting for cause, Your

5   Honor.

6              THE COURT:  Okay.  That was Mr. Kaitz.

7              Now we go to Ms. McGeever.

8              THE CLERK:  This is Juror number 22.

9              THE JUROR:  Hi.

10             THE CLERK:  If you could come in and sit.  Thank you.

11             THE COURT:  Hello.

12             THE JUROR:  Hi, Your Honor.

13             THE COURT:  If you could half remove -- that would be

14   great -- any half so we can hear what you say.

15             THE JUROR:  Okay.

16             THE COURT:  You indicated a number of things.  One is

17   that you have a scheduling problem.

18             THE JUROR:  Uh-huh.

19             THE COURT:  And the other was that you -- there was

20   some other reason that I hadn't asked about.  Let's start with

21   that one.

22             THE JUROR:  So I live in Raynham.  It's over an hour

23   away, and I don't have a vehicle and the buses aren't running

24   right now because of COVID.  So my mom, she had to take --

25   she's a nurse.  She had to take the day off of work today to
```

1    bring me.  So if I had to take days and days, I don't even

2    know.  She could lose her job.  I don't know.  So that's the

3    reason why.  I wish I could do my civic honor and be here every

4    day, but that's the reason.  It's just -- I can't make it here.

5            THE COURT:  Any objection to excusing?

6            MR. CASEY:  None, Your Honor.

7            THE COURT:  Ms. McGeever, you are excused.

8            MR. MUKASEY:  No.

9            THE COURT:  And I hope you have a good ride back.

10           THE JUROR:  Thank you.

11           THE CLERK:  She has to report back down to jury?

12           THE COURT:  Well, only to let them know that she's

13   excused.  Is there anybody else impaneling?

14           THE CLERK:  Yes.

15           THE COURT:  Well, oh, that, too.

16           THE CLERK:  She has to remain?

17           THE COURT:  I think so.  I think so.  It may be a

18   shorter case, and that may be easier for you to manage.

19           THE JUROR:  Thank you.

20           THE COURT:  Thank you.

21           Now we come to Michael Nigro.

22           THE CLERK:  This is Michael, Juror number 24.  Thank

23   you, sir.  You can go right here.  Thank you kindly.

24           THE COURT:  Hello.

25           THE JUROR:  Hi, Your Honor.

1          THE COURT:  We appreciate your wearing the mask, but

2     would you mind sort of half taking it off so we can hear what

3     you have to say.  Thank you.

4          You indicated that you had a problem with our

5     potential schedule.

6          THE JUROR:  I have a potential hardship.  I have a

7     daughter, 23-year-old daughter who is mentally disabled on the

8     autism spectrum.  Now, as long as my wife is fine, it would

9     work.  If she were to become ill, that would make it a major

10    hardship.  I just wanted to make you aware of that.  And also,

11    I had a question to ask.

12         THE COURT:  Would you be able to do jury service the

13    way you work, I mean, in time?  I mean, the only difference

14    would be if the jury decides to deliberate past the usual work

15    hours.

16         THE JUROR:  I think, given the brevity of this trial

17    and as long as my wife doesn't get ill, everything should be

18    fine.  But I wanted to make you aware of my --

19         THE COURT:  So you could do the trial?

20         THE JUROR:  Yes, I think I could do the trial.  And my

21    question was, I was scheduled to get a vaccine booster on

22    Thursday.  Should I postpone that because of possible side

23    effects?

24         THE COURT:  So you have not been vaccinated?

25         THE JUROR:  I have had two shots.  I haven't had the

```
 1   booster.
 2          THE COURT:  Oh, the booster you haven't yet.  We hope
 3   you get it quickly.
 4          THE JUROR:  I should just go forward with it on
 5   Thursday afternoon?
 6          THE COURT:  On Thursday afternoon?
 7          THE JUROR:  Yes, because you mentioned it was only
 8   until 1:00 o'clock.
 9          THE COURT:  We will stop at 1:00 on Thursday.
10          THE JUROR:  So if I get it and I get side effects -- I
11   read your self-assessment thing about fever, chill.  If I get
12   side effects, I know I won't have COVID.  I just know that I
13   have the side effects.
14          THE COURT:  No, no.  If you have an appointment to get
15   the booster shot --
16          THE JUROR:  Go through with it?
17          THE COURT:  I don't know why you need an appointment.
18   I got mine at CVS.  Yes, I just walked in, and they said, You
19   want it?  I said, Of course.
20          THE JUROR:  Three weeks ago that would have been true.
21   Now you have to make appointments over a week ago.
22          THE CLERK:  I couldn't get one until after Christmas.
23          THE JUROR:  And I heard this, so I wanted to mention
24   this to you.
25          THE COURT:  Should I make an appointment for you at my
```

1    CVS?

2              THE CLERK:  Sure.  I'll get it.  It's okay.

3              MR. MUKASEY:  I think he's worried about the side

4    effects the next day; right?

5              THE JUROR:  Yes.  My appointment is at 1:30 on

6    Thursday, so I am going to call them up to say I will probably

7    be a little late.  I will probably be rushing out of here.  I

8    am just going to Somerville.  But I am sure I can make it work.

9    I'm just worried about -- right.  It doesn't mean I'll get side

10   effects.

11             THE COURT:  Any questions?

12             MR. MUKASEY:  I had a question on a different side

13   effect.  I see you're a financial analyst at a bank.

14             THE JUROR:  Yes.

15             MR. MUKASEY:  Do you do any work with taxes?

16             THE JUROR:  Not....

17             MR. MUKASEY:  Calculation of income taxes and filing

18   and that kind of thing?

19             THE JUROR:  I do reporting of withholding taxes.

20             MR. MUKASEY:  Of what?

21             THE JUROR:  Withholding.

22             MR. MUKASEY:  Do you pay dividends?

23             THE JUROR:  I work for a bank who is the administrator

24   of a family of mutual funds, hedge funds.

25             MR. MUKASEY:  Does it involve foreign bank accounts

1    ever?

2          THE JUROR:  Not me.  I'm not involved with any foreign

3    bank accounts.  It's not part of my job.  I just see brokers

4    reporting in that they're -- what withholdings they're

5    reporting.  Those withholdings would be taken from the

6    financials of those individual funds.  But for me it's

7    just -- there's no -- I'm not involved with any movement of

8    cash.  I'm not involved with any bank accounts, reconciliation

9    of bank accounts currently.

10          MR. MUKASEY:  What about withholding with respect to

11   foreign countries?

12          THE JUROR:  Some of the dividends are paid by foreign

13   corporations, that's true.  So -- but I'm not calculating the

14   withholdings.  Some of them could be coming from China, since

15   you bring things up.  But some of the companies are located in

16   China that these hedge funds hold.

17          THE COURT:  Any questions?

18          MR. CASEY:  None, Your Honor.  Thank you.

19          THE COURT:  Thank you very much.  Please wait for us

20   in the courtroom.

21          THE JUROR:  Thank you.

22          THE COURT:  Anyone want him excused?

23          MR. CASEY:  No.

24          THE COURT:  Okay.  So now we go to --

25          THE CLERK:  This is Juror number 25.  Please have a

1  seat, please.  Thank you.

2          THE COURT:  Hello.

3          THE JUROR:  Hi.

4          THE COURT:  Here we go.

5          THE JUROR:  Flip the page.

6          THE COURT:  Ms. Smart?

7          THE JUROR:  Yes.

8          THE COURT:  You indicated some -- that you had a

9  reason.

10          THE JUROR:  Yeah.  So I'm a nurse practitioner in

11  long-term care.

12          THE COURT:  Would you mind taking the mask half off.

13          THE JUROR:  Sure.

14          THE COURT:  That's fine.  Thank you.

15          THE JUROR:  I'm a nurse practitioner in long-term

16  care.  As most of you probably know, COVID hit severe.  My

17  company only goes into long-term care facilities and assisted

18  living facilities.  So even if I took away the burden that that

19  is on them, quite frankly, my ability to sit in a room full of

20  people, some of whom are not masked, so close for any length of

21  time is not going to be good for anybody.

22          I mean, I would love -- I could say I could be

23  impartial, but I can't sit in on a jury to do that.  So take

24  that for what it's worth, my ability to concentrate in that --

25          THE COURT:  The reason you can't is because you feel

1    you are too closed in by people who are not wearing a mask?

2          THE JUROR:  My ability to sit still in a room with

3    people is limited as it is, quite frankly, since COVID.  So my

4    ability to concentrate on this case I think may be impeded, and

5    I don't want that to happen because I won't be able to

6    concentrate.

7          THE COURT:  You're worried about not being able to sit

8    still because there are so many people who are not covered?

9          THE JUROR:  Yes.  And even with masks, honestly.

10          THE COURT:  So it's not the --

11          THE JUROR:  The PTSD from this, from having 40 percent

12    of my patients die, quite frankly, my ability to concentrate is

13    impeded, and I don't want that to impair my ability to be

14    objective.  So it's not the topic.  It's not that I know

15    anyone.  I just need you to know that it may be an issue, and I

16    don't want to get -- you know, if it was a one- or two-day

17    trial, I would say that that was all right.  But honestly, five

18    days, I don't think it's fair to either party for me to not at

19    least make you aware.

20          THE COURT:  Any questions?

21          MR. CASEY:  None, Your Honor.  Thank you.

22          THE COURT:  Mr. Mukasey, any?

23          MR. MUKASEY:  No objection.

24          THE COURT:  Thank you very much.  There's no objection

25    to excusing her?

1          THE JUROR:  Thank you very much.

2          MR. MUKASEY:  Correct.

3          THE COURT:  Take care.

4          THE JUROR:  All right.  Thanks.

5          THE CLERK:  This is Juror number 26, please.  Just

6    have a seat, please.

7          THE JUROR:  Thank you.

8          THE COURT:  Hi.  Would you mind moving it halfway down

9    so we can hear you.  Thank you.

10         You indicated that you had a scheduling problem.

11         THE JUROR:  I do, yes.

12         THE COURT:  But you also mentioned something about the

13   indictment, I think.

14         THE JUROR:  Yeah.  You mentioned something about

15   education, and I work in education at a college that recruits

16   students from China.  So when you said that and not knowing all

17   the details, I felt that that was something that I needed to

18   make sure that you were aware of.

19         THE COURT:  Well, it's important because defendant is

20   an educator, and that's the only reason.  Would that make

21   it -- that fact that you're teaching Chinese people --

22         THE JUROR:  I am not.  I recruit students.

23         THE COURT:  You recruit?

24         THE JUROR:  Yes.

25         THE COURT:  But you have a relationship for the

1    institution with which you work with Chinese students?

2            THE JUROR:  Correct.

3            THE COURT:  And the defendant is charged with having

4    worked with Chinese universities, I think is the essence of it.

5    Would that make it difficult for you to be fair in this case

6    and decide it based on the evidence that is presented and not

7    on some relationships that you have in your own job?

8            THE JUROR:  I would need to make sure that it's not a

9    conflict of interest with my institution.  I don't know if

10   there have been partnerships with other universities in China,

11   and so because of that, I feel that it's important to share

12   that information.  But, you know, I work in college admissions,

13   so part of that is to be unbiased and to be fair and to review

14   all facts before making a final decision.  So I feel that I'm

15   competent of making a fair assessment.  I just feel that there

16   could, may, without any real information, could be a conflict

17   of interest.

18           THE COURT:  It's good of you to let us know, and I'll

19   ask counsel about any additional questions they have.  But

20   before we do that, you also had a scheduling issue.

21           THE JUROR:  Yes.  My mother has Parkinson's, and I'm

22   her primary caregiver.  She recently fell and was in rehab and

23   is now doing home rehab.  So I need access to my phone in order

24   to let the providers in.  She can't come down the stairs from

25   the second floor.  So I have everything programmed with my

1    phone.

2            THE COURT:  You live in Boston.  How far from -- but

3    you go to work or do you not at the moment?

4            THE JUROR:  I do, but I let everybody in through my

5    phone.  So I am constantly checking my phone to let the

6    providers come in when they need to do OT, PT, the visiting

7    nurse, the home aides.

8            THE COURT:  Does the phone ring or do you see it?

9            THE JUROR:  Both.  I can put it on vibrator, but it

10   could be a distraction as well.

11           THE COURT:  I think we could probably accommodate

12   that, if necessary.

13           THE JUROR:  I do have a letter from the OT, just to

14   share that information as well.

15           THE COURT:  Does the government have any questions?

16           MR. DRABICK:  With Your Honor's permission, we could

17   identify the names of some of the institutions and the program

18   to see if this potential juror has any known -- if she knows

19   any connection to those in her work, if there's no objection.

20           THE COURT:  Go ahead.

21           MR. DRABICK:  Wuhan University of Technology.

22           THE JUROR:  I have heard of the institution.  I can't

23   say that we have a partnership.

24           MR. DRABICK:  Any connection to your work to that

25   university?

```
 1          THE JUROR:  Not specifically.

 2          MR. DRABICK:  China's Thousand Talents Program?

 3          THE JUROR:  Not to my knowledge.

 4          MR. DRABICK:  Does it ring a bell?

 5          THE JUROR:  It doesn't, like, immediately come to

 6     my -- like, yes, you know, this university or this program

 7     specifically.

 8          MR. DRABICK:  And if those things were mentioned

 9     during the trial, is there any reason you think you

10     could -- that would cause you to have any bias or difficulty

11     being a fair and impartial juror?

12          THE JUROR:  As I mentioned, I do work in college

13     admissions and part of that is to be fair when we're reviewing

14     applications and making final decisions.  I don't feel that I

15     personally would be.  I was just more concerned of any

16     potential conflicts of interest that I may not be aware of with

17     partnerships that the university may have.

18          MR. MUKASEY:  You work at the undergraduate admission

19     level?

20          THE JUROR:  I do, yes.

21          MR. MUKASEY:  And do you have any connection to

22     Harvard University or partnership with Harvard?

23          THE JUROR:  Our faculty do.  They do research, and

24     research is conducted on campus for our undergraduate students.

25     We had a fairly huge number of students from China that always
```

1   conduct research on campus with our faculty.  I don't know to

2   what extent those relationships go further.

3          MR. CASEY:  Just going back to the issues with your

4   mother, is that going to be distracting to you at all during

5   the trial?

6          THE JUROR:  It is.  She fell on October 13th, and

7   she's at high risk for a fall.  And I've been balancing my

8   full-time job with caregiving, and then at nighttime being

9   awake to help her get up at night to go to the bathroom.

10         MR. CASEY:  Do you think that's going to give you

11  trouble listening, paying attention, and being fair to both

12  sides?

13         THE JUROR:  I may be very tired.  I'm not going to

14  lie.  It's been a very exhausting last three or four weeks.

15         MR. DRABICK:  You mentioned the phone and letting

16  caregivers in.  Is there any other family member that would be

17  able to help out?

18         THE JUROR:  I would have to give them complete access.

19  That means my pass codes and stuff like that, and I don't feel

20  comfortable doing that.

21         MR. DRABICK:  Understood.  Thank you.

22         MR. MUKASEY:  I think both sides are just looking for

23  somebody who, even with their life experience and other

24  responsibilities, can just sit for four hours a day and pay

25  attention to a pretty interesting story and keep an open mind.

1    Do you think you can do that?

2            THE JUROR:  No.  I'm just being honest.  It's a lot

3    right now.

4            MR. MUKASEY:  Okay.

5            THE COURT:  When do you think you would like to come

6    back to be a juror?

7            THE JUROR:  I would love to, honestly.

8            THE COURT:  When?

9            THE JUROR:  If you can bring me back in the

10   summertime.

11           THE COURT:  Okay.

12           THE JUROR:  I would love that, seriously.

13           THE COURT:  No objection to excusing her?

14           MR. MUKASEY:  None, Your Honor.

15           MR. CASEY:  No, Your Honor.

16           THE COURT:  We will excuse you and summons you back in

17   the summer.

18           THE JUROR:  I would love it.  Thank you.

19           THE COURT:  Thank you.

20           THE CLERK:  This is Mr. Souza, Juror number two-seven.

21           THE COURT:  Mr. Souza, how are you?

22           THE JUROR:  Good.  How are you?

23           THE COURT:  What kind of consulting do you do?

24           THE JUROR:  I'm a management consultant.

25           THE COURT:  I'm sorry?

```
1              THE JUROR:  I'm a management consultant.

2              THE COURT:  Can you move half of your mask down.

3              THE JUROR:  Sure.

4              THE COURT:  And what issue do you have with us?

5              THE JUROR:  I have no issue with you.

6              THE COURT:  Us, all of us.

7              THE JUROR:  No issue with all of you.

8              THE COURT:  Do you want to be here?

9              THE JUROR:  I'm happy to be here, yeah.

10             MR. MUKASEY:  Did you have a China issue?

11             THE JUROR:  I'm married to a woman who is from Taiwan,

12     and her family moved to Taiwan when they were young to sort of

13     get away from the Chinese government.  I have a brother-in-law

14     who works in Beijing.  So I've just spent a lot of time with

15     them, and I have some real issues with the Chinese government

16     in the way in which it operates or in a world with a pandemic

17     which was started in a lab in Wuhan.  And I just have a real

18     hard time with anything related to -- I think I would have a

19     hard time with many things related to that as I think about

20     this case.

21             THE COURT:  Well, as I understand this case, the

22     Chinese government is involved only to the extent that the

23     defendant, Mr. Lieber, worked for Chinese institutions and he

24     got paid by Chinese institutions, which may be the government,

25     I don't know, but in any event, that's it.  He did his
```

1    professional work.

2           THE JUROR:  I don't know the details of the case, of

3    course.

4           THE COURT:  Would you be able to decide that fairly

5    with the --

6           THE JUROR:  I'm not sure.  But I know what -- I know

7    the many conversations I've had with them, and I know how I

8    feel about that country.  I just -- you asked the question, and

9    so I answered it the way --

10          THE COURT:  No, no.  I'm glad that you were being, you

11   know, focused on it.  I'm just trying to find out how much, you

12   know, whether there's a way in which you can be a juror in this

13   case.  It does not -- it does not really involve the conduct of

14   the Chinese government.  It involves the conduct of the

15   defendant.

16          THE JUROR:  Right.

17          THE COURT:  And, however, it was the Chinese

18   government that apparently came up with the money that paid him

19   for the activities that he performed.

20          THE JUROR:  Uh-huh.

21          THE COURT:  Would that -- would that scenario make it

22   possible for you to be a fair juror?

23          THE JUROR:  I believe the Chinese government does a

24   lot of things that are not very -- I don't know if you want to

25   call it legal.  I mean, there's just a lot of things.  I would

 1    be -- have a hard time thinking about the Chinese government as

 2    part of a trial and not be biased in my interpretation of their

 3    activities.

 4              THE COURT:  Well, except that -- I don't want to keep

 5    pushing you, but the charges are violations of U.S. law,

 6    failing to report --

 7              THE JUROR:  Right.

 8              THE COURT:  -- failing to file taxes.  The reason why

 9    the government says he needed to file these reports was because

10    he got money from China.  That's essentially the connection.

11    Would that make -- would that -- those facts be facts that you

12    could consider fairly and appropriately and render a verdict

13    with respect to them?

14              THE JUROR:  I'm not sure I guess is the answer.

15    There's like this cloud over this kind of a case, I guess, in

16    my mind.

17              MR. MUKASEY:  Judge, I think both parties are agreed

18    that perhaps Mr. Souza can be excused.

19              THE COURT:  Excuse him.

20              THE JUROR:  I'm happy to serve another time.

21              THE COURT:  No, no.  You are excused, but please

22    report back to the jury lounge.

23              THE CLERK:  Yes.

24              THE COURT:  We go to Peter Fessenden.

25              THE CLERK:  This is Juror number 29.  You can have a

 1    seat, sir.

 2           THE COURT:  Mr. Fessenden, have a seat, please.  And I

 3    would appreciate you sort of removing your mask partly so I can

 4    hear you.  You indicated that you have a problem with our

 5    schedule?

 6           THE JUROR:  I actually don't.  The only problem is I'm

 7    just coming from far away.  So I just want to let everyone know

 8    I'm coming from far away.  I'm coming from Cape Cod, so it's

 9    two hours.  You said it was 9:00 to 1:00.  That's much better

10    than 8:00.  I left my house at 5:00, so I'm just tired.  Aside

11    from that, I have no other --

12           THE COURT:  So you would be willing to come for the

13    next three or four days at 9:00?

14           THE JUROR:  Definitely.

15           THE COURT:  And we certainly finish at 1:00 except on

16    the day on which you deliberate on the verdict; then you'll be

17    here until you have a verdict or the jury decides they want to

18    come back the next day.  That is okay with you?

19           THE JUROR:  That is okay with me, yes.

20           THE COURT:  Any questions?

21           MR. DRABICK:  No, Your Honor.

22           MR. MUKASEY:  Could I get action on the Cardinal-Rams

23    game?

24           THE JUROR:  You could get action on the Cardinal-Rams

25    game, but the Rams won.  I don't know if you stayed up for

1    that.  I unfortunately did.  That's why I'm tired.  They were

2    underdogs.

3              MR. MUKASEY:  No problem.

4              THE COURT:  Thank you very much.  Please return to the

5    courtroom, and we will be done soon.

6              Mr. Cuthbert is next.

7              THE CLERK:  This is Juror number 30.  This is David.

8    Would you pull your mask down a little bit when you speak.

9              THE COURT:  Mr. Cuthbert, is it?

10             THE JUROR:  Yes.

11             THE COURT:  You indicated that you had seen something

12   in the press about this case or on television.

13             THE JUROR:  I think so.

14             THE COURT:  And also that you have a scheduling

15   problem.  Let's start with the second.

16             THE JUROR:  I live on the Cape in Bourne, and I'm

17   primary custodial parent for a 14-year-old daughter.  I'm

18   responsible for getting her to school.

19             THE COURT:  How old is she?

20             THE JUROR:  14.

21             THE COURT:  How do you get her to school?

22             THE JUROR:  I drive.  There's no bus.

23             THE COURT:  You drive her?

24             THE JUROR:  Yeah.

25             THE COURT:  And what time does she have to be there?

1          THE JUROR:  Around 8:00 o'clock.

2          THE COURT:  So would you be able to arrange it so that

3    you can be here at 9:00?

4          THE JUROR:  I can't guarantee every day.  I can't rely

5    on her mother, and I don't have any other backup.

6          THE COURT:  I think you also indicated that you had

7    heard about this case?

8          THE JUROR:  I think so.  I don't know if it's the same

9    one that I read about.  I believe the gentleman was either from

10   MIT or Harvard, I think, is what I remember reading.

11         THE COURT:  Well, would you be able to decide this

12   case only on what you hear in the courtroom as opposed to what

13   you've read or seen on television?

14         THE JUROR:  Yes.

15         THE COURT:  You can do that?

16         THE JUROR:  Yes.

17         THE COURT:  Any questions, Mr. Mukasey?

18         MR. MUKASEY:  No.  I mean, if you had to drive, you

19   know, early in the morning after you dropped off your kid,

20   could you show up here and pay attention?

21         THE JUROR:  I mean, it took me two hours to get here

22   with traffic.

23         MR. CASEY:  So you drop your daughter off, you said,

24   at 8:00 o'clock?

25         THE JUROR:  Yes.

1          MR. CASEY:  Okay.

2          THE COURT:  So you didn't get here until 10:00.

3          THE JUROR:  No, today her mother took her.

4          THE COURT:  Oh, you left early?

5          THE JUROR:  Her mother took her today.  Her mother is

6     not reliable.  So I can't -- if this case goes for a week, I

7     can't guarantee to be here.

8          THE COURT:  Does her mother live with you?

9          THE JUROR:  No.  We both live on Cape Cod but two

10    separate places.

11         THE COURT:  And your daughter lives with her or with

12    you?

13         THE JUROR:  Generally with me.  So today -- last night

14    I had my daughter with her mother to be here today.

15         MR. CASEY:  Your Honor, I think the parties are in

16    agreement that he could be excused.

17         THE COURT:  We'll excuse you from further service here

18    today, and I guess tomorrow, too.  And please return to the

19    jury lounge and tell them about that, okay?  Thanks.

20         MR. MUKASEY:  Thank you.

21         THE CLERK:  This is Juror number 31.  If you could

22    just take down your mask a little bit.

23         THE COURT:  Who is this?

24         THE CLERK:  31, Jason.

25         THE COURT:  Mr. Hoggatt; right?

1          THE JUROR:  Hoggatt.

2          THE COURT:  Hoggatt, sorry.

3          THE JUROR:  That's all right.

4          THE COURT:  You indicated that you had a problem

5     period, and then you had a special problem with having read

6     about the case or heard about the case?

7          THE JUROR:  No, I did not.  I only answered to that

8     there was a question about serving on a jury prior.

9          THE COURT:  You had served on a prior jury?

10         THE JUROR:  Yes.

11         THE COURT:  In the state court or federal court?

12         THE JUROR:  I don't recall.  It was in Maine when I

13    was 18.  It's like 30 years ago at this point.  It was -- I

14    don't know if it was a federal charge or a state charge.  There

15    was a felon with a firearm was the primary charge.  So it could

16    have gone either way, I think, and it's been too long.  I do

17    not recall if it was state or federal.

18         THE COURT:  Was it a good experience from your

19    perspective?

20         THE JUROR:  It was a jury experience.  There wasn't

21    anything, like, distasteful about it.

22         THE COURT:  Would you object to being a juror again?

23         THE JUROR:  No.

24         THE COURT:  And did you -- did you also say that you

25    had heard about the case in the press?

```
 1              THE JUROR:  No, I had not.

 2              THE COURT:  Okay.  Any questions?  Any further --

 3              MR. DRABICK:  No, Your Honor.

 4              THE COURT:  Any objections?

 5              MR. MUKASEY:  No.

 6              THE COURT:  You are welcome to be a juror.

 7              THE CLERK:  Okay.  You can come out here, sir.

 8              THE COURT:  Did we excuse Mr. Fessenden, number 29?

 9              MR. MUKASEY:  No.

10              THE COURT:  And we didn't excuse this guy,

11  Mr. Cuthbert?

12              MR. CASEY:  Cuthbert we did excuse, number 30.

13              THE CLERK:  This is number 33, Judge.

14              THE COURT:  30 we did?  This was Hoggatt, right.

15              Now, Mr. Barry; right?

16              THE JUROR:  Yes.

17              THE COURT:  You indicated that you had heard about

18  this case in one way or another?

19              THE JUROR:  No.  I indicated when the -- I believe the

20  question was has anyone here been involved --

21              THE COURT:  Oh, whether any members of your family or

22  you had been engaged --

23              THE JUROR:  Or had I been a juror --

24              THE COURT:  -- in court in any way?

25              THE JUROR:  Yes.
```

```
 1              THE COURT:  And who has been so engaged, you or
 2     members of your family?
 3              THE JUROR:  I was a juror.
 4              THE COURT:  You were a juror?
 5              THE JUROR:  Yes.
 6              THE COURT:  How long ago was that?
 7              THE JUROR:  Quite a while ago.
 8              THE COURT:  So it's time to do it again.
 9              THE JUROR:  I'd rather not.
10              THE COURT:  Why?  What was the problem?
11              THE JUROR:  There was no problem.  It's just very
12     time-consuming.
13              THE COURT:  This is a very short trial, and we are
14     extremely efficient.
15              THE JUROR:  I'm sure you are.
16              THE COURT:  Would you -- I mean, I understand that you
17     have been a juror.  Would the fact that you have done this
18     before in any way make it difficult for you to be a fair juror
19     in this case were you to be one?
20              THE JUROR:  I don't think so.
21              THE COURT:  You don't think so?
22              THE JUROR:  Right.
23              THE COURT:  Any questions, Mister --
24              MR. MUKASEY:  If we promise to keep it lean and mean
25     and tight, could you sit and pay attention?
```

1          THE JUROR:  Sure.

2          MR. MUKASEY:  And be fair to both sides?

3          THE JUROR:  Yes, as fair as I can.

4          THE COURT:  I failed to mention one other thing that

5     we have a habit of doing.  We stop about every half hour or so

6     and stretch for just about 30 seconds to a minute.

7          MR. MUKASEY:  I'm all in favor of that.

8          THE COURT:  And everybody is necessarily woken up by

9     this.  So you won't be able to go to sleep in this courtroom.

10    Is that okay?

11         THE JUROR:  Yeah, that would be a good thing.

12         THE COURT:  Any objections?

13         MR. CASEY:  No, Your Honor.  Thank you.

14         THE COURT:  Thank you very much.  Please return to the

15    courtroom, and we'll finish soon.

16         THE JUROR:  Thanks.

17         THE CLERK:  34, this is Jonathan Crawford, Juror

18    number three-four.  You can have a seat, sir.

19         THE JUROR:  How are you guys doing?

20         THE COURT:  Hi.  You are Mr. Crawford?

21         THE JUROR:  I am, the one and only.

22         THE COURT:  Would you mind sort of half removing this.

23    Fantastic.

24         Now, you told us that you had read about this case in

25    the press and that you had a scheduling problem and that you

1    were sort of generally maybe not keen on being here.

2            THE JUROR:  So when I was listening to you guys talk,

3    it sounded like it had to do with the pay for university

4    placement that had been going.  It doesn't have to do with

5    that?

6            MR. DRABICK:  This is not the college admissions case.

7            THE JUROR:  I just wanted to raise my hand in case it

8    was about that.

9            THE COURT:  No.  This is a much more sophisticated

10   case.

11           THE JUROR:  And then I raised my hand for court

12   proceedings because when I was younger it took me a little

13   while to stop getting into trouble.  So I had some arrests for

14   assault and batteries and disorderly conducts and stuff like

15   that.

16           THE COURT:  Are you over that now?

17           THE JUROR:  I am now, yeah.  Thank God.

18           THE COURT:  I mean, I wouldn't want you to get mad at

19   us.

20           THE JUROR:  No.  You seem like nice people.

21           And then just with scheduling, so -- I'm married.  My

22   wife is a stay-at-home mom.  I'm a union plumber here in the

23   city.  So we have a four- and five-year-old.  So if I don't

24   work, I don't get paid.  I'm a union plumber.  It's not

25   collectively bargained for us.  But I am working right at One

1  Marina Park, so I could start in the morning and get some

2  hours, and if we got out at 1:00, the job closes at 2:30 so.

3         THE COURT:  That would be great, if that could be

4  done.  We pay you something, probably not as much you get as a

5  plumber.

6         MR. CASEY:  It might buy you lunch.

7         THE JUROR:  So that's all I had.

8         THE COURT:  Any questions, Mr. Mukasey?

9         MR. MUKASEY:  Do you think the criminal justice system

10 and the lawyers and the judges treated you fairly when you got

11 your issues?

12        THE JUROR:  Yeah.  My issues were more with the

13 police.  I mean, once you get into the court system, it's kind

14 of fair.

15        MR. MUKASEY:  But you could put that behind you and be

16 fair in this case?

17        THE JUROR:  Yeah.

18        MR. CASEY:  You might hear testimony from law

19 enforcement witnesses.  Would your prior experiences allow you

20 to listen to their testimony and evaluate it fairly to both

21 sides?

22        THE JUROR:  Yeah, I think so.

23        MR. CASEY:  Are you hesitant at all?  Are you sure of

24 that?

25        THE JUROR:  I mean, I think in human nature there's

1    the ability to lie, but I would trust somebody that's on the

2    stand.

3              MR. CASEY:  Well, would you evaluate it fairly to both

4    sides?

5              THE JUROR:  Yes.  All right?

6              THE COURT:  Thank you.

7              MR. MUKASEY:  Thank you.

8              THE CLERK:  Go down to the jury lounge.

9              THE COURT:  Not the jury lounge.  He goes back to the

10   courtroom.

11             THE CLERK:  Sorry.  I keep saying that.

12             Juror number three-five, Judge.  You can just come in

13   and sit, please.  Thank you.

14             THE COURT:  Please have a seat.

15             THE JUROR:  Thank you.

16             THE COURT:  And please half remove your mask, at least

17   so I can hear what you have to say.

18             THE JUROR:  Sure.

19             THE COURT:  You told us that you have a problem with

20   our schedule.

21             THE JUROR:  Yes.

22             THE COURT:  And what is that problem?

23             THE JUROR:  The problem is I don't speak that much --

24             THE COURT:  Can you speak a little louder, please.

25             THE JUROR:  I don't speak that much English, but I

```
 1    understand a little bit.

 2            THE COURT:  You sound pretty good in English.

 3            THE JUROR:  Yeah.  But, like, some word I don't

 4    understand, to be honest with you.

 5            THE COURT:  What is your native language or your first

 6    language?

 7            THE JUROR:  Somalia.

 8            THE COURT:  I'm sorry?

 9            THE JUROR:  I'm from Somalia.

10            THE COURT:  How long have you been here?

11            THE JUROR:  Almost, I believe, 20 years.  But I learn

12    English in evening classes, adult classes.

13            THE COURT:  English is not such an easy language to

14    learn.  I know.

15            THE JUROR:  Yeah, it's hard.  Even I'm cashier, and I

16    listen to people.  That's why.  I don't go to any school.

17            THE COURT:  And they have some funny sounds like

18    (demonstrating).

19            THE JUROR:  I'm sorry?

20            THE COURT:  No, it's not you.  It's because I had to

21    learn it, too.

22            THE JUROR:  So I wish if I can get educated here, then

23    I can observe everything, that would be better.

24            THE COURT:  Well, partially.  But in any event, have

25    you had any trouble understanding the proceedings this morning
```

```
 1    so far?
 2              THE JUROR:  I understand a little bit.  Not that much.
 3              THE COURT:  You did not understand?
 4              THE JUROR:  I understand a little bit.  Like, I don't
 5    have any problem with any, you know, case like this before.
 6              THE COURT:  Any questions, Mr. Mukasey?
 7              (No response.)
 8              THE COURT:  I don't know which of you --
 9              MR. CASEY:  I'm Mr. Casey.  I have the shorter hair.
10              Did you also have a scheduling issue that you were
11    concerned about, like an issue with your ability to be here and
12    sit throughout the trial?
13              THE JUROR:  Actually, when I understand everything, I
14    have no complaint for coming every day, but my problem is,
15    like, if I don't understand for some word, it's kind of hard,
16    you know.
17              THE COURT:  Any objection to excusing her?
18              MR. MUKASEY:  No.
19              MR. CASEY:  No.
20              THE COURT:  Okay.  We'll excuse you from further
21    service in this case, but please go down to the jury lounge
22    because there's another case that may be easier and shorter for
23    you.
24              THE JUROR:  Thank you.
25              THE CLERK:  This gentleman right here will take you.
```

1          This is Juror number 36.  You can have a seat, please.
2     If you'd just take down your mask when there's questions, a
3     little bit.
4               THE JUROR:  Sure.
5               THE COURT:  Is it Bernier or Bernier?
6               THE JUROR:  Bernier.
7               THE COURT:  You indicated you had a problem with our
8     schedule.
9               THE JUROR:  Just that I own a day care center.  That's
10    the only -- you know, if I'm not there to open up in the
11    morning, it's just a lot of, you know, rescheduling for all
12    staff.
13              THE COURT:  Nobody -- you have staff that works with
14    you?
15              THE JUROR:  I do, yes.  But sometimes with --
16    especially other staff out or they call in sick, you know,
17    we're taking care of 52 kids.
18              THE COURT:  How many people work with you in this
19    venture?
20              THE JUROR:  I have 12 employees.
21              THE COURT:  So one or another of them should be
22    available during this relatively short time of the trial?
23              THE JUROR:  I could figure it out, but it's just a
24    lot.  That's all.
25              THE COURT:  And you'd be willing to try it?

1          THE JUROR:  Yes.

2          THE COURT:  Any questions, Mr. Casey?

3          MR. CASEY:  I just had a quick question.  The form we

4   get, it cuts off some information.  Could you tell us where

5   your husband works?

6          THE JUROR:  American Airlines.

7          MR. CASEY:  Got you.  Thank you.

8          THE COURT:  He works for what?

9          THE JUROR:  American Airlines.

10          THE COURT:  Because for us it has just "American."

11          MR. CASEY:  That's the reason.

12          THE CLERK:  Okay.  Are we good?

13          THE COURT:  Mr. Mukasey, any questions?

14          MR. MUKASEY:  No.  No objection.

15          THE COURT:  Thank you very much.  Please return to the

16   courtroom.

17          THE CLERK:  This is Juror number 38.

18          THE COURT:  Have a seat.  After this one, hold on for

19   one second.

20          THE CLERK:  Are you Mr. Dunlap?

21          THE JUROR:  Yes.

22          THE COURT:  Now I have to find the proper page.

23          MR. MUKASEY:  It's the top of four.

24          THE COURT:  The proper page has left me.

25          THE CLERK:  What's the matter?  I'm sorry.  It's

 1   number 38.

 2          MS. BERGIN:  We are on page 4.

 3          THE COURT:  I know.  Something is wrong here.  Too

 4   many pages, and we are on the wrong one.

 5          Okay.  Somehow it got itself rearranged.

 6          THE CLERK:  Because it's going this side.

 7          THE COURT:  Oh, it's back and forth.  They do it this

 8   way.  So you are on page 4.  So we're pushing over that side.

 9          MR. CASEY:  It should be number 37.

10          THE CLERK:  No, 38.

11          THE COURT:  I didn't do that before.  It wandered from

12   one side to the other.

13          So you are Mr. Dunlap?

14          THE JUROR:  Yes, ma'am.

15          THE COURT:  And you wanted to be excused for some -- I

16   guess you had feelings about China?

17          THE JUROR:  Yes.

18          THE COURT:  What are those feelings?

19          THE JUROR:  Good question.  Hard to answer, maybe

20   briefly, but just generally through listening to podcasts,

21   media.

22          THE COURT:  Are you for or against?

23          THE JUROR:  I don't know for or against.  More maybe

24   generally scared of them and their views of the United States.

25   I don't know if a threat is the right term.

1          THE COURT:  China is in this case only to the extent

2     that it is the place where the defendant, Mr. Lieber, worked --

3          THE JUROR:  Okay.

4          THE COURT:  -- and got paid by.  So I think that's in

5     essence the China part of it.

6          MR. MUKASEY:  Well, I think it's a little more

7     elaborate than that, if I might just for a moment.  We dispute

8     that Professor Lieber worked there or got paid by the

9     government.  There is going to be discussion in the case about

10    travels to China and doing some speaking with students and

11    exchanging with professors in China, and a program that the

12    government talks about that may have been intended to recruit

13    people to come to China --

14         THE JUROR:  From the United States?

15         MR. MUKASEY:  -- to help the Chinese government.

16         THE JUROR:  Yes, yes.

17         MR. MUKASEY:  We dispute that.

18         THE JUROR:  Okay.

19         MR. MUKASEY:  That's kind of the --

20         THE JUROR:  I generally heard that.  So I went to

21    Harvard, and I heard about, like, a program similar to that

22    maybe, where individuals from the school were going to China --

23    being recruited from China to work for their government.

24         THE COURT:  Do you have feelings about that that would

25    make it difficult to be a fair juror in this case?

1          THE JUROR:  Yeah.  It generally scares me, I think,

2     the idea that that could be happening and may be happening.

3          MR. MUKASEY:  But can you appreciate that there's

4     lawful visits to China and lawful lectures in China and lawful

5     activity in China for Americans?

6          THE JUROR:  Yeah, I'm sure there's a way to do it that

7     might be doing it lawfully, but generally, I would be skeptical

8     of any sort of travel there.  I don't know.  It makes me a

9     little uneasy.

10          THE COURT:  You are not saying it's illegal.  You are

11     saying you don't like it?

12          THE JUROR:  Yeah.  I mean, I don't know exactly what

13     would be illegal about it because I feel like we're talking in

14     very broad general terms, so it's not specific.  But yeah, I

15     don't like the idea that it's happening.

16          MR. DRABICK:  Mr. Dunlap, the allegations in this case

17     are that the defendant committed a crime based on his

18     statements to federal government agencies.  So the allegations

19     won't be that there was -- that the underlying conduct that

20     there will be evidence about and disputed was itself illegal

21     but that there were false statements made.  Are you able to

22     follow the law as instructed by Judge Zobel about the nature of

23     the alleged crime in this case, do you think?

24          THE JUROR:  I honestly don't think so.  Like, I don't

25     know if I would be impartial beyond that.

 1          THE COURT:  Any objection to excusing Mr. Dunlap?

 2          MR. MUKASEY:  No.

 3          MR. CASEY:  No.

 4          THE COURT:  Please return to the jury lounge.  We'll

 5    try to find another case for you.  Thank you so much.

 6          THE JUROR:  Thank you.

 7          THE CLERK:  We are going to hold off for one second

 8    after this, okay?  Do you want to come in for a second?  So you

 9    want to hold off for a minute, did you say, Judge?

10          THE COURT:  What?

11          THE CLERK:  Did you say you wanted to pause for a

12    minute for the other jurors?

13          THE COURT:  I don't remember what I was going to do.

14          THE CLERK:  You were going to pause.

15          THE COURT:  Does anyone want a brief recess or just

16    continue?

17          MR. MUKASEY:  We have about 20.

18          THE COURT:  I know what I wanted to do, I wanted to

19    count how many we have.

20          THE CLERK:  I knew you did.

21          MR. MUKASEY:  I want to stretch.

22          (Recess taken.)

23          THE CLERK:  We're coming in with 39 right now.  Marie,

24    could you take down your mask a little when they are asking

25    questions?

1              THE JUROR:  Sure.

2              THE COURT:  Half is enough.

3              You had indicated that you had heard about this case

4    from the press or the radio or whatever?

5              THE JUROR:  No.  I had -- my brother was in a criminal

6    case.

7              THE COURT:  I'm sorry?

8              THE JUROR:  I had a family member that was in a

9    criminal case.  That's the question I answered to.

10             THE COURT:  I think the question before is whether you

11   or a member of your family had ever been a juror.  I think that

12   was the question.

13             THE JUROR:  I misunderstood the question.

14             MR. CASEY:  Or any involvement in --

15             THE CLERK:  Or any involvement in the law, which she

16   said her brother.

17             THE COURT:  Yes.

18             THE JUROR:  Yes, that is what I answered yes to.

19             THE COURT:  How was he involved?

20             THE JUROR:  He was charged -- convicted with some drug

21   charges, like, over ten years ago.

22             THE COURT:  Obstruction of what?

23             THE JUROR:  They were drug charges.  I don't know

24   exactly what.

25             THE COURT:  How long ago was that?

```
 1            THE JUROR:  It was over ten years ago.
 2            THE COURT:  Would that make it in any way difficult
 3    for you to be a fair juror?
 4            THE JUROR:  I don't think so.
 5            THE COURT:  Is there any reason why you can't be here
 6    and serve as a juror in this case?
 7            THE JUROR:  No.
 8            THE COURT:  Mr. Casey, any questions?
 9            MR. CASEY:  Just briefly.  I mean, you said you don't
10    think so, so I just want to explore and make sure you are going
11    to be able to be fair to both sides.  Was there anything about
12    your brother's experience or your views about your brother's
13    experience or the way he was treated or the way you think he
14    was treated that would cause you to be unfair to either side in
15    the case?
16            THE JUROR:  I don't think so.  I mean, he did what he
17    was charged with so I didn't have any issue with that.
18            MR. CASEY:  Okay.  Thank you.
19            THE COURT:  Mr. Mukasey, anything?
20            MR. MUKASEY:  Did he plead guilty or did he go to
21    trial?
22            THE JUROR:  He went to trial.  I don't honestly
23    remember if he pled guilty or not.
24            MR. MUKASEY:  Obviously, we're going to have a trial.
25    There's no guilty plea.  And you understand that at a trial the
```

1    defendant is presumed innocent and the government has to prove

2    him guilty beyond a reasonable doubt, otherwise he's innocent?

3            THE JUROR:  Right.

4            MR. MUKASEY:  Fine with me.

5            THE COURT:  Okay.  Thank you very much.  Please return

6    to the courtroom, and we will try to finish this as quickly as

7    possible.

8            THE CLERK:  Thank you.  And then we have 41, Joseph.

9            This is Juror number 41.

10           THE JUROR:  Good morning, everyone.

11           MR. CASEY:  Good morning.

12           THE JUROR:  Good morning, Your Honor.

13           THE COURT:  Hi.  Have a seat.

14           I think you indicated, among other things, that you

15   had had some experience with the Internal Revenue that was less

16   than pleasant.

17           THE JUROR:  No, not less than pleasant, no.  But you

18   just asked if I had any experience.

19           THE COURT:  Or some federal agency?

20           THE JUROR:  Yes.  So I'm a former police officer.  I

21   just retired in February, and in my capacity --

22           THE COURT:  Would you mind sort of half --

23           THE JUROR:  In my capacity I was second in command of

24   the department.  I was in charge of detectives, internal

25   affairs, major crimes.  So I worked with a lot of federal

1    agencies, IRS, DEA, ATF.

2            THE COURT:  Was that unpleasant?

3            THE JUROR:  No.  The exact opposite.

4            THE COURT:  Was it so pleasant that you can't be fair

5    when the federal agent testifies?

6            THE JUROR:  This question came up to me recently when

7    I got the summons is that I could be a juror I think on the

8    local level, but on the federal level I would have a difficult

9    time in a criminal case because I am well aware of the

10   difference of what federal agencies do and how the U.S.

11   Attorney's office goes forward with cases.  I don't think I

12   could be a fair and impartial juror in a federal criminal case.

13           THE COURT:  You don't think you can be?

14           THE JUROR:  I don't think I could, no.

15           THE COURT:  Because you love all the agents that would

16   testify?

17           THE JUROR:  I don't know that.  I don't know any of

18   the agents.  I've just seen the way of their investigative

19   techniques, the way the U.S. Attorney's office will actually

20   not even go forward with a case unless they have --

21           THE COURT:  What kind of job do they do in your

22   estimation?

23           THE JUROR:  I think they do a very good job.  They

24   wouldn't be here if they didn't.

25           MR. MUKASEY:  Well, I'm compelled to say that I used

```
 1     to be a U.S. Attorney for ten years and now I'm defending
 2     defendants.
 3             THE JUROR:  I'm sure you are doing a very good job of
 4     it.
 5             MR. MUKASEY:  Could you be fair if you understood that
 6     men of this quality sometimes also defend the cases?
 7             THE JUROR:  I think that's honorable, but I don't know
 8     that I could be fair, no.
 9             THE COURT:  Any objection to excusing him?
10             MR. MUKASEY:  No, Your Honor.
11             MR. CASEY:  No, Your Honor.  Thank you.
12             THE COURT:  However, we will try to find another case
13     for you, so please go back to the jury lounge.
14             THE JUROR:  Thank you.
15             MR. CASEY:  I'm surprised you asked the question.
16             THE COURT:  It's interesting.  I make notations about
17     which particular questions.  He answered yes to more questions
18     than anybody else, and that's the signal.
19             THE CLERK:  This is Juror number 42.  Mark, you can
20     just have a seat.  Thank you.
21             THE JUROR:  Hello.
22             THE COURT:  Hello, Mr. Mulcahey.  How are?
23             THE JUROR:  I'm very good.
24             THE COURT:  You indicated that your family may have
25     learned --
```

```
 1              THE JUROR:  No.
 2              THE COURT:  -- you have been involved in any criminal
 3      proceedings, your family has.
 4              THE JUROR:  I have been.
 5              THE COURT:  Would you mind taking it down, at least
 6      halfway.
 7              THE JUROR:  I was a defendant in a jury trial back in
 8      2000.  I was charged with a misdemeanor assault and found
 9      guilty.
10              THE COURT:  With what?
11              THE JUROR:  Misdemeanor assault and found guilty.
12              THE COURT:  What happened as a result of that?
13              THE JUROR:  I was given probation.
14              THE COURT:  You are still on probation?
15              THE JUROR:  Oh, no.  This was back in 2000.
16              THE COURT:  Would that fact make it in any way
17      difficult for you to be a fair juror?
18              THE JUROR:  I don't think so.
19              THE COURT:  I mean, would you be more fair to a
20      defendant than to the government in a case like this given your
21      background?
22              THE JUROR:  I think I'd probably be more fair to the
23      defendant.
24              THE COURT:  Any questions?
25              MR. MUKASEY:  No.
```

1          MR. CASEY:  Can you just elaborate a little more on

2    that answer?

3          THE JUROR:  I guess I could say I was in his shoes.  I

4    mean, I know what it's like to sit in front of a jury, you

5    know.

6          THE COURT:  You had a jury trial or you pled guilty?

7          THE JUROR:  No, I had a jury trial.  I wanted the jury

8    trial.  They were going to give me a continuance without a

9    finding, but I -- I wasn't guilty of what I was accused of, so

10   I wanted the jury to hear it.

11         THE COURT:  Did the jury convict you?

12         THE JUROR:  Yes.

13         MR. MUKASEY:  What was the charge?

14         THE JUROR:  Misdemeanor and assault.

15         THE COURT:  I didn't know we had juries for that.

16         THE JUROR:  It was a jury trial, Wareham District

17   Court.

18         THE COURT:  12 jurors?

19         THE JUROR:  Not 12.

20         THE CLERK:  It was probably state.

21         THE COURT:  I know.

22         THE JUROR:  That was in Wareham District Court back in

23   2000.  So probation, anger management.

24         MR. MUKASEY:  Do you feel like the prosecutors and the

25   judges treated you fairly?

```
 1              THE JUROR:  I'd say yeah.  It just came down to, you
 2     know, they didn't believe my story.  They believed hers.
 3              MR. MUKASEY:  Did you testify?
 4              THE JUROR:  Yeah.
 5              MR. MUKASEY:  Could you apply the presumption of
 6     innocence to a defendant who chose not to testify?
 7              THE JUROR:  Sure.
 8              MR. CASEY:  If you were presented with evidence that
 9     convinced you beyond a reasonable doubt that the defendant did
10     what he's charged with, would you have any problem returning a
11     guilty verdict?
12              THE JUROR:  No.
13              THE COURT:  Any other questions?
14              MR. DRABICK:  You mentioned that -- something along
15     the lines of they believed her story over your story?
16              THE JUROR:  Correct.
17              MR. DRABICK:  Do you believe that the jury trial
18     fairly adjudicated the matter at hand then?
19              THE JUROR:  It's tough to say.  I mean, you know, I
20     learned one thing is that just because somebody goes into a
21     courtroom, puts their hand on a Bible and swears to tell the
22     truth doesn't necessarily mean they're going to or they did.
23     So like I said, they believed her story.
24              MR. CASEY:  We don't expect jurors to leave their life
25     experiences at the door, but if you're seated in this case,
```

```
 1   you're agreeing to consider the evidence in this case fairly
 2   and impartially and listen to the Judge's instructions and then
 3   apply the Judge's -- the laws the Judge tells you to the facts
 4   as you find them.  Is that something you think you can do?
 5            THE JUROR:  Yes.
 6            THE COURT:  Thank you very much.  Please return to the
 7   courtroom.
 8            THE CLERK:  Thank you.
 9            This is Juror number 43.
10            THE COURT:  Wait a minute.  This was Mulcahey?
11            THE CLERK:  Yes, Mulcahey went down.  And this is
12   Timothy Roy, Juror number 43.
13            You can sit down, sir.  Thank you.
14            THE COURT:  Mr. Roy, you said you had a problem with
15   our schedule.
16            THE JUROR:  I am scheduled --
17            THE COURT:  You can take it down halfway.
18            THE JUROR:  I'm fine with it on.
19            THE COURT:  Except I can't hear you.
20            Thank you.
21            THE JUROR:  Friday I'm scheduled to have dental work
22   done.  I have to have a crown put on this Friday.
23            THE COURT:  Starting at what time?
24            THE JUROR:  It's a two-hour session.  It starts at
25   1:00.
```

```
 1           THE COURT:  And where is it?

 2           THE JUROR:  Norwood, Mass.

 3           THE COURT:  Galway?

 4           THE JUROR:  Norwood.

 5           THE COURT:  That's a good hour's drive.

 6           THE JUROR:  Yeah.  From here, yes.

 7           THE COURT:  Any questions?  Any objections?

 8           MR. CASEY:  No.

 9           THE COURT:  I think we need to excuse him; right?

10           MR. MUKASEY:  Yeah.

11           THE COURT:  So we'll excuse you from further service

12   in this Court, but please go back to the jury lounge because

13   there's another case that may be shorter.  Thank you.

14           THE CLERK:  He's going to take you down, sir.

15           THE COURT:  That was Mr. Roy.

16           THE CLERK:  Jennifer Tierney, Juror number four-four.

17   If you could just have a seat here, please.

18           THE COURT:  Hello.

19           THE JUROR:  Hi.

20           THE COURT:  Thank you for being so patient.

21           THE JUROR:  Of course.

22           THE COURT:  You indicated that you had some problems

23   with our schedule, I think.

24           THE JUROR:  Yes.  So I'm an elementary schoolteacher.

25   So being out one day is a challenge but being out multiple days
```

1   would be hard for my students.

2         THE COURT:  Where do you teach?

3         THE JUROR:  I work for Pentucket Regional School

4   District, so I work in West Newbury.

5         THE COURT:  Would you mind taking --

6         THE JUROR:  Sure.

7         THE COURT:  I'm sorry.  Where is this?

8         THE JUROR:  It's West Newbury, Massachusetts.

9         THE COURT:  The way you had it is fine.  It's just I

10  can't hear you through the mask.

11        THE JUROR:  Sure.

12        THE COURT:  So one day would be fine but more than one

13  day is not?

14        THE JUROR:  Yeah.  It's just tough with obviously

15  coming out of the pandemic.  Education has definitely suffered.

16  We're short on substitutes.

17        THE COURT:  This is a private school?

18        THE JUROR:  No, public.

19        THE COURT:  And they don't have a cavalry of people

20  waiting to jump in?

21        THE JUROR:  I think, unfortunately, it's like

22  everything else right now, there's just not a lot in the way of

23  substitutes.

24        THE COURT:  When does Christmas vacation start?

25        THE JUROR:  We have a half day on the 23rd, and then

 1    that begins our vacation.

 2              THE COURT:  Which is next?

 3              THE CLERK:  Thursday, I think; right?

 4              THE COURT:  They carefully timed it so as to make it

 5    difficult for us.  Any questions by counsel, either counsel?

 6              MR. MUKASEY:  No.

 7              MR. CASEY:  No.

 8              THE COURT:  Thank you very much.  Why don't you return

 9    to the courtroom.

10              THE CLERK:  Okay.  Thank you.

11              THE COURT:  Should we excuse her or not?

12              MR. MUKASEY:  I think we keep her.

13              THE COURT:  It's my inclination, among other things --

14    I want to count again how many we have.

15              THE CLERK:  Nicholas is four-five.

16              THE COURT:  Hold the next one.

17              THE CLERK:  This is Juror number 45.  Then I'll start

18    from here, Judge.  I didn't hear you.

19              THE COURT:  How do you pronounce your last name?

20              THE JUROR:  Milot.

21              THE COURT:  And you have a problem with our schedule?

22              THE JUROR:  Yes.

23              THE COURT:  Would you mind taking this halfway down.

24              THE JUROR:  No problem.  I felt like a jerk even

25    putting up the sign because I know everybody is busy.  It's

 1    just I work in health care in the IT department, not on the

 2    front lines at all.  It's been one of the more stressful, over

 3    the past year, because of COVID and losing teammates and stuff,

 4    it's been extremely, extremely busy.  With that being said --

 5              THE COURT:  What do you do for your --

 6              THE JUROR:  I work for the support team.  I support

 7    all the computers and all the network infrastructure and

 8    everything.  Also doing after-hours.  I feel Wednesday night

 9    I'll be working midnight to 3:00 a.m. supporting an upgrade.

10    But again, that being said, I'll do what I need to do, and I

11    understand this is my duty.

12              THE COURT:  So you would be willing to try to do the

13    jury duty if you had to?

14              THE JUROR:  Yes, if I had to, absolutely.  Absolutely.

15              THE COURT:  And we can rely on you to be awake?

16              THE JUROR:  Yes.

17              THE COURT:  I am not kidding, because that has

18    happened.

19              THE JUROR:  Understood.

20              THE COURT:  We had a girl who fell asleep who even

21    started snoring.  That's when we discovered it.

22              Any questions?

23              MR. MUKASEY:  No.

24              MR. CASEY:  None, Your Honor.

25              THE COURT:  Thank you very much.  We really appreciate

1    your effort.

2          THE CLERK:  He is going to return to the courtroom,

3    and we are going to stop for one second.  That stops at

4    four-five.  You wanted to count?

5          (Recess taken.)

6          THE CLERK:  This is Juror number four-seven.  You can

7    just have a seat right here.

8          THE COURT:  Mr. Cooper.

9          THE JUROR:  How are you?

10         THE COURT:  Would you mind sort of half taking down

11   your mask so we can hear you.

12         THE JUROR:  Sure, sure.

13         THE COURT:  Excellent.  I don't know why Mr. Cooper

14   was called.

15         THE CLERK:  I have a checkmark.

16         THE COURT:  Did you have a problem?  Did you raise

17   your hand?

18         THE JUROR:  It's kind of an inconvenience.  I recently

19   moved.  We closed on our house on Friday and moved to

20   Lakeville, and it's just a longer drive.

21         THE COURT:  You're moving to Lakeville on Friday?

22         THE JUROR:  We've already moved in.  We're not

23   completely settled.

24         THE COURT:  How far is Lakeville?  Down the Cape?

25         THE JUROR:  It's near New Bedford, Fall River.  So

```
 1    it's about, you know --
 2              THE COURT:  An hour and a half.
 3              THE JUROR:  Maybe an hour and a half, an hour and 45.
 4              THE COURT:  But you can do that?
 5              THE JUROR:  I can do that.
 6              THE COURT:  We really need you.
 7              THE JUROR:  Okay.
 8              THE COURT:  Any questions?
 9              MR. CASEY:  No, none.
10              THE COURT:  Thank you very much.  We really appreciate
11    it.  We appreciate your patience as well.
12              THE CLERK:  Thank you, sir.
13              This is Juror number four-eight, 48.  If you could
14    just have a seat, sir.  Thank you so much.
15              THE COURT:  Hi.  How are you?
16              THE JUROR:  Good.  How are you?
17              THE COURT:  I would much appreciate you taking the
18    mask half off so I can hear what you have to say.  Thank you.
19              You indicated -- I'm not exactly sure what you
20    indicated.
21              THE CLERK:  There was two.
22              THE COURT:  You raised your hand.
23              THE JUROR:  One was had we participated, I think, in a
24    trial or something before as a juror.  I've been a juror
25    before.
```

1    THE COURT:  So have you been a juror in the past?

2    THE JUROR:  Yes.

3    THE COURT:  How long ago?

4    THE JUROR:  That was 2008.

5    THE COURT:  In the state court or here?

6    THE JUROR:  State.

7    THE COURT:  State court.

8    And what kind of a case was it?

9    THE JUROR:  It was a stalking case.

10   THE COURT:  Stalking?

11   THE JUROR:  Yes.

12   THE COURT:  And what did the jury do?

13   THE JUROR:  They convicted.  I wasn't part of it.  I

14   was the alternate.

15   THE COURT:  You were the alternate so you didn't

16   participate?

17   THE JUROR:  Not in the deliberation.

18   THE COURT:  So it's time that you should.

19   THE JUROR:  Maybe.

20   THE COURT:  Is there any reason why you can't serve on

21   this jury apart from that, which is not a reason?

22   THE JUROR:  I mean, the second question that I

23   responded to was in regards to knowing -- having knowledge of

24   the case.

25   THE COURT:  Do you?

1           THE JUROR:  Well --

2           THE COURT:  That's what it says.  It's news.

3           THE JUROR:  So prior to coming here I looked at the

4    docket for the court just to see what the potential cases were,

5    and so I saw the listing.  I looked up whatever the legal

6    documents is.  I don't know what you call it.

7           THE COURT:  The complaint or the indictment?

8           THE JUROR:  Where it listed the charges that you read

9    in court.

10          THE COURT:  The indictment.

11          THE JUROR:  So I read that over.  I found that through

12   a Google search, which then also showed an article, which I

13   quickly just scanned through, and it did trigger a memory of

14   just when the news broke about the story, I don't know, a year

15   ago or two years ago, that I had seen that on the news.

16          THE COURT:  You did all of this in the last several

17   days after you learned you would be a juror?

18          THE JUROR:  Just to see what the potential cases might

19   be.

20          THE COURT:  So did you form a view about the --

21          THE JUROR:  Not really.  Again --

22          THE COURT:  -- merits of the case?

23          THE JUROR:  I just had remembered having seen it on

24   the news before.  I don't fully understand the case, to be

25   honest, so.

```
 1                THE COURT:  Would you have any difficulty deciding
 2      this case based on what is presented to you in the courtroom --
 3                THE JUROR:  I don't.
 4                THE COURT:  -- which may be different than from what
 5      you had read?
 6                THE JUROR:  Yeah, I don't think I would have an issue
 7      with that.
 8                THE COURT:  Can you forget what you have read by
 9      tomorrow?
10                THE JUROR:  Yeah.  I mean, it basically was just
11      reiterating what was in the legal document, just what the
12      charges were, which then you reiterated today.  And beyond
13      that, just who he was, where he was working, at Harvard.
14                THE COURT:  Would that make a difference to you in
15      deciding his guilt or innocence?
16                THE JUROR:  I don't think so.
17                THE COURT:  That's the wrong way to say it.  Whether
18      the government has proven him guilty?
19                THE JUROR:  No, I don't believe it would have an
20      impact.
21                MR. MUKASEY:  I have a couple of questions, if you
22      don't mind.  Do you recall any of the facts that were in this
23      article besides that the client worked at Harvard?  Because
24      some of the articles have crazy untrue facts.
25                THE JUROR:  The only thing I remember is his place of
```

1    employment, something was involving China, which is not clear

2    to me what that was.  I believe that the defendant might have

3    cancer, it mentioned, and then what the charges were, like the

4    Judge read in court and what I had seen in that legal document.

5          MR. MUKASEY:  And you know that what you read in the

6    media is, for all intents and purposes, fiction in the

7    courtroom, and the Judge read you the -- or summarized the

8    allegations.  Those are just allegations.  They haven't been

9    proven; right?

10         THE JUROR:  Exactly.

11         MR. MUKASEY:  And if you are chosen as a juror, and

12   you seem like a good one, you could not go home every night and

13   Google and look around and see?

14         THE JUROR:  No.

15         MR. MUKASEY:  You have to only listen to the evidence

16   that's in the courtroom.

17         THE JUROR:  Of course.

18         MR. MUKASEY:  And you could live with that?

19         THE JUROR:  Uh-huh.

20         MR. CASEY:  Did anything that you read about the

21   defendant's health, would that affect your ability to decide

22   the case based upon the evidence fairly and impartially?

23         THE JUROR:  No.  It was just -- it was in a headline

24   and that was --

25         MR. CASEY:  Okay.

1          THE COURT:  Anything else?  Thank you very much.

2     Please return to the courtroom.

3          THE CLERK:  Thank you.

4          So that's nine on this page.

5          THE COURT:  He was Mr. Cooper; right?

6          THE CLERK:  No.  He was Adam Rose, number 48.

7          THE COURT:  I don't think I will excuse him for cause.

8     So let's -- before we get the next one, we want to count again.

9     We have six on page one, plus seven, which is 13, on page 2,

10    plus seven on page 3, which takes us to 20.

11         THE CLERK:  Yep.  And then we have nine on page 4,

12    which takes us to 29, I believe.

13         THE COURT:  Nine.

14         MR. CASEY:  J.R. has mastered the art of addition.  Do

15    you want to report your results?

16         MR. DRABICK:  Your Honor, I believe we need only 32.

17    So there's -- as I understand it, there will be 12 in the box

18    plus two alternates, so that's 14; ten peremptories, so that's

19    24; plus one for an alternate, 25.

20         THE CLERK:  But we have two alternates, so it gets

21    two, one for each.

22         MR. CASEY:  He's getting there.

23         THE CLERK:  I'm sorry.

24         MR. DRABICK:  Six peremptories for the government,

25    that's 31; and one peremptory for the alternate, 32.

```
 1              THE CLERK:  We are having two alternates.  I thought
 2    it was one for every two, isn't it?
 3              MR. MUKASEY:  Each side gets one.
 4              MR. DRABICK:  Each side gets one peremptory for the
 5    alternates; am I correct on that?
 6              THE COURT:  Yes.
 7              MR. MUKASEY:  Do we have two?  I have to look at the
 8    rule.
 9              THE COURT:  I thought Lisa suggested that each
10    alternate gets one.
11              THE CLERK:  Yes.  We have two alternates, so you get
12    an extra; right?
13              THE COURT:  But each side gets one.  I don't think
14    they each get two each side.
15              THE CLERK:  No, each side gets one.  So we have one
16    and one.
17              THE COURT:  For the government we have -- we get for
18    the main panel, the main group --
19              THE CLERK:  Ten; right?
20              MR. MUKASEY:  No, six.
21              THE CLERK:  The government gets six and you get ten.
22              MR. MUKASEY:  Correct.
23              THE COURT:  Six and you get ten, so that's 16.  Then
24    we get two alternates, one each for -- I mean, two for the
25    alternates, one each.
```

```
 1              THE COURT REPORTER:  Are we going off the record for
 2     this?
 3              THE CLERK:  Yes.
 4              (Discussion off the record.)
 5              THE CLERK:  The next one up is 51, Karoline.
 6              This is Juror number 51.  If you could just come in,
 7     please.  And if you could just pull down your mask a little
 8     when you're talking so they can hear you.  Thank you so much.
 9              THE COURT:  How do you pronounce your last name?
10              THE JUROR:  Prevost.
11              THE COURT:  Prevost.  You indicated that your family
12     had some -- that you had some involvement, your family had some
13     involvement with criminal stuff?
14              THE JUROR:  Correct.  My brother has been incarcerated
15     for about 10 to 15 years.  I really don't know how long.
16              THE COURT:  What did he do?
17              THE JUROR:  He has a drug issue, since he was 15.
18              THE COURT:  Would that fact and the fact that he's
19     been incarcerated, presumably convicted, make it difficult for
20     you to be a juror in a criminal case?
21              THE JUROR:  I don't believe so.  I don't think they
22     are related at all.  I don't really have a relationship with
23     him.
24              THE COURT:  Well, I think that's the essential
25     question given your answer.  Does the defense have any
```

1   questions?

2          MR. MUKASEY:  Yes.  Ms. Prevost, do you think the

3   justice system treated your brother fairly?

4          THE JUROR:  I think he got the consequences that he

5   deserved.

6          MR. MUKASEY:  And do you understand that other

7   defendants who are charged, other than your brother, are

8   presumed to be innocent and the government has to prove them

9   guilty?

10          THE JUROR:  Yes.

11          MR. MUKASEY:  And you'd be able to judge the evidence

12   with an open mind, and if the government proved their case, go

13   that way, and if the government couldn't prove that case --

14          THE JUROR:  Yes.

15          MR. MUKASEY:  -- go the other way?

16          THE JUROR:  Yes.

17          MR. MUKASEY:  Your brother's experience would have no

18   influence?

19          THE JUROR:  Uh-uh.

20          MR. MUKASEY:  Fair enough.

21          THE COURT:  Any questions?

22          MR. CASEY:  No.

23          THE COURT:  Thank you very much.  Please return to the

24   courtroom, and we'll be done soon.

25          THE CLERK:  This is Juror number 55.  Have a seat,

1   please.  Thank you.  Juror number 55.

2           THE COURT:  Ms. Langston, is it?

3           THE JUROR:  Yes.

4           THE COURT:  If you wouldn't mind sort of half --

5           THE JUROR:  Sure.

6           THE COURT:  -- just because I have trouble hearing you

7   otherwise.

8           THE JUROR:  I have trouble seeing, so.

9           THE COURT:  I think you raised your hand in response

10  to a question that asked about any experience with the Internal

11  Revenue?

12          THE JUROR:  Yes.  Actually, it wasn't me.  It was my

13  husband.  He had a bad time with the Internal Revenue Service.

14          THE COURT:  Was the Internal Revenue justified?

15          THE JUROR:  Probably, probably.

16          THE COURT:  You don't know anything about it?

17          THE JUROR:  I really didn't get into it.  It was his

18  line of work.  But he was in a little deep, and then we ended

19  up losing the house, and it just was a whole mess.

20          THE COURT:  Would that whole mess make it difficult to

21  be a fair juror in this case?  It involves the Internal Revenue

22  in the sense that was one of the agents -- one of the parts of

23  the government that --

24          THE JUROR:  Right, I understand that.

25          THE COURT:  -- that he needed to file papers in -- the

1    government says he needed to file papers in.

2          THE JUROR:  Right.  I don't think so.

3          THE COURT:  Any questions, Mr. Casey or whoever?

4          MR. DRABICK:  Ms. Langston, does the effect of what

5    happened with your family and the IRS, does that still linger

6    today?  Is this something you are dealing with today?

7          THE JUROR:  No.  Not me, no.

8          MR. DRABICK:  And do you feel like your husband was

9    treated fairly by the IRS?

10         THE JUROR:  No.

11         MR. DRABICK:  He wasn't treated fairly?

12         THE JUROR:  I think they were kind of scary, actually.

13         THE COURT:  Scared you?

14         MR. DRABICK:  What did you mean by that?

15         THE JUROR:  When he would come to the house, he

16   intimidated me.  I wasn't comfortable around this particular

17   man.

18         MR. DRABICK:  The individual associated with the IRS?

19         THE JUROR:  Yeah.  The agent, yeah.

20         MR. DRABICK:  Would that color your ability to be a

21   fair and impartial juror in this case, do you think?

22         THE JUROR:  I don't know.  I don't think so.

23         MR. CASEY:  What if you heard testimony from an IRS

24   agent?

25         THE JUROR:  I really don't think so.  I don't know.

1          THE COURT:  You don't think you could judge it fairly?

2          THE JUROR:  I don't think so.

3          MR. DRABICK:  Thank you.

4          THE COURT:  Any questions, Mr. Mukasey, or suggestions?

5          MR. MUKASEY:  I'm just trying to paint the picture

6     maybe a little more clearly.

7          Somebody may take the witness stand in this case from

8     the IRS and talk about taxes that somebody they think should

9     have paid.

10         THE JUROR:  Right.

11         MR. MUKASEY:  We disagree.  Could you listen with an

12    open --

13         THE JUROR:  Exactly.  I think my problem was they were

14    paid.  They were just kind of messed up.  It was just something

15    wrong in the system, I think, but I don't know.  I'm not into

16    computers.  I don't know how that works.

17         MR. MUKASEY:  Okay.

18         MR. CASEY:  I think we are in agreement.

19         THE COURT:  Excused?  Yeah.  So please return to the

20    jury lounge downstairs, and we'll try to find another case for

21    you.

22         THE JUROR:  Okay.  I'm sorry.  You have a good day.

23         THE COURT:  No, no.  It's just fine.

24         THE CLERK:  This is Juror number five-six.

25         THE COURT:  Mr. Gifford?

```
 1              THE JUROR:  Yes.  How are you?

 2              THE COURT:  I'm okay.  But I don't have a note about

 3    why you're on my list today.  So what's --

 4              MR. DRABICK:  Scheduling.

 5              THE CLERK:  Scheduling.

 6              THE JUROR:  Yes, it's the scheduling.

 7              THE COURT:  Oh, the scheduling.  Okay.

 8              THE CLERK:  Could you put down your mask a little bit

 9    when you --

10              THE JUROR:  Sure.

11              THE CLERK:  Thank you very much.

12              THE COURT:  What's the problem with the scheduling?

13              THE JUROR:  I have got two little ones in day care I

14    pick up and drop off every day.  It would be really hard for me

15    to try to --

16              THE COURT:  What time do they start?

17              THE JUROR:  So I drop them off at 7:40, and I pick

18    them up right around 3:00 o'clock.  And I live in New Bedford.

19              THE COURT:  Our court day would fit into that

20    perfectly.

21              THE JUROR:  Is it 9:00 o'clock?

22              THE COURT:  We start at 9:00.

23              THE JUROR:  If I leave New Bedford at 7:40, I don't

24    know if I would be able to make it to Boston by 9:00 with the

25    traffic.
```

```
 1              THE COURT:  Let's see.  Where are you located?
 2              THE CLERK:  New Bedford.
 3              THE JUROR:  New Bedford, Mass.
 4              THE COURT:  Can you drop them off 15 minutes early?
 5              THE JUROR:  They already open up early for us.  It's
 6    worth me asking, but they usually open up for everyone at 8:00.
 7              THE COURT:  The afternoon is not a problem until such
 8    time as the court -- the jury deliberates, and then you would
 9    have a problem going beyond 1:00 o'clock, presumably, because
10    you would need to be back at 3:00?
11              THE JUROR:  Yes.
12              THE COURT:  There's nobody else who can take care of
13    the kids besides you?
14              THE JUROR:  My mother lives in North Carolina.  My
15    grandparents, they work.
16              THE COURT:  You could bring her up.
17              THE JUROR:  She would love it.
18              THE COURT:  So there's nobody else who could take care
19    of the kids?
20              THE JUROR:  Depending on how long this went on for, I
21    could ask around, but it would be pulling teeth trying to find
22    somebody for a couple of weeks to be able to do this for me.
23              THE COURT:  Any objection to excusing him?
24              MR. CASEY:  No.
25              MR. MUKASEY:  I was ready to let him go when I saw the
```

1   Cowboys sweatshirt.

2          THE JUROR:  I figured there's one of the Giants fans

3   over there.

4          THE COURT:  Please go down to the jury lounge to see

5   if there's another case that may be more suitable.

6          THE CLERK:  David, could you put down your mask a

7   little bit while they talk to you.  Juror number 57, Judge.

8          THE JUROR:  Sure.

9          THE COURT:  Hi.

10         THE JUROR:  How are you?

11         THE COURT:  You answered yes to one or another

12  question that I asked earlier.

13         THE JUROR:  First two counts of the indictment I think

14  had something to do with businesses with China on defense aid

15  government contracts with China.

16         THE COURT:  Well, yeah, the allegations are that

17  Counts 1 and 2 have alleged that Mr. Lieber made statements to

18  the government concerning participation -- made improper

19  statements.

20         THE JUROR:  I work for a defense company.

21         THE COURT:  These were statements to the Defense

22  Department that was in some way --

23         THE JUROR:  Sorry.  I misunderstood the question.  So

24  I thought he had some issues with his dealings with the

25  government of China.

```
1              THE COURT:  Well, he did have dealings with the
2     government of China.
3              MR. MUKASEY:  There may be allegations --
4              THE JUROR:  Allegations, okay.
5              MR. MUKASEY:  -- that he did some activities in China,
6     not directly with the government, with a university.  On the
7     other hand, you are at Raytheon; right?
8              THE JUROR:  That's correct.
9              MR. MUKASEY:  And you have contracts with the Defense
10    Department?
11             THE JUROR:  That is correct.
12             MR. MUKASEY:  And Defense Department employees will
13    testify in this case, and if the Defense Department is alleged
14    to be one of the parties that false statements were made to --
15             THE JUROR:  Okay.
16             MR. MUKASEY:  -- would you have a problem listening to
17    that?
18             THE JUROR:  Well, so -- I don't know.  I know we had
19    some people arrested at Raytheon for dealings with, you know,
20    the government, obviously.  And we also have to take training
21    classes of how adversaries try to take or get information from
22    us.  So, you know, unfortunately, right, like you had
23    mentioned, some of the ins or the outs or how they try to
24    contact us, I might have a problem.
25             MR. MUKASEY:  Judge, I think we agree he can be
```

 1   excused.

 2           THE COURT:  We are agreed that --

 3           MR. DRABICK:  We agree, Your Honor.

 4           THE COURT:  Thank you very much for being so open with

 5   us.

 6           THE JUROR:  Thank you.  I appreciate it.

 7           THE COURT:  You are excused from further service in

 8   this case, but please go back to the jury lounge with another

 9   case waiting for you.

10           THE JUROR:  Okay.  Thank you.

11           THE COURT:  Thank you.

12           THE CLERK:  This is Juror number 60, last but not

13   least, Juror number six-oh.

14           THE COURT:  Mr. Downs.

15           THE JUROR:  Yes.

16           THE COURT:  I'm glad to see you.

17           THE JUROR:  Me, too.

18           THE COURT:  If you could lower it a bit.  Thank you.

19           You indicated a couple of things.  One, that you had

20   read about the case; one, that you had a scheduling problem.

21           THE JUROR:  Okay.

22           THE COURT:  Right?

23           THE JUROR:  Yes.

24           THE COURT:  Do you want to start with that one?

25           THE JUROR:  I don't know if mine is that bad, but I've

```
 1   just seen a million people raise their hands.  So I was, like,
 2   maybe mine is a little bit worse but maybe better than other
 3   people's or whatever.  It's just I don't have a car right now.
 4   It's in the shop, but I'll probably have it Thursday or Friday.
 5   So I had to leave my house at 5:30 to get here today, but I
 6   could still get here.  It's not like a huge thing.  Like, if
 7   three people only raised their hand for that one, I wouldn't
 8   have done it, too, but I saw like 40 people do it.
 9            THE COURT:  One of the problems is you have to
10   rearrange your schedule.
11            THE JUROR:  I have a long, long commute.  That's it,
12   but it's not impossible.
13            THE COURT:  We'll put it not on top but in the middle.
14            THE JUROR:  Like I said, there's probably people who
15   have serious issues that are way worse than mine.
16            THE COURT:  You also indicated you had read about the
17   case or watched television or something.
18            THE JUROR:  I think so, but I'm not sure if it's the
19   same case.
20            THE COURT:  What do you think you know?
21            THE JUROR:  Is he like a professor or something?
22            THE COURT:  Well, you seem to have heard the right --
23            THE JUROR:  I remember when it first hit, like just
24   hearing it on the news and stuff, but I didn't really follow it
25   that much.  But I do remember hearing about it.
```

```
 1              THE COURT:  What else do you remember hearing?
 2              THE JUROR:  It was like something like giving
 3    information or something to someone in China and stuff.  I
 4    forget exactly.  Because it was like, probably like a year ago,
 5    like the last time I remember hearing it.  So I haven't done
 6    anything since then or really looked into it.  I remember,
 7    like, maybe reading a headline or hearing it, like, on the
 8    headline on the news but not actually delving deep into it.
 9              THE COURT:  And I think you also indicated that
10    somebody in your immediate family had some problems with the
11    criminal law.
12              THE JUROR:  Yes, my brother.
13              THE COURT:  Does he still have problems?
14              THE JUROR:  He actually passed away.
15              THE COURT:  Oh.
16              THE JUROR:  But I don't know.  He had like a few
17    felonies and stuff.  I'm not exactly sure what they were.
18              THE COURT:  How long ago was that?
19              THE JUROR:  He probably died three, four years ago.  I
20    mean, he was in and out of jail my whole life, kind of.  He
21    never did state time, but he's been to Billerica House of
22    Correction on multiple occasions and done like 12 months to 18
23    months.  So he's never done more than like a two-and-a-half-
24    year-type thing, get out on good probation.  But there was a
25    few felonies.  One of his friends got --
```

```
 1              THE COURT:  Did he live with your family when he came

 2      out?

 3              THE JUROR:  Yes.  He always lived with my family.  I

 4      ended up moving out, but I was still close to the family.  He

 5      was older than me, but he never actually moved out.

 6              THE COURT:  Would the fact that he -- did he talk

 7      about his experience in the courts and in the prison?

 8              THE JUROR:  Kind of.  Like, I'd go visit him.  I was

 9      kind of well aware of it and stuff because he had kind of like

10      had gang affiliations.  I knew some of his friends.  I knew who

11      to, like, not to be around, who to be around, but that's about

12      it.

13              THE COURT:  Would that in any way make it difficult

14      for you to be a fair juror?

15              THE JUROR:  I don't know.  I wouldn't think so.  But I

16      don't know if I have some, like, hidden bias, but I don't think

17      it's anything too strong, I don't think.  I'm just trying my

18      best to be honest here.  I don't know how to answer that.  I

19      don't think so.  It was for different type of stuff.

20              THE COURT:  There will be a number of witnesses who

21      are sort of law enforcement types.

22              THE JUROR:  Oh, yeah.  My sister is a cop, too.  I

23      don't know if that changes anything.

24              THE COURT:  I don't know if there are any policemen,

25      but they are FBI-type guys.  Would your experience with your
```

1   brother make it difficult for you to fairly judge whether they

2   are telling the truth or not?

3          THE JUROR:  Probably not.  I mean, I know there's a

4   couple of cops from where I'm from, like detectives, that were

5   bad, and I've seen them do stuff.  They did stuff to me because

6   of my brother.  I know there's just that couple few.  Unless I

7   know personally like that these people are those people, I

8   don't think it will affect me.

9          THE COURT:  Any questions?

10         MR. MUKASEY:  I just have a question about some of the

11  stuff you might have read.  I mean, could you put that out of

12  your mind and start with a clean slate?

13         THE JUROR:  Yeah, I think I can.  I don't really

14  remember much.  It was just like a headline or something.  I

15  never delved into it so I never knew the details of it.  So

16  from what I know is like it's the title of the book.  I know

17  what you are saying.  I am trying my best to explain it.

18         MR. MUKASEY:  I appreciate it.  Sometimes you read a

19  headline and you don't get all the details.  But in the

20  courtroom you are going to get all the details.

21         THE JUROR:  What I read is very still abstract to me.

22         THE COURT:  How long ago did he die?

23         THE JUROR:  Four years ago.

24         THE COURT:  And before that he was not much with the

25  family?

1          THE JUROR:  No, no.  He was with the family.  He had

2     like a drinking problem.  So he was in and out of doing stuff

3     like that, and so -- I don't know.  I mean, he was always at

4     home.

5          THE COURT:  He was physically there but not

6     necessarily involved?

7          THE JUROR:  When I went to visit my mom and dad, he

8     would be there.  Like Christmas, Thanksgiving, Easter I see

9     them.

10         THE COURT:  But you were no longer living with your

11    mom and dad at that point?

12         THE JUROR:  No.  I moved out a while ago.

13         THE COURT:  Do you think you can be a fair juror in

14    this case?

15         THE JUROR:  I think I can, kind of can.  What was the

16    first charge again, too?  Do you mind?

17         THE COURT:  One count is making false statements about

18    his alleged participation in a Chinese education program, then

19    filing false tax returns, that is, not disclosing certain

20    monies received in the tax return.

21         THE JUROR:  I understand that part.

22         THE COURT:  And then the last one is failing to file

23    reports of, again, to the Federal government of ownership of

24    bank accounts that were in China in a certain amount.

25         THE JUROR:  Okay.

1          THE COURT:  Those are the essential allegations of the

2     indictment.

3          THE JUROR:  I can be somewhat fair.  The first one is

4     kind of tricky to me, but I think I can.  I know the other ones

5     I could be, but then I don't really know what the charges are

6     so I don't know how fair I would be.

7          MR. MUKASEY:  What gives you hesitation about the

8     first --

9          THE JUROR:  I'm thinking like every time when I hear

10    something about China, just like when I read stories about like

11    the Cold War and stuff, I feel like people are just like --

12    there's always like the element to it so I don't know.  I'm not

13    like a conspiracy theorist, so I don't know anything about it

14    yet before I'm saying that.  But I'm just saying that maybe

15    that's like a tiny bit.  It's very little.  It's not something

16    that I think about all the time or anything.

17         THE COURT:  Do you think you could be a fair juror

18    deciding these issues?

19         THE JUROR:  I think probably.

20         MR. CASEY:  Is there any other reason you hesitate

21    about the false statement aspect of the case, other than the

22    sort of -- the China piece, as you just mentioned?

23         THE JUROR:  No, it's more just the China piece, like

24    the Department of Defense, like the McCarthyism-type stuff.

25    Like that type of stuff would be kind of like the thing that

1    would get me.  I don't really know much going on right now.

2    But when I see people like China push this whole new Cold War

3    thing, I think about it a little bit, but I don't pay too much

4    attention to it.

5             MR. CASEY:  Are you able to block that out of your

6    mind and render a decision based on the evidence you would hear

7    in court?

8             THE JUROR:  I would think so.

9             THE COURT:  Any other questions?

10            MR. CASEY:  No.

11            THE COURT:  Thank you very much.  Please return to the

12   courtroom.

13            THE CLERK:  Thank you.  Thank you.  All right.  That's

14   it.  There's ten here.

15            THE COURT:  What is counsel's view about excusing him

16   or not?

17            MR. MUKASEY:  I think he should be excused.

18            MR. CASEY:  No objection.

19            THE CLERK:  So we are going to let him go.  So we have

20   got nine.

21            THE COURT:  That is Mr. Downs; right?

22            THE CLERK:  So we have got nine on that page.

23            THE COURT:  I have only eight.

24            MS. DEIST:  I have eight on that as well.

25            MR. CASEY:  On that page?  I have nine.

```
 1              MR. DRABICK:  On the last page I have eight.
 2              THE COURT:  I have excused 55, 56, 57, and 60.  Whom
 3     else do we have?
 4              THE CLERK:  What?
 5              THE COURT:  There's a dispute.
 6              MR. CASEY:  I'm sorry.  You are right.
 7              THE CLERK:  I have nine.  On page 5?
 8              MR. CASEY:  We excused 60.
 9              THE COURT:  Whom do you have excused?
10              THE CLERK:  I have 55, 56, and 60.
11              MS. BERGIN:  We got rid of 57.
12              THE CLERK:  57, Cunningham.  Oh, we did?
13              MS. BERGIN:  Yes.
14              THE COURT:  And 60.  We did send one guy back to the
15     courtroom, but we -- I think we excused him.
16              THE CLERK:  So 57, all right.
17              THE COURT:  So the excused were 55, six, seven, and
18     60.
19              THE CLERK:  Yes.
20              THE COURT:  And that yields one, two, three, four,
21     five, six, seven --
22              THE CLERK:  Eight.
23              THE COURT:  -- eight.
24              THE CLERK:  We have like 37.
25              THE COURT:  I think that's all we can do today; right?
```

1    Now, the question is we have a total of --

2            THE CLERK:  I think 37; right?

3            THE COURT:  -- 6, 13, 20, 29, 37.  We are in good

4    shape.  You can use all of the excuses you've got.

5            MR. MUKASEY:  Judge, I have just a question on how

6    we're going to do the peremptories.  Do we do them

7    simultaneously where they give you a number and we give you

8    two?

9            THE CLERK:  Yes.  And then you go up until you do

10   even, and then you do one, one, one, one.  Do you know what I

11   mean?

12           MR. MUKASEY:  Yes.

13           THE CLERK:  Right, Judge?

14           THE COURT:  You tell me whom you want to have.

15           MR. MUKASEY:  They give you one; we give you two.  But

16   we don't wait to hear theirs.  We do it simultaneously?

17           THE CLERK:  Oh, no.  We wait.

18           THE COURT:  No.  It's up to you guys.  Usually we'll

19   come to the sidebar and we do it one, two, one, two until it's

20   even, which is about six, and then we get one, one, one, one.

21   And then we do the alternates --

22           MR. MUKASEY:  Perfect, perfect.

23           THE COURT:  -- one, one.  We do this at the sidebar

24   normally.  We can do it in some different way to avoid COVID.

25           THE CLERK:  Do you want to do it just up here or do

1    you need to see them?

2              MR. CASEY:  I would like to see them.

3              MR. MUKASEY:  I would like to see them, too.  I think

4    the courtroom is better.

5              THE CLERK:  Okay.

6              THE COURT:  Okay.  Do you mind going through 1:00?  I

7    mean, finishing this and then having lunch after that?

8              MR. MUKASEY:  No.  Then we open first thing in the

9    morning?

10             THE COURT:  Exactly.

11             THE CLERK:  So they won't have to -- so this whole

12   group won't have to all come back.  So if we could finish with

13   them, right, Judge?

14             THE COURT:  Absolutely.  I think it makes sense to do

15   that.

16             MR. DRABICK:  Go downstairs and do peremptories.

17             THE COURT:  And then tomorrow we'll start -- we'll

18   start with swearing them in -- swearing the jurors and then we

19   have the opening statements.

20             MR. MUKASEY:  Do you give a little preliminary

21   instruction before the openings or no?

22             THE COURT:  I will give them a very brief instruction

23   about the charges primarily and how we will proceed.

24             MR. MUKASEY:  Sounds good.

25             THE COURT:  There's nothing mysterious about it.

```
1              THE CLERK:  We'll go downstairs and do that.  We can
2    go down.
3              (End of sidebar.)
4              (Recess taken.)
5              THE CLERK:  All rise, please.
6              THE COURT:  Please be seated.
7         So now we will bring you down to the 12 who will try
8    the case, plus two alternates in case one disappears between
9    now and when the case finishes.  This can happen momentarily
10   sometimes.
11             THE CLERK:  Do we want to come to sidebar?
12             (At sidebar.)
13             MR. CASEY:  It might be helpful just to clarify what
14   the process is.  We are a little confused on the process.
15             THE COURT:  As I understand it, the defendant has ten
16   challenges, the government has six.  So we will start defendant
17   two, government one, defendant two, government one until you're
18   even, and then we go one, one, one for the first 12.  And then
19   after that, one for each of the -- with respect to each
20   alternate from each side.  Does that make sense?
21             MR. DRABICK:  Your Honor, are we striking from the
22   entire pool or are we only striking from the first 14?
23             THE CLERK:  No, the entire pool.
24             THE COURT:  What?
25             THE CLERK:  The whole pool; right?
```

1          THE COURT:  Yeah.  I mean, we are going to go through

2    first the 12.  There will be six challenges.  You're entitled

3    to six, they're entitled to ten for just the main -- the 12.

4    And then once we have done that, then we have one for each of

5    the alternates.

6          MR. MUKASEY:  You are striking from the whole room?

7          THE COURT:  Is that not correct?

8          MR. MUKASEY:  Yes.

9          MR. DRABICK:  Perhaps I'm missing something here.  If

10   nobody strikes anybody from one to 14, don't we have a jury?

11         MR. MUKASEY:  Theoretically.

12         MR. CASEY:  We could put 14 in the box right now.

13         THE COURT:  We have 30-plus jurors so we can strike

14   that number.

15         MR. CASEY:  What if we didn't strike anybody?

16         THE COURT:  If we don't use them all up, it doesn't

17   matter.

18         THE CLERK:  We go the first 14.

19         MR. CASEY:  We just go from the top down?

20         THE COURT:  Then it's the first 12 and then the next

21   two.

22         MR. CASEY:  Got it.

23         THE COURT:  That's the way it always is.  I mean, this

24   is -- this is the list.  If we pass over --

25         MR. DRABICK:  Understood, Your Honor.  My only thought

 1   is if neither the defense or the government strikes anybody in

 2   the first 14, once we have 14 --

 3          THE COURT:  It doesn't matter.  We just keep going.

 4   Is this correct?  Yeah.  It doesn't matter where you start.

 5   You're entitled to -- you're entitled to ten, they're entitled

 6   to six, and we just use the whole shebang for all of it.

 7          MR. DRABICK:  Very good, Your Honor.

 8          THE COURT:  I think?

 9          THE CLERK:  Yes.

10          THE COURT:  I mean, we can add them up and just do the

11   beginning, but that doesn't make a whole lot of sense if

12   they're all here.

13          MR. DRABICK:  My only thought, Your Honor, is that

14   once we have the -- starting in numerical order, once we have

15   14 jurors who haven't been peremptoried and both sides --

16          THE CLERK:  Yes.

17          THE COURT:  They will be the 14 jurors who will be

18   trying the case.

19          THE CLERK:  Sitting?

20          MR. DRABICK:  Correct.

21          THE COURT:  So your difficulty will be that we will go

22   two, one, two, one, et cetera.

23          MR. MUKASEY:  Okay.

24          THE COURT:  But we are doing this from all of the

25   pages.

```
 1              THE CLERK:  Yes.

 2              MR. MUKASEY:  Understood, okay.

 3              We are going to strike number 1 and number 5.

 4              THE CLERK:  Okay.

 5              THE COURT:  That is Chomitz and Kelly?

 6              MR. MUKASEY:  Correct.

 7              THE COURT:  One from you.

 8              MR. CASEY:  I'll strike number 7.

 9              THE COURT:  I'm sorry?

10              MR. CASEY:  Number 7.

11              THE CLERK:  Yes.

12              THE COURT:  Pintal.

13              Two more from the defendant.

14              MR. MUKASEY:  12 and 14.

15              MR. DRABICK:  24, Your Honor.

16              THE COURT:  Two more from the defendant.

17              MR. MUKASEY:  28 and 33.

18              THE COURT:  That is --

19              THE CLERK:  No.  28?

20              THE COURT:  -- Foley?  And the other one was what?

21              MR. MUKASEY:  33, Barry.

22              THE COURT:  33, Barry.

23              Anyone?

24              MR. CASEY:  31.

25              THE COURT:  Hoggatt.
```

```
 1            MR. MUKASEY:  Sorry.  Who was yours?

 2            THE CLERK:  31.

 3            THE COURT:  I'm sorry.  What number?

 4            THE CLERK:  No, he was wondering what the government's

 5    was.  Three-one.

 6            THE COURT:  I think the jurors are hungry.  We need to

 7    finish with this.

 8            MR. MUKASEY:  48 and 51.

 9            THE COURT:  48, Rose.

10            MR. MUKASEY:  And 51.

11            THE CLERK:  And 51.

12            THE COURT:  51?

13            MR. MUKASEY:  Yes.

14            THE COURT:  Prevost.  After this you only get one.

15            MR. DRABICK:  42, Your Honor.

16            THE COURT:  Mulcahey.

17            One from the defendant.

18            MR. MUKASEY:  15.

19            THE COURT:  Estevam?

20            MR. MUKASEY:  Uh-huh.

21            THE COURT:  Tell me now which one is your next one.

22            MR. DRABICK:  I'm sorry.  Say that again.

23            THE COURT:  I count only five -- I count one less than

24    you had.

25            MR. DRABICK:  Based off of one, I believe they have
```

 1  one left.  They struck nine total.

 2         THE COURT:  I have for you 7 and 24 and 31 --

 3         THE CLERK:  And 42.

 4         THE COURT:  -- and 42.  That's what you --

 5         MR. DRABICK:  Correct, those are the four we struck.

 6         THE COURT:  Any more?

 7         MR. DRABICK:  One moment, Your Honor.

 8         (Pause.)

 9         THE COURT:  You are done?

10         MR. CASEY:  We are done, correct.

11         THE COURT:  Anybody else, Mr. Mukasey?

12         MR. MUKASEY:  Is this our last strike?

13         THE CLERK:  Yes.  You have one more before the

14  alternates.

15         MR. MUKASEY:  Who did you --

16         THE CLERK:  They didn't.

17         MR. MUKASEY:  You passed?

18         MR. DRABICK:  We passed.

19         THE COURT:  You said 2?

20         MR. MUKASEY:  No.

21         13.

22         THE COURT:  Knight.

23         THE CLERK:  Okay.

24         THE COURT:  So now we start with the government.  You

25  have one for the alternate.

```
 1              MR. MUKASEY:  Can we figure out who the jury is?

 2              THE CLERK:  Yes.  We are going to do the first 12

 3      first.

 4              THE COURT:  Announce who they are?

 5              THE CLERK:  Yes, that's how we usually do it.  And

 6      then from there they have one each for the alternates.

 7              THE COURT:  Why announce it, and then everybody --

 8              MR. MUKASEY:  Well, we should figure it out amongst

 9      ourselves.

10              THE CLERK:  I know.  That's what I mean.  We usually

11      do that.

12              THE COURT:  But we are not going to announce --

13              THE CLERK:  No.  I just meant to us.  So we do the

14      first 12.

15              THE COURT:  The next two would be which ones?

16              THE CLERK:  We do the first 12 on the list, and then

17      we find out who the two is from the panel.

18              THE COURT:  I mean, we still have, for example, number

19      3 still.

20              THE CLERK:  Yes.  So 3 is one.

21              THE COURT:  So take -- 3 would be the alternate, the

22      first alternate.

23              THE CLERK:  No.

24              MR. MUKASEY:  The first 14.

25              THE CLERK:  The first 12.
```

1          MR. MUKASEY:  The first 12 that have not been struck.

2          THE COURT:  So Juror number 1 would be 3 on the list?

3          THE CLERK:  Yes.

4          THE COURT:  And we do that now, you think?

5          THE CLERK:  Yes, we do.  We always do that.

6          THE COURT:  And then the next two.

7          THE CLERK:  And then whoever is left out of that, they

8     have one and one for each alternate.

9          THE COURT:  Why can't they do that now?

10         THE CLERK:  Okay.

11         THE COURT:  I can tell you who the 12 are.

12         THE CLERK:  That's what we usually do.

13         THE COURT:  But I don't think we need to announce it

14    and make them stop again.

15         THE CLERK:  No, I know.

16         MR. MUKASEY:  You're right.

17         MR. DRABICK:  Agreed.

18         THE COURT:  So we know now -- you want me to put it on

19    the record?

20         MR. MUKASEY:  Just among us, yes.

21         THE COURT:  Okay, just among us.  I have so far on the

22    list that we have number 3 is number one.

23         THE CLERK:  Yes.

24         THE COURT:  Number 10 is number two; 20 is three; 21

25    is four; 23 is five; 29 is six; 32 is seven; 34 is eight; 36 is

 1    nine; 37, ten; 39, eleven; and 40, twelve.

 2              THE CLERK:  And then from that --

 3              THE COURT:  And then the alternates -- do we take the

 4    next two or do you want to decide of the remaining ones which

 5    are the alternates?

 6              MR. MUKASEY:  You have 39 as 11 and 40 as 12?

 7              THE CLERK:  Yes.

 8              MR. MUKASEY:  And then the alternates --

 9              THE COURT:  If we continue, 45 and 46 would be the

10    alternates.

11              THE CLERK:  Yes.

12              THE COURT:  If you want to choose from the remains,

13    you tell me.

14              MR. CASEY:  I'm sorry.  Who would be the alternates

15    again?

16              THE CLERK:  44 and 45.

17              MR. CASEY:  44 and 45?

18              THE CLERK:  Yes.

19              THE COURT:  Yeah, 44 --

20              THE CLERK:  No, no, no.  44 is gone.

21              THE COURT:  No.  45 and 46.

22              THE CLERK:  I'm so sorry, Judge.  We just let her go.

23              MR. MUKASEY:  We're going to -- you guys go first.

24              THE COURT:  I'm sorry?

25              MR. MUKASEY:  I want to see who they want for the

1   alternates.

2          THE COURT:  I mean, it's either the next two on the

3   list or you choose from somebody of what remains of the list.

4   Just tell me which method you want to use.

5          MR. DRABICK:  Sorry.  What's the question, Your Honor?

6          THE COURT:  We can either take the next two -- we are

7   now at 40, number 12 is 40.

8          MR. DRABICK:  Yes.

9          THE COURT:  If we continue, then 45 and 46 are the

10   Alternates 1 and 2.  If you want to choose, then you could go

11   beyond that of what remains.  But I just want to know which

12   process we are going to use.

13          MR. DRABICK:  I would propose that if nobody strikes

14   45 or 46, we have a jury.

15          MR. MUKASEY:  We are going to strike 45.

16          MR. DRABICK:  Okay.  Strike.

17          So 46 and 47.

18          THE COURT:  Which one are you striking?

19          MR. DRABICK:  We didn't strike anything.

20          THE CLERK:  Not yet.

21          MR. DRABICK:  We pass, Your Honor.

22          THE CLERK:  Okay.  So that's one and two.

23          THE COURT:  So the alternates will be number 46 and

24   47; correct?

25          THE CLERK:  Yes.

```
 1              MR. MUKASEY:  Yes.

 2              THE COURT:  So let me just -- I don't think we need to

 3      write it down again for you.

 4              THE COURT REPORTER:  Okay.

 5              (Discussion off the record.)

 6              (End of sidebar.)

 7              THE COURT:  We are actually done.  And I thank you for

 8      your immense patience.  Okay.  As you see, this is a kind of

 9      whittling-down process.  I will tell you who are the jurors who

10      will be actually serving in the trial on this case.

11              Juror number 1 will be Lynn Shane or Mr. Shane.

12      You'll be number one, and we will move you into the proper seat

13      at the appropriate time.

14              James Queally is number two.

15              Randall Miselis is number three.

16              Robert Kaitz, number four.

17              Amy Dansreau, number five.

18              Peter Fessenden, number six.

19              Stephen Kern or Stephan Curran, number seven.

20              Jonathan Crawford, eight.

21              Stacey Bernier, number nine.

22              Amy Roberto, ten.

23              Marie Deletti, 11.

24              Shane Murphy, number 12.

25              Timothy J. Gagne, number 13.
```

1          And Geoffrey Cooper, number 14.

2          Now, those whose names I have not read, if you would

3     kindly get up from your seats and part with the thanks of the

4     Court, return to the second floor to see if there's another

5     case for you.

6          Those who have gotten the seat number, please go to

7     that seat number now, so that seat.  Don't leave until Ms. Urso

8     tells you you can go.  Hold it.  Don't leave without

9     Ms. Urso's -- they are departing from the back.

10          (Jurors are seated.)

11          THE CLERK:  There we are, Judge.

12          THE COURT:  Thank you so much.  What I ask of you

13     please is not to think about the case at all from now until

14     tomorrow morning at 9:00.  We will swear you as jurors at that

15     time.  We will then proceed with the trial in earnest with the

16     opening by the government of what the evidence will be it will

17     present.  I do not know at the moment what the defense will do,

18     but they are entitled to come tomorrow and speak to you, too.

19     So tomorrow morning you should report to the jury room that you

20     will --

21          THE CLERK:  Yes, I'm going to take them all there.

22     Yes.

23          THE COURT:  You will have that room in which we talked

24     earlier today upstairs.  That will be your room for the

25     duration of the trial.  And Ms. Urso will make sure that you

1    have coffee there all the time.  There is water, I think, as

2    well.

3              THE CLERK:  Yes, there is.

4              THE COURT:  In any event, she will explain all that to

5    you.  I will explain to you some of the details of how we will

6    proceed tomorrow given the lateness of the hour now, and I can

7    hear your stomachs growling.

8              It's overwhelming sometimes.  So please do not think

9    about the case.  Do not try to decide anything about the case

10   since you really don't know enough about it yet; in fact, you

11   know very little about it.  And tomorrow we will get going with

12   counsel's statement and the evidence first thing.  We will take

13   a recess at about 11:00.  And I don't know whether we can get

14   goodies or not.

15             THE CLERK:  Yes, we will get snacks.  Yes, I will.

16             THE COURT:  And we will sit until 1:00 o'clock, and

17   promptly at 1:00 we will leave.  We start promptly at 9:00 if

18   everybody is here.  We recess promptly at 1:00, because, among

19   other things, I have afternoon stuff scheduled as well.

20             I thank you very much for your patience.  This was a

21   difficult day for you.  I know just sitting around is hard.

22   But you were very good, and I look forward to working with you

23   tomorrow starting at 9:00 o'clock.  So please follow Ms. Urso

24   now.

25             THE CLERK:  All rise for the jury.

1          (The Jury is not present.)

2          THE COURT:  Please be seated.  I do thank all counsel

3     for your assistance in this process.  I will see you at 9:00

4     o'clock tomorrow unless one or another of you has something

5     that you need to discuss with me, in which case please let

6     Ms. Urso know, and we'll meet at 8:30.

7          MR. MUKASEY:  Just very briefly this afternoon, Judge,

8     we've been working quite cooperatively with the government in

9     terms of the order of proof.  They told us their first three

10    witnesses for tomorrow.  I would only ask that, for the sake of

11    efficiency and moving this thing along --

12         THE COURT:  I'm sorry.  You want what?

13         MR. MUKASEY:  I just want to ask, for the sake of

14    efficiency, if the government could let us know maybe 24, 36

15    hours before which witnesses are coming next.

16         THE COURT:  They will do that.

17         MR. CASEY:  We will, Your Honor.

18         THE COURT:  They are pretty good about that in

19    general.

20         MR. MUKASEY:  That would promote efficiency.  Thank

21    you.

22         THE COURT:  Anything from the government?

23         MR. CASEY:  Nothing, Your Honor.  Thank you.

24         THE COURT:  So if anything arises and you have a

25    dispute, let Ms. Urso know, and we can easily meet at 8:30 or

```
 1    even earlier if that is necessary.  I want very much to start

 2    with a jury at 9:00.  I promised them that we will be efficient

 3    and then we have got to carry through.  Okay?  Thank you, all.

 4              MR. CASEY:  Thank you.

 5              MR. MUKASEY:  Thank you.

 6              (Adjourned at 1:18 p.m.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3               I, Linda Walsh, Registered Professional Reporter

4     and Certified Realtime Reporter, in and for the United States

5     District Court for the District of Massachusetts, do hereby

6     certify that the foregoing transcript is a true and correct

7     transcript of the stenographically reported proceedings held in

8     the above-entitled matter, to the best of my skill and ability.

9               Dated this 18th day of January, 2022.

10

11

12               /s/ Linda Walsh

13               Linda Walsh, RPR, CRR

14               Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25