UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 1:20-CR-10111-RWZ

UNITED STATES OF AMERICA

v.

CHARLES LIEBER

MEMORANDUM & ORDER

September 1, 2022

ZOBEL, S.D.J.

On December 21, 2021, a jury convicted Defendant Charles Lieber on each of six counts for making false statements to the U.S. government in violation of 18 U.S.C. § 1001(a)(2) (Counts I and II); filing false tax returns in violation of 26 U.S.C. § 7206(1) (Counts III and IV); and failing to report his interest in a foreign bank account in violation of 31 U.S.C. §§ 5314, 5322(a) (Counts V and VI). Docket # 244. He timely moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) or, alternatively, for a new trial pursuant to Rule 33(a). Docket # 258.

I.  **Background**

Defendant was a professor in the Department of Chemistry and Chemical Biology at Harvard University. He became its chair in July 2015. The evidence at trial—including Defendant's video-recorded post-arrest statements, his emails, and the testimony of government agents and Defendant's former assistant—showed that from 2011 to 2015, Defendant developed a relationship with Wuhan University of Technology ("WUT") in China and participated in the Chinese government's Thousand Talents Program ("TTP"). His relationship with WUT, and specifically his participation in the TTP, was the subject

1

of investigations by two U.S. agencies that periodically provided substantial grant money to fund Defendant's laboratory and research at Harvard.

In April 2018, agents from the Defense Criminal Investigative Service of the U.S. Department of Defense ("DOD") interviewed Defendant about his relationship with WUT and his participation in the TTP. Defendant stated that he was never asked to participate in China's TTP and that he was not sure how China categorized him, even though Defendant had been asked by representatives of WUT to take part in the TTP and, in July 2012, had signed a three-year contract with WUT memorializing the same. These statements formed the basis of the government's false statement allegations in Count One of the indictment.

In December 2018, the National Institutes of Health ("NIH") approached Harvard University to investigate Defendant's ties with WUT and the TTP. After receiving notice of these inquiries, Defendant met with Harvard officials and told them that he was not, and had never been, a participant in the TTP. Harvard included Defendant's statement in a draft letter it prepared in response to NIH's inquiry, which Defendant reviewed but did not correct. In January 2019, Harvard sent the letter to NIH. This statement was the basis of the government's false statement allegations in Count Two of the Indictment.

Defendant received significant sums of money from WUT in at least 2013 and 2014. The evidence at trial—including Defendant's emails and post-arrest statements, together with documents and items retrieved from his home following his arrest, and testimony by Defendant's former assistant and his former tax accountant—proved that Defendant received a portion of the payments by deposit to a bank account in China. The remainder of the payments he carried back to the United States in cash. He failed,

however, to report these payments on his tax returns for tax years 2013 and 2014, which is reflected in the indictment's false tax return allegations in Counts Three and Four.

The evidence also showed that Defendant's Chinese bank account had a balance of at least $10,000 in 2014 and 2015 but that Defendant did not file a Report of Foreign Bank and Financial Accounts ("FBAR") with the U.S. Treasury Department for either year. That failure gave rise to the charge in each Count Five and Six.

Defendant moved for judgment of acquittal after the close of the evidence, which the court denied. The jury returned a verdict of guilty on all six counts. The matter is before me now on Defendant's renewed motion for judgment of acquittal or, in the alternative, a new trial.

## II.   Defendant's Motion for Judgment of Acquittal

In support of his pending motion, Defendant argues that the government failed to introduce sufficient evidence to sustain the guilty verdicts on Counts One, Two, and Five; and that the regulation upon which the government relies for Counts Five and Six is void. Pursuant to Federal Rule of Criminal Procedure 29 "[a] judgment of acquittal should only be granted when the evidence and all reasonable inferences to be drawn from the evidence, both taken in the light most favorable to the government, are insufficient for a rational factfinder to conclude that the prosecution has proven, beyond a reasonable doubt, each of the elements of the offense." United States v. Pimental, 380 F.3d 575, 584 (1st Cir. 2004). "Under this formulation, a court considers all the evidence, direct and circumstantial, and resolves all evidentiary conflicts in favor of the verdict." United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002). This standard poses "daunting hurdles" for the defendant. United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006). It is

"rare" for the court to reverse a conviction under Rule 29. See United States v. López-Díaz, 794 F.3d 106, 108 (1st Cir. 2015).

### A. Count One (False Statements to DOD)

The evidence showed that DOD agents asked Defendant whether he was "[a]pproached to be a member" of the TTP. Ex. 322 (DOD interview notes) at 4; Ex. 323 (DOD interview report) at 3. Defendant replied that he was "not explicitly asked to be a member" and immediately added, he was "not sure how they categorized" him. Id.

Defendant argues that the government did not present reliable evidence of precisely what was said by the DOD agents to evoke the statements at issue. However, acquittal is not justified even if the record did not reveal the exact question to which Defendant replied, because there is no requirement that false statements be precipitated by a question. See United States v. Boskic, 545 F.3d 69, 88, 91 (1st Cir. 2008) (affirming false statement conviction where question was paraphrased and the exact wording of that paraphrase was unknown); United States v. Licciardi, 30 F.3d 1127, 1134 (9th Cir. 1994) (affirming false statement conviction where defendant volunteered the statements). Nevertheless, DOD Agent Hochberger's handwritten notes provided the jury with sufficient evidence that the statements were preceded by agents asking whether Defendant was "[a]pproached to be a member" of the TTP. See Ex. 322 at 4.

Second, Defendant argues that the trial evidence was not sufficient to prove that he made the exact statements charged in the indictment, that he "was never asked to participate in China's Thousand Talents Program" and that he "'wasn't sure' how China categorized him." The evidence demonstrated that he stated he "was not explicitly asked to be a member of the program" and that he was not sure how "they" categorized him.

4

The differences between the indictment and the evidence are immaterial, and the context supported the conclusion that "they" referred to China.

Defendant further relies on the doctrine of literal truth, under which "a jury could not be allowed to consider a [false statement] charge where the allegedly false statement was 'literally true but not responsive to the question asked and arguably misleading by negative implication.'" United States v. Richardson, 421 F.3d 17, 33 (1st Cir. 2005) (quoting Bronston v. United States, 409 U.S. 352, 353 (1973)). Here, however, Defendant's statements were neither.

Finally, Defendant asserts that proving the statement false—that he "'wasn't sure' how China categorized him"—requires proving China's state of mind, which the government cannot do. For that same reason, he argues, the statement is literally true because he could not have known China's state of mind. However, evidence of China's state of mind was not required. The decisive issue was Defendant's state of mind, not China's. To that end, the entirety of the evidence—including Defendant's emails with WUT professor, Liquiang Mai ("Professor Mai") regarding the execution of the TTP contract[1] and his participation in the TTP,[2] as well as Defendant's post-arrest statement[3]—was sufficient for a jury to find literal falsity of the statements as charged.

---

[1] See Exs. 25, 26 (emails confirming that Defendant signed the TTP contract).
[2] See, e.g., Ex. 17a (email from Professor Mai to Defendant stating, "in the World Recruitment Plan of renowned experts in China (also called as one thousand plan of foreign experts), you have been approved and awarded as invited strategic foreign expert by Chinese government . . ."); Ex. 34 (email from Professor Mai to Defendant referencing "your One Thousand Plan evaluation"); Ex. 35 (email from Professor Mai to Defendant stating, ". . . this big funding will be very important and necessary to our collaboration research, development of Nano Key Lab and your one thousand plan"); Ex. 159 (email from Professor Mai to Defendant stating, "[c]onsidering that you are world-leading nanoscientist and the Strategic Scientist & One Thousand plan of WUT").
[3] In his post-arrest interview, Defendant stated, "I shouldn't have had an agreement and accepted money." Ex. 305 (Video Clip 06 at 1:06-1:20). When asked "why not be honest with [the DOD] about that," he replied, "yeah – I – you're right, yes, you're right," and "[i]t was wrong. What can I say? It was wrong." Id.

5

B.  Count Two (False Statement to NIH)

Count Two charged that Defendant "caused Harvard University to tell the NIH that Lieber '[wa]s not and has never been a participant in' China's Thousand Talents Program," when he had signed an employment contract to that effect. Defendant argues that there was insufficient evidence to show that the statement in Harvard's letter to NIH was literally false, because it was true that he had represented to Harvard officials that he was not and had never been a participant in the TTP. However, there was sufficient evidence that his response to Harvard's request was knowingly false and therefore so was Harvard's response to NIH, which Defendant reviewed but did not correct.

C.  Counts Five and Six (Failure to File FBAR)

Defendant asserts that he is entitled to a judgment of acquittal on Counts Five and Six for two reasons: (1) the regulation relied on by the government is void, and (2) the government failed to present sufficient evidence of willfulness.

i.  Counts Five and Six—Validity of Regulation, 31 C.F.R. § 1010.350

Counts Five and Six charge Defendant with failing to file FBARs for calendar years 2014 and 2015 in violation of the Bank Secrecy Act, 31 U.S.C. §§ 5314 and 5322(a), and the statute's implementing regulations, including 31 C.F.R. § 1010.350. Defendant argues that the entire regulation[4] is void because it impermissibly requires a U.S. person

---

[4] The regulation provides that a "United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country **shall report such relationship** . . . ." 31 C.F.R. § 1010.350 (emphasis added).

6

to report a "relationship" with a foreign bank, while the statute[5] only requires that a U.S. person report a "transaction" with a foreign bank.

Defendant's position assumes that the "relation" provision of the statute only applies when the U.S. person maintains a relation for a third party but does not apply when he maintains a relation with a foreign bank himself. That interpretation undermines the natural meaning of "any person," which includes the U.S. person himself. See Strickland v. Comm'r, Maine Dep't of Hum. Servs., 48 F.3d 12, 17 (1st Cir. 1995) ("If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed."). The regulatory requirement to report such a relationship does not conflict with the statute and is not void.

  ii. *Count Five—Willfulness*

Defendant asserts that the government failed to present sufficient evidence that he willfully failed to file an FBAR for the 2014 calendar year. However, the trial evidence included the engagement letters sent by the tax accountant to Defendant and his wife with a written explanation of the FBAR reporting requirement, testimony from the accountant confirming that the letters were sent, Defendant's signature on the engagement letter for calendar year 2015, and Defendant's 2013 and 2014 tax returns that represented he did not have a financial interest in any foreign account, the accuracy of which he certified. On this evidence the jury could find that Defendant knew about the reporting requirement for calendar year 2014 and willfully failed to meet it.

---

[5] The statute at issue requires that a "resident or citizen of the United States or a person in, and doing business in, the United States, . . . **file reports** . . . when the resident, citizen, or person makes a transaction or **maintains a relation for any person with a foreign financial agency.**" 31 U.S.C. § 5314(a) (emphasis added).

7

## III. Defendant's Motion for New Trial

Under Rule 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Motions for a new trial are directed to the discretion of the court, which "may 'weigh the evidence and evaluate the credibility of witnesses, . . . [but] the remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict.'" United States v. Merlino, 592 F.3d 22, 32 (1st Cir. 2010) (quoting United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001)).

Defendant asserts four reasons for a new trial: (1) the verdicts on Counts One, Three, Four, Five, and Six fall because one of the government's legal theories as to each was invalid; (2) the court erred when instructing the jury; (3) the court erred in denying Defendant's motion to suppress his post-arrest statements; and (4) the interests of justice warrant a new trial.

### A. Theories of Law Supporting Counts One, Three, Four, Five, and Six

Defendant contends that a new trial must be granted as to Counts One, Three, Four, Five, and Six because the government prosecuted each count on separate theories, one of which was contrary to law. See Yates v. United States, 354 U.S. 298, 312 (1957) (reversing conviction on general verdict where one theory was legally inadequate), overruled on other grounds by Burks v. United States, 437 U.S. 1 (1978). The motion is denied because none of the government's theories were contrary to law.

Count One charged two false statements. Defendant asserts that because the second statement—that he "'wasn't sure' how China categorized him"—was literally true, that false statement theory is contrary to law. However, as explained above, the literal

8

truth doctrine does not apply to the second charged statement in Count One and therefore the statement as charged is not contrary to law. See supra § II(A).

Counts Five and Six charge Defendant with failing to file FBARs based on two theories: that he had (1) "an interest in" or (2) "signature and other authority over," a bank, securities, or other financial account in a foreign country. Defendant argues the "signature and other authority over" allegation is an invalid legal theory because that regulatory provision only applies to financial accounts, not bank accounts.

A plain reading of the regulation, however, makes clear that the "signature and other authority over" prong applies to bank accounts as well as securities accounts and other financial accounts. See Strickland, 48 F.3d at 17. The regulation at issue states, "[e]ach United States person having a **financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship . . . .**" 31 C.F.R. § 1010.350(a) (emphasis added). The phrase, "other financial account," signals that bank accounts and securities accounts are subcategories of the broader category of financial accounts. The same plain reading applies to subsection (e) where the regulation defines "financial interest" by referring to "a bank, securities or other financial account." 31 C.F.R. § 1010.350(e). A bank account and securities account are two types of financial accounts. To read the regulation otherwise would go beyond the plain meaning without justification and would render meaningless the word "other" in subsections (a) and (e).

Defendant's argument as to Counts Three and Four is derived from his argument pertaining to Counts Five and Six and fails for these same reasons discussed above.

B. <u>Jury Instructions</u>

Defendant asserts that the court failed to instruct the jury regarding (1) the willfulness element for Counts Three, Four, Five, and Six; (2) the regulatory definitions of a "financial interest in" or "signature or other authority over" a bank account for Counts Five and Six; and (3) specific unanimity for all counts.

Defendant's assertions are reviewed for plain error because he failed to object to the jury instructions before the jury retired to deliberate. Fed. R. Crim. P. 30(d); Fed. R. Crim. P. 52(b); <u>United States v. Perez-Rodriguez</u>, 13 F.4th 1, 16 (1st Cir. 2021) ("It has been the longstanding rule of this circuit to treat a challenge to jury instructions as forfeited if the defendant fails to object to the instructions after the judge has charged the jury, regardless of whether he previously brought the matter to the judge's attention."). To meet the plain error standard, Defendant must show "'(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" <u>Id.</u> at 16 (quoting <u>United States v. Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001)). Plain error review "is a particularly challenging standard to meet in the context of an unpreserved objection to jury instructions." <u>Id.</u> at 17.

i.        <u>Willfulness Instruction—Counts Three, Four, Five, and Six</u>

Defendant acknowledges that the court instructed the jury on the definition of willfulness. He asserts, however, that the Court should have, but failed to, instruct the jury "on the heightened standard [of willfulness] applicable on Counts Three through Six" and should have done so during the discussion of each individual count. Docket # 272 at 24; Docket # 259 at 25.

The court defined the knowing and willful standard for the jury at the outset of the jury instructions. Docket # 250 (Trial Tr. Day 6) at 172:9-15. It then instructed the jury on the willfulness element for Counts Three, Four, Five, and Six. Id. at 169:19-170:8; 175:22-176:21; 178:18-180:15. The substance of the court's instruction sufficiently articulated the definition of willfulness. Accordingly, the motion is denied.

        ii.        *"Financial interest in" or "signature or other authority over" a bank account—Counts Five and Six*

Defendant next asserts that because the government had to prove that Defendant had a "financial interest in" or "signature or other authority over" a foreign bank account, and "[t]hose regulatory terms are terms of art," the court erred by failing to instruct the jury on the terms' regulatory definitions. See Docket # 259 at 26; Docket # 272 at 24-26; 31 C.F.R. § 1010.350.

However, the First Circuit has made clear that "[a]lthough explicit definition of statutory terms and other legal parlance sometimes may be helpful in jury instructions, . . . such elaboration [is] unnecessary when, taken in the context of the charge as a whole and the evidence in the case, the tenor of a word or phrase is reasonably clear." United States v. Sabetta, 373 F.3d 75, 82 (1st Cir. 2004) (quoting United States v. Alicea, 205 F.3d 480, 484 (1st Cir. 2000)). Here, Defendant does not dispute that there was sufficient evidence presented at trial that Defendant had a financial interest in or signature or other authority over a bank account in China. In the context of the charge, which instructed the jury as to the elements of Counts Five and Six (see Docket # 250 (Trial Tr. Day 6) at 178:18-179:16), the evidence in the case, and the fact that the phrases "financial interest in" or "signature or other authority over" a bank account are "reasonably clear," no error occurred. Sabetta, 373 F.3d at 82.

11

### iii. *Specific Unanimity Instruction—All Counts*

Defendant asserts that because each count of the indictment charges "two 'instances' of the statutory violation," he was entitled to a specific unanimity instruction—that is, an instruction that the jury must be unanimous as to which "instance" was a violation—on each count. Docket # 259 at 27-28; Docket # 272 at 26-28. The court did not give such an instruction, therefore he argues that a new trial is warranted. Id.

The court evaluates this argument also under plain error review because Defendant failed to object to the instructions after the jury charge. Fed. R. Crim. P. 30(d); Fed. R. Crim. P. 52(b); Perez-Rodriguez, 13 F.4th at 16. The argument fails plain error review because the evidence presented at trial was more than enough for a rational jury to find him guilty as to each of the charged violations and he has not demonstrated that any such asserted error affected his "substantial rights." Perez-Rodriguez, 13 F.4th at 16.

### C. Post-Arrest Statement

Defendant argues that the court should reconsider the previously denied motion to suppress (Docket # 170) and order a new trial. For the reasons stated in its October 13, 2021 memorandum and order (Docket # 192), the motion is denied.

### D. Interests of Justice

Finally, Defendant argues that the court should grant a new trial in the interests of justice because (1) the verdicts were against the weight of the evidence and (2) the evidentiary rulings were inconsistent.

First, the evidence supports the verdicts. It included Defendant's video-recorded post-arrest admissions; DOD agents' notes, reports, and testimony; an FBI agent's testimony; emails between Defendant and Professor Mai about his participation in the

TTP; Defendant's draft TTP contracts; correspondence about his final, signed TTP contract; testimony and engagement letters from Defendant's former accountant; and Defendant's signed tax returns. A new trial is not appropriate because the evidence does not "preponderate[] heavily against the verdict." United States v. Villarman-Oviedo, 325 F.3d 1, 15 (1st Cir. 2003) (quoting United States v. Andrade, 94 F.3d 9, 14 (1st Cir. 1996)).

Second, Defendant's arguments concerning evidentiary rulings cannot overcome the harmless error analysis. An error in an evidentiary ruling "does not necessitate a new trial when that error can be deemed harmless." Wilkerson, 251 F.3d at 280 (citing Fed. R. Crim. P. 52(a)). Even if the court committed such error, a new trial would still not be warranted because the volume of evidence was so great that "it is highly probable that the error did not contribute to the verdict." Id. (quoting United States v. Rose, 104 F.3d 1408, 1414 (1st Cir.1997)).

## IV. Conclusion

Defendant's motion for judgment of acquittal or, alternatively, for a new trial (Docket # 258) is DENIED.

September 1, 2022
DATE

RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE